UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS.

_____

JANE DOE, Plaintiff,

Vs

1.ASSOCIATE PROFESSOR FINNIAN McCAUSLAND

2. DOCTOR MARTINA McCGRATH

3.DEAN ROSALIND SEGAL

4.SENIOR ASSOCIATE DEAN JOHANNA GUTLERNER

AND

5.HARVARD MEDICAL SCHOOL

Defendants.

Civil Action No.: _____

COMPLAINT FOR EMERGENCY TEMPORARY

AND PERMANENT INJUCTIVE RELIEF
AND MONETARY RELIEF
AND

MOTION FOR EMERGENCY EX PARTE
TEMPORARY RESTRAINING ORDER, TO

PROCEED UNDER A PSEDONYM AND

TO FILE UNDER SEAL (EX PARTE) AND REQUEST
FOR EMERGENCY COURT HEARING
AND TO FILE ELECTRONICALLY

JURY TRIAL DEMANDED.

## A. PRELIMINARY STATEMENT

**Defendants' Retaliatory and Wrongful "Requirement to Withdraw" of Plaintiff from MMSCI program, Fourteen (14) Days After Plaintiff Filed a Formal Complaint of Discrimination and Bullying with Harvard University, Absent Any Established Harvard Medical School Student's Handbook Policy.**

1.Plaintiff, Jane Doe, is a Black student and, brings this action against Defendants including Harvard Medical School ("HMS") employees including the Harvard Medical School Master of Medical Sciences in Clinical Investigation("MMSCI") program Co-Directors Associate Professor Finnian McCausland("Professor McCausland") and Doctor Martina McGrath ("Dr.McGrath"), Senior Associate Dean for Graduate Education ,Johanna Gutlerner ("Dean Gutlerner"), and Dean for Graduate Education ,Rosalind Segal("Dean Segal") and Harvard Medical School ("HMS"),under Title VI of the Civil Rights Act of 1964 ,42 U.S.C. § 2000d seq. , that prohibits recipients of the United States federal aid including schools and or universities from discrimination based on race, color, or national origin in educational programs receiving federal funding and also prohibits intimidating, threatening, coercing, or retaliating against any person because they made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing; or opposed an unlawful educational practice or policy by any program or activity receiving federal financial assistance as well as under Title IX (20 U.S.C. § 1681), which provides all persons in the United States the same right to make and enforce contracts, sue, and enjoy equal benefits of the law, that prohibits racial discrimination in private and public contracts, for acts and omissions committed through Defendants, including Harvard Medical School and Harvard Medical School ("HMS") employees including the Harvard Medical School Master of Medical Sciences in Clinical Investigation "MMSCI") program Co-Directors Associate Professor Finnian McCausland  and Doctor Martina McGrath Senior Associate Dean for Graduate Education ,Johanna and  Dean for Graduate Education ,Rosalind Segal for acting within the scope of their employment in their official capacity at Harvard Medical School. Some of the Harvard University("Harvard") institutional level employees named in this complaint were involved in and or had actual knowledge of the of the academic complaints and or concerns raised by Plaintiff within the Harvard Medical School Master of Medical Sciences in Clinical Investigation (MMSCI) program described in this complaint. Plaintiff was on track to graduate from the MMSCI program in May 2026 but for the

2

Defendants' wrongful "requirement to withdraw" of Plaintiff from the MMSCI program, Defendants excluded Plaintiff from equal educational opportunities that Defendants afforded to similarly situated students in the MMSCI program cohort 2024 to 2026. The MMSCI program 2024 to 2026 cohort consisted of approximately twenty (20) students and three of whom were Black students, including Plaintiff. Unlike Plaintiff, the two remaining Black HMS MMSCI program 2024 to 2026 cohort students were from the same place of origin as indicated by them (the two Black students) during MMSCI program 2024 to 2026 cohort class students' introductions in summer 2024 semester. The rest of the HMS MMSCI program 2024 to 2026 cohort students were either Brown or White.

2. Plaintiff further asserts that Defendants failed to comply with its own policies and procedures set forth in the Harvard Medical School's Master's Student's Handbook 2024 to 2025("the Handbook"),(Exhibit) 92) and, the Harvard University's Non-Discrimination, Anti-Bullying Policy ("NDAB") Policy (Effective September 1,2023).

3.At all relevant times described herein, Plaintiff was a student in the Harvard Medical School Master of Medical Sciences in Clinical Investigation (MMSCI) program 2024 to 2026 cohort, protected by and within the meaning of Title VI of the Civil Rights Act of 1964, 42 U. S. C. §2000e and Title IX (20 U.S.C. § 1681).

4. As a student in the HMS MMSCI program 2024 to 2026 cohort, Plaintiff was governed by the policies and procedures provided in the Harvard University's Non-Discrimination, Anti-Bullying Policy ("NDAB") policy and the Harvard Medical School's Master's Student's Handbook.

5.Harvard Medical School and or Harvard University is a recipient of substantial federal aid from the United States government. Defendants were aware, or should have been aware, of Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d) that prohibits recipients of the United States federal aid from discrimination based on race, color, or national origin in educational programs receiving federal funding and also prohibits intimidating, threatening, coercing, or retaliating against any person because they made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing; or opposed an unlawful educational

3

practice or policy by any program or activity receiving federal financial assistance , which is clearly contained in the Harvard University's NDAB official policy against discrimination, bullying and retaliation, as well as Title IX (20 U.S.C. § 1681), which guarantees all persons in the United States the same right to make and enforce contracts, sue, and enjoy equal benefits of the law, that prohibits racial discrimination in private and public contracts.

6.Defendants had and or have actual knowledge that it is unlawful for the Defendants to treat Plaintiff differently within the HMS MMSCI program based on the Plaintiff's race and or in retaliation against the Plaintiff for reporting and or opposing unlawful, discriminatory and retaliatory treatment and or educational practice within the HMS MMSCI and also that it is improper for the Defendants to have issued the Plaintiff a "failing grade" in "CI706: MMSCI Mentored Research " course inconsistent with the MMSCI course grading policy and outline and a wrongful "requirement to withdraw" letter from their HMS MMSCI academic program inconsistent with the established "Requirement to Withdraw" policy and procedures in the Defendants' own HMS Master's Student Handbook by the HMS MMSCI program leadership including Associate Professor Finnian McCausland and Doctor Martina McGrath and the HMS Master's programs Deans Associate Dean Johanna Gutlerner, and Rosalind Segal, and Deans.

7.On August 8,2024, Plaintiff contacted former HMS MMSCI program director, Professor Ajay Singh and included Associate Professor Finnian McCausland and Doctor Martina McGrath in the communication and indicated that Plaintiff was experiencing mental distress related to the denial of remediation and/or issues in CI700: Ethics and the IRB" course in summer 2024 after request for course remediation in in "CI701: Clinical Data Science; Design and Analytics I" by the Plaintiff and that this was impacting the Plaintiff's ability to concentrate in current summer 2024 courses and that these issues were impacting their ability to concentrate in current summer 2024 courses and or prepare for examinations in "CI701: Clinical Data Science; Design and Analytics I" in summer 2024. The two remaining Black HMS MMSCI program 2024 to 2026 cohort students did not require and or request course remediation examination in course in "CI700: Ethics and the IRB" course, with the HMS MMSCI program leadership and or course in "CI700: Ethics and the IRB" course tutor, Doctor Susan Kornetsky.

4

8. On September 25 ,2024, Plaintiff contacted the Harvard University's Provost for Student's affairs, Provost Robin Glover, and expressed academic concerns including that Plaintiff was facing within the HMS MMSCI academic program and noted that these academic concerns were impacting and or impacted the Plaintiffs academic progress and performance in the HMS MMSCI program and therefore sought redress for it from Provost Robin Glover.

9.Plaintiff subsequently contacted the offices of Deans George Q.Daley and Saldana Federico about Plaintiff's academic concern(denial of "CI700: Ethics and the IRB" course remediation examination to the Plaintiff).The office of Dean Daley did not offer Plaintiff the support that Plaintiff requested while Dean Saldana had initially offered to meet with the Plaintiff, his office later cancelled the meeting to meet with Plaintiff and referred Plaintiff back to Dean Segal who had denied the Plaintiff course remediation examination.

10. In November 2024,Doctor Martina McGrath told Plaintiff to "wait and see" Plaintiff's Fall 2024 results (Fall 2024 examinations were not yet due and or taken by any MMSCI students per the formal MMSCI program syllabus) first before Plaintiff could conduct research for the required "CI706: MMSCI Mentored Research" course and also directed Plaintiff to defer conducting a current (Fall 2025 semester) required "CI706: MMSCI Mentored Research" course first milestone research topics to a future Spring 2025 semester, a semester(Spring 2025 ) in which the "CI706: MMSCI Mentored Research" course was not offered per the established formal MMSCI program syllabus and conditions not directed at any other student who in HMS MMSCI program 2024 to 2026 cohort by the Doctor Martina McGrath. This happened during a time when some MMSCI students known to Plaintiff were actively searching, matching and or onboarding with their potential research mentors while some few MMSCI students and are also known to Plaintiff who had matched with their research mentors earlier had started conducting research. Plaintiff only had the established formal MMSCI course Fall 2024 courses that all MMSCI students were taking and or took in the Fall 2024, but Plaintiff had no additional MMSCI courses to take from a prior semester in 2024 and or in the Fall 2024 semester per the formal HMS MMSCI program syllabus.

5

11. Although Plaintiff did not get specific help about Plaintiff's academic concerns that were impacting Plaintiff's academic progress following Plaintiff's communications to Provost Robin Glover and Deans Saldana and Office of Dean of Harvard Medical School, after Plaintiff made these communications, Plaintiff was soon subjected to escalating discriminatory and retaliatory treatment within the HMS MMSCI program and obstructed from equal and adverse academic actions absent of HMS Master's Student Handbook by Defendants.

12. On November 20,2024, Plaintiff contacted the Harvard University's Provost for Student's affairs, Provost Robin Glover for guidance.

13. On November 20,2024, Dean Gutlerner, the APRB Co-Chair initially referred Plaintiff to the APRB meeting on November 25,2025, for consideration of withdrawal of Plaintiff from the HMS MMSCI program, because Plaintiff contacted Provost Robin Glover for guidance ,despite no HMS MMSCI policy and HMS Master's Student's Handbook and or Harvard University prohibiting Harvard students from contacting Harvard faculty and or Provost Robin Glover for guidance and warranting referral to APRB and or withdrawal from MMSCI academic program by APRB for it.

14. In Fall 2024 (November 20,21 and 2024),Plaintiff contacted and or met with the HMS Title IX Resource Coordinator, Mr.Jose Martinezand expressed academic concerns including discriminatory and retaliatory treatment that the Plaintiff faced and or was facing within the HMS MMSCI academic program at Harvard and noted that these academic concerns were impacting and or impacted the Plaintiff's academic progress and performance in the HMS MMSCI program and sought redress for it from Mr.Jose Martinez

15. On February 10,2025, approximately just over one month before the APRB co-chair, Dean Gutlerner and or the APRB improperly issued the Plaintiff a "failing grade" in "CI706: MMSCI Mentored Research" course (Exhibit 1) and or  wrongfully "required" Plaintiff to "withdraw" on March 17,2025(Exhibit 2) of the Plaintiff from the HMS MMSCI program ,the Harvard Medical School Dean for Graduate Education who also served as the APRB Co-Chair, Dean Rosalind Segal told the Plaintiff to *"leave"* the HMS MMSCI academic program after Plaintiff expressed interest to conduct research on feasible research topics in accordance with the HMS

MMSCI "CI706: MMSCI Mentored Research" course syllabus that requires HMS MMSCI students to conduct research on feasible research topics(Exhibit 3). This statement by Dean Segal to the Plaintiff created a hostile and discouraging academic environment to Plaintiff from participating in the HMS MMSCI program that interfered with Plaintiff's academic progress in the HMS MMSCI program and also caused Plaintiff significant mental distress contrary with the HMS Masters Handbook, under section 3.01 Responsibility of teachers and learners under Responsibility of teachers noting that the teacher-learner relationship confers rights and responsibilities of behaving in a way that creates a culture of mutual respect, minimizes the likelihood of student mistreatment and optimizes the educational experiences and that teachers should treat learners fairly, respectfully, and without bias related to their age, race, gender, sexual orientation, disability, religion or national origin and the Harvard NDAB policy on anti-discriminatory disparate treatment of the Plaintiff based on race and the Harvard University Nondiscrimination and Antibullying policy on discriminatory disparate treatment because of the Plaintiff's race.

16.Between January and February 2025, the HMS MMSCI program Co-Director, Doctor Martina McGrath sent email communications to other HMS MMSCI 2024 to 2026 cohort students in clinical trial track which Plaintiff was also enrolled in to discuss the HMS MMSCI program tracks (Clinical Trail and Translational Trail Tracks) but Doctor Martina McGrath excluded the Plaintiff from that communication and or meeting.

17. On or about February 12 ,2025 through March 2025, Plaintiff made an initial contact and or met with the Harvard Medical School Title IX officer ,Mr. Mark Addison and reporting unequal treatment that the Plaintiff was facing within the HMS MMSCI academic program that were impacting and or impacted the Plaintiff's academic performance and progress in the HMS MMSCI program and therefore sought redress for it and or guidance with filing a complaint of discrimination and bullying with the Harvard NDAB'S office about it from Mr.Mark Addison. Mr. Addison provided guidance with filing a complaint via the Harvard OCC and stated that he would inform about the Plaintiff's academic concerns and or complaints. Plaintiff identified Associate Professor Finnian McCausland, Doctor Martina McGrath, Associate Dean Johanna Gutlerner, and Dean Rosalind Segal and Professor Ajay Singh, as respondents regarding the

7

academic concerns that the Plaintiff raised during Plaintiff's meeting Mr. Addison. However, Mr. Addison informed Plaintiff that it was at the discretion of the named individuals forementioned whether they would meet with Plaintiff over Plaintiff's informal complaint of discrimination, bullying and retaliation with Harvard OCC. The Harvard OCC and or Mr.Mark Addison did not provide Plaintiff with any notice of a potential meeting with the respondents(HMS MMSCI program leadership including Associate Professor Finnian McCausland, Doctor Martina McGrath and Professor Ajay Singh or Associate Dean Johanna Gutlerner, and Dean Rosalind Segal, whom Plaintiff had identified in the informal complaint filed by the Plaintiff with the Harvard OCC.

18.On February 27, 2025, Dean Gutlerner issued a notice only to the Plaintiff and stated that the Plaintiff had until "March 14, 2025", to represent an "interim thesis meeting"(Exhibit 107) on the original "CI706: MMSCI Mentored Research" course first milestone research topics that the Plaintiff had previously completed on December 19,2024 and "statistical work" not required at that stage of the CI706: MMSCI Mentored Research course, first milestone research topics but designated to be addressed at the CI706: MMSCI Mentored Research course second milestone research protocol to "receive credit" in "CI706: MMSCI Mentored Research" course and further noted that if not the Plaintiff would be issued a "failing grade" in CI706: MMSCI Mentored Research course and "automatically withdrawn from the MMSCI program(Exhibit 107). The selectively imposed non-established formal HMS MMSCI program "interim thesis meeting", "additional statistical work" and or "March 14, 2025" was not contained in and or required in the formal MMSCI program syllabus and or CI706: MMSCI Mentored Research course to receive a grade in CI706:MMSCI Mentored Research course and these non-established formal HMS MMSCI program conditions and were only imposed by Defendants on the Plaintiff but not similarly situated students in the HMS MMSCI 2024 to 2026 program as described above.

19.On February 28,2025, Plaintiff filed an informal complaint of discrimination, bullying and retaliation with Harvard OCC and identified Associate Professor Finnian McCausland, Doctor Martina McGrath, Associate Dean Johanna Gutlerner, and Dean Rosalind Segal and Professor Ajay Singh, as respondents regarding the academic concerns that Plaintiff had raised and or in

the Plaintiff's informal complaint of discrimination, bullying and retaliation with the Harvard OCC.

20. On March 3, 2025, Plaintiff filed a formal complaint of discrimination and bullying with Harvard Office for Community Conduct (Harvard OCC), (exhibit 4) and identified Associate Professor Finnian McCausland, Doctor Martina McGrath, Associate Dean Johanna Gutlerner, and Dean Rosalind Segal and Professor Ajay Singh, as respondents regarding the academic concerns that Plaintiff raised and or in the Plaintiff's informal complaint of discrimination, bullying and retaliation with Harvard. The Harvard OCC and or Harvard NDAB policy requires an independent investigation of formal complaints filed with the Harvard OCC office; however, no such investigation of the Plaintiff's formal complaint was conducted by Harvard OCC under the Harvard NDAB policies. The Harvard OCC and or Mark Addison later issued the Plaintiff a notice finding "no evidence" in the Plaintiff's formal complaint of discrimination on April 4,2025 and only after the Plaintiff had been wrongfully "required to withdraw" from the MMSCI program.

21. On March 4, 2025, Dean Segal issued an "ultimatum" only to Plaintiff but not any similarly situated students described below and or in this complaint, and stated that Plaintiff had until "March 14, 2025", to represent an "interim thesis meeting" on the original "CI706: MMSCI Mentored Research" course first milestone research topics that Plaintiff had previously completed on December 19,2024 and "additional statistical work" not required at that stage of the CI706: MMSCI Mentored Research" course, first milestone research topics but designated to be addressed at the CI706: MMSCI Mentored Research" course second milestone research protocol to receive credit in CI706: MMSCI Mentored Research" course and further noted that if not, Plaintiff would not continue in the HMS MMSCI program and that Plaintiff would be issued a "failing grade" in CI706: MMSCI Mentored Research course and "automatically withdrawn from the MMSCI program. Dean Segal further stated that "meetings . . . will not change the requirements, or the timetable". The "interim thesis meeting", "additional statistical work" and or "March 14, 2025" was not contained in and or required in the formal MMSCI program syllabus and or CI706: MMSCI Mentored Research course to receive a grade in CI706: MMSCI Mentored Research course and these non-established formal HMS MMSCI program conditions

were selectively imposed on the Plaintiff but not similarly situated students in the HMS MMSCI academic program ,2024 to 2026 cohort who first met with their research mentors at the same time as the Plaintiff or even later, in October or November 2024, including one White student in the MMSCI program who first met with their "CI706: MMSCI Mentored Research" course research mentor in November 2024 and presented their initial "CI706: MMSCI Mentored Research" course research topic milestone approximately one week later, also in November 2024 ,one Brown student in the MMSCI program who did not present their initial first milestone research topics originally due in Fall (November) 2024 until Spring 2025 as a condition for receiving course credit in "CI706: MMSCI Mentored Research" course.

22.Between February and March 2025, when Plaintiff repeatedly sought guidance from HMS MMSCI program leadership including Associate Professor Finnian McCausland and Martina McGrath and Deans Johanna Gutlerner and Rosalind Segal, including requesting to conduct research on feasible research projects in accordance with the HMS MMSCI program and or HMS MMSCI program and or CI706: MMSCI Mentored Research course mentored research course requiring MMSCI students to conduct research on feasible research projects and as the student (Plaintiff) with the sole responsibility for conducting the research projects. Plaintiff further requested assistance from the HMS MMSCI program leadership with finding an alternate research mentor because at all relevant times, Plaintiff's research mentor, Doctor Lisa Bebell ("Dr.Bebell"), refused to provide Plaintiff with mentorship on feasible research projects per the MMSCI program policies and or syllabus and as requested with Doctor Lisa Bebell and Associate Professor Finnian McCausland and Martina McGrath and Deans Johanna Gutlerner and Rosalind Segal by the Plaintiff. The HMS MMSCI program leadership including Associate Professor Finnian McCausland and Martina McGrath and Deans Johanna Gutlerner and Rosalind Segal provided no response and or meaningful academic support regarding Plaintiff's need finding an alternate research mentor and or conducting research on feasible research topics. Importantly, it is not mandated in any established formal HMS MMSCI program policy for MMSCI students to conduct research on designated research topics or with a designated research mentor as the MMSCI program requires students to conduct research on feasible research topics aligned with their own area of interest in research and MMSCI students as well, are allowed by the MMSCI program leadership to independently search for their own research mentor,

contradicting the HMS Masters Handbook. 2.14. Credit for Mentored Research provides that all mentors may ensure an appropriate environment for research based on the individual student's needs and objectives (Exhibit 5).

23. On July 8, 2024, Dean Johanna Gutlerner addressed the HMS MMSCI program 2024 to 2026 cohort students during class orientation and stated that HMS MMSCI students could reach out to her (Dean Gutlerner) office with academic concerns including denial of a course remediation examination in "CI700: Ethics and the IRB" course by HMS MMSCI program leadership and Plaintiff further requested course remediation examination in in "CI700: Ethics and the IRB" course from Dean Gutlerner per the HMS Master's Student's Handbook requiring remediation examinations and therefore governs all MMSCI students included Plaintiff .Plaintiff was never granted in "CI700: Ethics and the IRB" course remediation by Dean Gutlerner either to Plaintiff by Dean Gutlerner. Dean Gutlerner told Plaintiff that, Plaintiff "should accept the answers" from HMS MMSCI program directors ( 4). Plaintiff expressed to Dean Gutlerner that Plaintiff was unsatisfied and sought redress from Dean Gutlerner because the unresolved concerns that Plaintiff was facing within the HMS MMSCI program were impacting Plaintiff's academic performance in other HMS MMSCI courses (Exhibit 4). Additionally, on September 20,2024, Dean Gutlerner mentioned to Plaintiff that *"There is no requirement for any faculty member to allow remediation (Exhibit 155)."* This statement by Dean Gutlerner is directly contradicted by the same HMS Master's Student's Handbook Section 2.03 (Grading and Examinations), provides that "students who fail a required course are required to take a re-examination and or do remedial work as approved by the course director." , therefore indicates that remediation is not discretionary but obligatory. Defendants deviated from this established formal right outlined in the HMS Master's Student's Handbook Section 2.03 (Grading and Examinations) policy and denied Plaintiff course remediation examination in "CI700: Ethics and the IRB" course.

24.On March 3, 2025, Doctor Bebell stated to the Plaintiff that, *"we don't have much time to achieve the next milestones by the March 14,2025 deadline".,* echoing the MMSCI program director's and deans' selectively imposed and or non- formal MMSCI program syllabus directive of "additional statistical research work", "interim thesis meeting" by "March 2025 deadline" to Plaintiff but not on similarly situated MMSCI academic program ,2024 to 2026 cohort who first

met with their research mentors at the same time as the Plaintiff or even later, in October or November 2024, including one White student in the MMSCI program who first met with their "CI706: MMSCI Mentored Research" course research mentor in November 2024 and presented their initial "CI706: MMSCI Mentored Research" course research topic milestone approximately one week later, also in November 2024 ,one Brown student in the MMSCI program who did not present their initial first milestone research topics originally due in Fall (November) 2024 until Spring 2025 as a condition for receiving course credit in "CI706: MMSCI Mentored Research" course. However, the "MMSCI Mentored Research CI706" course syllabus specifies no such "additional statistical research work", "interim thesis meeting" by "March 2025 deadline", as "requirement" after the first milestone or prior to the second milestone, rendering this expectation unsupported and inconsistent with established course standards. Additionally, Doctor Lisa Bebell mentioned to only facilitate a research meeting for the prior research topics that the Plaintiff had identified as infeasible to continue conducting research on and she still (Doctor Bebell) did not accept to provide mentorship to the Plaintiff with feasible research topics as requested with Doctor Lisa Bebell and the MMSCI program leadership by the Plaintiff and as required in the HMS MMSCI program policies that students conduct research on feasible research topics. The MMSCI program and or Deans were aware that Plaintiff requested with Doctor Lisa Bebell ,MMSCI program leadership and Deans themselves for an opportunity to conduct research on feasible research projects and also that Doctor Lisa Bebell refused to mentor the Plaintiff on feasible research topics but they (MMSCI program leadership and Deans) still did not provide any further support to Plaintiff about it and continued to enforce the selectively imposed non-MMSCI program syllabus deadline of "March 14,2025" and "additional statistical research work", "interim thesis meeting" under the threat of failure and withdrawal from the HMS MMSCI program.

25.On March 10,2025, Plaintiff subsequently sought additional request for support regarding ongoing discriminatory and retaliatory treatment and these selectively imposed non HMS MMSCI program syllabus conditions including "interim meeting", "additional statistical research work" and a " March 14,2025 deadline" ,on the Plaintiff under the threat of failure in CI706: MMSCI Mentored Research:  course and "withdrawal" from the HMS MMSIC program which materially caused Plaintiff emotional distress and impacted Plaintiff's academic progress and performance in

the HMS MMSCI program from the following internal Harvard channels including Harvard University Provost Robin Glover and Harvard Medical School Dean's Office, Harvard Medical School Title IX Officer for Faculty ,Ms.Leri Godin and the Harvard University Working Group on academic freedom. Plaintiff included Deans Rosalind Segal and Johanna Gutlerner as recipients in the Plaintiff's correspondence to the Harvard University Provost Robin Glover and Harvard Medical School Dean's Office, Harvard Medical School Faculty Title Ix Officer, Ms.Leri Godin and the Harvard University Working Group on academic freedom on March 10,2025.Notably,Dean Gutlerner had previously(November 20,2024) referred Plaintiff to the APRB(that Dean Johanna Gutlerner co-chairs with Dean Rosalind Segal) on November 25,2024 for consideration for withdrawal from the MMSCI program for contacting Harvard Provost Robin Glover, despite no Harvard Medical School and or Harvard University established policy prohibiting Harvard students from contacting Harvard faculty or Provost Glover for guidance and warranting referral to the APRB and or consideration by the APRB for withdrawal of such student from a Harvard academic program, an inference to retaliatory motives of Defendants for the wrongfully issued "failing grade" in "CI706: MMSCI Mentored Research" course to Plaintiff and or "requirement to withdraw" of Plaintiff from the MMSCI program by Defendants.

26.Between February to March 12,2025, Plaintiff made independent efforts to secure a research mentor by contacting other Harvard faculty and or affiliates in related field of research which proved impossible as some of whom including Doctors Mark Siedner (Exhibit 6) and Gregory L Robbins (Exhibit 7),but these potential research mentors only had availability to meet with the Plaintiff on or after March 18,2025,when the Plaintiff had been wrongfully "required to withdraw" by Defendants and also given that Defendants continued to enforce a selectively imposed non HMS MMSCI program syllabus "March 14,2025 deadline" on the Plaintiff under the threat of failure in "CI706: MMSCI Mentored Research" course and withdrawal from the HMS MMSCI program.

27.On March 12,2025, two days before the selectively imposed non-established formal HMS MMSCI program syllabus of "March 14,2025 deadline" ,"interim meeting" and 'additional statistical work" and after independent efforts by the Plaintiff to secure an alternate research mentor between February to March 12,2025 proved impossible and with no meaningful academic

13

support from the HMS MMSCI program leadership and deans who instead continued to enforce these selectively imposed non-established formal HMS MMSCI program conditions under the threat of failure in "CI706: MMSCI Mentored Research" course and or withdrawal of the Plaintiff from the HMS MMSCI program, the Plaintiff was compelled to contact Doctor Lisa Bebell and inquired about Doctor Bebell's availability in providing required mentor facilitation in repeating the previously completed "CI706: MMSCI Mentored Research " course first milestone research topics that the plaintiff had identified as unfeasible to continue with. Plaintiff included the HMS MMSCI program leadership including Associate Professor Finnian McCausland and Martina McGrath and Deans Johanna Gutlerner and Rosalind Segal in the Plaintiff's communication to Doctor Lisa Bebell. Neither the research mentor, Doctor Bebell nor HMS MMSCI program leadership including Associate Professor Finnian McCausland and Martina McGrath and Deans Johanna Gutlerner and Rosalind Segal responded to the Plaintiff's communication requesting Doctor Lisa Bebell's availability to repeat presenting the previously completed "CI706: MMSCI Mentored Research " course research topics which was selectively imposed on the Plaintiff but not any other similarly situated students in the HMS MMSCI academic program ,2024 to 2026 cohort who first met with their research mentors at the same time as the Plaintiff or even later, in October or November 2024, including one White student in the MMSCI program who first met with their "CI706: MMSCI Mentored Research" course research mentor in November 2024 and presented their initial "CI706: MMSCI Mentored Research" course research topic milestone approximately one week later, also in November 2024 ,one Brown student in the MMSCI program who did not present their initial first milestone research topics originally due in Fall (November) 2024 until Spring 2025 as a condition for receiving course credit in "CI706: MMSCI Mentored Research" course but upon information and belief Defendants awarded credit but not a failing grade in "CI706: MMSCI Mentored Research" course to these similarly situated students in the MMSIC program.

28.On March 14,2025 Plaintiff informed the HMS MMSCI program leadership including Associate Professor McCausland and Doctor Martina McGrath and Deans Johanna Gutlerner and Rosalind Segal that Doctor Lisa Bebell failed to respond to the Plaintiff's request to meet and or facilitate the repetition of previously completed "CI706: MMSCI Mentored Research " course first milestone research topics presentation that Plaintiff had deemed infeasible to continue conducting

14

research on by the selectively imposed "March 14,2025 deadline", as having to repeat the previously completed initial thesis research topics necessitated a research mentor facilitation for presentation. Plaintiff further stated in the same communication to the HMS MMSCI program leadership that they (Plaintiff) was unable to proceed with repeating the previously completed "CI706: MMSCI Mentored Research" course first milestone research topics that the Plaintiff had identified as infeasible and or submit, a repetition of the "CI706: MMSCI Mentored Research" course first milestone research topics report by the selectively imposed "March 14,2025 deadline" ,because of non-responsiveness from Doctor Lisa Bebell, required to facilitate the repetition of previously completed "CI706: MMSCI Mentored Research " course first milestone research topics presentation. Defendants including Associate Professor Finnian McCausland and Martina McGrath and Deans Johanna Gutlerner and Rosalind Segal did not respond or provide any alternate academic support to the Plaintiff.

29.On March,17 2025, approximately fourteen (14) days after Plaintiff had filed a formal complaint of discrimination and bullying with Harvard OCC(NDAB) on March 3,2025, and explicitly identified Associate Professor Finnian McCausland and Dr. Martina McGrath and Deans Johanna Gutlerner and Rosalind Segal, Dean Johanna Gutlerner Co-Chair of the APRB members wrongfully issued the Plaintiff a "failing grade" in "CI706: MMSCI Mentored Research" course and or wrongfully required Plaintiff to withdraw from the HSM MMSCI program without any relevant HMS Master's Student Handbook based justification for having deliberately issued the Plaintiff a failing grade in "CI706: MMSCI Mentored Research" course and the wrongful "requirement" to "withdraw" of Plaintiff from the HMS MMSCI program.

30.The HMS Master's Student's Handbook, Section 2.03 (Grading and Examinations), section 4 further provides in its relevant part, that "an incomplete (INC) grade signifies the failure to complete course requirements because of personal illness or similar compelling serious reasons(Exhibit 92) and incomplete (INC) grade must be resolved within six 6) months or an incomplete grade will be recorded" (Exhibit 8).Additionally, under the HMS MMSCI program practice, students were issued an incomplete grade upon failure of an initial attempt to pass the final MMSCI course examination(Exhibit 146). However, Plaintiff completed the "CI706:MMSCI Mentored Research" course presentation on December 19,2024 and submitted its thesis report on

15

January 6,2025 but Defendants improperly issued the Plaintiff an incomplete (INC) grade despite the completed "CI706: MMSCI Mentored Research" course first milestone thesis research report on January 6,2025 and Defendants further subsequently improperly issued the Plaintiff a "failing grade" in CI706: MMSCI Mentored Research" course also on or about March 17,2025, just in approximately seventy two(72) days (Exhibit 8) ,after the Plaintiff had completed "CI706: MMSCI Mentored Research" course first milestone thesis research report on January 6,2025 and just close to three(3) months after the Plaintiff had already completed to presentation of the "CI706: MMSCI Mentored Research" course first milestone research topics to their research mentor on December 19,2024, evidence that Defendants selectively and improperly issued Plaintiff a failing grade in "CI706: MMSCI Mentored Research" course, and earlier than the stated HMS Masters Student's Handbook program policy period of six (6) months without relying upon any established HMS Masters Student's Handbook program policy on the issuance of a "failing grade" in "CI706: MMSCI Mentored Research" course and or "requirement to withdraw" of the Plaintiff from the HMS MMSCI program contained in the HMS Master's Student's Handbook and not but Defendants did not impose and apply these non-established formal HMS MMSCI program syllabus conditions described herein on similarly situated students in the HMS MMSCI academic program ,2024 to 2026 cohort who first met with their research mentors at the same time as the Plaintiff or even later, in October or November 2024, including one White student in the MMSCI program who first met with their "CI706: MMSCI Mentored Research" course research mentor in November 2024 and presented their initial "CI706: MMSCI Mentored Research" course research topic milestone approximately one week later, also in November 2024 ,one Brown student in the MMSCI program who did not present their initial first milestone research topics originally due in Fall (November) 2024 until Spring 2025 as a condition for receiving course credit in "CI706: MMSCI Mentored Research" course but upon information and belief Defendants awarded credit but not a failing grade in "CI706: MMSCI Mentored Research" course to these similarly situated students in the MMSIC program by Defendants demonstrates the discriminatory and retaliatory pattern of Defendants and the escalating retaliatory actions that Defendants subjected the Plaintiff to within the HMS MMSCI program.

31.The purported rational of the selectively imposed non-established formal HMS MMSCI syllabus conditions including "March 14,2025 deadline" ,"interim meeting" and additional

16

statistical work"  and the deliberately issued failing grade in "CI706: MMSCI Mentored Research" course to the Plaintiff by Defendants absent any formal and or established 2024 to 2025 HMS Master's Student Handbook based justification at all relevant times is inconsistent with the HMS Master's Student Handbook, Section 2.03 (Grading and Examinations), section 4 ,which provides in its relevant part, that "a grade of incomplete (INC) signifies failure to complete course requirements because of personal illness or similar compelling, serious reason" and further provides that "an incomplete (INC) grade must be resolved within six 6) months or an incomplete grade will be recorded".

32. Additionally, the refuted rational of the selectively imposed non-established HMS MMSCI syllabus conditions including "March 14,2025 deadline" ,"interim meeting" and additional statistical work"  appear discriminatory and retaliatory in nature as similarly situated students in the HMS MMSCI academic program ,2024 to 2026 cohort who first met with their research mentors at the same time as the Plaintiff or even later, in October or November 2024, including one White student in the MMSCI program who first met with their "CI706: MMSCI Mentored Research" course research mentor in November 2024 and presented their initial "CI706: MMSCI Mentored Research" course research topic milestone approximately one week later, also in November 2024 ,one Brown student in the MMSCI program who did not present their initial first milestone research topics originally due in Fall (November) 2024 until Spring 2025, and all MMSCI students who received the required statistical feedback from their research biostatisticians, as a condition for receiving course credit in "CI706: MMSCI Mentored Research" course but upon information and belief were awarded credit by the Defendants but not a failing grade in "CI706: MMSCI Mentored Research" course to these similarly situated students described here in the MMSIC program. Defendants selectively imposed non-established formal HMS MMSCI syllabus conditions including "March 14,2025 deadline", "interim meeting" and "additional statistical work" on the Plaintiff as a condition to receive credit in "CI706: MMSCI Mentored Research" course, absent of any established MMSCI program and HMS Master's Student's Handbook policy and or "CI706: MMSCI Mentored Research" course syllabus.

33.Dean Johanna Gutlerner, further noted in her letter of notice of "requirement to withdraw effective immediately" to the Plaintiff on March 17,2025, in pertinent part that *"you have failed*

17

*to adhere to the updated remediation plan and further stated that "Notably, you did not have the required meeting by March 14, 2025"*, as the reason for "requirement to withdraw" of the Plaintiff from the HMS MMSCI program (Exhibit 9) .Despite the fact that there was not any *"required meeting by "March 14, 2025"*, and or "interim meeting" and additional statistical work" contained in the established formal HMS MMSCI program syllabus that governed and or governs all MMSCI students as a condition to receive credit in "CI706: MMSCI Mentored Research" course and also that the non-established formal HMS MMSCI *"March 14, 2025 deadline"* and or "interim meeting" and additional statistical work" was selectively imposed by Defendants on Plaintiff under threat of failure in "CI706: MMSCI Mentored Research" course and withdrawal from the HMS MMSCI program to repeat the presentation of the "CI706: MMSCI Mentored Research" course initial first milestone research topics that the Plaintiff had completed thesis research report on January 6,2025 under the primary mentorship of Doctor Lisa Bebell and also as the MMSCI student, Plaintiff's self, with the sole responsibility for conducting the "CI706: MMSCI Mentored Research" course research projects that the Plaintiff had deemed to proceed conducting research on but still required facilitation by a research mentor(Doctor Lisa Bebell) who refused to mentor the Plaintiff on feasible research projects of the Plaintiff's interest as required in the HMS MMSCI program syllabus of MMSCI students conducting research on feasible research topics. While Defendants did not impose such non HMS MMSCI program syllabus "March 14,2025 deadline", "interim meeting" and or additional statistical work" under threat of failure in "CI706: MMSCI Mentored Research" course on similarly situated students in the HMS MMSCI academic program ,2024 to 2026 cohort who first met their research mentors at the same time as the Plaintiff or even later, in October or November 2024 including one White student in the MMSCI program first met with their "CI706: MMSCI Mentored Research" course research mentor in November 2024 and presented their initial "CI706: MMSCI Mentored Research" course research topic milestone approximately one week later, also in November 2024 ,one Brown student in the MMSCI program who did not present their initial first milestone research topics originally due in Fall (November) 2024 until Spring 2025 as a condition to receive course credit in "CI706: MMSCI Mentored Research" course but upon information and belief, Defendants awarded credit in in "CI706: MMSCI Mentored Research" course but not a failing grade in "CI706: MMSCI Mentored Research" course to these similarly situated students in the MMSIC

18

program. Notably Defendants had never issued any other HM MMSCI 2024 to 2026 cohort student a "failing grade" in "CI706: MMSCI Mentored Research" course and or in such manner except to the Plaintiff despite prior completion of the "CI706: MMSCI Mentored Research" course by the Plaintiff under mentorship of Plaintiff's primary research mentor, Doctor s Lisa Bebell and Michael Monuteaux at all relevant times in effect.

34. No established formal MMSCI policy or HMS Masters Student's Handbook mentions that failure by an HMS MMSCI student and or Plaintiff to obtain a research mentorship meeting and or presentation facilitation from a research mentor which is out of a student's and or Plaintiff's control was grounds for failure in "CI706: MMSCI Mentored Research" course and or" requirement to withdraw" of that student from the MMSCI program. Plaintiff lacked unilateral control over Doctor Lisa Bebell's (research mentor's) provision of mentorship participation and or facilitation of a research mentorship meeting and or presentation facilitation and was not "required to withdraw" from the HMS MMSCI program and or be wrongfully issued a failing grade in by Defendants identified in Plaintiff's formal complaint of discrimination and bullying with Harvard.

35.Defendants were not in compliance with established formal HMS Master's Student's Handbook Policy that governs all students in the HMS MMSCI program and wrongfully issued Plaintiff a "failing grade" in "CI706: MMSCI Mentored Research" course and or "requirement" Plaintiff to "withdraw" and or "automatically withdraw" of an HMS MMSCI student and or Plaintiff from the HMS MMSCI program. Defendants deviated from the established formal HMS MMSCI Masters Student's Handbook and Defendants also failed to provide any factual HMS MMSCI Masters Student's Handbook based school policy-based policy permitting Associate Professor Finnian McCausland and Doctor Martina McGrath and Deans Rosalind Segal and Johanna Gutlerner to improperly issue  an MMSCI student and or Plaintiff a "failing grade" in "CI706: MMSCI Mentored Research" course  and "requirement to withdraw" of the Plaintiff from the MMSCI program. Defendants failed to state any  HMS Master's Student's Handbook Policy based reason for having denied the reconsideration of the Plaintiff's appeal of "Academic Probation Status" to the APRB and the wrongful "requirement to withdraw" to the APRB,SSCR as well as Dean Daley's notice to the Plaintiff about having *concurred"* with the adverse

academic actions against Plaintiff by Associate Professor Finnian McCausland and Doctor Martina McGrath and Deans Rosalind Segal and Johanna Gutlerner without ever hearing from the Plaintiff about the Plaintiff's wrongful "requirement to withdraw" from the MMSCI program by Defendants as described in this complaint, deviated from Defendants' stated original reason("repeated failures" and "failure to attend the "March 14,2025 deadline") of the Plaintiff's wrongful "requirement to withdraw" of the Plaintiff from the HMS MMSCI program and or is materially pretextual and not supported by and or the consistent application of the HMS MMSCI Master's Student's Handbook academic policies. Notably, Defendants failed to state any HMS MMSCI Master's Student's Handbook policy based specific "repeated failures and "failure to attend the "March 14,2025 deadline") warranting issuance of a failing grade in "CI706: MMSCI Mentored Research" course to Plaintiff and or "requirement to withdraw" of the Plaintiff from the HMS MMSCI program at that point in time (Spring 2025).

36.Plaintiff's academic performance especially in "CI700: Ethics and the IRB" course and "CI701: Clinical Data Science; Design and Analytics I" in summer 2024 and "CI708A Clinical Data Analytics 11" in Fall 2024,which Plaintiff ultimately passed) was adversely impacted by Defendants' unequal denial of remediation opportunities, selective imposition of non-established formal HMS MMSCI syllabus additional academic conditions including "Monitored Academic Status" and "Academic Probation Status" and "March 14,2025 deadline", denial of the HMS Master's Handbook policy 3.07.Procedures for Consideration of Academic Performance based right to appeal to the Plaintiff, denial of HMS MMSCI review of the Plaintiff's research poster and alternate mentorship and or equal opportunity conducting research on feasible research projects, the denial of Plaintiffs' request regarding 'Academic Probation Status" ,referral of the Plaintiff to the APRB for contacting Provost Glover for guidance. After Plaintiff raised academic concerns within the HMS program that were causing Plaintiff mental and emotional distress and impeding Plaintiffs ability to enjoy equal educational opportunities afforded to similarly situated MMSCI students by Defendants, with other Harvard institutional offices and or staff and after Plaintiff had filed a formal and an informal complaint of discrimination and bullying with Harvard OCC, Defendants constructively set Plaintiff on a path toward failure and withdrawal from the HMS MMSCI program. Defendants' retaliatory and discriminatory treatment of Plaintiff after the plaintiff reported discrimination had a chilling effect on Plaintiff's exercise of protected rights and

willingness to raise further academic concerns within the HMS MMSCI program that caused further Plaintiff mental and emotional distress.

37. Defendants likewise failed to provide any established MMMSCI and or HMS Master's Student's Handbook information authorizing selective imposition of non-established formal MMSCI syllabus academic conditions exclusively imposed on an MMSCI student and or the Plaintiff and or issuance of MMSCI students a "failing grade" in "CI706: MMSCI Mentored Research" course and or "requirement to withdraw" from the MMSCI program "effectively immediately" under non-established formal MMSCI syllabus academic conditions exclusively imposed on Plaintiff by Defendants. The formal MMSCI program syllabus and or MMMSCI and or HMS Masters Student's Handbook contained no requirement that Plaintiff and or any MMSCI student to secure a research mentorship presentation meeting by "March 14, 2025" for the "CI706: MMSCI Mentored Research" course as the "CI706: MMSCI Mentored Research" course  first milestone research meeting was due November 26, 2025(with MMSCI program leadership's provision of accommodation for MMSCI students who did not secure research mentorship meeting by November 26,2024 to complete it after November 2025). The next established MMSCI program milestone (study protocol) meeting was not due until May 2,2025. Additionally, no MMMSCI and or HMS Masters Student's Handbook stated that inability of MMSCI students to obtain research mentor participation and or facilitation constituted grounds for immediate issuance of a failing grade in "CI706: MMSCI Mentored Research" course and "requirement to withdraw" of a MMSCI student from the MMSCI program "effectively immediately".

38. The HMS Master's Student's Handbook policy on "Monitored Academic Status" and "Academic Probation Status" does not mention that MMSCI students should be improperly placed on "Academic Probation Status" for asking an academic question on eligibility criteria of a course to MMSCI program faculty and or after Plaintiff being denied remediation examination and yet Defendants provided remediation examinations to similarly situated students in the MMSCI program and then be given a condition that failure in one MMSCI course would lead to automatic withdrawal from the HMS MMSCI program neither does the HMS Master's Student's Handbook on 'requirement to withdraw" note that HMS MMSCI students should be selectively subjected to non-established formal HMS MMSCI program syllabus conditions and

or deadline under the threat of failure in a course and or "CI706: MMSCI Mentored Research" course and withdrawal from the HMS MMSC program despite being in similarly academic situations with other students in the MMSCI program and governed by the same HM Master's Student's Handbook.

39. The HMS Master's Student's Handbook under section 2.03 Grading and Examinations, under point 9, provides that "a student has only one opportunity to remediate an unsatisfactory or failing grade by repetition of a course (Exhibit 10). The same information was also noted in the February 27,2025 letter that Defendants sent the Plaintiff denying the Plaintiff's reconsideration for "Academic Probation Status"). The HMS Masters Student's Handbook under section 2.03 Grading and Examinations, under point 9, further provides that if a student fails to attend satisfactory or better grade upon repetition of the course, then the final grade will be unsatisfactory, and the student will be referred to the program director for consideration of the student's status in the master's program (Exhibit 11). Defendants denied the Plaintiff this right to retake the MMSCI "CI700: Ethics and the IRB" and "CI701: Clinical Data Science; Design and Analytics I" wrongful "requirement to "withdraw" of the Plaintiff from the HMS MMSCI program and improperly issued the Plaintiff a failing grade in "CI706: MMSCI Mentored Research" course despite completion of "CI706: MMSCI Mentored Research" course assignments by Plaintiff consistent with the "CI706: MMSCI Mentored Research" course and or MMSCI syllabus.

40. Additionally, the HMS Master's Student's Handbook policy does not state that MMSCI students should be "required to withdraw' because of a research mentor's refusal and or non-responsiveness of a research mentor to facilitate a research meeting and or for a research mentor's refusal to provide mentorship to an HMS MMSCI student and or on feasible research topics. Importantly, the HMS Master's Student's Handbook and or MMSCI program policy on mentored research does not provide that HMS MMSCI students are required to work with a specific research mentor and or research topics.

22

topics. Importantly, the HMS Master's Student's Handbook and or MMSCI program policy on mentored research does not provide that HMS MMSCI students are required to work with a specific research mentor and or research topics.

41.The HMS Masters Student's Handbook. 2.14. Credit for Mentored Research provides that all mentors may ensure an appropriate environment for research based on the individual student's needs and objectives (Exhibit 12).

42.On March 18, 2025,one day after Plaintiff had been improperly issued a "failing grade" in "CI706: MMSCI Mentored Research" course by Defendants ,despite completion of the "CI706: MMSCI Mentored Research" course first milestone research topics ,an improperly issued a "failing grade" used by Defendants as a reason for "requirement to withdraw" of Plaintiff from the HMS MMSCI program by Defendants, Doctor Bebell, the research mentor who supervised the Plaintiff's first milestone research topics sent a separate communication to the Plaintiff noting that *"I know the March 14th deadline has passed"* and Doctor Bebell further noted in her email to the Plaintiff that *" I'm thinking about you"*(Exhibit 130) . Acknowledging that the selectively imposed non-established formal HMS MMSCI program syllabus *"March 14,2025 deadline"* had already passed yet Doctor Lisa Bebell still failed to respond to the Plaintiff's earlier communication to her (Doctor Lisa Bebell) requesting to provide required mentor facilitation of the representation of previously completed "CI706: MMSCI Mentored Research" course first milestone research topics by the non-established formal HMS MMSCI program , "March 14,2025 deadline" that was solely based on selectively imposed on the Plaintiff under threat of failure in "CI706: MMSCI Mentored Research" course and withdrawal from the HMS MMSCI program but not on similarly situated students in the HMS MMSCI program described above.

43.On March 18,2024 Plaintiff reached out and or requested to meet with Harvard Medical School Dean George Q. Daley ("Dean Daley"),(Exhibit 14).However, Karin Cowles, Executive Assistant to the Dean (Dean Daley) in response to Plaintiff noted that Dean Daley "did not have availability" and referred Plaintiff back to Dean Segal(150) who had took adverse action against Plaintiff after Plaintiff identified her among others in Plaintiff's formal complaint of discrimination and bullying with Harvard.

44. On April 3,2025, the Standing Committee on Rights and Responsibilities (SCRR) Appellate Committee Coordinator, Ms. Keri Godin("Ms.Godin"), notified Plaintiff of the Co-chair of the SCRR  and the Dean for Faculty Affairs, Dean Kristin Bittinger's("Dean Bittinger" decision of the Plaintiff's second appeal of reconsideration of "requirement to withdraw" from the MMSCI program to the SCRR which denied Plaintiff's appeal and stated that Plaintiff had *not demonstrated either: (1) that a procedural error occurred which may have changed the outcome of the decision; or (2) that there existed substantive and relevant new information, unavailable at the time of the original decision, that may have altered the outcome"* and Dean Bittinger further stated *that . "At this juncture and in light of this determination, you have exhausted the appeals available to you."* (Exhibit 16). However, this statement by Dean Kristin Bittinger reflects non factually unsupported conclusion, as the record of events in this complaint reflects both significant procedural irregularities by the APRB and or the SCCR and the presence of relevant information including that no such selectively applied "March 14,2025 deadline" and or "additional statistical work" and or "interim meeting" existed in the HMS MMSCI program and or was required at the first milestone stage to receive a credit in "CI706: MMSCI Mentored Research " all of which was not considered by SCCR but over looked by the SCCR.(Exhibit 17).

45. Additionally, before Plaintiff could pursue a formal appeal with the HMS Dean, Dean Daley, the SCCR co-chair Dean Kristin Bittinger's conclusion that *"At this juncture and in light of this determination, you have exhausted the appeals available to you"* ,which contradicts the HMS Masters Handbook section 3.04 Appellate Review of a Request to Withdraw which explicitly provides that a *"student required to withdraw from the HMS may request review of the decision of the chair of the SCRR or the Appeals panel by the Dean of the Faculty of Medicine. The Dean of the Faculty of Medicine must receive any such request for review within five business days of the date of the decision of the Chair of the SCRR or the Appeals Panel".* (Exhibit 18) Defendant, Harvard Medical School, through the SCCR co-chair Dean Kristin Bittinger, denied the Plaintiff the Plaintiff's established procedural rights stated in point in the HMS Master's Handbook, section 3.04, and prevented the Plaintiff from exercising that right to appeal decisions of such adverse academic actions against the Plaintiff by the

Defendants. Plaintiff has been harmed because Plaintiff lost a meaningful opportunity to formally challenge the decision by the APRB and SCCR to the Dean of Harvard Medical School, Dean Daley. These circumstances amplified the coercive impact of the non-established formal HMS MMSCI program syllabus conditions on the Plaintiff that carried selective and or disproportionate consequences on the Plaintiff within the MMSCI program by the Defendants.

46. The HSM Masters Handbook Section.3.03; states that students may be referred to the APRB (Exhibit I) by the Office for Graduate Education or by program directors and or in consultation with program directors triggering review at a APRB meeting and limits the APRB to four voting members including co-chairs and program directors. In this case, the same APRB Co-Chairs including Deans Rosalind Segal and Johanna Gutlerner and MMSCI program Co-Director including Associate Professor Finnin McCausland and Doctor Martina McGrath who referred the plaintiff to the APRB that they themselves govern and yet, they are these same MMSCI program leadership and Deans who also served as APRB adjudicators , each holding significant influence over the plaintiff's academic status and or standing within the MMSCI program while also being the subjects of the Plaintiff's prior informal and formal complaints of discrimination and bullying and or academic concerns that the Plaintiff raised with Harvard administrative authorizes that impacted and or were impacting the Plaintiff's academic progress and performance within the MMSIC program. The same APRB Co-Chairs including Deans Rosalind Segal and Johanna Gutlerner and MMSCI program Co-Director including Associate Professor McCausland and Doctor McGrath had also previously voted to place the Plaintiff on "Monitored Academic Status" and "Academic Probation", denied the Plaintiff's appeal for reconsideration of the "Academic Probation Status", "", denied the Plaintiff's appeal the "Academic Probation Status", and denied the Plaintiff's appeal for reconsideration of the "requirement to withdraw" from the MMSCI program.

47. The HMS Master's Student's Handbook under Section 4.05 ,General Principles for Consideration of Student Performance and Conduct, provides that "at the appellate level, a student may object for good cause, such as evidence of conflict of interest or bias, to the service of any member of a reviewing body" and that "the Chair of the APRB or the SCRR may, if warranted, remove and replace a member of a reviewing body."(Exhibit 19).The Master's

Student's Handbook further requires that its procedures "be implemented with fairness, objectivity, and thoroughness." Permitting individuals who were the subjects of the Plaintiff's complaints of discrimination and bullying to adjudicate the Plaintiff's academic standing and or fate directly violates these principles and constitutes a procedural error under the Handbook's own appellate framework (Section 3.04), thus HMS MMSCI program leaders and or deans recognize the impact of such conflicts of interest and yet as respondents in Plaintiff's formal complaint of discrimination and bullying with Harvard, proceeded and referred Plaintiff to the APRB and or voted for the wrongful "requirement to withdraw" of the Plaintiff from the HMS MMSCI program by the same APRB that they themselves co-chair and all serve as voting members and or referral contacts of students to the same APRB.

48. Following Plaintiff's wrongful" requirement to withdraw' from the HMS MMSCI program on March 17,2025 by Defendants, the Plaintiff independently pursued  and exhausting all internal remedies with  Harvard Medical School and or Harvard University's internal grievance procedures from Summer 2024 until Fall 2025 ,when the Harvard Medical School Staff Title IX officer, Ms. Keri Godin who among other HMS Title IX officers, the Plaintiff had filed a formal complaint of discrimination and bullying with on March 3,2025 , issued the Plaintiff a "cease and desist" email on October 8,2025 and noted that the Plaintiff should "only contact the Harvard Office for Community Support, Non-Discrimination, Rights and Responsibilities (CSNDR)" and may file a complaint of "alleged discrimination" in a Harvard program with the renamed Harvard Office for Community Support, Non-Discrimination, Rights and Responsibilities (CSNDR)(Exhibit 20), formerly named Harvard Office for Community Conduct (OCC), the designated Harvard office responsible for receiving and or addressing Title IX and discrimination complaints within Harvard, and that if not the Plaintiff would be referred to institutional authorities including the Harvard University Police Department (HUPD) which effectively restricted the Plaintiff's ability to communicate with Harvard Medical School and or Harvard University officials to seek redress regarding the wrongful "requirement to withdraw"  of the Plaintiff from the HMS MMSCI program. (Exhibit 21).

48. Plaintiff relied on this information from Ms. Keri Godin, and Plaintiff submitted a complaint of discrimination to the Harvard CSNDR (formerly Harvard Office for Community Conduct (OCC) on October 22,2024.

49. On October 23,2024, the Harvard CSNDR subsequently declined to exercise jurisdiction over the Plaintiff's formal complaint of discrimination with Harvard University in relevant part stated that *"As the below concerns are beyond the scope of CSNDR"*, (Exhibit 22) notwithstanding that the Harvard University's CSNDR office publicly available resources and policies indicate that the Harvard CSNDR receives and investigates among others discrimination complaints within the Harvard's programs. Notably, shortly before the Plaintiff was wrongfully 'required to withdraw" from the HMS MMSCI program, the Plaintiff had previously submitted both informal complaint of discrimination on February 28,2025 and formal complaint of discrimination with the formerly Harvard Office for Community Conduct (OCC) and now renamed as  March 3,2025 both complaints filed by the Plaintiff which the Harvard Office for Community Conduct (OCC) received but it failed to investigate provide meaningful redress to Plaintiff on Plaintiff's either complaints of discrimination and bullying with Harvard University, and the Harvard CSNDR likewise did not investigate the Plaintiff's subsequent complaint of discrimination filed on October 22, 2025 as required per the Harvard OCC and or Harvard CSNDR policies and guidelines.

50. Ms. Godin who suggested that the Plaintiff may file a complaint with was aware that the Harvard CSNDR had declined jurisdiction, as the Plaintiff had included Ms.Godin in correspondence with the Harvard CSNDR(Exhibit 22). Ms.Godin nevertheless did not provide further assistance or guidance to the Plaintiff following the Harvard CSNDR's denial of jurisdiction over the Plaintiff's formal complaint of discrimination to the Harvard CSNDR.

51. Ms.Keri Godin's improperly issued a "cease and desist" email to the Plaintiff on October 8,2025,reflects further retaliatory conduct of the Defendants against Plaintiff for exercising their right for protected activity of reporting Defendants' discriminatory and retaliatory conduct against Plaintiff within the HMS MMSCI program.

51. After the "cease and desist" email from Ms.Keri Godin, between on November 12,2025,Plaint iff initially requested the Plaintiff's academic documents from the Harvard University CSNDR(E xhibit 23) but Plaintiff did not receive a response from the Harvard University CSNDR about it. on November 15,2025, Plaintiff subsequently directly contacted about Plaintiff's request with H MS for Plaintiff's academic documents and still received no reply from the Harvard CSNDR. Ha

rvard Medical School's Dean George Q. Daley ,directly the following day and Defendant,Harvard Medical School's employees among others : Dean Rosalind Segal, the HMS Registrar, Isabel Teraso and or HMS Registrar's Office, HMS Title IX officer Ms. Keri Godin; Harvard CSNDR; Office of the Dean of Harvard Medical School; Harvard Office of the Provost and the HMS MM SCI program leadership including Associate Professor Finnian McCausland and Doctor Martina McGrath and the HMS MMSCI program administrator, Ms. Molly Gallagher.(Exhibit 24).

52.Based on the HMS Title IX Officer, Ms.Keri Godin's "cease and desist" email communicatio n to the Plaintiff to only contact specific office Harvard CSNDR office and not any other Harvar d University community member and or personnel, the Plaintiff did not make any further contact with Harvard institutional officer and or staff, nor did Plaintiff seek additional redress regarding t he wrongful "requirement to withdraw' from the HMS MMSCI program through established Har vard's internal grievance channels. The only communication the Plaintiff made to Harvard Medi cal School and or Harvard University following Ms.Keri Godin's improperly issued "cease and d esist" email, happened when the plaintiff contacted the Harvard CSNDR Office and requested th e Plaintiff's academic documents in the HMS MMSCI program and stated an urgent need for the se academic documents, documents to which the plaintiff is entitled under United States of Amer ica federal aid under the Family Educational Rights and Privacy Act (FERPA) 1974 federal law, which the Harvard Medical School and or Harvard University, as a recipient of FERPA 1974,fed eral law is obligated to provide to the Plaintiff. Nonetheless, Defendant(s) referred Plaintiff to the Harvard University Police Department (HUPD).

53.On November 17,2025,the Harvard University Police Department (HUPD) Officer, Ryan Carvalho, who yet improperly issued Plaintiff a second "cease and desist" email and noted that any attempt by the Plaintiff to contact any Harvard University official would result in a "felony charge" with "stalking" and or a "fine of $ 1,000".(Exhibit 24) .The Harvard University Police Department (HUPD) Officer, Mr. Ryan Carvalho further informed the Plaintiff to not initiate communication with any Harvard University and or Harvard Medical School official and instead only respond to outreach formally initiated by Harvard University officials. Although Harvard Medical School and Harvard University and or Harvard University Police Department (HUPD) Officer, Mr. Ryan Carvalho did not identify an individual who referred the Plaintiff to the Harvard University Police Department (HUPD) Officer, Mr. Ryan Carvalho or any factual basis

28

for which the plaintiff was referred to the Harvard University Police Department (HUPD) Officer, Mr. Ryan Carvalho warranting a "cease and desist" letter, following the plaintiff's request for the Plaintiff's academic documents with the HMS MMSCI program. Plaintiff had previously contacted (HUPD), through HUPD officer, O'Leary, Kevin S. On March 5,2025 and noted that Plaintiff felt intimidated in Plaintiff's academic program and that it was causing Plaintiff fear. Plaintiff further expressed to Officer, O'Leary, Kevin S that unable to progress with my academic research work because of circumstances beyond Plaintiff's control as a student and therefore sought support from HUPD officer, Kevin S regarding escalating discriminatory and retaliatory conduct by Defendants that caused Plaintiff significant emotional and mental distress and impacted Plaintiff's academic performance and progress within the HMS MMSCI program. HUPD officer, O'Leary, Kevin S(Exhibit 25), referred Plaintiff to the HMS Director of Administration and Student Affairs Lincoln, Kimberly T who works closely with Dean Gutlerner and Plaintiff did not get any meaningful support as Ms. Kimberly T further mentioned to Plaintiff on March 5,2025, in excerption that *"I cannot alter any academic requirements established by the program."(Exhibit 26)*.Although Plaintiff did not ask Ms. Kimberly T to *"alter any academic requirements established by the program"* and the fact that selectively arbitrary non-established formal MMSCI program conditions set up and enforced by respondents to Plaintiff's formal complaint of discrimination and retaliation with Harvard OCC do not constitute any standard legitimate " established *academic requirements"* in the standard and established MMSCI program syllabus that governs all MMSCI students, reflects systematic deliberate failure of the Defendants to protect Plaintiff against Defendants' discriminatory and retaliatory conduct within the MMSCI program.

54.In light of the failure of Harvard Medical School and or Harvard University to address the discriminatory and retaliatory treatment and educational practice and adverse academic actions ,taken against the Plaintiff including among others the improperly issued "failing grade" in "CI706: MMSCI Mentored Research" course and the notice of wrongful "requirement to withdraw" issued to the Plaintiff by Defendants named in this complaint, Plaintiff sought support and redress from Harvard University officials and faculty and or Harvard University board members and also common channels for raising grievances including external organizations and external individuals, with contacting Harvard University administration and or

29

the Harvard University's President, Alan Garber, on the Plaintiff's behalf for a redress and or reconsideration of the selective improperly issued failing grade in CI706: MMSCI Mentored Research course and the wrongful "requirement to withdraw" of the Plaintiff from the HMS MMSCI program by Defendants which was not in accordance with any published and or established applicable HMS MMSCI and or HMS Master's handbook policies as the Defendants cited the improperly issued "failing grade" in "CI706: MMSCI Mentored Research" course as a basis for the Defendants' notice of wrongful "requirement to withdraw" of Plaintiff from the MMSCI program. No other student in the HMS MMSCI program was issued a failing grade in any MMSCI course and or specifically, the "CI706: MMSCI Mentored Research" course in this manner by the Defendants and all students in the MMSCI 2024 to 2026 cohort of the Plaintiff progressed in their academics and or the HMS MMSCI program and will graduate in weeks in May 2026. As the Plaintiffs' cohort approaches graduation, the Plaintiff has suffered ongoing and significant emotional distress and trauma and is reminded daily of the wrongful "requirement to withdraw" from the HMS MMSCI program.

54. Defendants characterized Plaintiff's good faith efforts and protected activity including in articulating the Plaintiff's experiences of discriminatory and retaliatory conduct within the HMS MMSCI program and the resulting adverse action of wrongful "requirement to withdraw" from the HMS MMSCI program by Defendants, opposing the Defendants' unlawful discriminatory and retaliatory conduct and the adverse action of the "requirement to withdraw" of the Plaintiff from the HMS MMSCI program, and the Plaintiff's efforts to seek redress through the Harvard Medical School's and or Harvard University's internal appellate and or grievance procedures from summer 2024 through Fall (October) 2025,which proved futile and the Plaintiff's subsequent pursuit of alternative external avenues for redress included communications that also engaged Harvard University staff and or officials directly, as "unprofessional conduct," "harassing", "defamatory", or "erratic, behavior" by Defendants appear to be retaliatory in nature and unsupported by any factual basis and reflects further attempt by Defendants to avoid accountability for the Defendants' unlawful discriminatory and retaliatory conduct and adverse actions against the Plaintiff within the HMS MMSCI program as, recipients of the United States federal aid and therefore obligated to comply with the Title VI of the Civil Rights Act of 1964, 42 U. S. C. § 2000d) that prohibits recipients of the United States federal aid from discrimination based on race, color, or national

origin in educational programs receiving federal funding and also prohibits intimidating, threatening, coercing, or retaliating against any person because they made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing; or opposed an unlawful educational practice or policy by any program or activity receiving federal financial assistance as well as the Title IX (20 U.S.C. § 1681),which provides that all persons in the United States have the same right to make and enforce contracts, sue, and enjoy equal benefits of the law.

55. Importantly, Plaintiff's questioning of Defendants' selective inconsistency in the application of the HMS Master's Student Handbook policies and procedures and or deviations from the established HMS MMSCI syllabus and or HMS Master's Student Handbook policies and procedures by Defendants does not constitute "argumentative behavior" as alleged by the Defendants because, Defendants must adhere to its own policies and procedures set forth in the Harvard University's NDAB official policies against discrimination, bullying and retaliation and apply its Harvard Medical School's established HMS Master's Student's Handbook policies and procedures, in effect at all relevant times must therefore be enforced uniformly and consistently to all HMS MMSCI students by Defendants.

56. Plaintiff subsequently retained legal counsel who sent Harvard University, a settlement demand letter, demanding the Plaintiff's immediate reinstatement into the MMSCI program in an ongoing(current) Spring 2026 semester leading to graduation in May 2026,on about February 10,2026 and initially provided ten (10) days to Harvard to respond. Plaintiff's counsel informed the Plaintiff that counsel for Harvard University responded and had requested additional time to respond to the demand letter from the Plaintiff's counsel, and that Plaintiff's counsel granted an extension establishing a response deadline of March 10, 2026.(Exhibit 26) Harvard University responded on March 10, 2026, denied all allegations set forth in the demand letter.(Exhibit 27) On April 13,2026, the Plaintiff's counsel informed the Plaintiff that the counsel was experiencing a health issue and would follow up with the Plaintiff; however, no further communication was received from counsel's office.(Exhibit 28).

57. Additionally, because Plaintiff is not a trained attorney, had no prior experience preparing or filing a legal action, and was required to organize and analyze a complex sequence of academic, administrative, and retaliatory events underlying this complaint, Plaintiff acted diligently in

31

preparing this action within the earliest reasonably possible time. Following April 13, 2024, after plaintiff was informed of counsel's health condition and resulting limitations, plaintiff spent several weeks compiling relevant records, communications, policies, and factual allegations necessary to present the claims accurately and coherently, particularly Under these circumstances, Plaintiff did not unreasonably delay in filing this action and instead proceeded as promptly as reasonably practicable given the complexity of the matter and Plaintiff's lack of legal training or prior litigation experience and inability to secure an alternate counsel in light of the health of the Plaintiff's counsel, thereby necessitating the filing of this action by the Plaintiff pro se.

58. Defendants' continued enforcement of the wrongful "requirement to withdraw" of the Plaintiff from the HMS MMSCI program and the adverse actions of the Defendants against the Plaintiff including denying the Plaintiff equal access to educational benefits is unlawful and interfered with Plaintiff's right to make and enforce a contractual relationship free from racial discrimination because the Defendants' retaliatory and discriminatory conduct and adverse actions against the Plaintiff within the HMS MMSCI program and to the present violate the Title VI of the Civil Rights Act of 1964, 42 U. S. C. § 2000d) and Title IX (20 U.S.C. § 1681),as well as the Harvard Medical school's established handbook policies set forth in its Master's Student's Handbook and the Harvard University's  CSNDR NDAB official policies against discrimination, bullying and retaliation policies. Additionally ,because of the Defendants' adverse action in wrongful "requirement to withdraw" of the Plaintiff from the MMSCI program, the Plaintiff has been excluded from equal educational opportunities in the MMSCI program and has suffered and or continues to suffer irreparable educational and professional and emotional harm and the Plaintiff has also lost the educational funding expressly conditioned on continued enrollment in the HMS MMSCI program, maintenance of good academic standing in the MMSCI program, and receipt of the equal treatment guaranteed by Harvard Medical School and HMS MMSCI program  and or Harvard University. At the time of the Plaintiff's wrongful "requirement to withdraw" from the MMSCI program by Defendants, the Plaintiff remained on course to graduate from the HMS MMSCI program in May 2026. Plaintiff faces an imminent and irreparable risk of missing graduation, which is scheduled to occur within weeks, in May 2026 if prompt relief is not granted by this Court, the Plaintiff has suffered and will continue to suffer

imminent and irreparable harm that cannot be remedied by monetary damages, including the loss of educational opportunities and the inability to graduate with the Plaintiff's original MMSCI 2024 to 2026 cohort.

59. Defendants were aware, or should have been aware, that their adverse action of the wrongfully issued "failing grade" in "CI706: MMSCI Mentored Research" course and or the wrongful "requirement to withdraw" of Plaintiff from the HMS MMSCI program occurred by Defendants while the HMS MMSCI program 2024 to 2025 and 2025 to 2026 academic year and or semesters were and are ongoing and at a time when Plaintiff's graduation from the HMS MMSCI program in May 2026 was and or is imminent. Despite this knowledge, Defendants excluded Plaintiff from continuing the HMS MMSCI program educational opportunities necessary to complete the HMS MMSCI program and graduate with the HMS MMSCI program 2024 to 2025 cohort students, a 2024 to 2025 cohort Plaintiff was enrolled in the MMSCI program.

60. Plaintiff has also lost educational funding and financial assistance as a direct consequence of the wrongfully issued "failing grade" in "CI706: MMSCI Mentored Research" course and or "requirement to withdraw" of the Plaintiff from the HMS MMSCI program by Defendant, including funding conditioned on enrollment and anticipated graduation in the HMS MMSCI program. Plaintiff has experienced and continues to experience significant emotional distress, including anxiety, stress, and humiliation associated with being removed from the HMS MMSCI program and separated from peers at the HMS, particularly in the period leading up to graduation in May 2026 by Defendants. Additionally, the wrongfully issued "failing grade" in "CI706: MMSCI Mentored Research" course and or "requirement to withdraw" of the Plaintiff from the HMS MMSCI program by Defendants has resulted and or will result in lasting academic and reputational consequences, including disruption of educational progress and potential impact on future educational and career opportunities.

61. Plaintiff made good-faith efforts to resolve this matter through established Harvard University and or Harvard Medical School formal administrative remedies including direct engagement with Harvard University and or Harvard Medical School and through formal

demand for settlement communicated by Plaintiff's counsel. However, Defendants denied and refused efforts to remedy the wrongful "requirement to withdraw" from the HMS MMSCI program by Defendants.

62. Plaintiff respectfully requests that this Court grants an ex parte emergency temporary restraining order and injunctive relief and emergency court hearing enjoining the Defendants from implementing or enforcing the wrongful "requirement to withdraw" from the HMS MMSCI program and prohibiting Defendants from engaging in any retaliatory actions against Plaintiff and taking any action that would prevent Plaintiff from graduating with their original HMS MMSCI class 2024 to 2026 cohort in end of May 2026(less than two weeks from the date of filing of this complaint) ; ordering the Plaintiff's immediate reinstatement to the HMS MMSCI program; and requiring Defendants to provide a reasonable and expedited pathway for the Plaintiff to complete all missed academic coursework resulting from Defendants' actions; an order ensuring that Defendants restores Plaintiff's access to all and or full required academic activities and permit Plaintiff to graduate and participate fully in the convocation ceremonies with Plaintiff's original class of HMS MMSCI 2024 to 2026 cohort in May 2026, with whom the Plaintiff would have graduated but for the Defendants' discriminatory, retaliatory, and adverse actions among others the wrongful "requirement to withdraw" of the Plaintiff from the HMS MMSCI program by Defendants and to provide other relief that this court deems proper and sufficient to remedy the harm caused  to the Plaintiff by the Defendants and or Defendant's actions as Plaintiff was on track to graduate in May 2026 prior to Defendants' adverse academic actions against Plaintiff including wrongfully issued "failing grade" in "CI706: MMSCI Mentored Research" course  and wrongful "requirement to withdraw" of the Plaintiff from the HMS MMSCI program at Harvard Medical School.

63.Defendants were aware and or should have been aware that the MMSCI courses were or and are ongoing in the 2024 to 2025 as well 2025 to 2026 academic year, and that MMSCI program 2024 to 2026 cohort graduation was imminent in May 2026. Defendants were also aware and or should have also been aware that Defendants' selectively excluded Plaintiff from equal educational opportunities within the MMSCI program Despite the Plaintiff's repeated good-faith attempts to resolve the wrongful "requirement to withdraw" from the MMSCI program

34

informally, including the filing of a complaint with the Harvard Office for Community Support, Non-Discrimination, Rights and Responsibilities (CSNDR), on October 22,2025 and demand letter of settlement correspondence with Harvard University through a counsel, the Defendants declined to engage in a meaningful resolution and or pursue settlement or corrective action with Plaintiff. Under these circumstances, Plaintiff respectfully requests that this Court enjoins Defendants from adverse actions against Plaintiff to prevent the Plaintiff's reinstatement into the HMS MMSCI program and timely ability to graduate scheduled with Plaintiff's original HMS MMSCI program 2024 to 2026 cohort in less than two weeks from the date of filing of this complaint, and in end of May 2026. Absent immediate temporary restraining order and injunctive relief, and emergency hearing ,Plaintiff will continue to suffer further irreparable harm that cannot be remedied by monetary damages, including the loss of timely graduation with Plaintiff's original class of HMS MMSCI 2024 to 2026 cohort, which is scheduled to occur in end of May 2026,within less than two weeks from now and will result in further loss of educational and professional opportunities.

## B. JURISDICTION

64.This Court has personal jurisdiction over Harvard Medical School because it is based in and or operates in Boston, Massachusetts, USA.Venue in the District of Massachusetts is proper under 28 U.S.C. § 1391 (federal question) because the events and omissions giving rise to the claims occurred in Harvard Medical School, in the District of Massachusetts and venue is therefore proper under 28 U.S.C. § 1391(b)(2), and Harvard Medical School maintains its principal place of business in Boston, Massachusetts and conducts substantial operations in Boston, Massachusetts. Defendants named herein conduct business at the Harvard Medical School in Boston, Massachusetts.

65.The United States Department of Education's (ED) Office for Civil Rights (OCR) prohibits discrimination in its relevant parts based on race, color, and national origin in programs and

35

activities receiving federal financial assistance and enforces the Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d),(Exhibit 29) provides that no person shall in its relevant parts, based on race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving the United States of America federal financial assistance and also prohibits intimidating, threatening, coercing, or retaliating against any person because they made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing; or opposed an unlawful educational practice or policy by any program or activity receiving federal financial assistance while Title IX (20 U.S.C. § 1681), which guarantees all persons in the United States the same right to make and enforce contracts, sue, and enjoy equal benefits of the law and prohibit race discrimination in federally protected contexts.

66. Harvard Medical School is within the jurisdiction of the state of Massachusetts, United States of America and receiving federal financial assistance in its programs and activities and is therefore mandated to comply with the Title VI of the Civil Rights Act of 1964, (42 U.S.C. § 2000d) which prohibits discrimination based on race, color, or national origin and also prohibits retaliation against persons for opposing discriminatory practices or participating in related complaints regardless of race as well as Title IX (20 U.S.C. § 1681) ,which guarantees all persons in the United States the same right to make and enforce contracts, sue, and enjoy equal benefits of the law.

67.This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because the claims arise under federal law, including Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, and Title IX (20 U.S.C. § 1681), both of which prohibit race discrimination in federally protected contexts.

## C. PARTIES

68.Plaintiff Jane Doe is a Black and adult student, a resident of Massachusetts, United Sates of America, and was formerly enrolled as a student in the Harvard Medical School Master of Medical Sciences in Clinical Investigation("MMSCI") academic program at Harvard Medical School, located in Boston, Massachusetts in 2024 to 2026 cohort until the Plaintiff's wrongful

located in Boston, Massachusetts in 2024 to 2026 cohort until the Plaintiff's wrongful "requirement to withdraw" from the MMSCI program by Defendants including on May 17,2025 by Defendants including Deans Johanna Gutlerner and Rosalind Segal and Associate Professor McCausland and Doctor Martina McGrath and Doctor Martina McGrath, fourteen (14) days after Plaintiff had named them (Defendants) in a formal complaint of discrimination and bullying that Plaintiff filed with the Harvard University Office for Community Conduct (OCC) that required a formal investigation under the Non-Discrimination and Anti-bullying ("NDAB") policies. Plaintiff was a student of Master of Medical Sciences in Clinical Investigation ("MMSCI") of the 2024 to 2026 academic cohort expected to graduate in May 2026, and at all relevant times had completed all program requirements up to the time of the administrative withdrawal on March 17,2025 and was on track to graduate in May 2026.

69.Plaintiff was denied equal educational opportunities afforded to other students in the HMS MMSCI academic program and was wrongfully "required to withdraw" from the (MMSCI) academic program by Defendants preventing completion of remaining coursework and disrupting academic progress in the HMS MMSCI program and the Plaintiff faces an imminent and irreparable risk of missing graduation with the Plaintiff's original MMSCI cohort of 2024 to 2026, which is scheduled to occur within weeks from now,(end of May 2026) if prompt relief is not granted by this Court.

## D. DEFENDANTS

70.Harvard Medical School of Harvard University is subject to Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d), as a recipient of the United States of America, federal financial aid and is therefore subject to Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d) which prohibits discrimination in relevant part based on race and also prohibits retaliation for opposing discriminatory practices or participating in related complaints regardless of race ,as well as the Title IX (20 U.S.C. § 1681) which guarantees all persons in the United States the same right to make and enforce contracts, sue, and enjoy equal benefits of the law.

71. At all relevant times, Harvard Medical School of Harvard University, acted through its co-Defendants among others the Harvard Medical School administrators, faculty, employees and or

71. At all relevant times, Harvard Medical School of Harvard University, acted through its co-Defendants among others the Harvard Medical School administrators, faculty, employees and or the Harvard Medical School Master of Medical Sciences in Clinical Investigation("MMSCI") program leadership and Deans including,

72. Associate Professor Finnian McCausland is named in his official capacity was at all material times the Co-Director, of the Master of Medical Sciences in Clinical Investigation (MMSCI) and voting member of the Harvard Medical School Academic Progress and Review Board (APRB). In this capacity, he was responsible for the policies and actions overseeing the HMS MMSCI program operations, academic course implementation, and students research projects coordination and referring academic matters concerning MMSCI students to the APRB for review, implementation and determination of academic sanctions, a voting member in the APRB's review, determination, and implementation of academic sanctions and in the appellate review of HMS MMSCI student appeals to the APRB concerning imposed academic sanctions where appropriate and acted within the scope of employment with Harvard Medical School and acted within the scope of employment with Harvard Medical School.

73. Doctor Martina McGrath is named in her official capacity Co-Director of the Master of Medical Sciences in Clinical Investigation (MMSCI) and voting member of the Harvard Medical School, Academic Progress and Review Board (APRB). In this capacity, she was responsible for the policies and actions overseeing the HMS MMSCI program operations, academic course implementation, and students research projects coordination and referring academic matters concerning MMSCI students to the APRB for review, implementation and determination of academic sanctions, a voting member in the APRB's review, determination, and implementation of academic sanctions and in the appellate review of HMS MMSCI student appeals to the APRB concerning imposed academic sanctions where appropriate and acted within the scope of employment with Harvard Medical School and acted within the scope of employment with Harvard Medical School.

74. Dean Rosalind Segal is named in her official capacity was at all material times the Harvard Medical School Dean for Graduate Education and Co-Chair of the of the Harvard Medical School, Academic Progress and Review Board (APRB). Dean Segal was responsible for the

38

policies and actions of overseeing the HMS Master's program, referral and or imposition of students to the APRB for review, determination, and implementation of academic sanctions, a voting member in the APRB's review, determination, and implementation of academic sanctions and in the appellate review of HMS MMSCI student appeals to the APRB concerning imposed academic sanctions where appropriate and acted within the scope of employment with Harvard Medical School and acted within the scope of employment with Harvard Medical School.

75. Associate Dean Johanna Gutlerner is named in her official capacity was at all material times the Senior Associate Dean for Graduate Education and Co-Chair of the Harvard Medical School Academic Progress and Review Board (APRB). In this capacity, Dean Gutlerner was responsible for the policies and actions of overseeing the HMS Master's program, referral and or imposition of students to the APRB for review, determination, and implementation of academic sanctions, a voting member in the APRB's review, determination, and implementation of academic sanctions and in the appellate review of HMS MMSCI student appeals to the APRB concerning imposed academic sanctions where appropriate, and acted within the scope of employment with Harvard Medical School.

76. Associate Dean Johanna Gutlerner referred Plaintiff to the APRB that she(Dean Johanna Gutlerner) and Dean Segal co-chair for consideration of Plaintiff by APRB for "Academic Probation Status" in Fall 2024 after Plaintiff questioned eligibility criteria for course remediation examination and further referred Plaintiff to APRB for consideration of Plaintiff by APRB for "withdrawal" from the HMS MMSCI program in Fall 2024 after Plaintiff contacted Harvard Provost Robin Glover for guidance. This was the initial attempt by Deans Johanna Gutlerner and Rosalind Segal and Associate Professor McCausland and Doctor Martina McGrath and Doctor Martina McGrath to wrongfully "withdraw" Plaintiff from the HMS MMSCI program.

77. Dean Johanna Gutlerner also sent Plaintiff the letters including "Academic Probation Status", "Denial" and or "Updated Academic Probation Status" of reconsideration of the "Academic Probation Status" from the HMS MMSCI program and "Requirement to Withdraw" from the HMS MMSCI program and "Denial" of reconsideration for "Requirement to Withdraw" from the MMSCI program on behalf of the APRB that she (Dean Johanna Gutlerner) and Dean Segal co-chair.

E. FACTUAL ALLEGATIONS.

**Unequal Treatment in the Granting of Course Remediation Examinations by Defendants: Plaintiff Was Denied Remediation Examination While Similarly Situated Students in the HMS MMSCI Program Were Subsequently Granted Remediation Examinations by the HMS MMSCI Program Leadership.**

78. Plaintiff was a student enrolled in the Master of Medical Sciences in Clinical Investigation ("MMSCI") of the 2024–2026 cohort in the 2024 to 2025 academic year until Spring 2025 semester.

79. Defendants improperly issued Plaintiff a failing grade in "CI706: MMSCI Mentored Research" course wrongfully "required" Plaintiff to "withdraw" from the HMS MMSCI program.

80. The MMSCI program requires students to achieve at least 80% in course assignments and at least 80% on the course examination.

81. On July 12,2024 (summer 2024 semester), the MMSCI cohort of 2024 to 2026 including the Plaintiff took the "CI700: Ethics and the IRB CI700" course examination at the Harvard School of Dental Medicine (HSDM), Goldenson Building, venue for the "CI700: Ethics and the IRB" course quiz final examination. Plaintiff met the MMSCI program's 80% assignment pass mark in "CI700: Ethics and the IRB" course overall assignments for a remediation examination in the "CI700: Ethics and the IRB" course but received a score of 20/30 timed quiz final examination in "CI700: Ethics and the IRB" course, falling four points short of the required 24 out of 30 timed quiz final examination in "CI700: Ethics and the IRB" course pass mark. The Plaintiff consulted with the "CI700: Ethics and the IRB" course teaching assistant, Mr. Shayan Hashemi.

about their grade 20 out of 30 in the timed quiz final examination in "CI700: Ethics and the IRB" course and further asked Mr. Hashemi of any opportunities for a make-up examination "CI700: Ethics and the IRB" quiz examination. Mr Hashemi, advised that the "CI700: Ethics and the IRB" course remediation examinations are available for students in the MMSCI program who may not pass a final course examination.Mr. Hashemi further advised the Plaintiff that the

Plaintiff may request a "CI700: Ethics and the IRB" course remediation examination by contacting the "CI700: Ethics and the IRB" course tutor and the "MMSCI" program directors and include him (Mr. Hashemi in the Plaintiff's communication to the "CI700: Ethics and the IRB" course tutor and MMSCI program directors and or directors. The teaching assistant, Mr. Hashemi offered to proctor the "CI700: Ethics and the IRB" course remediation quiz once it was provided to the Plaintiff by the MMSCI program leadership. Following this guidance from the course Teaching Assistant, Mr. Hashemi and in accordance with the "MMSCI" program policies.

82.Between July 12 and 15, 2024, after class at the Harvard Medical School Tosteton Medical Center ("TMEC") , the Plaintiff verbally requested a remediation quiz examination in "CI700: Ethics and the IRB" course from Associate Professor McCausland and Doctor Martina McGrath ,and Doctor McGrath advised the Plaintiff that the Plaintiff would be granted a remediation examination in CI700: Ethics and the IRB" course and that the program administrator Ms.Molly Gallaghar responsible for organizing it was not in town at that time.

83.On July 12,2025,the Plaintiff contacted the "CI700: Ethics and the IRB" course tutor , Doctor Susan Kornetsky ("Dr.Kornetsksy")regarding the "CI700: Ethics and the IRB" course quiz grade and copied both the "CI700: Ethics and the IRB" teaching assistant, Mr. Hashemi and the MMSCI program director, Co-Director Doctor Martina McGrath on Plaintiff's communication to the "CI700 Ethics and the IRB" course director, however, Doctor Kornestsky deferred Plaintiff's communication and academic concerns in the "Ethics and the IRB CI700" course to the MMSCI program leadership.

84.On July 30, 2024, Plaintiff discovered that the Plaintiff's CI700: Ethics and the IRB course, "consent assignment "grade was changed from 18/18 to 9/18, representing a reduction in a component worth 30% of the 100% total of the "CI700: Ethics and the IRB course" grade. The plaintiff 's CI700: Ethics and the IRB" course in the remaining CI700: Ethics and the IRB" course assignment grades and or credit evaluations of the Plaintiff included earning 10/10 in "discussion board 1" and 10/10 in "discussion board 2", and 15/15 in "Mock IRB Assignment" ,which collectively comprised the majority of the cumulative (100%) of the CI700: Ethics and the IRB course assignments. The "consent assignment" grade in "CI700: Ethics and the IRB" course changed from 18/18 to 9/18 after the Plaintiff had requested remediation examination in "CI700:

Ethics and the IRB  course" with the HM MMSCI program leadership from Summer 2024 to Fall 2024 and constituted only 30% of the overall "CI700: Ethics and the IRB" course assignment grades and was not solely determinative of the Plaintiff's final "CI700: Ethics and the IRB" course assignment grades across the cumulative(100%) " CI700: Ethics and the IRB course assignments".

85.A single assignment grade in the MMSCI program and or a particular course in this case, the "CI700: Ethics and the IRB" course does not determine the overall 100% course assignment grade, as each course assessment and grading is cumulative within a single and or a specific course in the MMSCI program and not based on any one individual assignment evaluation or grading. Accordingly, the consent assignment in "CI700: Ethics and the IRB", constituted only 30% of the cumulative (100%) "CI700: Ethics and the IRB" course assessment and grading. Despite the Plaintiff's grade change in the in "CI700: Ethics and the IRB" course 's, single 30% "consent assignment", the Plaintiff achieved the required 80% pass mark in the overall "CI700: Ethics and the IRB" course assignments but the MMSCI program leadership including Assistant Professor McCausland and Doctor McGrath and Singh denied the Plaintiff a final remediation examination in "CI700: Ethics and the IRB" course.

86.On August 8,2024, the Plaintiff notified the MMSCI program directors including Associate Professor McCausland and Doctor McGrath and Professor Singh and Deans Gutlerner and Segal that the Plaintiff was experiencing trauma because of the ongoing academic concerns and or issues in CI700: Ethics and the IRB" course grade that the Plaintiff was facing and as a result, Plaintiff was unable to prepare for ongoing "CI700: Ethics and the IRB" coursework and examinations following a change in the Plaintiff's grade in "CI700: Ethics and the IRB" course grade ,and Plaintiff further requested mentorship support from the MMSCI program leadership and or Deans.

87. On August 10,2024, Plaintiff inquired with the HMS MMSCI program co-directors Associate Professor McCausland and McGrath whether a minimum score of 80% was required to pass the midterm a single course assignment the HMS MMSCI program.

88.On August 12,2024, in response to Plaintiff Associate Professor McCausland clarified that no minimum passing requirement applied to the midterm examination, reaffirming that only the overall course grade and the final examination must meet the required 80% threshold.

89.Specifically, Associate Professor McCausland stated that *"MMSCI policy is that on overall passing grade for each course is ≥80% (combined over all the assessments). Further, the final exam must have a score of ≥80% as well (not the mid-term).* (Exhibit 31)However, Defendants later departed from these stated and or established HMS MMSCI policy when the Plaintiff requested remediation in "CI700: Ethics and the IRB" course and denied this request to the Plaintiff based solely on a single changed grade "consent assignment" course assignment of the Plaintiff constituting only 30% of the "CI700: Ethics and the IRB" course cumulative assignments grades and despite the Plaintiff meeting the 80% assignment threshold. The rationale of denial of a "CI700: Ethics and the IRB " course remediation examination for the Plaintiff alone is inconsistent with the stated HMS MMSCI and Masters Student Handbook policy, which evaluates performance based on the combined overall grade rather than any individual assessment and the "CI700: Ethics and the IRB" course "consent assignment" grade and or disputed grade could not by itself reasonably determine the plaintiff's cumulative (100%) "CI700: Ethics and the IRB" course assignment(s) grade and or cumulative academic performance in "CI700: Ethics and the IRB" course assignment.

90.On August 19, 2024, the Plaintiff made a followed up communication with Associate Professor Finnian McCausland regarding the Plaintiff's remediation request in "CI700: Ethics and the IRB " course, but received no response from Associate Professor McCausland .The HMS MMSCI program leadership including Associate Professor Finnian McCausland and Doctor Martina McGrath and Professor Ajay Singh still denied the Plaintiff's request for a remediation examination in "Ethics and the IRB CI700" course.

91.On August 24, 2024, Plaintiff met with Dean Rosalind Segal and verbally requested a remediation examination in "CI700: Ethics and the IRB" course. Dean Segal mentioned to the Plaintiff that offering course remediation examinations for courses from a prior semester was "sometimes hard" and advised the Plaintiff to focus on the current Fall 2024 semester instead. The

Plaintiff was never granted a remediation examination despite repeated requests in accordance with the program syllabus and policies allowing remediation examinations to students in the MMSCI program who may fail a final course examination.

92. On sept 4,2024, the Plaintiff communicated to MMSCI Program Co-Directors including Associate Professor Finnian McCausland and Doctor Martina McGrath and Deans Segal and Gutlerner and stated that the Plaintiff's "Ethics and the IRB CI700" course grading issue in summer 2024 was significantly affecting the Plaintiff's ability to perform well in ongoing and or subsequent courses in summer semester,2024 especially in "CI700: Ethics and the IRB CI700" course. The plaintiff communicated these concerns to both MMSCI program leadership and Deans Gutlerner and Segal. The plaintiff further expressed that the Plaintiff did not wish for the ongoing academic issues to continue negatively impacting their academic progress in the MMSCI program, as the Plaintiff deeply committed to and values the program and sought appropriate support from the MMSCI program leadership and or Deans Gutlerner and Segal to succeed and excel within it. However, Plaintiff did not receive appropriate academic support from the MMSCI program leadership that was offered to other students (Plaintiff's peers) in the MMSCI program, rather the Plaintiff was subjected to escalating discriminatory and retaliatory conduct in the HMS MMSCI program by program leadership including Associate Professor McCausland and Doctor McGrath and Deans Segal and Gutlerner.
On or about September 5,2025, Plaintiff subsequently contacted Dean Saldana and Office of Dean Harvard Medical School seeking assistance regarding the denial of remediation by HMS MMSCI program leadership. In response, Dean Segal stated that such continued contact *"do not reach any further as it simply antagonizes our leadership.",(Exhibit 66).*

93. On September 5,2024, Dean Segal explicitly instructed Plaintiff not to contact other HMS faculty stating, "Please do not reach out to them further, as this simply antagonizes HMS leadership" and "will not address any of your concerns". Despite Plaintiff's lack of legitimate support within the "MMSCI" academic program or department and experiencing discriminatory treatment within the MMSCI program. Thereafter, the Plaintiff was soon subjected or experienced series of escalating discriminatory and retaliatory actions within the MMSCI program by Associate Professor McCausland, Doctor Martina McGrath and Deans Segal and

Gutlerner,and subsequently resulted into the Plaintiff's wrongful "requirement to withdraw" from the MMSCI academic program.

94.On September 5, 2024, Dean Segal informed the Plaintiff that granting course remediation examinations was at the course director's discretion and that their decision was "final" despite Professor McGrath's earlier verbal commitment to provide the Plaintiff a "CI700: Ethics and the IRB" course remediation examination. However, course tutors for the "CI701: Clinical Data Science; Design and Analytics I", Elizabeth Mostofsky ScD, and Qiaoli Wang PhD, who tutored the courses "708: Clinical Data Science: Design and Analytics II" course stated to the MMSCI students in class in Summer and Fall 2024 semesters, that course remediation examinations request made by course tutors in MMSCI program are approved by the MMSCI. program directors. Communications between the MMSCI program director, Assistant Professor, McCausland and the "CI700: Ethics and the IRB"course tutor, Doctor.Kornetsky's  statement that she (Doctor Kornestsky) was in touch with the MMSCI program leadership "and that "they would respond directly to Plaintiff" regarding the "CI700: Ethics and the IRB" course remediation examination request, thus confirmed that granting MMSCI students course remediation examination(s) is in the institutional HMS MMSCI program policy and or is approved by the MMSCI program directors rather than purely discretionary by course instructors but subject to consistent standards and application in the formal HMS MMSCI program syllabus and policy.

95. Between summer 2024 to Fall 2024, Plaintiff subsequently contacted Deans Rosalind Segal and Johanna Gutlerner to address this concern and requested remediation examination in "CI700: Ethics and the IRB CI700" course consistent with the HMS Master's Handbook policy under *3.01. responsibility of teachers,in excerption that provides that, "teachers should give learners opportunities for remediation* while the HMS Master's Handbook Policy,under *2.03 Final examination policy 2. Provides that Students may be permitted to take a final exam on a date later than the one identified in the course syllabus for the following reasons only".*in relevant part including *(A) Failure to pass the exam the first time taken." ,(Exhibit 31)*

96.In a September 2024 zoom meeting, which was held via the Zoom for Harvard platform in the first month of the Plaintiff's Fall 2024 semester with the HMS Master's Administrator, Ms.

45

Kathryn Cacioppo, Associate Professor Finnian McCausland and Doctor Martina McGrath,in attendance, Ms. Kathryn Cacioppo recommended that the Plaintiff apply for a *"leave of absence"*. At no time did the Plaintiff communicate to the HMS MMSCI program leadership and or staff any intention to seek a *"leave of absence"* from the HMS MMSCI program. With records retained in the Harvard Medical School's and or Harvard University's data system are producible during discovery.

97.On September 9,2024, the HMS Master's Administrator, Ms. Kathryn Cacioppo,sent Plaintiff a letter of "Monitored Academic Status" and cited unsatisfactory grade in "CI700: Ethics and the IRB CI700" course despite denial of a course remediation to Plaintiff by Defendants contradicted the HMS Master's Student's Handbook that provides course remediation examinations for MMSCI students who may not pass a final course examination on first attempt to improve their final course examination grade from unsatisfactory to satisfactory. Defendants later granted course remediation examinations to Brown and White students who failed subsequent courses within the HMS MMSCI program.

98.Despite repeated requests for remediation examination in "CI700: Ethics and the IRB CI700" course and follow-ups by the Plaintiff between Summer and Fall 2024, no legitimate and HMS MMSCI and or HMS Master's Student's Handbook policy based discretion justification governing all students in the MMSCI program subject to the consistent application of the HMS MMSCI policies was ever provided to the Plaintiff for the grade change in "CI700: Ethics and the IRB CI700" course "consent assignment" and or denial of remediation in "CI700: Ethics and the IRB CI700" course by the MMSCI program leadership and or Deans Segal and Gutlerner contrary to the "MMSCI' program policy that requires remediation examination for a student(s) who may fail a course in the MMSCI program.

99.On September 9,2024, Plaintiff contacted the Harvard Medical School Ombdus Office staff including Ms. Lisa Neal and Ms. Melissa Brodrick and requested a facilitated meeting with MMSCI program leadership about the Plaintiff's grade change in "CI700: Ethics and the IRB CI700" course "consent assignment" and or denial of remediation examination to the Plaintiff in "CI700: Ethics and the IRB CI700" course (Exhibit 32).

100. On September 25,2024, Ms. Neal facilitated a meeting between the MMSCI program leadership including Associate Professor Finnian McCausland and Doctor McGrath, Plaintiff and the Masters programs administrator Kathryn Cacioppo.

101. The HMS Master's Student Handbook Section 2.03 (Grading and Examinations), section 8,in relevant parts provides that "students who fail a required course are required to retake the course or equivalent course as approved by the course director " but because of the wrongful "requirement to withdraw" from the MMSCI program also excluded from retaking the "CI700: Ethics and the IRB CI700" and "CI701: Clinical Data Science; Design and Analytics I" course in July 2025. At this point the Plaintiff did not fail any courses in the MMSC program.

102. On or about September 20,2024, the Plaintiff raised concerns with the MMSCI program directors including Associate Professor McCausland and Doctor McGrath and Deans Segal and Gutlerner and mentioned that the Plaintiff had observed that most students (peers of the Plaintiff) with the exceptions of a few students in the HMS MMSCI program 2024 to 2026 cohort who had already been matched with research mentors or are in the onboarding process with their potential mentors. Accordingly, Plaintiff requested guidance on an appropriate point of contact within the MMSCI program to address these academic and mentorship concerns.

103. On September 19,2024, Dean Segal in response to the Plaintiff, indicated that discussions should remain focused on this subject matter, stating, "as long as you center your discussions on this subject." Reflecting that Defendant's actions effectively obstructed the plaintiff from seeking remediation, notwithstanding that the HMS Master's Student Handbook, Section 2.03 (Grading and Examinations),section 8 provides that "students who fail a required course at the first attempt are required to take a re-examination and/or do remedial work as approved by the course director." provides for remediation to be granted to all eligible students in the MMSCI program governed by the same HMS MMSCI program syllabus.

104. On September 20,2024 Dean Gutlerner later mentioned to the Plaintiff that that *"there is no requirement for any faculty member to allow remediation of any assignment and the only grade that was entered for you was a 9/18.There was no other change in the grade and you will see this when you meet with the program next week. You now need to focus on your current coursework*

*and finding a mentor". Your insistent emails asking the same questions that have already been answered many times are becoming a significant professionalism concern".* However, HMS Master's Student's Handbook, section 2.03 Under Final examination policy and under Grade 103.Changes and appeals, provides that '*If students have questions regarding a grade, they are encouraged to follow up directly with the instructor for more clarity" "if such agreements are not satisfactorily resolved, the student may then bring the concerns to the attention of the program director" and further notes that "in cases where the program director is the course director, concerns should be brought to the senior associate dean for graduate education".* Thereby permitting students to seek clarification on academic and administrative matters that had not been clearly addressed and does not state that Plaintiff's exercising the right to seek clarification or to pursue an academic accommodation and following up on unresolved or unclear accommodation requests is prohibited or considered *"professionalism concern".*

105.On September 20,2024, the HMS Masters administrator, Kathryn Cacioppo communicated to the Plaintiff stating that the Plaintiff's grade in "CI700: Ethics and the IRB CI700" course had been "reviewed and discussed' and was now "considered final", resulting into an "unsatisfactory grade" and that the Plaintiff should retake the "CI700: Ethics and the IRB CI700" and "CI701: Clinical Data Science; Design and Analytics I" course in July 2025. However, the Plaintiff was not informed of any process regarding the review of the Plaintiff's grade in "CI700: Ethics and the IRB CI700".

106. On September 20,2025, in response to Ms. Cacioppo, the Plaintiff expressed that the Harvard Medical School and or Harvard University Information Technology (IT) should also be able to review the IT timestamps from July 9,2024 through July 30,2024 during which all Plaintiff's "CI700: Ethics and the IRB CI700" course assignment grades were visible in the course record. However, after the "CI700: Ethics and the IRB CI700" course ended, one of the Plaintiff's initial "CI700: Ethics and the IRB CI700" course "consent assignment" grade was later changed from 18/18 to 9/18. The Plaintiff also acknowledged poor time management during the July 30, 2024, examination, which resulted in insufficient time to carefully read the questions and multiple-choice answers resulting in a score of 20 out of 30, four points below the 24 out of 30 pass mark.

107.On September 25, 2024, upon the Plaintiff's request for a facilitated meeting with the Harvard Medical School, Ombuds Office, the HMS Ombdus officer which was facilitated by Ms.Lisa Neal. In attendance were, the HMS Master's Programs Administrator, Ms. Kathryn Cacioppo and HMS MMSCI program Directors, Assistant Professor McCausland and Doctor McGrath and the Plaintiff. During this meeting, Doctor McGrath stated that she (Doctor McGrath) would not show the Plaintiff the Information Technology (IT) records for "Ethics and the IRB CI700","because they contained other students results" and further stated that the plaintiff would be offered remediation examination in "CI701: Clinical Data Science; Design and Analytics I" with three other students included one Brown student and two White MMSCI students who failed course "CI701: Clinical Data Science; Design and Analytics I" in summer 2024 and who took a remediation for it on October 8,2024,while the master's programs administrator, MS. Kathryn Cacioppo commented in substance , "the IT record stamp did not find the Plaintiff's grade to be 18 out of 18".Plaintiff was not granted access to, nor shown, the underlying records or documentation reflecting the recorded grades in "CI700: Ethics and the IRB CI700" course. The MMSCI program directors informed the Plaintiff that their decision requiring the Plaintiff to retake the "CI700: Ethics and the IRB" course was final, despite the Plaintiff's overall assignment grade of 80% and eligibility for a final remediation examination in "CI700: Ethics and the IRB" course, the plaintiff was nonetheless denied a remediation examination for "Ethics and the IRB CI700" course.

108.Despite the HMS Master's Student's Handbook policies governing and or being applicable to all students in the HMS MMSCI program, Deans Gutlerner and Segal still denied the Plaintiff course remediation examination and or to improve their grade in "CI700: Ethics and the IRB" course while Defendant granted similarly situated HMS MMSCI 2024 to 2026 cohort students including one Brown student and two White students in the MMSCI 2024 to 2026 cohort who also failed the "CI701: Clinical Data Science; Design and Analytics I" course in summer 2024 course were provided remediation examination in course "CI701: Clinical Data Science; Design and Analytics I" course on October 8,2024 including the Plaintiff and therefore maintained "Good Academic Standing", while one Brown student ,the Plaintiff (Black), another Brown student from a different place of origin and two White students all of whom were in the MMSCI 2024 to 2026

49

and also failed CI708A Clinical Data Analytics 11 course in Fall 2024, were granted remediation examination in CI708A Clinical Data Analytics 11" course on January 14,2025. Under the 2024 to 2026 HMS Master's Student Handbook, Section 2.03, Grading and Examinations, section 8 provides that "students who fail a required course are required to take a re-examination and/or do remedial work as approved by the course director." The indication of mandatory language "are required", indicates that grating course remediation examinations to HMS MMSCI students (including the Plaintiff) is not discretionary but obligatory per the HMS Master's Student Handbook, Section 2.03, Grading and Examinations Plaintiff was denied the right for a required "CI700: Ethics and the IRB" course remediation as provided in the HMS Master's Student's Handbook.

109.Defendants denied the Plaintiff the right for a required quiz remediation examination in "CI700: Ethics and the IRB" course in summer 2024 semester through Fall 2024 provision in the HMS Master's Student's Handbook permitting course remediation examinations to HMS MMSCI students who may fail a course final examination and the Plaintiff's multiple requests with the MMSCI program leadership, this denial of remediation examination to the Plaintiff by Defendants resulted in "monitored academic status", as noted in a letter from the APRB sent to the Plaintiff by the HMS Master's program's administrator, Ms. Kathryn Cacioppo on September 9, 2024. Additionally this denial of course remediation examination to the Plaintiff in "CI700: Ethics and the IRB" course caused the Plaintiff emotional distress and impaired the Plaintiff's concentration in a subsequent ongoing course "CI701: Clinical Data Science; Design and Analytics I" in summer 2024.Meanwhile similarly situated HMS MMSCI 2024 to 2026 cohort students including one Brown student and two White students in the MMSCI 2024 to 2026 cohort who also failed the "CI701: Clinical Data Science; Design and Analytics I" course in summer 2024 course were provided remediation examination in course "CI701: Clinical Data Science; Design and Analytics I" course on October 8,2024 including the Plaintiff and therefore maintained "Good Academic Standing", while one Brown student ,the Plaintiff (Black) , another Brown student from a different place of origin and two White students all of whom were in the MMSCI 2024 to 2026 and also failed CI708A Clinical Data Analytics 11 course in Fall 2024,were granted remediation examination in CI708A Clinical Data Analytics 11" course on January 14,2025, these similarly situated students in the HMS MMMSCI program described above therefore maintained continuous

50

"Good Academic Standing". Notably, the two White MMSCI students failed both CI701: Clinical Data Science; Design and Analytics I in summer 2024 and CI708A Clinical Data Analytics 11 in Fall 2024, these similarly situated students therefore maintained continuous "Good Academic Standing" as well because these similarly situated students were granted remediation examinations in these courses as described above under the approval of the HMS MMSCI program leadership. As noted by the CI701: Clinical Data Science; Design and Analytics I and CI708A Clinical Data Analytics 11 course tutors in Fall 2024 to the MMSCI 2024 to 2026 class, that MMSCI course remediation examination requests for MMSCI students who fail a final MMSCI course examinations are approved by the HMS MMSCI program leadership.

110.The subsequent granting of MMSCI course examination remediation opportunities to these similarly situated Brown student and two White MMSCI students who failed course "CI701: Clinical Data Science; Design and Analytics I" in summer 2024 and who took a remediation for it on October 8,2024 and similarly situated Brown student another Brown student from a different place of origin and White MMSCI students who failed course CI708A Clinical Data Analytics 11" in Fall 2024 who took a remediation for it on January 14,2025 both course remediation examinations granted by the HMS MMSCI program while the Plaintiff, a Black student in the same MMSCI program and or cohort 2024 to 2026  was denied a course remediation examination in "CI700: Ethics and the IRB" course after repeated requests for remediation examination in "CI701: Clinical Data Science; Design and Analytics I" course with the MMSC program leadership by the Plaintiff further caused the Plaintiff significant emotional distress and adversely affected the Plaintiff's ability to concentrate in an ongoing "CI701: Clinical Data Science; Design and Analytics I" course remediation examination preparation period and directly negatively impacted the Plaintiff's remediation examination grade in "CI701: Clinical Data Science; Design and Analytics I" taken on October 8,2024 by all four MMSCI students including one Brown student, one Black student(the Plaintiff) and two White students who failed "CI701: Clinical Data Science; Design and Analytics I" in Summer 2024.

111.Defendants allowed course remediation examination for the Plaintiff only in CI701: Clinical Data Science; Design and Analytics I and CI708A Clinical Data Analytics 11and or when other

51

multiple students, notably one Brown student, another Brown student from a different place of origin and two White MMSCI students also failed the same courses including CI701: Clinical Data Science; Design and Analytics I and CI708A Clinical Data Analytics 11 but when the plaintiff was the sole student who did not pass the "CI700: Ethics and the IRB" course quiz examination in Summer 2024 despite meeting the 80% assignment pass mark for remediation examination in "CI700: Ethics and the IRB" course, Defendants denied the Plaintiff course remediation examination in "CI700: Ethics and the IRB" course even though the plaintiff made multiple independent requests with Defendant for a remediation examination in "CI700: Ethics and the IRB" course. Meanwhile Defendants subsequently proactively notified all HMS MMSCI students who failed courses "CI701: Clinical Data Science; Design and Analytics I" and CI708A Clinical Data Analytics 11" about course remediation examinations options in "CI701: Clinical Data Science; Design and Analytics I" and CI708A Clinical Data Analytics 11" in Fall 2024.

112. The stated basis by the Defendants for denying the Plaintiff remediation examination in "CI700: Ethics and the IRB" course, course taken in Summer 2024 was therefore both inconsistent with the HMS Master's Student Handbook, Section 2.03,Grading and Examinations, section 8 which provides that "students who fail a required course are required to take a re-examination and/or do remedial work as approved by the course director." and inconsistently applied among similarly situated HMS MMSCI 2024 and 2026 cohort students with one Brown student ,two White students who failed "CI701: Clinical Data Science; Design and Analytics I, in Summer 2024 and one Brown student, another Brown student from a different place of origin and the two White students who failed both CI701: Clinical Data Science; Design and Analytics I, in Summer 2024 and CI708A Clinical Data Analytics 11 in Fall 2024 while the plaintiff, a Black student was not afforded the same course remediation examination opportunity in "CI700: Ethics and the IRB" course.

113. On Sept 25.2025, Plaintiff contacted the Harvard Provosts including Provosts John Manning, Naomi Bleich and Robin Glover, and stated that Plaintiff was writing to inquire whether students are permitted to raise academic concerns with their course tutors or program staff and if such academic concerns can typically be addressed. Plaintiff requested assistance from the provosts' office in addressing ongoing academic concerns in the MMSCI program at

the time in 2024 to 2025 academic year that were impacting the Plaintiff's academic performance and progress in the MMSCI program.

114. On sept 26, Provost Glover recommended the plaintiff to contact the Plaintiff's program leadership regarding the academic concerns and to seek support from the School's Student Affairs Office which works closely with the Office of Senior Associate Dean for Student's Affairs, Dean Gutlerner. However, the plaintiff did not receive meaningful support at the HMS MMSCI school and or program level.

115. On September 26,2024, Plaintiff replied to Provost Glover, and stated that, although the Plaintiff had engaged with HMS MMSCI program leadership and or Deans Gutlerner and Segal regarding their academic concerns, several specific questions remained unaddressed. After expressing this academic concern with the Harvard Provosts, among others Provost Glover, the Plaintiff was subjected to increasingly severe discriminatory and retaliatory treatment as well as more hostile academic environment within the MMSCI program including a lack of meaningful academic and or mentorship support provided to other students in the MMSCI program.

116. On September 26, 2024, the Plaintiff was issued a warning by Dean Gutlerner, stating that "emailing about this same issue is neither mature, nor responsible" and that if the Plaintiff "continued to ask for reconsideration about the grade determinations in CI700 and CI701, either by email or in person," the Plaintiff would be "brought to the APRB for consideration of a formal sanction on grounds of unprofessional behavior" .This constituted an explicit threat of academic sanction for the exercise of Plaintiff's right to seek redress for the Plaintiff's academic concerns that were impacting the Plaintiff's academic progress and performance in the MMSCI program, contrary to the Defendants' assertion, the Plaintiff did not "challenge grade determinations" but instead the Plaintiff's request was clarification of the eligibility criteria for a course remediation examination(s) in the MMSCI program, a reasonable academic inquiry consistent with the  HMS MMSCI program policy ,under responsibility of teachers section 3.01, provides that teachers should give learners final remediation examinations for students who fail a final course examination(s).

117. On October 8, 2024, in a verbal zoom meeting via the Zoom for Harvard platform, the Plaintiff requested with Professor Ajay Singh about the Plaintiff's remediation request and grade changed on "consent assignment" in "CI700: Ethics and the IRB" course with Dr. McGrath. Professor Singh, Professor Singh informed the Plaintiff that "IT stamps showed" that the Plaintiff's "CI700: Ethics and the IRB" course "grade was never an 18 out of 18" and that the "program's position was final" and that Plaintiff may instead "want to be resilient". Prof. Singh further stated during the 30-minute Zoom meeting that Plaintiff would have an opportunity to ask questions in a separate meeting next time. The zoom meeting was ended by Professor Singh without the plaintiff being given any opportunity to ask any questions or give any comments. With records retained in the Harvard Medical School's and or Harvard University's data system are producible during discovery.

118. On October 9,2024, HMS administrator, Ms.Kathryn Cacioppo, notified the Plaintiff that the Plaintiff had been placed on "monitored academic status" ,citing unsatisfactory grade in "CI700: Ethics and the IRB" course directly resulting from the denial of "CI700:Ethics and the IRB" course remediation to the Plaintiff to improve the Plaintiff's final "CI700:Ethics and the IRB" course examination grade, despite the HMS Master's Student Handbook, Section 2.03 (Grading and Examinations), providing that "students who fail a required course are required to take a re-examination and/or do remedial work as approved by the course director." and yet Defendants offered course remediation examinations were offered to similar situated students as described above.

**Consequences of Discriminatory and Retaliatory Denial of "CI700: Ethics and the IRB" Course Remediation to the Plaintiff by Defendants.**

119. The denial of a remediation examination in "CI700: Ethics and the IRB" course to the Plaintiff had direct and foreseeable consequences on the plaintiff's academic performance and health and academic standing. By Defendants having refused the plaintiff an opportunity to remediate "CI700: Ethics and the IRB" course while Defendants offered course remediation examinations to similar situated MMSCI 2024 to 2026 cohort students mentioned above, Defendants deprived the plaintiff of a standard academic support governing all students in the HMS MMSCI program, the plaintiff experienced significant emotional distress and diminished

concentration in the ongoing "CI700: Ethics and the IRB" course while enrolled in an ongoing "CI701: Clinical Data Science; Design and Analytics I" course and it materially impaired the plaintiff's ability to concentrate, study effectively, and adequately prepare for the final examinations and also remediation examination in "CI701: Clinical Data Science; Design and Analytics I" course which the negatively impacted the Plaintiff's academic performance in "CI701: Clinical Data Science; Design and Analytics I" course.

120. On October 10,2024, the Plaintiff asked Dean Segal and Professor Singh about eligibility criteria for course remediation and sought clarification regarding why the Plaintiff was not earlier considered for remediation examination in "CI700: Ethics and the IRB" course as an individual MMSCI program student while other similarly situated MMSCI program students who failed other subsequent courses including were proactively offered course remediation examinations in courses "CI701: Clinical Data Science; Design and Analytics I" and CI708A Clinical Data Analytics 11, a legitimate and reasonable academic inquiry, directly related to transparency and equal application of the HMS MMSCI program policies especially when the underlying academic concern that the Plaintiff raised and or were raising were not meaningfully and adequately addressed reflecting inconsistency in application of HMS MMSCI Master's Student Handbook Policies in effect at all relevant times. Plaintiff also expressed that they had requested remediation in "CI701: Clinical Data Science; Design and Analytics I" course because the academic concerns regarding the Plaintiff's grade in "CI700: Ethics and the IRB" course caused the Plaintiff emotional distress and impacted the Plaintiff's ability to adequately prepare and study for the remediation examination in "CI701: Clinical Data Science; Design and Analytics I" course.

121. On October 10, 2024, Dean Gutlerner stated in an email to the Plaintiff that she (Dean Gutlerner) "viewed" Plaintiff's questions to Professor Singh and Dean Gutlerner herself regarding course remediation examination eligibility as "unprofessional conduct" and referred the Plaintiff to the APRB,an academic board that Dean Gutlerner co-chairs with Dean Segal, absent of any established HMS MMSCI and or Harvard university policy prohibiting a student's(in this case the Plaintiff's) inquiry to faculty(Professor Singh and Dean Gutlerner)

55

regarding eligibility for course remediation examination and or warranting academic and or disciplinary action on grounds of "unprofessional conduct".

122. On November 4, 2024, Dean Gutlerner notified the Plaintiff that the Academic Progress and Review Board (APRB), a committee co-chaired by Deans Gutlerner and Segal and with HMS MMSCI program leadership serving as voting faculty members, had voted to place the Plaintiff on "Academic Probation", citing both the Plaintiff's unsatisfactory grades in course CI701 and "concerns about the Plaintiff's professional conduct in communication". Absent of any HMS and or Harvard University policies indicating that unresolved academic inquiry  and or concerns by a Harvard student to Harvard faculty as "unprofessional conduct", especially when formal HMS MMSCI program and or Master's Student Handbook policies appear to be applied selectively and or in a discriminatory and retaliatory manner by Defendants and directly caused and or were causing the Plaintiff emotional distress thus impacting and or impacted the Plaintiff's academic progress and performance in the HMS MMSCI program, especially that the Plaintiff had no legitimate formal support within the HMS MMSCI academic program and or department. Additionally, Defendants ignored the fact the discriminatory actions of having denied the Plaintiff the equal opportunity of course remediation examination that directly resulted into Defendants placing the Plaintiff on "Monitored Academic Status" and, yet Defendants offered course remediation examinations to similarly situated Brown and White HMS MMSCI students who failed other MMSCI program courses therefore improved their course grades in those courses which resulted into these students having "Good Academic Standing".

123. One of the subsequent stringent "academic probation remediation plan" included a significant directive by Defendants to the Plaintiff that stated that "professional conduct" "required" the Plaintiff to "accept the answers that are given to the Plaintiff in meetings and over email" and to "refrain from incessantly emailing colleagues across the university about issues that that have already been discussed extensively". Essentially, the Plaintiff was placed on "Academic Probation", for seeking redress through Harvard University internal channels, and Plaintiff' was then required as a condition of continued enrollment in the MMSCI program to stop advocating for themself (the Plaintiff's) regarding discriminatory and retaliatory actions that the Plaintiff was facing in the MMSCI academic program and were significantly impacting and impacted the Plaintiff's academic progress and performance in the MMSCI program and Plaintiff

felt intimidated in their academic program(MMSCI), reflecting unequal and retaliatory treatment in the "MMSCI" academic program and echoing Harvard University's own concern that *"many in our community feel constrained in their ability to express their views on critically important questions"*.

124. On November 18,2024, Plaintiff raised academic concerns with Assistant Professor McCausland and Dr. McGrath, and Deans Segal and Gutlerner and noted that similarly situated students in the MMSCI program who first met their research mentors as recently as November 2024 scheduled and conduct their first thesis progress meetings within November 2024, approximately one week of first time meeting with their research mentor in November 2024 ,without formal restriction from the HMS MMSCI program directors Assistant Professor McCausland and Doctor McGrath and or Deans Segal and Gutlerner including withholding their "CI706: Mentored Research" course credit after their completion and approval by their research mentors and or asking these similarly situated students described above to repeat presenting their first milestone research thesis progress meeting after completion and approval by their research mentors because they had recently first met with their mentor in October 2024 and or in November, 2024. Plaintiff further sought clarification from Doctor McGrath on the number of times the Plaintiff and Plaintiff's mentor needed to meet and or should have met prior to scheduling a first "CI706: MMSCI Mentored Research" course thesis progress meeting that due in Fall 2024. Plaintiff also inquired whether Plaintiff may independently identify and work with a mentor aligned with Plaintiff's research interests as required by the MMSCI program.

125. On November 19,2024, in response, Doctor McGrath informed the Plaintiff that *"There is no limit on the number of mentor meetings required before a thesis progress meeting is Scheduled"*. Relying on this representation by Doctor McGrath as well as the formal HMS MMSCI program syllabus and its governing policies applicable to all students and noting that other students were conducting research within the required HMS MMSCI syllabus timeframe and milestone timeline in the Fall 2024, the Plaintiff proceeded to schedule a first thesis progress meeting with Doctor Bebell Lisa and presented the first "CI706: MMSCI Mentored Research " course milestone research meeting accordingly on December 19,2024 and completed the required first milestone report on January 6,2025 despite this, Plaintiff was denied a grade for the

completed first milestone research topics in "CI706: Mentored Research" course and MMSCI program leadership instead issued the Plaintiff an incomplete(INC) grade in "CI706: MMSCI Mentored Research " course.

126.On or about November 20,2024, Doctor McGrath directed the Plaintiff to defer conduct "CI706: Mentored Research" course, required in a current (Fall 2024) semester in a future semester Spring 2025 despite the "CI706: Mentored Research" course in formal syllabus schedule not being offered in Spring 2025, while all other students in the HMS MMSCI academic program and 2024 to 2026 cohort were conducting research in Fall 2024 as required and scheduled in the formal HMS MMSCI program syllabus in Fall 2024. Plaintiff expressed to Doctor McGrath willingness to schedule the first "CI706: MMSCI Mentored Research" course thesis progress meeting upon establishing research question(s) and a statistical plan per the MMSCI program syllabus.

127.On November 20,2025, Plaintiff contacted Provost Glover for guidance particularly considering the escalating discriminatory and retaliatory actions that the Plaintiff was facing within the HMS MMSCI program that impacted and or were impacting the Plaintiff's academic progress and performance in the MMSCI program and amidst the absence of any meaningful academic support within the HMS MMSCI program.

**Initial Attempt by Defendants, Associate Professor Finnian McCausland and Doctor Martina McGrath and Dean Rosalind Segal and Associate Dean Johanna Gutlerner to Wrongfully Withdraw Plaintiff from the HMS MMSCI Program In November 2024.**

128.On November 20,2025, in response to the Plaintiff, Dean Gutlerner mentioned in excerption, that *"We were alerted by Robin Glover, Associate Provost for Student Affairs, that you once again reached out to her to discuss your academic issues from the summer. "You have therefore violated the terms of your Academic Probation, and your case will be brought before the APRB at the meeting on Monday November 25th for discussion". "The APRB could elect to elevate your academic disciplinary status and this could include a requirement to withdraw".* Despite absence of any Harvard Medical School and or University policy prohibiting any Harvard

student( Plaintiff),at all relevant times from contacting Harvard University staff and or Provost Robin Glover for guidance, in light of Defendants' discriminatory and retaliatory actions that the Plaintiff faced and or was facing within the MMSCI academic program and while the Plaintiff lacked meaningful academic support within the HSM MMSCI program as, "unprofessional conduct" and or any "violation of any HMS Master's Student's Handbook policy warranting any academic warnings and or sanctions against the Plaintiff for contacting Harvard University staff for redress on academic concerns that caused the Plaintiff mental distress and negatively affected and or were negatively affecting the Plaintiff's academic performance and progress in the MMSCI program, demonstrating that non HMS and or Harvard University policy based academic "warnings" and "sanctions" against the Plaintiff and or improper referral of the Plaintiff to the APRB by Defendants do not constitute "unprofessional conduct" nor academic violations warranting any HMS and or Harvard University policy and sanctions against the Plaintiff by the Defendants. The HMS MMSCI program and or Master's Student's Handbook does not provide for the improper placement of students on "Academic Probation Status and or the imposition of "Academic Probation Status" conditions absent established Master's Student's Handbook policy.

129. As reflected in the Plaintiff's November 20, 2024, communication to Harvard University Associate Provost for Student Affairs, Robin Glover, the Plaintiff did not "once again reach out to Associate Provost for Student Affairs, Provost Glover *to discuss academic issues from the summer", neither* did Provost Glover at any point note that the Plaintiff's communication to her (Provost Glover) for guidance constituted "unprofessional conduct". Rather, Provost Glover, in her response to the Plaintiff, included and or referred the Plaintiff for further guidance to the Harvard Medical School Administrator for Student's Affairs, Ms. Kimberley Lincoln who served closely with Dean Gutlerner's Office for Graduate Education, evidencing that academic inquiry and engagement for guidance and or support by the Plaintiff to Provost Glover and or Harvard University staff is fundamental to institutional support systems and protected activity. This statement was made by Dean Gutlerner, approximately one week before the start of Fall 2024 semester examinations and caused the Plaintiff significant emotional and or mental distress that impaired Plaintiff's ability to adequately prepare for the Fall 2024 examinations which directly resulted into Plaintiff's inability to prepare for the Fall 2024 "CI708A Clinical Data Analytics

59

11" examination in Fall 2024 which Plaintiff consequently did not pass it at a first attempt but passed the remediation examination in "CI708A Clinical Data Analytics 11" on January 14,2025 which was offered to four other students in the MMSCI academic program including one Brown student, the Plaintiff (Black) ,another Brown student from a different place of origin and two White students, all of whom were in the MMSCI 2024 to 2026 who also failed the "CI708A Clinical Data Analytics 11" at first attempt in Fall 2025.The power based discriminatory and retaliatory treatment that Defendants subjected Plaintiff to within the HMS MMSCI program, evidence that "discriminatory and retaliatory treatment in an educational environment, is associated with significantly higher rates of adverse mental health symptoms including depression, anxiety, and diminished functional outcomes that can negatively affect academic performance and the impact that discriminatory and retaliatory conduct by the Defendants against Plaintiff within the MMSCI program in 2024 and 2025 academic year had and has had on Plaintiff's well-being and academic progress within the MMSCI program, *which aligns with the study finds by Eisenberg et al which states that "discriminatory and retaliatory treatment in an educational environment is associated with significantly higher rates of adverse mental health symptoms  including depression, anxiety, and suicidal ideation and diminished functional outcomes that can negatively affect academic performance, illustrating the real, measurable impact that discriminatory conduct can have on a student' s well-being and academic progress. (see Eisenberg et al., Associations between discrimination and adverse mental health symptoms and disorder diagnoses among college students, 310 J. Affect. Disorders 24 9, 2022).*Thus, Harvard University Anti-Bullying Policy I. Statement of Principles that "prohibits *bullying, hostile and abusive behavior, and power-based harassment directly threaten the ability of community members to engage in the free exchange of ideas and pursue their educational and professional goals*"(Exhibit 33), acknowledges the impact of discriminatory and retaliatory treatment by Defendants against the Plaintiff within the MMSCI academic program but Harvard Medical School and or Harvard University NDAB failed to respond to and or meaningfully address the Plaintiff's academic concerns and formal complaint of discrimination and bullying and Plaintiff's improper and retaliatory exclusion of "requirement to withdraw" from the MMSCI academic program.  and or provide any legitimate support when the Plaintiff reached out for assistance and redress regarding discriminatory and retaliatory conduct by Defendants and or its employees, not only left the Plaintiff without recourse but also raises questions on

Harvard University's statement of fostering an environment that supports *"academic freedom"(Exhibit 34) m.* Plaintiff eventually passed the course "CI708A Clinical Data Analytics 11", remediation examination that the MMSCI program provided to all the other four MMSCI students who failed the "CI708A Clinical Data Analytics 11", in the MMSCI program in Fall 2024.

130.Plaintiff did not fail any courses in the MMSCI program again. The improperly issued failing grade in "CI706: MMSCI Mentored Research" course to Plaintiff that Defendants used as a pretextual "justification" of Defendants' improper and retaliatory conditions of "Academic Probation Status" and or the wrongful "requirement to withdraw" of the Plaintiff from the MMSCI program, absent of any HMS MMSCI and or HMS Master's Handbook policy reflect retaliatory demonstrate escalating pattern retaliatory academic actions against the Plaintiff by the Defendants.

131. Such false statement *("you once again reached out to her to discuss your academic issues from the summer",* by the Defendants coupled with improper and or discriminatory and retaliatory "academic sanctions" by the Defendants is not supported by any Harvard Medical School Master's Student Handbook or Harvard University policy against the Plaintiff has caused and continues to cause the Plaintiff significant emotional distress and has had and still have significant and lasting impact on the Plaintiff's education, career and or profession and health, undermines the Plaintiff's academic progress and performance and has damaged the Plaintiff's reputation. Additionally, this same statement *("you once again reached out to her to discuss your academic issues from the summer",* by Defendants acknowledged that Plaintiff was encountering ongoing academic barriers and yet Defendants failed to meaningfully address Plaintiff's academic concerns or offer meaningful academic support to the Plaintiff for the academic barriers and or concerns that the Plaintiff was facing and or faced and Defendants actively hindered the Plaintiff's ability to seek guidance from other Harvard institutional authorities and or staff and or Provost Robin Gover(Exhibit 62).

132.On November 20,2024,the Plaintiff requested to meet with Deans Gutlerner and Segal ,co-chairs of the APRB and or MMSCI program leadership including Associate Professor

McCausland and Doctor McGrath, before any purported withdrawal from the MMSCI program for contacting Provost Robin Glover for guidance regarding academic concerns that Plaintiff faced and or were facing and that were impeding Plaintiff's academic progress and performance within the HMS MMSCI program, according to Dean Gutlerner ,related to contacting Provost Glover for guidance, despite the absence of any HMS MMSCI program and or Harvard Medical School policy and or Harvard University policy prohibiting contacting Provost Glover for guidance and or justifying disciplinary action for contacting Provost Glover particularly in light of escalating discriminatory and retaliatory actions within the HMS MMSCI program impacting the Plaintiff's academic progress and the absence of any meaningful academic support within the HMS MMSCI program or any policy prohibiting contacting Provost Glover.

133. On November 20,2024, in response, Dean Gutlerner stated that if there were "any change" to the Plaintiff's "academic status", a "new letter" (Exhibit 63) would be issued, and they (among others Dean Gutlerner) would be willing to discuss the implications after the Plaintiff received the letter.

134. On November 21,2024,the Plaintiff inquired with Dean Gutlerner whether the APRB , co-chaired by Deans Gutlerner and Segal and with the MMSCI program leadership including Associate Professor McCausland and Doctor McGrath all of whom being voting APRB members would hear the Plaintiff's academic concerns before any purported "withdrawal" from the HMS MMSCI program, according to Dean Gutlerner because the Plaintiff contacted Harvard Provost Robin Glover("Provost Glover") for guidance, despite the absence of any Harvard Medical School policy and or Harvard University policy prohibiting contacting Provost Glover for guidance and the absence any meaningful academic support within the HMS MMSCI program or any HMS Master's Student's Handbook policy prohibiting a Harvard student (the Plaintiff) at all relevant times from contacting Harvard Provost Robin Glover or justifying any violation for and or disciplinary action against a Harvard student (the Plaintiff) at all relevant times for contacting Provost Glover.

135. On November 21,2024, in response to the Plaintiff, Dean Gutlerner mentioned that "*if there is any change to your status*", referring to the Plaintiff and further stated that the Plaintiff would

be given "ample opportunity" to meet with her (Dean Gutlerner) and Dean and Segal "if warranted." By Defendants, Dean Gutlerner's offer to meet with Plaintiff only after Defendants' potential adverse action against the Plaintiff and or wrongful withdrawal of Plaintiff from the MMSCI program, absent any established HMS Master's Student's Handbook policy, reflects a pattern of disregard for Plaintiff's academic concern, escalating discriminatory and retaliatory conduct of Defendants against Plaintiff, premeditated failure and withdrawal of Plaintiff from the HMS MMSCI program by Defendants and importantly deviation from the established HMS MMSCI and HMS Master's Student's Handbook policies that caused Plaintiff mental distress and were impacting Plaintiff's academic progress and performance in the MMSCI program thus demonstrates Defendants' discriminatory and retaliatory actions against the Plaintiff within the HMS MMSCI program and or premediated failure and withdrawal of the Plaintiff from the MMSCI program by Defendants.

136. Defendants improperly imposed academic sanctions described here in this complaint on the Plaintiff that were not grounded in and deviated from any established HMS MMSCI and HMS Master's Student's Handbook and or Harvard University policy, in response to the Plaintiff's academic inquiries in light of escalating discriminatory and retaliatory actions within the HMS MMSCI program impacting the Plaintiff's academic progress and standing, absent any meaningful academic support within the HMS MMSCI program, raising questions on the basis for such non-established formal HMS MMSCI and HMS Master's Student's Handbook policy based disciplinary sanctions and the adherence to the application of the HMS Master's Student's Handbook and or Harvard University's established formal procedural protections of all Harvard community members.

137. On November 21, 2025, Dean Gutlerner made a subsequent statement and stated that in excerption that, *"I can imagine that this all must be stressful for you"(exhibit 35)* , reflecting underscoring the coercive and intimidating nature of the communication by Dean Gutlerner rather than any genuine effort to provide academic support to the Plaintiff .Suggesting that the MMSCI program leadership and or Dean's failure to follow the established HMS MMSCI policies and procedures set forth in the HMS Master's Student's Handbook program guidelines and policies ,reflecting that the inconsistent and selective application of the MMSCI program and or HMS

Master's Student's Handbook policies  cease to serve as a legitimate framework for remediation plan and instead function as a tool of exclusion, evidenced by the Plaintiff 's exclusion from the HMS MMSCI academic program.

138.On November 21,2024, during "CI 709A: Introduction to Clinical and Translational Investigation Thesis Preparation" course, class, a course tutored by Associate Professor Finnian McCausland, he (Associate Professor McCausland) informed the HMS MMSCI 2024 to 2026 cohort students that the HMS MMSCI 2024 to 2026 cohort students who had not yet scheduled their first "CI706: MMSCI Mentored Research" course milestone research topics thesis meeting and or presentation to their research mentors until December 2024 or later would receive an "Incomplete (INC) grade" to be awarded a "Satisfactory" final grade upon completion of their first milestone research topics presentation to their research mentors. Consistent with this representation, similarly situated students in the HMS MMSCI academic program ,2024 to 2026 cohort who first met with their research mentors at the same time as the Plaintiff or even later, in October or November 2024, including one White student in the MMSCI program who first met with their "CI706: MMSCI Mentored Research" course research mentor in November 2024 and presented their initial "CI706: MMSCI Mentored Research" course research topic milestone approximately one week later, also in November 2024 ,one Brown student in the MMSCI program who did not present their initial first milestone research topics originally due in Fall (November) 2024 until Spring 2025, and all MMSCI students who received the required statistical feedback from their research biostatisticians, as a condition for receiving course credit in "CI706: MMSCI Mentored Research" course  and were awarded grades(credit) in "CI706: MMSCI Mentored Research" course accordingly. In contrast, Plaintiff, despite meeting the same formal MMSCI program syllabus and or "CI706: MMSCI Mentored Research" course requirements was initially improperly issued an "incomplete (INC) grade" in "CI706: MMSCI Mentored Research" course and subsequently assigned a failing grade in "CI706: MMSCI Mentored Research" course in the same course "CI706: MMSCI Mentored Research" course by the Defendants identified in Plaintiff's formal complaint of discrimination and bullying with the Harvard OCC.

139. On November,22,2024, Associate Professor McCausland, mentioned to the Plaintiff that the Plaintiff was on "academic probation" and that the APRB would meet on November 25,2025 and that they (Associate Professor McCausland and Dr. McGrath) would let the Plaintiff know about the "outcome of the APRB meeting". This statement by Associate Professor McCausland caused Plaintiff emotional distress and destabilization in their academic work within the HMS MMSCI program heightened by the improper "academic probation terms" that allowed only a single opportunity to for the Plaintiff to remain in the MMSCI program. On November 24,2024, the Plaintiff mentioned to Deans Gutlerner and Segal and Associate Professor McCausland and Doctor McGrath, that Plaintiff contacted Provost Glover because the Plaintiff often had no staff and or person available to consult within the HMS(Exhibit 36) regarding the significant discriminatory and retaliatory actions that the Plaintiff was subjected to by Defendants and or experiencing within the HMS MMSCI program and further that the Plaintiff contacted Provost Glover for guidance in her (Provost Glover's) capacity as the Harvard University Provost for Students' Affairs Officer.

140. On November 25,2024, Doctor McGrath issued a brief statement to the Plaintiff via email without explanation indicating that the Plaintiff's "academic status did not change". Moreover, the lack of any explanation and decision to refer Plaintiff to the APRB for withdrawal from the MMSCI by the Defendants which was unsupported by any Harvard University and or Harvard Medical School and or HMS Master's Student's Handbook and or MMSCI program policy reflects arbitrary and retaliatory conduct and pattern of Defendants actions against Plaintiff thus raising questions on fairness, consistency and legitimacy of the multiple non HMS Master's Student's Handbook based academic disciplinary academic warnings, referrals to APRB and sanctions against the Plaintiff by the Defendants.

**Disparate Treatment in Research Mentorship and "CI706: MMSCI Mentored Research" Research Course, Selective Imposition of Academic Conditions Outside the Established Formal Program Syllabus and Denial of Academic Review of Plaintiff's Research by Defendants.**

141. In November 2024, during a meeting with the Associate Professor McCausland and Doctor McGrath and the Plaintiff, the Plaintiff raised legitimate academic concerns regarding the initial

65

potential mentor, (Doctor Amir Mohareb) who lacked the necessary data for the Plaintiff to conduct the C1706: MMSCI Mentored Research" course research in accordance with the MMSCI program's formal "C1706: MMSCI Mentored Research" course syllabus(Exhibit ). Doctor Mohareb directed Plaintiff to use publicly available data to conduct their (Plaintiff's) research thesis. When Plaintiff raised the issue of Doctor Mohareb  lacking necessary data set for the Plaintiff to conduct C1706: MMSCI Mentored Research" course research with Associate Professor McCausland and Doctor McGrath, they (McCausland and McGrath) told the Plaintiff that "using publicly available data was acceptable" ,while all other students in the MMSCI program 2024-2026 cohort used datasets from their research mentors' existing research projects, contradicting the HMS MMSCI program requirement of students using data sets from Harvard affiliated mentor laboratories. During this meeting with Associate Professor McCausland and Doctor McGrath,in November 2024 Plaintiff requested with Associate Professor McCausland and Doctor McGrath, to identify a new potential research mentor, consistent with the MMSCI program syllabus and other MMSCI program students conducting "CI706: Mentored Research" course research using data sets from their research mentors  and some of whom(MMSCI students) were still in the process of securing research mentors for their research projects. In response, Doctor  McGrath stated the following to the Plaintiff, that: (1) even if the Plaintiff independently searched and or found a new potential research mentor, they (Associate Professor McCausland and Doctor McGrath) would decide whether they would award to the Plaintiff the 10% grade in the "CI706: Mentored Research" course for the first research milestone; (2) that  Plaintiff was "not ready" for a content expert. In fact and practice, the potential mentor, Doctor Amir Mohareb ("Dr.Mohareb")did not have the necessary dataset or research resources required by the HMS MMSCI program syllabus for Plaintiff to complete the "C1706: MMSCI Mentored Research" course thesis research projects while one Brown student in the HMS MMSCI who switched a research mentor after already conducting some "CI706: Mentored Research" course research under the mentorship of their research mentor was subjected to similar academic treatment and or conditions as the Plaintiff. No other student in the HMS MMSCI 2024 to 2026 cohort academic program used publicly available data to conduct their "C1706: MMSCI Mentored Research" course thesis research, and students HMS MMSCI program 2024 to 2026 cohort whose research mentors lacked available data had those mentors obtain datasets from their(mentor's)colleagues. Importantly further contradicting Doctor McGrath's statement to the Plaintiff on October 1,2024

that Doctor Mohareb would help the Plaintiff identify research projects based on his (Doctor Mohareb's) datasets (Exhibit 120). As a result, Plaintiff was the only student in the HMS MMSCI program leadership effectively being forced by the Defendants to use publicly available data to conduct research in "CI706: Mentored Research" course despite the MMSCI program's formal syllabus and or notice and or expectation that MMSCI students conduct research using datasets provided through their research mentor's laboratory and or research work, subjecting the Plaintiff to a separate academic standard not included in the formal MMSCI syllabus than all similarly situated students in the HMS MMSCI program 2024 to 2026 cohort supports an inference to discriminatory treatment against the Plaintiff by the Defendants.

142. Between November and December 2024, the HMS MMSCI program administrators communicated to the Plaintiff about Plaintiff's progress with their "C1706: MMSCI Mentored Research" course first milestone research topics and informed the Plaintiff that the HMS MMSCI program sends formal notice to students who may not have completed the first milestone progress report in "C1706: MMSCI Mentored Research" course at the required official milestone timeline per the HMS MMSCI program syllabus. Plaintiff explained to the HMS MMSCI program administrators the challenges that the Plaintiff had and or was facing with the Plaintiff's first research mentor and the Plaintiff's progress with their current research mentor (Doctor Lisa Bebell), at all relevant times. This communication is evidenced in Plaintiff's regular email communications to the HMS MMSCI program administrators on December 12 and December 31, 2024, about the Plaintiff's progress in the research course "C1706: MMSCI Mentored Research" course including the Plaintiff's updating the MMSCI program on the Plaintiff's research progress and seeking guidance from the MMSCI program.

143. Plaintiff subsequently presented and or completed their "C1706: MMSCI Mentored Research" first thesis milestone research topics on December 19, 2024 and submitted the final "CI706: MMSCI Mentored Research" course thesis research report on January 6, 2025, both under the mentorship of the Plaintiff's research mentors including Doctors Lisa Bebell and Michael Monuteaux and Doctor Marquez Carrine. Despite this notification and or completion of the CI706: Mentored Research" course first thesis milestone research topics progress meeting and submission of the report by the Plaintiff, the HMS MMSCI program leadership did not

award the Plaintiff a grade for the completed "MMSCI Mentored Research CI706" course first thesis milestone research topics progress meeting by the Plaintiff on January 6,2025. Instead, the HMS MMSCI program leadership awarded the Plaintiff an incomplete (INC) grade in "CI706: MMSCI Mentored Research" course first research milestone topics despite completion of the first milestone research topics per the HMS MMSCI program syllabus. The stated reason by the Defendants was that the Plaintiff had recently met their research mentor while similarly situated students in the HMS MMSCI academic program 2024 to 2026 cohort, who first met with their research mentors at the same time as the Plaintiff or even later, in October or November 2024, including one White student in the MMSCI program who first met with their "CI706: MMSCI Mentored Research" course research mentor in November 2024 and presented their initial "CI706: MMSCI Mentored Research" course research topic milestone approximately one week later, also in November 2024 while one other MMSCI student presented their initial "CI706: MMSCI Mentored Research" course in Spring 2026 and yet Defendants did not award these similarly situated students an incomplete(INC) grade  and or direct these similarly situated students to repeat presenting the same "CI706: MMSCI Mentored Research" course research topics that they had previously completed these because they had "recently" first met their research mentors at the same time as the Plaintiff or even later, in October or November 2024, neither did impose non-established formal MMSCI program syllabus conditions on these students nor subsequently awarded these similarly situated MMSCI students a failing grade in "CI706: MMSCI Mentored Research" course.

144. On January 5,2025, the HMS Registrar's Office instructed the Plaintiff to complete the first thesis milestone research topics progress meeting contract for the "CI706: MMSCI Mentored Research" course by March 31, 2025. Plaintiff promptly informed the HMS Registrar's Office that this requirement "CI706: MMSCI Mentored Research" course first milestone research topics had already been fulfilled by the Plaintiff, as the Plaintiff had completed the first thesis progress meeting had been completed prior to that date on December 19,2024 on January 6,2025(Exhibit 101)

145.On or about January 8,2025, in a meeting scheduled by the MMSCI program directors, Associate Professor McCausland and Doctor McGrath and the Plaintiff, just shortly following

completion and submission of the first research milestone research topics thesis report by Plaintiff on January 6,2025, Associate Professor McCausland ,specifically questioned Plaintiff if the "CI706: MMSCI Mentored Research " course first milestone research topics thesis report that Plaintiff submitted via the Canvas application students learning Plaintiff on January 6,2025 was the Plaintiff's original research work or if Plaintiff asked the Plaintiff's research mentor (Doctor Lisa Bebell's) work and submitted it as Plaintiff's own "CI706: MMSCI Mentored Research " course first milestone (Exhibit 147), an accusation of academic dishonesty selectively directed at Plaintiff by Defendant, Associate Professor McCausland and upon information and belief not directed at any other student in the HMS MMSCI academic program 2024 to 2026 cohort by Defendants.

146. In response to Associate Professor McCausland, Plaintiff clarified that Plaintiff conducted the "CI706: MMSCI Mentored Research" course work under the "CI706: MMSCI Mentored Research" course mentor's (Doctor Lisa Bebell's) direct mentorship and or supervision per the HMS MMSCI program syllabus.

147.Associate Professor McCausland also informed the Plaintiff during the meeting on or about January 8,2025, that the HMS MMSCI program leadership had scheduled a meeting with the Plaintiff's research mentor (Doctor Bebell) later but within the week of on or about January 8,2025. Doctor Bebell confirmed with the Plaintiff during a routine and scheduled thesis research meeting between January 2025, that she (Doctor Bebell) met with the HMS MMSCI program leadership(Doctor McGrath) in January 2025.Dean Guterlner's email and or letter on February 27,2025 also confirmed that a meeting between Doctor Bebell and the HMS MMSCI program leadership happened in January 2025 ,following submission of the first milestone research topics by the Plaintiff on January 6,2025. Following this research mentor's (Doctor Bebell's) meeting with Doctor McGrath, the Plaintiff observed that the research mentor (Doctor Bebell's) behavior became noticeably less supportive than it had been previously, which caused Plaintiff significant emotional distress and concern regarding continued research mentorship under the mentorship of Doctor Bebell. Notably, the MMSCI program leadership mentioned on July 8,2024 to the MMSCI program 2024 to 2026 cohort students about some mentor mentee difficult relationships previously experienced by some former MMSCI students who changed a research mentor. Notably one Brown student in the MMSCI program 2024 to 2026 cohort changed a research

mentor after this student had already established a working research relationship with their initial research mentor. This MMSCI program 2024 to 2026 cohort student had personally told Plaintiff about the difficult mentor mentee relationship this MMSCI program 2024 to 2026 cohort student had with their initial research mentor that they had switched from, and without any academic and or research penalty from Associate Professor McCausland, Doctor Martina McGrath and Deans Rosalind Segal and Johanna Gutlerner that they subjected Plaintiff to described herein including "interim thesis meeting", "March 14,2025" deadline under the threat of failure in research course ("CI706: MMSCI Mentored Research" course) and withdrawal from the HM MMSCI program, demonstrates discriminatory treatment of Plaintiff within the MMSCI program by Defendants.

**Selective Enforcement of Non-Established Program Conditions by Doctor Martina McGrath on the Plaintiff to Repeat Presentation of Course Work as a Condition of Receiving Course Credit Requirement in the Program Syllabus, Despite Plaintiff's Successful Completion of Mentor-Supervised Research Milestone Requirements.**

148. Shortly, on January 29 ,2025, just over three weeks and two days following completion and submission of the first milestone research topics thesis report by the Plaintiff on January 6,2025, Doctor McGrath scheduled a meeting with Plaintiff and during the meeting, Doctor McGrath instructed the Plaintiff to repeat presenting the completed initial "CI706: MMSCI Mentored Research" course thesis research milestone presentation in February 2025  to "demonstrate additional progress" and as a "condition" for the Plaintiff to receive a grade in "CI706: MMSCI Mentored Research " course, the formal HMS MMSCI program and or the "CI706: MMSCI Mentored Research " course governing syllabus defines the exclusive requirements for successful completion of the HMS MMSCI program and or "CI706: MMSCI Mentored Research " course and contains no "interim meeting to demonstrate additional progress" and as a "condition" for the Plaintiff to receive a grade in "CI706: MMSCI Mentored Research " course, neither any provision for additional requirements, discretionary, or post-completion conditions imposed outside of it beyond the point of  the "MMSCI Mentored Research CI706" course syllabus first milestone research topics presentation and submission of the thesis report per the HMS MMSCI program .The next formal course "MMSCI Mentored Research CI706", milestone (research proposal) was due in future May 2,2025.The reason cited by Doctor McGrath  during the January 29,2025 meeting for having instructed the Plaintiff to repeat the first milestone

research topics presentation despite the Plaintiff's prior completion of the requirement and its approval by the Plaintiff's research mentor, Doctor Bebell per the formal MMSCI program syllabus was that the mentor–student relationship between Doctor Bebell and the Plaintiff was still considered "new". HMS MMSCI 2024 to 2026 cohort students in comparable academic circumstances including students in HMS MMSCI program who first met with their research mentors at the same time as the Plaintiff, in October 2024 and or even later November 2024. Another student who first met with their research mentor in November 2024 and presented their initial "CI706: MMSCI Mentored Research" course research topic milestone approximately one week later, also in November 2024, and a student in the MMSCI program did not present their initial first milestone research topics originally due in Fall (November) 2024 until Spring 2025 were not subjected to the additional requirements, grading penalties, or procedural barriers imposed on the Plaintiff as a condition for receiving course credit in "CI706: MMSCI Mentored Research" course.

149. In the January 29,2025 meeting, when the Plaintiff, having already satisfied all program "MMSCI Mentored Research CI706" course requirements, raised this inconsistency and sought clarification from Doctor McGrath during the meeting on January 29,2025, In response, Doctor McGrath asked the Plaintiff to identify which specific students were being referenced. The Plaintiff clarified that the comparison was based on the Plaintiff's fellow HMS MMSCI 2024 to 2026 cohort students who had first met their research mentors and or completed their "CI706: MMSCI Mentored Research", first milestone research topics progress meetings at the same time as the Plaintiff between October 2024 and January 2025 without the HMS MMS MMSCI program leadership and or Deans Gutlerner and Segal imposing on them non-established formal HMS MMSCI program conditions to conduct an "additional statistical research work", "interim thesis meeting by "March 2025 deadline" and 'March 14,2025 deadline" "interim progress meeting" after completion of the first research milestone as a condition for receiving a grade in "CI706: MMSCI Mentored Research" course, reflecting the inconsistency with the standard and formal MMSCI program and or "MMSCI Mentored Research CI706" syllabus and academic practice.

71

150. On February 1st,2025, the Plaintiff inquired with Doctor McGrath and Associate Professor McCausland whether their directive for the Plaintiff to repeat the presentation of the first research topic thesis milestone despite its completion and approval by the Plaintiff's research mentors including Doctors Bebell and Monuteaux, effectively entailed a change of research topics or searching for a new research mentor as the Plaintiff had already completed the first milestone research topics under the mentorship of Doctors Bebell and Monuteaux. The Plaintiff also noted that other students in the same MMSCI 2024 to 2026 cohort, who first met with their research mentors at the same time as the Plaintiff in October 2024 or later than the Plaintiff in November 2024 including a student who first presented their research topic only one week after their initial meeting with their research mentor in November 2024 were not directed  by program leadership including Doctor McGrath and Associate Professor McCausland and or Deans Segal and Gutlerner to repeat the presentation of their "CI706: MMSCI Mentored Research " course first milestone research topic including an "additional statistical research work", "interim thesis meeting by March 2025 deadline" and 'March 14,2025 deadline" "interim progress meeting" as a condition for demonstrating progress and or receiving credit in"CI706: MMSCI Mentored Research " course." In response, program leadership (Doctor McGrath and Associate Professor McCausland )declined to provide a substantive response to the Plaintiff's questions directly in writing rather than addressing the disparity, with Professor McCausland stating in substance that *"We will readdress your concerns and any other questions when we meet, email does not seem to be a useful method to have these conversations, "* (Exhibit). While Doctor McGrath instead responding in substance that *"on this one question, I can answer this quickly and to be very clear we are most appreciative of the mentorship you are getting from your mentor, ...we recognize that this relationship appears to be working out well for you... I will leave all the rest of your questions to discuss face to face. ".* These responses by Associate Professor Finnian McCausland and Doctor McGrath to the Plaintiff suggest that Defendants sought to avoid addressing substantive legitimate academic questions limiting providing meaningful responses and academic support. Under the HMS Masters Handbook. 2.03 incomplete. 4.Grading and Examinations. Provides that an "INC" (incomplete) "grade signifies a failure to complete course requirements among others due to a compelling and serious reason", and that "such grades must be resolved within six (6) months, or a failing grade will be recorded". However, Plaintiff had already completed the required "CI706: MMSCI Mentored Research" course first milestone

research topics but was not awarded a grade in "CI706: MMSCI Mentored Research" course first milestone research topics.

151.Plaintiff was further concerned by the MMSCI program leadership's and or Deans Gutlerner and Segal's shifting and inconsistent explanations regarding the "CI706: MMSCI Mentored Research" course selectively imposed "additional statistical research work", "interim thesis meeting by March 2025" and "March 14,2025 deadline" , which were not outlined in the established formal HMS MMSCI program syllabus and or HMS Master's Student's Handbook policies and were not applied to other HMS MMSCI students and the Plaintiff had to work on the Plaintiff's next first milestone research protocol due by May 2,2025 and with the improperly issued incomplete (INC) grade by Defendants to the Plaintiff despite completion of the "CI706: MMSCI Mentored Research" course first milestone research topics by the Plaintiff. Under the HMS Masters Handbook. 2.03 incomplete. 4.Grading and Examinations. Provides that an "INC" (incomplete) "grade signifies a failure to complete course requirements among others due to a compelling and serious reason", and that "such grades must be resolved within six (6) months, or a failing grade will be recorded" (Exhibit 37). However, Plaintiff had already completed the required "CI706: MMSCI Mentored Research" course first milestone research topics but was not awarded a grade in "CI706: MMSCI Mentored Research" course first milestone research topics, instead Defendant awarded Plaintiff an incomplete (INC) grade in "CI706: MMSCI Mentored Research" (Exhibit 38).

152.In February 2025, Plaintiff sought to change their research mentor the plaintiff then requested permission to secure a new research mentor. The HMS MMSCI program leadership including Associate Professor McCausland and Doctor McGrath and Gutlerner and Segal did not allow the Plaintiff to secure a new research mentor, stating that the Plaintiff must conduct their thesis research project under the mentorship of Doctor Lisa Bebell(Exhibit 39).

153.These HMS MMSCI faculty members, including Associate Professor Finnian McCausland, Doctor Martina McGrath and or Deans Segal and Gutlerner were neither the Plaintiff's mentors nor the primary or research subject-matter experts in the Plaintiff's field of research thesis in the MMSCI program. According to the Masters Handbook2.14 Credit for Mentored Research provides

73

that "all mentors may ensure an appropriate environment for research based on the individual students' needs and objectives, the student's research may be conducted in collaboration with faculty from other entities either within or outside Harvard. The HMS faculty mentor shall be fully responsible for the students' progress and for evaluation during the conduct of the research".

154.In this case, Doctor Bebell was solely responsible for evaluating the Plaintiff's research progress in "CI706:MMSCI Mentored Research" course first milestone research topics during the Plaintiff's research activities , consistent with the role of research mentors assigned to other students in the program and, as the primary subject-matter expert in the relevant area of research, Doctor Bebell did not have any outstanding or unresolved research work or comments regarding the Plaintiff's first milestone research topics and the fact that all MMSCI students received the required statistical research feedback for the first milestone research stage and was required to be addressed in the second milestone research stage of research protocol that was not due until May 2,2025. Upon information and belief, the  HMS MMSCI program leadership including Associate Professor Finnian McCausland, Doctor Martina McGrath and or Deans Segal and Gutlerner did not subject other HMS MMSCI students' "CI706:MMSCI Mentored Research" course research work to "additional statistical research work", "interim thesis meeting" by "March 2025" under the threat of failure in "CI706:MMSCI Mentored Research" course and withdrawal from the MMSCI program In fact, Deans Segal and Gutlerner did not serve as HMS MMSCI program teaching faculty to the HMS MMSCI students. Furthermore, Associate Professor McCausland, Doctor McGrath and Deans Segal and Gutlerner  had never acted jointly to impose or enforce any "additional statistical research work", "interim thesis meeting by March 2025" and "March 14,2025", beyond those specified in the first milestone research topics of the "CI706: MMSCI Mentored Research" course syllabus deadline and or enforce any HMS MMSCI non-established formal syllabus course and  or " CI706:MMSCI Mentored Research" course deadline under threat of failure on any other similarly situated HMS MMSCI students including students who completed their first milestone research topics between October and November 2024, and all students who received the required statistical research work from their research mentors as required under threat of failure in " CI706:MMSCI Mentored Research" course and upon information and belief students who had not yet presented their initial first milestone research topics by March 2025.

155. In February 2025, after the Plaintiff completed the first milestone research topics report and pending receipt of study data sets from the Plaintiff's research mentor, Doctor Bebell, she (Doctor Lisa Bebell) altered the sample size of the research study data after the Plaintiff had completed the first research milestone, directly affecting subsequent research milestones(research protocol) and the overall research outcomes, thereby placed the Plaintiff's academic research progress for the first research milestone and or second research milestone at risk going forward.(See, *"The sample size critically affects the hypothesis and the study design, and there is no straightforward way of calculating the effective sample size for reaching an accurate conclusion "Serdar CC, Cihan M, Yücel D, Serdar MA. Sample size, power and effect size revisited: simplified and practical approaches in pre-clinical, clinical and laboratory studies. Biochem Med (Zagreb). 2021 Feb 15;31(1):010502. doi: 10.11613/BM.2021.010502. Epub 2020 Dec 15. PMID: 33380887; PMCID: PMC7745163"(Exhibit 40).*

156.During a research meeting on Zoom for Harvard platform with the Plaintiff's research mentor  Doctor Lisa Bebell in February 2024 ,Doctor Bebell who served as the Plaintiff's primary research mentor and expert in the research field but not MMSCI program faculty, Doctor Bebell told the Plaintiff that the MMSCI program "might" require repeating the first thesis milestone research topics progress meeting due to a supposed "syllabus change" and that "HMS MMSCI program leadership has the power" make such changes. In fact, the MMSCI syllabus did not change, not even in the middle of the semester in 2024 to 2025 academic year at all relevant times and all students are subject to the same standard HMS MMSCI program syllabus and notification that the MMSCI should apply consistently to all students in the HMS MMSCI program. With records retained in the Harvard Medical School's and or Harvard University's data system are producible during discovery.

**HMS MMSCI Program Leadership, Associate Professor McCausland and Doctor McGrath Denied Review of Plaintiff's Research Poster They Afforded to All Other MMSCI Students.**

157.On February 4, 2025, "CI706:MMSCI Mentored Research" course research day poster presentations required of all students in the HMS MMSCI program cohorts one(1) and two(2) , MMSCI program leadership including Associate Professor McCausland and Doctor McGrath did

75

not review the plaintiff's research poster, while program leadership reviewed the research poster of all of Plaintiff's colleagues in the HMS MMSCI program cohorts one(1). Dr. McGrath specifically reviewed the research posters of all other students in the HMS MMSCI 2024 to 2026 cohort on the lower side of the room designated for poster display presentations, where the plaintiff's poster was also displayed among those of peers as all students in the MMSCI program 2024 to 2026 cohort stood by their respective posters but did not only review the Plaintiff's research poster as Doctor McGrath skipped over review of Plaintiff's research poster but reviewed the research posters of all other MMSCI students 2024 to 2026 cohort on the lower side of the room for poster presentations while Associate Professor McCausland only reviewed research posters for all of the students on the upper side of the room for poster presentations and did not review the research poster of the Plaintiff as well.

158.On February 5, 2025, during a Zoom meeting, on Zoom for Harvard, platform (with records retained in the Harvard Medical School's and or Harvard University's data system are producible during discovery), with HMS MMSCI program leadership Associate Professor McCausland and Doctor McGrath. Associate Professor McCausland, MMSCI program administrator Ms.Molly and Doctor Bebell, Associate Professor McCausland informed the Plaintiff that the meeting would last thirty( 30) minutes and further noted that if the Plaintiff had any questions the plaintiff would raise them(questions) at a *"future meeting"* with the HMS MMSCI program leadership despite the fact that there was not any scheduled *"future meeting"* between the HMS MMSCI program leadership and the Plaintiff at that time and the fact that the HMS MMSCI program students were actively conducting research while the HMS MMSIC program leadership were not permitting Plaintiff to conduct research on feasible research topics and or according to the Plaintiff's research interest as provided the HMS Master's Student's Handbook. This meeting also happened while Plaintiff had a class for "CI 704: Scientific Communication" course which was co tutored by both Doctor Youssef MK Farag ("Dr.Faraq") and Doctor McGrath but it was Doctor Youssef Farag who tutored that day) ongoing by Doctor Youssef Farag)Despite Associate Professor McCausland, not granting Plaintiff any time and or opportunity to talk during the thirty( 30) minutes on February 5,2026 ,the Plaintiff still spoke and or raised a question(s) with the HMS MMSCI program leadership including Associate Professor McCausland and Doctor McGrath during the last minutes of the meeting  as to why the Plaintiff

was directed to repeat presenting the "CI706:MMSCI Mentored Research" course first milestone research topics already completed by the Plaintiff per the MMSCI program syllabus and why the program leadership(specifically Doctor McGrath) did not review the Plaintiff's research poster on February 4,2025, while the research posters of all of the Plaintiff's colleagues in the HMS MMSCI program  2024 to 2026 cohort had been reviewed by the program leaders including Associate Professor McCausland and Doctor McGrath .Plaintiff specifically asked why MMSCI program Co-Director, Doctor McGrath had excluded the Plaintiff's research poster from review while Doctor McGrath reviewed the research poster of all other colleagues of the Plaintiff in the HMS MMSCI 2024 to 2026 cohort. Doctor McGrath provided shifting and irreconcilable explanations in response regarding the review of Plaintiff's research poster: first, Doctor McGrath asserting a preference by the HMS MMSCI program leadership(Associate Professor Finnian McCausland and Doctor Martina McGrath) for an "independent reviewer" for the Plaintiff's research poster on February 4,2025, and further also stated that Plaintiff's research poster had been reviewed by Dr. Youssef MK Farag, who was part-time, non- Harvard University affiliated faculty but a Faculty member of  the Johns Hopkins University ,despite HMS MMSCI program leadership co-chairing research mentorship projects in the HMS MMSCI program and reviewing all other HMS MMSCI 2024 to 2026 students' research posters and yet Doctor McGrath only excluded reviewing the research poster of Plaintiff's among all other students in the HMS MMSCI 2024 to 2026 cohort as directly observed by the Plaintiff on February 4,2025.  Notably, the MMSCI Program Syllabus did not include any requirement for an "independent reviewer" of research poster for any MMSCI student and or Plaintiff, nor was Plaintiff informed by program leadership including Associate Professor McCausland and Doctor McGrath that such an "independent reviewer"  would apply exclusively to Plaintiff until Plaintiff inquired with Associate Professor McCausland and Doctor McGrath during the February 5,2025 meeting as to the basis for Doctor McGrath selectively excluded Plaintiff's research poster from review while Doctor McGrath and or Associate Professor McCausland and Doctor McGrath reviewed research posters of all other MMSCI students.

159.On February 7,2025, Plaintiff requested with Associate Professor McCausland and Doctor McGrath and Deans Gutlerner and Segal to conduct  the "CI706:MMSCI Mentored Research" course first milestone research topics on feasible research topics especially that Doctor Bebell

had declined to mentor the Plaintiff on feasible research topics (even other research topics that the Plaintiff and Doctor Bebell had previously developed together) ,and also in accordance with the HMS Masters Handbook. 2.14. Credit for Mentored Research provides that all mentors may ensure an appropriate environment for research based on the individual student's needs and objectives.

160.From January 2025 to March 2025 in the Spring 2025 semester ,until the HMS MMSCI program improperly issued the Plaintiff a "failing grade" in "CI706: MMSCI Mentored Research" course and wrongfully "required to withdraw" from the HMS MMSCI program by the Defendants, Plaintiff strongly expressed interest in pursuing new and or feasible research projects with the HMS MMSCI program and showed clear willingness and commitment to conducting new research topics efficiently. Important to note is that conducting all "CI706: MMSCI Mentored Research" course research milestones were and or is solely a student's (in this case the Plaintiff's) responsibility per the HMS MMSCI program policies and could be completed within a short time; indeed, the Plaintiff under the mentorship of the Plaintiff's research mentors previously developed multiple research topics in a single meeting. This is evidenced by the Plaintiff's ability to have completed the "CI70: MMSCI Mentored Research" course first milestone research topics  presentation on December 19, 2024,and the submission of the first milestone thesis research topics report on January 6,2025, in approximately eighteen (18) days after the Plaintiff had first presenting their initial first milestone research topics on December 19, 2024, demonstrating both efficiency and a strong commitment to advancing their research and or academic work.

161.In summer 2024, the HMS MMSCI program directed students in their first summer 2024 semester in the HMS MMSCI academic program to identify and submit a list of potential "CI70: MMSCI Mentored Research" course research mentors aligned with their research interests, in coordination with program leadership. The HMS MMSCI program policy further requires that all research milestone presentations must include both a primary and content potential mentors.

162.on July 8,2024(summer 2024), Associate Professor McCausland and Doctor McGrath further asserted that students must work on feasible research projects as noted in the "CI70:

MMSCI Mentored Research" course syllabus and progress report and the program /director's faculty then reach out to these individual potential mentors on the students' behalf to seek mentorship opportunities. Doctor McGrath coordinated the outreach for potential mentors on behalf of students. The program itself acknowledged that outreach conducted by faculty received and or receives a significantly higher response rate than outreach conducted directly by students as stated by Doctor McGrath on July 8,2024. The Plaintiff received a response from the potential mentor, Doctor Amir only after Doctor McGrath initiating contact and MMSCI program faculty and or leadership play a direct role in contacting and facilitating mentorship relationships.

163.Although some students individually secured and or their research mentors, the MMSCI program co-director, Doctor McGrath, initiated contact with the Plaintiff's first potential mentor, Doctor Mohareb and facilitated the mentorship arrangement, with this potential mentor (Doctor Mohareb),(Exhibit 42) who only communicated with the Plaintiff through the MMSCI program codirector, Doctor McGrath's intervention. In this case of the Plaintiff, second potential mentor, Doctor Amir Mohareb was affiliated with a Harvard teaching hospital, Massachusetts General Hospital, but did not possess a research dataset that could be used for the Plaintiff's research project.

164. On July 8,2024, during the HMS MMSCI 2024 to 2026 program orientation held in the Tosteson Medical Education Center ("TMEC"), room 227, the HMS MMSCI program co-directors, Associate Professor McCausland and Doctor McGrath stated to the HMS MMSCI 2024 to 2026 cohort students that HMS MMSCI students can change research mentors and or research topics. Doctor McGrath further illustrated this to the HMS MMSCI students by referencing two former HMS MMSCI students and or graduates including Ms. and Ms.Sanya Thomas, who were introduced by the HMS MMSCI program leadership (Doctor McGrath) as speakers at the July 8, 2024 HMS MMSCI 2024 to 2026 cohort orientation, who later served as HMS MMSCI course teaching assistants  to the HMS MMSCI 2024 to 2026 cohort orientation in the following courses including "CI701: Clinical Data Science; Design and Analytics I" and course  "CI708A Clinical Data Analytic Analytics 11" in summer 2024 and CI702 B: Clinical Trials Part II  in Spring 2025.

79

165.During the HMS MMSCI program orientation day on July 8, 2024, the two former HMS MMSCI students and or graduates including Ms. Saman Asad Siddiqui and Ms.Sanya Thomas, who also later served as HMS MMSCI course teaching assistants "CI700: Ethics and the IRB" course and in "CI704: Scientific Communication", respectively, shared their personal experiences of changing research mentors and/or research topics in the later stages of their HMS MMSCI first academic year, including during the spring semester. while still graduating from the HMS MMSCI program in two years as expected per the HMS MMSCI program policy.

### Defendant, Dean Rosalind Segal, Repeatedly Directed Plaintiff to Leave the HMS MMSCI Academic Program Less Than Six Weeks Prior to Plaintiff's Wrongful "Requirement to Withdraw from the MMSCI Program Defendants

166.On February 10,2025, Plaintiff met with Dean Segal via Zoom for Harvard platform, Dean Segal, repeatedly told the Plaintiff to *"leave the MMSCI academic program"* if the Plaintiff wished to change research topics to feasible ones as previously expressed to Deans Segal and Gutlerner and Associate Professor McCausland and Doctor McGrath the Plaintiff's interest to change their research topics to feasible ones that the Plaintiff could conduct research on as a student with the full responsibility to conduct the research , despite the MMSCI program policy requiring students to work on feasible research projects and or allowing them(MMSCI students) to develop their own topics under faculty mentorship and change mentors if they need to as stated by Associate Professor McCausland and Doctor McGrath to the Plaintiff's class on July 8,2024. This statement by Dean Segal created more hostile academic environment to the Plainti[ and it caused the Plaintiff additional emotional distress and demotivation in the academics.

### Selective Enforcement of Academic Conditions Outside the Established Formal MMSCI Program Syllabus and Not Required for the Initial Research Milestone by Defendant, Associate Professor Finnian McCausland.

167. On February 18,2025, HMS MMSCI program leadership(Associate Professor McCausland) acknowledged the Plaintiff's request to the HMS MMSCI program to conduct their thesis research on new and or feasible research topics but the same HMS MMSCI program leadership and Deans Gutlerner and Segal denied the Plaintiff's request to conduct research on new and feasible research topics, with Associate Professor stating in its part that the HMS MMSCI program leadership *"feel"(s)* that changing a new and or feasible research topics as requested by the Plaintiff would "waste time," In contrary the HMS MMSCI program leadership denied the Plaintiff an opportunity to secure an alternate research mentor and or conduct research on feasible research projects while simultaneously imposing a selectively applied non-syllabus "March 14,2025 deadline" only on the Plaintiff to repeat presenting the same and previously completed research topics under threat of failure in "CI706:MMSCI Mentored Research" course and withdrawal from the HMS MMSCI program for close to two months (between January and until March 2025 the time the HMS MMSCI program improperly issued the Plaintiff a failing grade and withdrew the Plaintiff from the HMS MMSCI program.

168. Notably, no established and published HMS MMSCI program and or HMS Master's Student's Handbook policy or course syllabus requires and or mandates HMS MMSCI students and or the Plaintiff to work with a designated and or specific research mentor or designated research topics existed. Accordingly, Plaintiff was not obligated by the HMS MMSCI program syllabus to work on a designated research topics with a designated research mentor in this case Doctor Lisa Bebell. Despite this, HMS MMSCI program leadership including Associate Professor McCausland and Doctor McGrath and Deans Gutlerner and Segal did not permit the Plaintiff to change research mentors and or research topics, thereby impeding the plaintiff's academic progress in the "CI706: MMSCI Mentored Research" course and or HMS MMSCI program. Doctor Lisa Bebell's unwillingness or inability to provide mentorship to the Plaintiff on feasible research topics as expressed by the Plaintiff and or required by the HMS MMSCI program should not have reasonably been used by Associate Professor McCausland and Doctor McGrath and Deans Segal and Gutelrner as grounds to wrongfully penalize and or fail the Plaintiff in "CI706:MMSCI Mentored Research" course and or wrongfully "require" the Plaintiff to "withdraw" from the MMSCI program which excluded the Plaintiff from academic participation or the ability to achieve the Plaintiff's academic goals and the Plaintiff has suffered

81

and continues to suffer emotional ,professional and educational harm because of the Defendant's retaliatory and wrongful adverse actions against the Plaintiff in the MMSCI program. In contrast ,a Brown student known to the Plaintiff within the HMS MMSCI program 2024 to 2206 cohort ,switched research mentors during the 2024 to 2025 academic year after having already established a working research relationship and conducting their first milestone research topics with their initial research mentor without Associate Professor McCausland and Doctor McGrath and Deans Gutlerner and Segal issuing this student an incomplete(INC) and or a "failing grade" in "CI706: MMSCI Mentored Research" course and this student progressed in the MMSCI program and upon information and belief will be graduating in a few weeks this week while the Defendants excluded the Plaintiff from achieving their academic dream in the MMSCI program. While on February 18,2025 Associate Professor McCausland further stated that the Plaintiff's request to conduct research on feasible research topics *"would, of course, need to be discussed with Dr Bebell."(Exhibit 121).*

169. On February 18, 2025, the Plaintiff contacted the Plaintiff's research mentor Doctor Lisa Bebell to request the opportunity to pursue new research topics from Doctor Bebell's research data sets and asked Doctor Bebell whether she (Doctor Bebell) would be willing to provide research mentorship to the Plaintiff while conducting new and or different research topics.

170.On February 18,2025, Associate Professor Finnian McCausland imposed "additional statistical work" on the Plaintiff, again a second reason, stated by the MMSCI program leadership, as a "condition" for the Plaintiff to "receive credit in "CI706 MMSCI Mentored Research", despite no HMS MMSCI program syllabus and or HMS Master's Student's noting that "additional statistical work" and "interim meeting" as "conditions" for MMSCI students to receive credit in "CI706 MMSCI Mentored Research" upon completion of the first milestone research topics and the fact that Associate Professor McCausland and Doctor McGrath and Deans Gutlerner and Segal did not impose such arbitrary demands on any MMSCI students who received the required statistical feedback to be addressed at the second research milestone of the research topics but not and or similarly situated students in the HMS MMSCI academic program ,2024 to 2026 cohort who first met with their research mentors at the same time as the Plaintiff or even later, in October or November 2024, including one White student in the MMSCI

program who first met with their "CI706: MMSCI Mentored Research" course research mentor in November 2024 and presented their initial "CI706: MMSCI Mentored Research" course research topic milestone approximately one week later, also in November 2024 ,one Brown student in the MMSCI program who did not present their initial first milestone research topics originally due in Fall (November) 2024 until Spring 2025 as a condition for receiving course credit in "CI706: MMSCI Mentored Research" course but upon information and belief Defendants awarded credit but not a failing grade in "CI706: MMSCI Mentored Research" course to these similarly situated students in the MMSIC program by Defendants demonstrates the discriminatory and retaliatory pattern of Defendants and the escalating retaliatory actions that Defendants subjected the Plaintiff to within the HMS MMSCI program.

171. Neither the directive by Associate Professor Finnian McCausland to repeat presenting the same research topics again to "demonstrate progress," nor the directive to incorporate "additional statistical work " designated for the second milestone research topics as part of the first milestone research topics and or "March 14,2025 deadline" constituted any part of the formal "CI706 MMSCI Mentored Research" course first milestone syllabus and or MMSCI program as a "condition for receiving credit at that stage of the "CI706 MMSCI Mentored Research" first milestone research topics. Rather, statistical feedback from each HMS MMSCI 2024 to 2026 cohort student's assigned program biostatistician was intended to be incorporated and addressed during the "CI706: MMSCI Mentored Research" second milestone research protocol course under the MMSCI program syllabus but instead the program leadership imposed it on the Plaintiff alone as yet, a second reason and a "condition for the Plaintiff to receive credit for the first research milestone in "CI706 MMSCI Mentored Research."

172. Nevertheless, the MMSCI program leadership including Associate Professor Finnian McCausland, Doctor Martina McGrath and Deans Segal and Gutlerner withheld the Plaintiff's 10% grade in "CI706:MMSCI Mentored Research" despite completion of "CI706 MMSCI Mentored Research" course first milestone research topics by the Plaintiff and Defendants cited purported "incomplete(INC) grade" that were tied to the selectively imposed "additional statistical research work", "interim thesis meeting  by March 2025" and "March 14,2025 deadline". Any

statement by the Defendants that the Plaintiff "needed to complete additional statistical work" to earn a credit(grade) in "CI706: MMSCI Mentored Research" course and is unsupported by the "CI706: MMSCI Mentored Research" course and or MMSCI syllabus. These conditions were not imposed by Defendants on similarly situated students in the HMS MMSCI program who following the same MMSCI program and course CI706 course syllabus and first met their research mentors at the same time as Plaintiff in October 2024 and or later in November 2024 and even all students who received the contrary to the Plaintiff's actual completion of the "CI706: MMSCI Mentored Research" course first milestone research topics by the Plaintiff.

173. Important to note at this point, is that Plaintiff had already been placed on "academic probation" and had been warned that "any future course failure would result in "automatic withdrawal" from the academic program or repetition of the first academic year in the MMSCI program while the Defendants continued to subject the Plaintiff to discriminatory and retaliatory treatment within the MMSCI program. Despite these circumstances, the Plaintiff successfully completed the required first milestone research work in course CI706 and the Plaintiff did not fail any MMSCI courses at that time in the Fall 2024 or Spring 2025 semester, thereby suggesting that Defendants were formulating an unsupported basis for failure of the Plaintiff in "CI706: MMSCI Mentored Research" course to ultimately justify "academic failure" and "requirement to withdraw" of the Plaintiff from the MMSCI program.

174. On February 18, 2025, in response to the Plaintiff, the Plaintiff's research mentor (Doctor Bebell) stated, "I do not have the time or bandwidth to help you develop new research topics." This was despite the expectation that research topics are typically developed collaboratively between the mentor and student (Plaintiff). With the student (Plaintiff) holding primary responsibility for conducting the research. Doctor Bebell wished Plaintiff well but effectively withdrew her mentorship support. Despite this, Professors McCausland and McGrath Deans Gutlerner and Segal.

175. On February 18, 2025, the Plaintiff contacted program leadership Associate Professor McCausland and Dr. McGrath and informed them that the Plaintiff's research mentor (Doctor Bebell) had declined to provide research mentorship on new and feasible research topics. As the

Plaintiff had expressed that the research topics previously pursued by the Plaintiff for the first milestone research topics were not feasible to continue conducting research on and Doctor Lisa Bebell had also infact changed the sample size after completion of first milestone research topics thesis report by the Plaintiff on January 6,2025.

176. The improperly issued incomplete (INC) grade in "CI706: MMSCI Mentored Research" course then served as the basis by Defendants for triggering a "failing grade" to the Plaintiff in "CI706: MMSCI Mentored Research" and the wrongful "requirement to withdraw" from the MMSCI program, a condition tied to the earlier "academic probation status". In effect, the improperly issued "incomplete (INC)" credit and subsequent issued "failing grade" in "CI706: MMSCI Mentored Research" course to the Plaintiff by Defendants was not a legitimate and or HMS Master's Student Handbook based reflection of the plaintiff's academic performance in the "MMSCI Mentored Research CI706" course, but the chain of discriminatory and retaliatory actions by Defendants against the Plaintiff suggests a pretext used to enforce the improperly issued "academic probation status' punitive terms against the Plaintiff by the Defendants.

177. Defendants' actions are inconsistent with and or contradicts the HMS Master's Student's Handbook 3.01 Under responsibility of Teachers, which provides in its part that teachers should "treat learners fairly, respectfully, and without bias related to their age, race, gender, sexual orientation, disability, religion or national origin". The disparate treatment of the Plaintiff by Defendants within the HMS MMSCI program particularly when compared to similarly situated students in the MMSCI 2024 to 2026 cohort who were granted course remediation examination opportunities as described in this complaint suggests a strong inference that the Plaintiff was not treated in a fair, neutral, and non-discriminatory manner and demonstrates a departure from required standards of fairness and nondiscrimination provided in the HMS Master's Student's Handbook resulting in significant academic and professional harm to the Plaintiff.

**Consequences of Defendants' Discriminatory and Retaliatory Denial of "CI700: Ethics and the IRB" Course Remediation Examination and Resulting "Monitored Academic Status" and Partly "Academic Probation Status" on the Plaintiff's Academic Status.**

178. The selective and discriminatory denial of course remediation examination to the Plaintiff and or non-HMS and or Harvard University policy placement of the Plaintiff on "Monitored

Academic Status" and "Academic Probation Status" and the denial of the Plaintiff's appeal for reconsideration of "Academic Probation Status" by the Defendants has caused the Plaintiff both tangible and intangible harm, including reputational damage, emotional distress, and diminished educational opportunities. Additionally, the Plaintiff has experienced and continues to experience emotional and psychological effects including stress, isolation, embarrassment and demotivation and it also damaged the Plaintiff's confidence and sense of belonging in the MMSCI academic program and the HMS and social life. The discriminatory and retaliatory actions of the Defendants deprived the Plaintiff's right to enjoy the MMSCI academic program and or the HMS and Harvard University academic experience.

179. Under the HMS Masters Student's Handbook, Structured academic categories, section 3. Academic Probation (Exhibit 43). "Academic Probation Status" is a formal notice issued by the APRB to a student (if legitimately applicable) that changes a student's status from "Good Standing" to "Academic Probation Status" and is noted permanently on the Plaintiff's HMS record. Under this same HMS Masters Student's Handbook, Structured academic categories, under section 3(Exhibit 440.HMS Students placed on "Academic Probation Status" are not allowed to serve on appointed committee at school and are required discontinue extracurricular activities. Such extracurricular activities which are essential for a student's personal development, leadership experience, and social integration.

180. The notation of "Academic Probation Status" on the Plaintiff's permanent academic record at the HMS because of Defendants' discriminatory and retaliatory academic actions against Plaintiff carries significant and lasting consequences on the Plaintiff and not only denied the plaintiff procedural fairness but also imposed restrictions that barred participation in HMS's and or Harvard University's extracurricular activities and effectively denied Plaintiff opportunities available to other Harvard students. As a result, the Plaintiff has been and or was deprived of meaningful academic opportunities to build skills and engage with Plaintiff's peers (fellow MMSCI students) at the HMS or Harvard University.

181. Additionally, the notation of "Academic Probation Status" on Plaintiff's permanent record has harmed the Plaintiff's future educational and professional opportunities, Beyond the formal

86

record, the academic probation status has also caused the Plaintiff significant emotional distress and stigmatized the Plaintiff within the MMSCI academic program and the Harvard Medical School and or Harvard University community and social life. This is especially concerning given that similarly situated students in the MMSCI academic program were later granted remediation examinations while Defendants denied the Plaintiff remediation examination on an individual basis raising serious concerns about fairness and legitimacy of the application of the HMS MMSCI program and Master's Student's Handbook policies by Defendants identified by the Plaintiff in the formal complaint filed with the Harvard OCC.

182. This escalating academic disciplinary responses and or sanctions described herein by the Defendants constituted improper academic sanction for engaging in a legitimate academic request for assistance and or guidance. Additionally, the APRB committee's decision to pursue severe academic disciplinary action against the Plaintiff suggests that the process of the academic sanction was not genuinely grounded in stablished Harvard Medical School policy and or Harvard University policy but in improper and retaliatory considerations by Defendants which contributed to a hostile educational environment to the Plaintiff. These circumstances caused the plaintiff significant emotional distress and further reinforced the perception that adverse actions were taken by the Defendants in response to Plaintiff's attempts to raise legitimate academic concerns, rather than based on appropriate and neutral application of formal HMS MMMSCI program policies. As a result, Plaintiff reasonably felt intimidated by Defendants' discriminatory and retaliatory actions and reasonably understood that continued enrollment in the MMSCI academic program to depend not on adherence to established MMSCI program policies or syllabus requirements that are intended to consistently govern all students in the HMS MMSCI academic program but on selective discretionary decisions by HMS MMSCI program leadership and or staff identified in the plaintiff's complaint of discrimination where transparency was not clearly conveyed to the Plaintiff .This created a hostile academic environment to the Plaintiff, raising questions on fairness, transparency, and trust in the MMSCI and or HMS Master's Student's Handbook academic disciplinary processes and policy.

183.The pattern of retaliation by the Defendants shows that initial threats of withdrawal of Plaintiff from the MMSCI program for raising legitimate academic concerns with Harvard

University faculty and authorities, unresolved at the MMSCI program level, recurred from summer 2024 semester until Plaintiff was wrongfully issued a "failing grade" in "CI706: MMSCI Mentored Research" course and or "required to withdraw" from the MMSCI program in Spring 2025. Defendants' discriminatory and retaliatory actions against Plaintiff described in this complaint support an inference of retaliatory and discriminatory conduct for the Plaintiff exercising the protected right to seek academic support and raise academic concerns affecting their emotional and or mental wellbeing and resulting academic performance and progress in the MMSCI program.

184. At all relevant times, the MMSCI program consisted of only students, including Plaintiff. Unlike the Plaintiff, these two remaining Black students in the HMS MMSCI program were from the same place of origin and, upon information and belief these two Black students did not require and or request remediation examination in "CI700: Ethics and the IRB" course in summer 2024 semester and were not subjected to discrimination, retaliation and or selective enforcement by the Defendants comparable to those imposed upon the plaintiff as described in this complaint and did raise academic concerns and or file formal complaints of discrimination or bullying with Harvard OCC against Defendants. Unlike Plaintiff, those students and or any HMS MMSCI students were not subjected to non-established formal MMSCI program syllabus conditions of "interim thesis meeting" and "additional statistical work" and or "March 14,2025 deadline" under the threat of failure in "CI706: MMSCI Mentored Research" course and improperly issued a "failing" and or incomplete grade in "CI706: MMSCI Mentored Research" course ,"failing grade" based upon research mentor no responsiveness or inability to secure research meetings outside their control. Defendants, Associate Professor Finnian McCausland, selectively imposed and or enforced non-established formal MMSCI program syllabus conditions upon plaintiff alone following plaintiff's protected academic concerns raised and or informal and formal complaints activity, while similarly situated students in the HMS MMSCI academic program ,2024 to 2026 cohort who first met with their research mentors at the same time as the Plaintiff or even later, in October or November 2024, including one White student in the MMSCI program who first met with their "CI706: MMSCI Mentored Research" course research mentor in November 2024 and presented their initial "CI706: MMSCI Mentored Research" course research topic milestone approximately one week later, also in November 2024

,one Brown student in the MMSCI program who did not present their initial first milestone research topics originally due in Fall (November) 2024 until Spring 2025 as a condition for receiving course credit in "CI706: MMSCI Mentored Research" course but upon information and belief ,Defendants awarded credit but not a failing grade in "CI706: MMSCI Mentored Research" course to these similarly situated students in the MMSIC program were permitted to continue in the MMSCI program without equivalent disciplinary measures or grading penalties.

185.Between November 2024 to Spring semester (March 2025),during class discussions, some MMSCI program students expressed to the Plaintiff that all MMSCI 2024 to 2026 cohort students in the MMSCI program had received the same required statistical feedback after completion of the "CI706: MMSCI Mentored Research" first milestone research topics but that they themselves were not being required to repeatedly re-present the same material of first milestone research topics, "interim thesis meeting" and "additional statistical work" and or "March 14,2025 deadline" nor were they threatened with failure in"CI706: MMSCI Mentored Research" in connection with these non-established formal MMSCI program These students expressed concern regarding the unequal treatment plaintiff was experiencing compared to other students in the MMSCI program 2024 to 2026 cohort and further stated their belief that the ongoing treatment could negatively affect Plaintiff's health and well-being. The MMSCI program, 2024 to 2026 cohort students further expressed to Plaintiff that, in their (these students') view, the MMSCI program leadership appeared to be attempting to force or pressure plaintiff out of the MMSCI program through the unequal and escalating treatment plaintiff was experiencing within the MMSCI program.

186.The MMSCI program, 2024 to 2026 cohort students further expressed to the Plaintiff that, in their (these students') view, the MMSCI program leadership appeared to be attempting to force or pressure Plaintiff out of the MMSCI program through the unequal and escalating treatment plaintiff was experiencing within the MMSCI program. These students additionally advised Plaintiff to seek legal assistance because, in their view, the HMS's internal administrative processes had not provided plaintiff meaningful relief or protection from ongoing discriminatory and retaliatory conduct of Defendants coupled with hostile academic environment created by Defendants to the Plaintiff within the HMS MMSCI program caused Plaintiff faced significant distress and impacted Plaintiff's academic progress, participation and performance in the HMS

89

MMSCI program and Plaintiff felt. One MMSCI tutor for "Genetic Epidemiology CI 724" course, Su Chu,PhD noted to Plaintiff that, Plaintiff was a *quieter student(Exhibit 124)*. Plaintiff then informed Plaintiff's tutor (Su Chu,PhD) that Plaintiff was facing a very difficult time in Plaintiff's academics due to circumstances beyond Plaintiff's control and further appreciated the tutor for writing back to the Plaintiff evidencing the impact of discriminatory and retaliatory treatment and hostile academic environment that Defendants subjected Plaintiff to within the MMSCI academic program.

187.On February 11,2025, Plaintiff contacted Mr. Mark Addison, the HMS, Title IX Resource Coordinator & Local Designated Resource and discuss academic concerns that caused and or were causing the Plaintiff significant mental distress and adversely affected the Plaintiff's academic performance and progress in the MMSCI program.

**Plaintiff's Independent Attempts to Obtain Mentorship Under Hostile and or Discriminatory and Retaliatory Academic Conditions and Environment by Defendants.**

188.On February 11, 2025, the Plaintiff contacted Doctor Robbins, Gregory ("Dr.Gregory") and requested a research mentorship opportunity.

189.On February 26, 2025, Doctor Robbins, Gregory responded to the Plaintiff and proposed a discussion, after which the plaintiff provided availability for the following week.

On February 26, 2025, plaintiff contacted Doctor Mark Siedner("Dr.Siedner"), a recognized expert in the Plaintiff's area of interest of academic research and requested a mentorship opportunity(Exhibit 123)

190.On February 26, 2025, Doctor Mark Siedner, responded to the Plaintiff and indicated that he (Doctor Siedner) could help identify a potential mentor and asked the Plaintiff to schedule a meeting with him (Doctor Siedner).

191.On March 5, 2025, Doctor Mark Siedner's assistant, Carvalho, Shana contacted the Plaintiff to arrange a meeting for March 18,2025(Exhibit 122)

192.On February 27,2025, the Plaintiff sought research mentorship for "CI706: MMSCI Mentored Research" course from another MMSCI course instructor, Professor Roland Merchant

90

who was, at all relevant times both the Plaintiff's current course instructor in course "CI708B: Clinical Data Science Design and Analytics II" in the Spring 2025

**Obstruction of Established Procedural Rights Set Forth in the HMS Master's Student's Handbook to the Plaintiff and Creation of a Hostile Academic Environment by MMSCI Program Leadership and Deans Named in Plaintiff's Formal Complaint of Discrimination and Bullying with Harvard University.**

193. Beteen February 1st to 6th ,2024, Plaintiff attempted to appeal the "Academic Probation Status" in accordance with the HMS Masters Student's Handbook policy,3.04, under Reconsideration of "Academic Probation Status", explicitly granting MMSCI students the right to appeal an "Academic Probation Status", by the APRB and further provides that MMSCI students can be removed off the "Academic Probation Status". However, before plaintiff could appeal the "Academic Probation Status" status imposed by Defendants.

**Dean for Graduate Education, Rosalind Segal Denied Plaintiff Access to Established Harvard Medical School Appeal Procedures.**

194. On February 6,2025, Dean Segal, Dean of Harvard Medical Graduate Education and co-chair of the Academic Progress and Review Board (APRB) that placed the Plaintiff on "Academic Probation Status" and who(, Dean Segal) was also a respondent in Plaintiff's informal and formal complaint of discrimination with Harvard OCC, mentioned to Plaintiff in substance that, *"I cannot change your academic status"*, and further added that *"you cannot appeal your academic probation"*(Exhibit 47) Essentially, according to Dean Segal, who served as the served as the Harvard Medical Dean of Graduate Education and or co-chair of the APRB with Dean Gutlerner she (Dean Segal) could not remove the permanent notation of "Academic Probation Status" from the Plaintiff's academic record and that no appeal of the "Academic Probation Status" process was available to the Plaintiff who at all relevant times as an HMS MMSCI 2024 to 2026 Master's student governed by the same established HMS Masters Student's Handbook policy, under 3.04 procedures for consideration of academic performance which provides students the right to appeal disciplinary decisions including "Academic

Probation Status" raising academic concerns regarding trust and transparency of the established and HMS Masters Student's Handbook policy in effect at all relevant times and further reflects premeditated and retaliatory conduct of Defendants to withdraw Plaintiff from the MMSCI program.

195. On February 6,2025, Plaintiff informed Deans Segal and Gutlerner and Associate Professor McCausland and Doctor McGrath that the Plaintiff completed their (Plaintiff's) first "CI706: MMSCI Mentored Research" course thesis research progress meeting on December 19,2024 and fulfilled the corresponding first "CI706: MMSCI Mentored Research" course thesis first thesis research topics as outlined in the HMS MMSCI program and or "CI706: MMSCI Mentored Research" course syllabus and noted that the Plaintiff did not have any staff within the HMS s available to contact regarding his academic concerns at that time. Plaintiff also informed Deans Segal and Gutlerner and Associate Professor McCausland and Doctor McGrath that all students in the HMS MMSCI 2024 to 2026 program, including the Plaintiff, received required statistical feedback per the MMSCI program syllabus on their first "CI706: MMSCI Mentored Research" course first milestone research topics.

196.Plaintiff subsequently posed the following questions to Dean Rosalind Segal and in the same communication included Dean Gutlerner and Associate Professor McCausland and Doctor McGrath including;(Exhibit 123),
(1). Whether Plaintiff's academic question regarding eligibility criteria for course remediation examinations in the MMSCI academic program to Gutlerner Dean and Professor Singh constituted "unprofessional conduct;(2).Whether there were any established Harvard Medical School and or Harvard University policies that prohibited Harvard students including the Plaintiff from asking Harvard faculty questions regarding eligibility criteria for course remediation examinations and that because the Plaintiff asked Dean Gutlerner and Professor Singh such question on eligibility criteria of remediation examination warranted referral of the Plaintiff to the APRB for their vote for placement of the Plaintiff on "Academic Probation Status";(3). The basis for Dean Segal's statement that she (Dean Segal) could not change Plaintiff's "Academic Probation Status" that the Plaintiff had been placed on Academic Probation Status" by the APRB on November 4,2024, according to a letter sent to the Plaintiff by

Dean Gutlerner;(4). The reason Dean Segal mentioned that the Plaintiff could not appeal the "Academic Probation Status" that the Plaintiff had been placed on in a letter sent to the Plaintiff by Dean Gutlerner on November 4,2024 on behalf of APRB;(5). Whether the Plaintiff had the right to appeal "Academic Probation Status" decision issued by Dean Gutlerner;(6). If any HMS and or Harvard Medical School and or Harvard University has a policy that prohibits the Plaintiff as a Harvard student at all relevant times from contacting Provost Glover about an academic concern when Plaintiff needed her (Provost Glover's) guidance. Plaintiff further noted in this communication that no such policy was established in the HMS.  However, no response and answers were provided to Plaintiff by Rosalind Dean Segal, the APRB co-chair and Harvard Medical School Dean of Graduate Education.

196. By presenting misleading information regarding the availability of an "Academic Probation Status" appeal and or denial of this right to Plaintiff, Dean Segal discouraged the Plaintiff from exercising their rights and challenging the "Academic Probation Status" decision which increased the Plaintiff's sense of intimidation within the MMSCI academic program and prevented meaningful access to a fair review and academic process to the Plaintiff by the Defendants.

197. The retaliatory terms of the "Academic Probation Status" is unsupported by any HMS Master's Student's Handbook ,by this, the Defendants caused Plaintiff fear or intimidation and it prevented the Plaintiff from speaking up, presenting evidence, or seeking academic support within the HMS MMSCI program regarding ongoing discriminatory and retaliatory actions of the Defendants that caused and or were causing Plaintiff mental and emotional distress and that directly impacted and or were impacting the Plaintiff's academic performance and progress in the HMS MMSCI program.

198. The discriminatory and retaliatory academic sanctions imposed on the Plaintiff including "Monitored Academic Status" and "Academic Probation Status" and denial of the Plaintiffs' appeal for reconsideration of the "Academic Probation Status" by the Defendants created a coercive and intimidating academic environment to the Plaintiff within the MMSCI program by

93

196.Plaintiff subsequently posed the following questions to Dean Rosalind Segal and in the same communication included Dean Gutlerner and Associate Professor McCausland and Doctor McGrath including;(Exhibit 46),

(1). Whether Plaintiff's academic question regarding eligibility criteria for course remediation examinations in the MMSCI academic program to Gutlerner Dean and Professor Singh constituted "unprofessional conduct;(2).Whether there were any established Harvard Medical School and or Harvard University policies that prohibited Harvard students including the Plaintiff from asking Harvard faculty questions regarding eligibility criteria for course remediation examinations and that because the Plaintiff asked Dean Gutlerner and Professor Singh such question on eligibility criteria of remediation examination warranted referral of the Plaintiff to the APRB for their vote for placement of the Plaintiff on "Academic Probation Status";(3). The basis for Dean Segal's statement that she (Dean Segal) could not change Plaintiff's "Academic Probation Status" that the Plaintiff had been placed on Academic Probation Status" by the APRB on November 4,2024, according to a letter sent to the Plaintiff by Dean Gutlerner;(4). The reason Dean Segal mentioned that the Plaintiff could not appeal the "Academic Probation Status" that the Plaintiff had been placed on in a letter sent to the Plaintiff by Dean Gutlerner on November 4,2024 on behalf of APRB;(5). Whether the Plaintiff had the right to appeal "Academic Probation Status" decision issued by Dean Gutlerner;(4). If any HMS and or Harvard Medical School and or Harvard University has a policy that prohibits the Plaintiff as a Harvard student at all relevant times from contacting Provost Glover about an academic concern when Plaintiff needed her (Provost Glover's) guidance. Plaintiff further noted in this communication that no such policy was established in the HMS. However, no response and answers were provided to Plaintiff by Rosalind Dean Segal, the APRB co-chair and Harvard Medical School Dean of Graduate Education.

196.By presenting misleading information regarding the availability of an "Academic Probation Status" appeal and or denial of this right to Plaintiff, Dean Segal discouraged the Plaintiff from exercising their rights and challenging the "Academic Probation Status" decision which increased the Plaintiff's sense of intimidation within the MMSCI academic program and prevented meaningful access to a fair review and academic process to the Plaintiff by the Defendants.

respondents(named HMS MMSIC faculty by the Plaintiff whether or not they wanted to meet with the Plaintiff over the Plaintiff's informal complaint of discrimination and bullying with Harvard.

201. On February 18, 2025, in response to the Plaintiff, the Plaintiff's research mentor (Doctor Bebell) stated, *"I do not have the time or bandwidth to help you develop new research topics."* (Exhibit 48) This was despite the expectation that research topics are typically developed collaboratively between the research mentor, Doctor Lisa Bebell and student (Plaintiff) with the student (Plaintiff) holding primary responsibility for conducting the research. Doctor Bebell wished Plaintiff well and withdrew her mentorship support to Plaintiff and cancelled scheduled research future research mentorship with Plaintiff Despite this, Professors McCausland and McGrath Deans Gutlerner and Segal insisted that the Plaintiff must work with Doctor Bebell who had withdrawn mentorship from Plaintiff on the initial research topics that the Plaintiff had deemed not feasible under a selectively applied "March 14,2025 deadline."

202.On February 18, 2025, Plaintiff contacted program leadership Associate Professor McCausland and Dr. McGrath and informed them that the Plaintiff's research mentor (Doctor Bebell) had declined to provide research mentorship on new and feasible research topics. The research topics previously pursued were not feasible and Doctor Lisa Bebell had also infact changed the sample size after completion of first milestone research topics thesis report by the on January 6,2025.

203.On February 19 and 27 ,2025, Plaintiff again met with the Title IX Resource, Mr.Mark Addison and mentioned to the HMS Title IX Officer, , Mr.Mark Addison that the Plaintiff experienced and or was experiencing unequal treatment in their academic program of MMSCI, which caused the Plaintiff emotional distress and significantly impacted and or was impacting their(the Plaintiff's) ability to concentrate in their academics and or academic progress and performance, Plaintiff also noted to the HMS Title IX Officer, , Mr.Mark Addison that the Plaintiff was threatened with withdrawal from the HMS MMSCI program and referred to the APRB for withdrawal from the MMSCI program by Dean Gutlerner for seeking guidance from higher level Harvard University Administrator, Provost Robin Glover.

95

203. On February 23, 2024, Plaintiff appealed the "Academic Probation Status" in accordance with the HMS Master's Student's Handbook policy, under 3.04, Reconsideration of academic probation, explicitly granting HMS Master's students the right to appeal an "Academic Probation Status" decision imposed by the APRB and further provides that students can be removed off the "Academic Probation Status".

204. On February 27, 2025, Dean Gutlerner, the co-chair of the Academic Progress and Review Board (APRB) informed the Plaintiff that the Plaintiff's request for reconsideration of the "Academic Probation Status" was *"denied"* by the APRB, without providing any legitimate explanation. Dean Gutlerner further stated that *"Moreover, the committee noted that to complete the thesis and graduate from the HMS MMSCI program, significant and diligent work will be required."*

205. A concerning issue is that Dean Gutlerner and the "APRB" committee's statement that, completing the "CI706: MMSCI Mentored Research" thesis would "require significant and diligent work" concerned the research component of the academic work but not the stated prior basis for "Academic Probation Status" decision by Defendants. Infact, Plaintiff had already completed all required first milestone research topics for the "CI706: MMSCI Mentored Research" course including the presentation of research topics on December 19, 2024 and submission of its ("CI706: MMSCI Mentored Research" course first milestone research topics) progress report on January 6, 2025, which had been mentored, reviewed and approved by the Plaintiff's research mentors including Doctors Lisa Bebell and Michael Monuteaux subject-matter expertise and no additional research work was required at that time and or stage of the "MMSCI Mentored Research CI706" course first milestone research topics per the "MMSCI Mentored Research CI706" course and or MMSCI program syllabus. While upon information and belief, a Brown student in the HMS MMSCI students in comparable academic situations who had not yet presented their initial "MMSCI Mentored Research CI706" course first milestone research topics that was due in Fall 2024 by March 2025, the same time period that the Plaintiff was improperly issued a failing grade in "MMSCI Mentored Research CI706" course despite completion of its course first milestone research topics, and wrongfully "required to

96

withdraw" from the MMSCI academic program by the Defendants just fourteen (14) days after the Plaintiff had named them including Associate Professor McCausland and Doctor McGrath and Deans Gutlerner and Segal in their formal complaint of discrimination with the Harvard's formerly Office for Community Conduct that all relevant times enforced the Harvard Non-discrimination and Antibullying policies.

206.One of the reasons cited by Dean Gutlerner on behalf of the APRB for the "Academic Probation Status" sanction" imposed on the Plaintiff by Defendants was Plaintiff's question an academic inquiry regarding eligibility criteria for remediation examination in HMS MMSCI program that the Plaintiff raised with Dean Gutlerner and Professor Singh, following the denial of remediation examination in "CI700: Ethics and the IRB" course upon the Plaintiff's request with the Defendants. Dean Gutlerner characterized the Plaintiff's inquiry about course remediation examination eligibility criteria as "unprofessional conduct" .A second reason for the Academic Probation Status" cited by the Defendant was the "unsatisfactory grades" in CI701: Clinical Data Science; Design and Analytics I" course which directly resulted from Defendants' discriminatory and retaliatory actions against the Plaintiff including the denial of remediation examination course to the Plaintiff in "CI700: Ethics and the IRB CI700" course and the subsequent course remediation examinations granted to similarly situated HMS MMSCI 2024 to 2026 cohort students including one Brown student and two White students in the MMSCI 2024 to 2026 cohort who also failed the "CI701: Clinical Data Science; Design and Analytics I" course in summer 2024 course were provided remediation examination in course "CI701: Clinical Data Science; Design and Analytics I" course on October 8,2024 including the Plaintiff and therefore maintained "Good Academic Standing", while one Brown student of, the Plaintiff (Black) ,another Brown student from a different place of origin and two White students all of whom were in the MMSCI 2024 to 2026 and also failed CI708A Clinical Data Analytics 11 course in Fall 2024,were granted remediation examination in CI708A Clinical Data Analytics 11" course on January 14,2025. The discriminatory treatment by the HMS MMSCI Program leadership and or Deans Johanna Gutlerner and Rosalind Segal in granting course remediation examinations to students in the HMS MMSCI program governed by the same formal HMS Master's Student's Handbook policies and procedures yet, inconsistently applied the Defendants named in this complaint caused the Plaintiff significant mental distress and

97

6,2025, directly contradicting the statement by Dean Gutlerner that the Plaintiff "failed" to keep the MMSCI program informed.

208.On February 27,2025, Dean Guterner also noted to the Plaintiff that the Plaintiff's research mentor ,Dr.Bebell could not support new research topics while provided no alternate guidance *"in a follow-up meeting between Dr. Bebell and Dr. Martina McGrath, it became clear that although you first made contact with Dr. Bebell in October 2024, you had worked with her only for several weeks in December 2024 prior to submitting the progress report on January 6,2025. In light of this brief mentoring relationship and upon review of the progress report by the program directors, you were awarded an incomplete (INC) grade for CI706 for Fall 2024, with a requirement that in order to be awarded credit for the course, you would need to make additional progress by March 2025"*. Meanwhile similarly situated students in the HMS MMSCI academic program ,2024 to 2026 cohort who first met with their research mentors at the same time as the Plaintiff or even later, in October or November 2024, including one White student in the MMSCI program who first met with their "CI706: MMSCI Mentored Research" course research mentor in November 2024 and presented their initial "CI706: MMSCI Mentored Research" course research topic milestone approximately one week later, also in November 2024 ,one Brown student in the MMSCI program who did not present their initial first milestone research topics originally due in Fall (November) 2024 until Spring 2025 as a condition for receiving course credit in "CI706: MMSCI Mentored Research" course but upon information and belief Defendants awarded credit but not a failing grade in "CI706: MMSCI Mentored Research" course to these similarly situated students in the MMSIC program.  Moreover, there is no established HMS MMSCI and or HMS Master's Student's policy that requires a timeframe between an initial meeting with a research mentor or for presenting first milestone research topics, nor any policy indicating that an incomplete (INC) grade would be awarded to a student based on how many times a student first met with their mentor following their initial contact and or meeting with their research mentor and importantly and  MMSCI academic syllabus clearly outlines that a student who completes the required research work is entitled to evaluation and grading in contrast with Doctor McGrath's own confirmation on n November 19,2024, with the Plaintiff that *"There is no limit on the number of mentor meetings required before a thesis progress meeting is Scheduled."(Exhibit 49).*

99

209. Dean Gutlerner further stated that *"With adherence to this plan and the revised deadlines communicated by MMSCI leadership"*. This statement by Dean Gutlerner is not supported by the HMS MMSCI course syllabus and or HMS Master's Student's Hanbok, which contains no requirement to "demonstrate additional progress", "attend a second meeting", or satisfy any post-"CI706: MMSCI Mentored Research" course first milestone conditions to receive credit in "CI706: MMSCI Mentored Research" course. The referenced "March 14,2025 deadline" was not contained in the formal HMS MMSCI course syllabus and or HMS Master's Student's Handbook and it was imposed solely on the Plaintiff under threat of course failure in "CI706: MMSCI Mentored Research" course and withdrawal from the MMSCI program, not uniformly imposed and or applied to all similarly situated students in the HMS MMSCI academic program ,2024 to 2026 cohort who first met with their research mentors at the same time as the Plaintiff or even later, in October or November 2024, including one White student in the MMSCI program who first met with their "CI706: MMSCI Mentored Research" course research mentor in November 2024 and presented their initial "CI706: MMSCI Mentored Research" course research topic milestone approximately one week later, also in November 2024 ,one Brown in the MMSCI program who did not present their initial first milestone research topics originally due in Fall (November) 2024 until Spring 2025 as a condition for receiving course credit in "CI706: MMSCI Mentored Research" course but upon information and belief. Upon information and belief, Defendants awarded passing credits and or grades but not a failing grade in "CI706: MMSCI Mentored Research" course to these similarly situated students in the MMSIC program or established MMSCI program requirement. Defendants' statement that Plaintiff was expected to "adhere" to a "revised plan and deadline" lacks procedural fairness and absent established formal HMS MMSCI formal syllabus and or HMS Master's Student's Handbook, reflects a constructive course of conduct by Defendants designed to precipitate Plaintiff's improper "failure" in "CI706: MMSCI Mentored Research" course and wrongful "withdrawal" from the HMS MMSCI program rather than support academic success.

210. Dean Gutlerner also noted in her February 27,2025 letter to Plaintiff that *"provided that program leadership decides to award you a satisfactory grade, you must plan and attend a second thesis committee meeting by May 2025 and demonstrate continued progress in your*

100

*research."* .Dean Gutlerner's statement on behalf of APRB is inconsistent with the HMS MMSCI program and or "CI706: MMSCI Mentored Research" course syllabus and HMS Master's Student's Handbook policies does not state that MMSCI course grades are contingent on the discretionary approval of MMSCI program leadership, to the contrary, the MMSCI program provides a standard published program syllabus and additionally provides that student work research work is evaluated by their research mentors but not the MMSCI program leadership Associate Professor McCausland and Doctor McGrath. Dean Gutlerner did not issue such statement to similarly situated MMSCI students described in this complaint included similarly situated students in the HMS MMSCI academic program ,2024 to 2026 cohort who first met with their research mentors at the same time as the Plaintiff or even later, in October or November 2024, including one White student in the MMSCI program who first met with their "CI706: MMSCI Mentored Research" course research mentor in November 2024 and presented their initial "CI706: MMSCI Mentored Research" course research topic milestone approximately one week later, also in November 2024 ,one Brown student in the MMSCI program who did not present their initial first milestone research topics originally due in Fall (November) 2024 until Spring 2025, as a condition for receiving course credit in "CI706: MMSCI Mentored Research" course.

211. In summary the February 27,2025, "Updated Academic Probation Status" letter  from Dean Gutlerner and or on behalf or APRB to the Plaintiff instructed the Plaintiff to repeat presenting previously completed or "CI706: MMSCI Mentored Research" course first milestone research topics and incorporate "additional statistical research work" for the first milestone research topics designated to be addressed at the second stage of the second milestone research protocol as part of the first milestone research topics at an "interim thesis meeting" by "March 14,2025, and the Plaintiff was told that they(the Plaintiff) must work with a research mentor, Doctor Bebell, who had previously declined to support feasible research topics, withdrawn mentorship, and had canceled scheduled research meetings with the Plaintiff on March 10,2025 to receive credit in "CI706: MMSCI Mentored Research" course despite .None of the "interim thesis meeting" , "additional statistical research work"  and or 'March 2025 deadline" existed in the formal HMMS MMSCI program syllabus and HMS Master's Student's Handbook while similarly situated and or all students in the MMSCI program 2024 to 2026 cohort who received

101

the required statistical research feedback following completion of their first milestone research topics designated to be addressed in the second milestone of research protocol instead were not subjected to the such non-established formal MMSCI formal syllabus expectations to receive credit in "CI706: MMSCI Mentored Research" course and or HMS Masters Student's Handbook policies nor were these selectively applied non-established formal MMSCI program syllabus conditions required to receive credit in "CI706: MMSCI Mentored Research" course.

212. These facts stated in the forementioned points herein demonstrate that the Plaintiff was selectively held to non-HMS MMSCI syllabus academic standards absent the established formal HMS MMSCI program's policies by Defendants.

213. Upon information and belief Associate Professor McCausland and Doctor McGrath and Deans Gutlerner and Segal never collectively as APRB voting members and or co-chairs enforced such non-established formal HMS MMSCI program syllabus conditions including "additional statistical research work", "interim thesis meeting" by "March 2025" on any MMSCI 2024 to 2026 cohort students but they(Associate Professor McCausland and Doctor McGrath and Deans Gutlerner and Segal) selectively imposed and or enforced these non-syllabus conditions on the Plaintiff shortly after Plaintiff had identified them in the Plaintiff's informal and or formal complaint of discrimination and bullying with Harvard OCC and or contacted other Harvard University faculty for support and guidance regarding academic concerns that the Plaintiff was facing within the MMSCI academic program at the HMS.

214. On February 27,2025, the Plaintiff sought research mentorship for "CI706: MMSCI Mentored Research" course from another MMSCI course instructor, Professor Roland Merchant who was, at all relevant times both the Plaintiff's current course instructor in course "CI708B: Clinical Data Science Design and Analytics II" in the Spring 2025.

**Failure by Defendants to Provide Academic Support While Simultaneously Enforcing Selectively Enforcing of Non-Established Formal HM MMSCI Program syllabus Conditions on Plaintiff Under a Threat of Failure in "CI706: MMSCI Mentored Research" course.**

215.On February 27,2025, Professor Roland Merchant, informed the Plaintiff that per MMSCI program leadership, specifically noted, Associate Professor, McCausland who Professor Merchant included in his email communication to Plaintiff, he (Professor Merchant) was *"ineligible"* to serve as Plaintiff's research mentor due to his Harvard part-time teaching status. At all relevant times no established MMMSCI program and or HMS Master's Student's Handbook policy restricted research mentorship eligibility based on part-time teaching status. MMSCI Program leadership denied Plaintiff access to a potential research mentor on the stated basis that Professor Merchant was "ineligible" due to part-time teaching status yet provided no alternative mentorship or guidance to the Plaintiff while continuing to enforce a non-syllabus "March 14,2025 deadline" under threat of failure in "CI706: MMSCI Mentored Research" course and withdrawal of the Plaintiff from the MMSCI program. This restriction contradicted the use of the faculty part-time status and established HMS MMSCI policy and or standards particularly given that on February 4,2025, Plaintiff was the only MMSCI 2024 to 2026 cohort student whose research poster was not reviewed by program leadership including Associate Professor  McCausland and Doctor McGrath on February 4,2025 ,who otherwise served as HMS MMSCI program co-chairs and consistently reviewed the research posters of all other students in the HMS MMSCI program 2024 to 2026 cohort while Doctor McGrath skipped the research poster of the Plaintiff and later stated that in response to the Plaintiff's question to including Associate Professor  McCausland and Doctor McGrath as to why they (Associate Professor McCausland and Doctor McGrath) did not review the Plaintiff's research poster on February 4,2025), that, that they (Associate Professor McCausland and Doctor McGrath) wanted an "independent reviewer" for the Plaintiff and further stated that Doctor Faraq did review the Plaintiff's research poster despite the fact that Doctor Faraq being a part-time non-Harvard teaching faculty at that time as was Professor Roland Merchant.

216.On February 28,2025, Plaintiff raised a legitimate academic concern with Associate Professor McCausland and Doctor McGrath and Deans Segal and Gutlerner regarding guidance with the Plaintiff proceeding with completing a selectively applied non-syllabus "progress meeting" and "additional statistical work" and "March 13,2025 deadline" particularly after the

103

Plaintiff's previous research mentor(Doctor Bebell) had withdrawn research mentor support to the Plaintiff on feasible research topics as requested by the Plaintiff.

217.On February 28,2025, in response to the Plaintiff, Dean Gutlerner stated that "*Your case was thoroughly discussed at the APRB, and their decision is plainly outlined in the letter that you received yesterday*"."*The letter clearly delineates the requirements that you must adhere to if you want to remain in the program and hope to graduate from the program.*"(Exhibit 51) In summary, Dean Gutlerner and or the MMSCI program leadership directed Plaintiff to continue working with Doctor Bebell despite Doctor Bebell's refusal to provide supervision on feasible research topics to the Plaintiff. This response by Dean Gutlerner indicates evidence that Defendants held the Plaintiff to discriminatory conditions set outside the formal "CI706: MMSCI Mentored Research" course and or MMSCI program syllabus and HMS Master's Student's Handbook justified by reference to a separate letter and APRB-level decision, rather than the published HMS MSSCI "CI706: MMSCI Mentored Research" course criteria and or syllabus that governs all MMSCI students. However, Plaintiff was enrolled in the same HMS MMSCI program with standard and established coursework governed by the same HMS MMSCI program syllabus as all other students in the HMS MMSCI program who were evaluated solely on those uniform HMS MMSCI program requirements raising questions about procedural fairness and discriminatory application of the HMS MMSCI program and or HMS Master's Student's Handbook policies.

218.On March 3, 2025, Plaintiff filed a formal complaint of discrimination and bullying with the Harvard Office for Community Conduct under the Non-Discrimination and Anti-bullying (NDAB) policies (Exhibit 4), again, detailing ongoing discrimination and bullying that the Plaintiff faced and or was facing within the MMSCI program and that caused and or was causing the Plaintiff emotional distress and impacted and or impacting the Plaintiff's ability to concentrate in their academic program and or academic progress and performance within the HMS MMSCI program, including the selective imposition of a non-established formal MMSCI program syllabus "March 14,2025 deadline" not contained in the formal MMSCI program syllabus on the Plaintiff and under the threat of "failure" in "CI706: MMSCI Mentored Research" course and "automatic withdrawal" from the MMSCI academic program and the

104

denial of equal academic and or educational opportunity to the Plaintiff by the Defendants that they(Defendants) provided to other similarly situated MMSCI program students per the HMS Master's Student's Handbook. Additionally, Plaintiff also reported that Defendants denied Plaintiff the opportunity to conduct research on feasible research projects and changing a research mentor after Plaintiff's previous research mentor, Doctor Lisa Bebell had declined to provide research mentorship to the Plaintiff on feasible research projects as requested by the Plaintiff from Doctor Bebell and the MMSCI program leadership and or Deans identified in this complaint and in Plaintiff's formal complaint of discrimination and bullying with Harvard. Additionally, the Plaintiff also noted that similarly situated MMSCI students were not subjected to non-established formal MMSCI program syllabus conditions and or adverse academic treatment and or sanctions. Plaintiff specifically noted the urgency and emphasized that Defendants had warned Plaintiff that they would issue the Plaintiff a "failing grade" in "CI706: MMSCI Mentored Research" course and "automatically withdraw" Plaintiff from the MMSCI program following a selectively applied non-established formal HM MMSCI program syllabus conditions including a "March 14,2025 deadline" "additional statistical research work", "interim thesis meeting" , if Plaintiff had not repeated presentation of previously completed research topics IN "CI706: MMSCI Mentored Research" course which the Plaintiff had deemed infeasible to continue conducting research on and a mentor who had cancelled all future research meetings.

219.Despite clear notice of an imminent risk of Plaintiff's wrongful removal from the MMSCI program by the Defendants, the Harvard University Office for Community Conduct(OCC) and or Mr. Addison failed to take any legitimate and or timely action, intervene, or initiate an investigation prior to Defendants' improperly issued a "failing grade" in "CI706: MMSCI Mentored Research" course to the Plaintiff and wrongful "requirement to withdraw" of the Plaintiff from the Plaintiff from the MMSCI program. This failure of Harvard OCC and or staff is critical, as prompt and legitimate action by the Harvard office could have prevented the Defendants from improperly issuing the Plaintiff a failing grade in "CI706: MMSCI Mentored Research" course and the Plaintiff's wrongful "requirement to withdraw" from the MMSCI program.

105

220. March 3, 2025, the HMS Title IX Officer, Mr. Mark Addison also informed the plaintiff that he (Mr.Addison) had discussed Plaintiff's formal complaint with Mr. Jose Martinez within the same office and had also included the Harvard University-wide Office of Discrimination in his communication about the Plaintiff's formal complaint filed by the Plaintiff. Mr.Mark further stated that he(Mr.Mark) planned to follow up further with Harvard University-wide Office of Non-Discrimination regarding the Plaintiff's formal complaint of discrimination. However, no timely follow-up communication was provided by Mr.Mark.

221. After Plaintiff had filed a formal discrimination complaint with the university on March 3, 2025, the Plaintiff was subjected to the rigid and adverse arbitrary requirements arbitrary treatment uniquely subjected to non-syllabus "March 14,2025 deadline", "additional statistical research work" and an "interim meeting" to repeat presentation of research work research topics that the Plaintiff had previously presented and had deemed infeasible to continue conducting research on and that the not required at that stage of the first milestone research.

222. On March 3, 2025, Plaintiff again contacted the MMSCI program leadership including Associate Professor McCausland and Dr. McGrath and informed them that the Plaintiff's research mentor (Doctor Bebell) had declined to provide research mentorship on new and feasible research topics.

223. As of March 3, 2025, the HMS MMSCI program leadership including Associate Professor McCausland and Doctor McGrath who serve as voting APRB members and Deans Gutlerner and Segal who co-chair the APRB and serve as voting APRB members ,all of whom Plaintiff had named in Plaintiff's formal complaint of discrimination and bullying with Harvard on March 3,2025 did not permit Plaintiff to change new and or feasible research topics and or switch an alternate research mentor as requested with the MMSCI program leadership and deans by the Plaintiff, the same educational opportunities afforded to other students in the HMS MMSCI program who switched a research mentor and were not mandated by the MMSCI program to conduct research on specific research topics and or with a specific research mentor.

224. On March 3,2025, Dean Gutlerner emailed the Plaintiff and stated *in relevant parts that "Dr. Bebell is willing to continue mentoring you – the program confirmed that with her after last*

106

*Monday's APRB decision. As outlined in the letter, you are required by the APRB to continue your thesis work with Dr. Bebell and present that work at an interim progress report meeting on March 14th. Failure to do so will result in you receiving an UNSAT in the Fall 2024 CI 706 mentored research course, which will then result in immediate withdrawal from the program"*
... but Dean Gutlerner also refused further discussion with the Plaintiff and further, *stated in excerption that, "I will not address this further over email".*

225.According to Dean Gutlerner and the APRB, plaintiff was "required" to work with Doctor Lisa Bebell, a research mentor, who had canceled scheduled (until December 2025) research projects meetings on March 10,2025, yet the MMSCI syllabus does not mandate working with a specific research mentor and allows MMSCI students to change research mentor as communicated to the MMSCI students on orientation day by Associate Professor McCausland on July 8,2028. One Brown student in the MMSCI program 2024 to 2026 cohort, switched research mentors without restriction and progressed normally in the HMS MMSCI program without the MMSCI program leadership and or Deans imposing such non-established HMS-MMSCI program conditions including "additional statistical research work", "interim thesis meeting" by "March 2025" on this Brown student but, Defendants denied plaintiff the ability to conduct research on feasible research topics, prevented Plaintiff from changing research mentors, and forced Plaintiff to work with a research mentor who had canceled research projects meetings while enforcing non- established HMS-MMSCI program conditions including "additional statistical research work", "interim thesis meeting" by "March 2025" on the Plaintiff under the threat of failure and withdrawal from the MMSCI program ,demonstrating unequal and retaliatory treatment of the Plaintiff by Defendants' inconsistent with MMSCI program and or HMS Master's Student's policies.

226.Notably Dean Gutlerner never afforded Plaintiff any opportunity to meet with Plaintiff upon Plaintiff's request to meet with Dean Gutlerner at the time, respondents in Plaintiff's formal complaint of discrimination and bullying including MMSCI program leadership including Associate Professor Finnian McCausland and Doctor McGrath and or Deans Segal and Gutlerner) were actively enforcing the selectively non-established formal MMSCI program "additional statistical research work", "interim thesis meeting" by "March 2025" only on the

Plaintiff under the threat of failure in "CI706: MMSCI Mentored Research" course and withdrawal from the MMSCI program but not similarly situated students MMSCI as described above. Dean Gutlerner met with the Plaintiff on Zoom for Harvard platform only once and or only after the Plaintiff had noted to Dean Gutlerner that she(Dean Gutlerner) had never offered the Plaintiff any opportunity to meet over the Plaintiff's academic concerns over the one academic year and or prior to her(Dean Gutlerner) sending the Plaintiff the wrongful "requirement to withdraw" from the MMSCI and this meeting only happened on the day the Plaintiff presented their appeal for reconsideration of the wrongful "requirement to withdraw" from the MMSCI program to the APRB members that Dean Gutlerner co-chairs with Dean Segal that consisted of approximately five other faculty members including Doctor McGrath and Dean Segal.

227. On March 4,2025, Dean Segal further stated that *"meetings . . . will not change the requirements, or the timetable." (Exhibit 53)*However, there was not any "required interim thesis meeting" to conduct and while all MMSCI students received "additional statistical research feedback" as required per the MMSCI program syllabus, the "additional statistical research work" was not required to be conducted at that stage of the research topics first milestone in the MMSCI program syllabus, rather designated for the "CI706: MMSCI Mentored Research" course second milestone research proposal and to the Plaintiff's knowledge, and was not imposed on any other MMSCI students. Deans Segal and Gutlerner made these statements above after a non-established formal HM MMSCI program syllabus "March 14,2025 deadline" had been imposed by them, at a time when Plaintiff lacked active mentorship as Plaintiff's previous mentor, Doctor Lisa Bebell had already withdrawn effective mentorship support and refused to collaborate with the Plaintiff on any feasible research projects. By Defendants imposing non-syllabus conditions and deadline while the same MMMSCI program leadership and or Deans identified in this complaint by the Plaintiff simultaneously denied the Plaintiff access to necessary mentorship effectively eliminating any meaningful academic guidance. While the Plaintiff had already completed required the first milestones research topics in "CI706: MMSCI Mentored Research" course earlier than some students in the MMSCI program 2024 to 2026 cohort, no other student in the MMSCI program was subjected to such non-established formal HMS MMSCI program syllabus and or deadlines nor threatened with failure in "MMSCI

Mentored Research CI706" for comparable or lesser research progress in "MMSCI Mentored Research CI706" course., rather all other students in the MMSCI academic program received the required statistical feedback from their mentors after completion of the first milestone research topics to be presented at the second milestone research topics, with some MMSCI students including one White student in the MMSCI program who met their research mentors at the same time as the Plaintiff in October 2024 and or later in November 2024 and presented their initial thesis research topics  approximately one week later, also in November 2024 ,also in the Fall 2024, while one Brown student in the MMSCI program known to the Plaintiff had not completed their first milestone as late as January and March 2025, well after Plaintiff had presented their "CI706: MMSCI Mentored Research" course first milestone research topics presentation so on December 19,2025 and submitted it's thesis report on January 6,2025.

228.The non-established formal MMSCI program and or "MMSCI Mentored Research CI706" syllabus "additional statistical work" and "progress meeting" conditions and "March 14,2025 deadline" were never part of and or a uniformly applied academic syllabus in the MMSCI academic program but suggests an isolated and arbitrary academic condition selectively imposed only on the Plaintiff by Defendants but not similarly situated students in the HMS MMSCI program described in this complaint. Such conduct by Defendants reflects arbitrary enforcement and a pretextual application of formal MMSCI academic standards and policies.

229.Between January to March 2025,the Plaintiff sought support from Associate Professor McCausland and Doctor McGrath and Deans Rosalind Segal and Johanna Gutlerner with securing an alternate research mentor and or pursue new research topics and meet the selectively imposed non-syllabus deadline under conditions that were neither in the standard MMSCI program syllabus nor uniformly enforced among similarly situated MMSCI program,2024 to 2026 cohort students who first met with their research mentors at the same time as the Plaintiff or even later, in October or November 2024, including one White student in the MMSCI program who first met with their "CI706: MMSCI Mentored Research" course research mentor in November 2024 and presented their initial "CI706: MMSCI Mentored Research" course research topic milestone approximately one week later, also in November 2024 ,one Brown student in the MMSCI program who did not present their initial first milestone research topics

109

originally due in Fall (November) 2024 until Spring 2025, as a condition for receiving course credit in "CI706: MMSCI Mentored Research" course students including , despite completion of the required first milestone research topics but received no support or response from MMSCI program leadership and Deans.

230. Despite these academic obstacles beyond the plaintiff's control as a student that Defendants and appeared to have imposed deliberately imposed by Defendants to improperly force Plaintiff out of the MMSCI program in retaliation for Plaintiff's protected activity of reporting discriminatory and retaliatory conduct of Defendants, Plaintiff actively sought alternate research mentors within the limited timeframe to meet a selectively imposed ultimatum of "March 14,2025" that was not part of the MMSCI program or "MMSCI Mentored Research CI706" course syllabus and never required "additional statistical work" and or "interim meeting" work and "March 14,2025 deadline" at that stage of the "MMSCI Mentored Research CI706" course first milestone research topics, despite the fact that Plaintiff had fully completed the "MMSCI Mentored Research CI706" course research work, on January 06,2024 and yet a was denied credit for it by Defendants, while similarly situated MMSCI students who completed were their "CI706: Mentored Research" course first milestone research topics thesis research work were appropriately awarded grades in "CI706: Mentored Research" course. This demonstrates that the denial of a grade in "MMSCI Mentored Research CI706" course to Plaintiff by Defendants was not based on standard completion of "MMSCI Mentored Research CI706" course requirements, but rather on an arbitrary decision by Defendants. Plaintiff felt harassed and intimidated by Defendants' discriminatory and retaliatory actions against the Plaintiff that also interfered with Plaintiff's normal educational environment and denied the Plaintiff an equal opportunity to participate in the benefits of Harvard University MMSCI program and activities.

231. The timing and or imposition of the severe academic conditions on Plaintiff by the Defendants immediately following Plaintiff's complaints of discrimination and bullying filed with the Harvard OCC on March 3,2025,in which identified Associate Professor Finnian McCausland and Doctor Martina McGrath and Deans Rosalind Segal and Johanna Gutlerner and Professor Ajay Singh combined with the explicit refusal by the MMSCI program leadership and Deans to modify even a non-established formal MMSCI program syllabus conditions including

110

"additional statistical work" and or "interim meeting" work and "March 14,2025 deadline", supports a reasonable inference of retaliatory motive and or adverse action against the Plaintiff by Defendants identified in this complaint. Such conduct of Defendants contradicts the principles of fundamental fairness and deviates from the HMS Masters Handbook Policy ;*3.01, under the responsibility of teachers, "Behaving in a way that embodies the ideal teacher learner relationship creates a culture of mutual respect, minimizes the likelihood of student mistreatment and optimizes the educational experiences"* and also the Harvard University's own NDAB antibullying policy that states that a violation involves behavior that is *"sufficiently severe or pervasive, and objectively offensive enough to create a hostile or abusive environment"* denying *equal opportunity in the workplace or institutional programs and activities"*.

233.Defendants failed to adhere to the standard and or established MMSCI syllabus and or "CI706: MMSCI Mentored Research" course syllabus milestones and deadline and HMS Master's Student's Handbook as, a non-MMSCI program syllabus conditions cannot supersede or modify the standard and or established MMSCI syllabus and or "CI706: MMSCI Mentored Research" course syllabus milestones and deadline without uniform imposition of such non-MMSCI program syllabus conditions by the Defendants to all similarly situated HMS MMSCI 2024 to 2026 cohort students including one Brown student and two White students in the MMSCI 2024 to 2026 cohort who also failed the "CI701: Clinical Data Science; Design and Analytics I" course in summer 2024 course were provided remediation examination in course "CI701: Clinical Data Science; Design and Analytics I" course on October 8,2024 including the Plaintiff and therefore maintained "Good Academic Standing", while one Brown student the Plaintiff (Black) , another Brown student from a different place of origin and two White students all of whom were in the MMSCI 2024 to 2026 and also failed CI708A Clinical Data Analytics 11 course in Fall 2024, were granted remediation examination in CI708A Clinical Data Analytics 11" course on January 14,2025 known to Plaintiff. Defendants evaluated all other similarly situated HMS MMSCI students in the MMSCI program described here solely under the published MMSCI program or "CI706: MMSCI Mentored Research" course requirements. The selectively imposed non-established formal MMSCI syllabus requirements and their selective enforcement on the plaintiff by Defendants reflects an inconsistent and arbitrary treatment of the Plaintiff within the HMS MMSCI program and Defendants' departure from established MMSCI program standards and or HMS Master's Student's Handbook policies.

111

232. On March 5, 2025, Plaintiff again contacted the Title IX officer, Mr.Mark Addison to follow up with the Plaintiff's formal complaint of discrimination and bullying and emphasized that the Defendants was actively preventing Plaintiff from conducting research on feasible research projects as required in the MMSCI program .Plaintiff also reported being threatened with failure in "CI706: MMSCI Mentored Research" course and withdrawal from the academic program the following week by Defendants identified in Plaintiff's formal complaint of discrimination and bullying with Harvard if Plaintiff did not re-present previously completed and approved research topics by a selectively applied, non-established formal MMSCI program syllabus "March 14 deadline". Plaintiff reiterated that the Plaintiff had already informed the MMSCI program leadership and Deans Gutlerner and Segal that meeting such non-established formal MMSCI program syllabus conditions and or continuing to conduct research on topics that the Plaintiff had identified as infeasible but Defendant,Dean Segal noted that meetings between the Plaintiff and the MMSCI program leadership and or Deans Gutlerner and Segal could *"not change the requirements or the timetable"*, although the selectively imposed conditions were not "requirements" in the formal MMSCI program syllabus and or were they uniformly applied among similarly situated MMSCI 2024 to 2026 cohort students described above, and Plaintiff therefore sought the support of the office of the Title IX officer and or Harvard OCC office for urgent support regarding these academic concerns reflects a severe and hostile academic environment that Defendants subjected Plaintiff to within the MMSCI program.

233.On or about March 3, 2025, Doctor Bebell stated to the Plaintiff that, "we don't have much time to achieve the next milestones by the deadline," echoing the MMSCI program director's and deans' selectively imposed and or non- formal MMSCI program syllabus directive of "additional statistical research work", "interim thesis meeting" by "March 2025 deadline" to the Plaintiff but not on similarly situated MMSCI program students. However, the "MMSCI Mentored Research CI706" course syllabus specifies no such "additional statistical research work", "interim thesis meeting" by "March 2025 deadline", as "requirement" after the first milestone or prior to the second milestone, rendering this expectation unsupported and inconsistent with established course standards. Additionally, Doctor Lisa Bebell mentioned to only facilitate a research meeting for the prior research topics that the Plaintiff had identified as infeasible to continue conducting research on and she still (Doctor Bebell) did not accept to

provide mentorship to the Plaintiff with feasible research topics as Plaintiff requested with Doctor Lisa Bebell and the MMSCI program leadership by Plaintiff and as required in the HMS MMSCI program and HMS Master's Student's Handbook policies that MMSCI students must conduct research on feasible research topics but not infeasible ones. The MMSCI program leadership and or Deans were aware that Plaintiff requested with Doctor Lisa Bebell ,MMSCI program leadership and Deans an opportunity to conduct research on feasible research projects and also that Doctor Lisa Bebell refused to mentor the Plaintiff on feasible research topics but they(MMSCI program leadership and Deans) still did not provide any further support to Plaintiff about it and continued to enforce the selectively imposed non-MMSCI program syllabus deadline of "March 14,2025" under the threat of failure and withdrawal of Plaintiff from the HMS MMSCI program.

234.On March 3, 2025,Plaintiff again sought redress the HMS Title IX Officers and the HMS Dean's office, the HMS Provost's Office, and the HMS Title IX Officer and the Standing Committee on Rights and Responsibilities (SCRR) coordinator, Ms.Godin and the Harvard OCC staff, Ms. Sherri Charlston, who(Ms. Charlston), according to the HMS Title IX Officer, Mr.Mark Addison during a meeting with Plaintiff later on March 7,2025, was the Harvard OCC staff overseeing the Plaintiff's formal complaint of discrimination and bullying with the Harvard OCC. Plaintiff also copied the respondents in the Plaintiff's formal complaint of discrimination including Deans Segal and Gutlerner who were named in the Plaintiff's formal complaint of discrimination and bullying with the Harvard OCC in the Plaintiff's communication to these Harvard deans and provosts and or the HMS Title IX Officers named in this complaint, the plaintiff detailed the same academic concerns and incidents including discrimination and bullying within the MMSCI program and also previously described by the Plaintiff in the March 3,2025 formal complaint of discrimination and bullying filed by the Plaintiff with Harvard OCC. Despite these repeated outreach efforts to Harvard staff, none of these Harvard University officials that the plaintiff requested urgent support and or redress from regarding the Plaintiff's academic concerns and or formal complaint of discrimination and bullying in the Plaintiff's academic program of MMSCI offered the Plaintiff any meaningful academic support regarding these academic concerns, complaint and or the selectively applied retaliatory pressure by Defendants on the Plaintiff to repeat the same first milestone research topics under the threat of

113

failure in "MMSCI Mentored Research CI706" course and withdrawal from the MMSCI program.

235. On March 7 and 11,2025, the Title IX Officer met with the Plaintiff to review the Plaintiff's formal complaint of discrimination and bullying under Harvard University's Non-Discrimination policies. However, no independent investigator was ever assigned to and or interviewed the Plaintiff, and no formal investigation was conducted by the Harvard OCC which directly contradicts the Harvard University's own Non-Discrimination and Anti-Bullying Policy, which states that it "will staff or provide referrals to neutral, trained investigators who will manage investigations of formal complaints." Although the Harvard University NDAB policies requires referral to neutral, trained investigators, no independent investigation was conducted. The Plaintiff was never interviewed as part of any investigative process. Accordingly, the Harvard University NDAB policies failed to follow its own mandatory procedures and adequacy of its (Harvard University NDAB's) response to the Plaintiff's formal complaint of discrimination and bullying within the MMSCI program, contradicting the Harvard University NDAB policy.

236. On March 10,2025, Doctor Bebell still did not allow mentoring the Plaintiff on feasible research topics upon Plaintiff's request for one and she cancelled (same day on March 10,2025,) all scheduled subsequent research meetings with the Plaintiff that that were scheduled until December 2025.

237. Despite the Plaintiff's diligent efforts to find a new research mentor to repeat already completed and approved first milestone research topics to meet the selectively applied non-established formal HMS MMSCI program syllabus conditions including "additional statistical research work", "interim thesis meeting" by "March 2025" the Plaintiff was unable to obtain alternative mentorship between "March 4,2025 when Dean Segal set a ten(10) day ultimatum(March 4 to 14,2025) and further stated that *meetings will not change the requirements, or the timetable.* ",absent these selectively imposed non-established HMS MMSCI program conditions including "additional statistical research work", "interim thesis meeting" and "March 14,2025 deadline" by Defendants never existing as formal HMS MMSCI program *"requirements"* in the established and or formal HMS MMSCI program and or "CI706: MMSCI

Mentored Research" course syllabus ,and March 12, 2025, to meet these non-established formal HMS MMSCI program syllabus conditions described above that were not imposed on similarly situated students in the HMS MMSCI academic program ,2024 to 2026 cohort who first met with their research mentors at the same time as the Plaintiff or even later, in October or November 2024, including one White student in the MMSCI program who first met with their "CI706: MMSCI Mentored Research" course research mentor in November 2024 and presented their initial "CI706: MMSCI Mentored Research" course research topic milestone approximately one week later, also in November 2024 ,one Brown student in the MMSCI program who did not present their initial first milestone research topics originally due in Fall (November) 2024 until Spring 2025 as a condition for receiving course credit in "CI706: MMSCI Mentored Research" course but upon information and belief Defendants awarded credit but not a failing grade in "CI706: MMSCI Mentored Research" course to these similarly situated students in the MMSIC program described above.

238.On March 12,2025, two days before the selectively imposed non-standard HMS MMSCI program syllabus of "March 14,2025 deadline" and after independent efforts by Plaintiff to secure another research mentor proved impossible while the MMSCI program leadership and or Deans provided no response and or academic support to Plaintiff with finding an alternate research mentor and or conducting research on feasible research topics to the Plaintiff, yet one Brown student in the HMS MMSCI program 2024 to 2026 cohort known to the Plaintiff presented their initial "CI706: MMSCI Mentored Research" course in Spring 2025 semester without Defendants imposing a "additional statistical research work", "interim thesis meeting "March 14,2025 deadline" under the threat of failure in "CI706: MMSCI Mentored Research" course on this particular student. Plaintiff contacted Doctor Lisa Bebell and inquired about Doctor Bebell's availability required, in facilitating the representation of the "CI706: MMSCI Mentored Research" course first milestone research topics that Plaintiff had already completed to present on December 19,2024, and Plaintiff had also identified these topics as infeasible to continue conducting research on (Exhibit 54). Plaintiff included the HMS MMSCI program leadership including Associate Professor Finnian McCausland and Martina McGrath and Deans Johanna Gutlerner and Rosalind Segal in Plaintiff's communication to Doctor Lisa Bebell. Neither the research mentor, Doctor Lisa Bebell nor Associate Professor Finnian

McCausland and Martina McGrath and Deans Johanna Gutlerner and Rosalind Segal responded to the Plaintiff's communication requesting Doctor Lisa Bebell's availability required to facilitate the representation of the "CI706: MMSCI Mentored Research" course first milestone research topics under the threat of failure "CI706: MMSCI Mentored Research" course and "withdrawal" from the HMS MMSCI program by the selectively imposed non-established formal HMS MMSCI program syllabus of "March 14,2025,deadline".

239.On March 13,2025, the HMS Title IX Officer,Mr. Mark Addison, explicitly stated to Plaintiff that *"We are also able to consider this current submission as your formal complaint and proceed to conduct the review initial"* Under the Non-Discrimination and Anti-Bullying Policies ,detailing that Plaintiff's submission could be treated as a formal complaint and that an initial review. The Title IX Officer further indicated that, *"absent revision or objection, the institution would proceed with the initial review based on the existing complaint. Stating that "I will proceed to consult with the Office for Community Conduct to begin the initial review no later than Monday, March 17 if (a) we do not receive an updated document as the formal complaint for consideration under the policies" (b) we receive a confirmation from you by March 17 to proceed with the initial review based on your current document. "(Exhibit 55)* This statement by Mr. Addison, demonstrates that the Plaintiff's formal complaint of discrimination and bullying was deemed sufficient to trigger formal review procedures under the Harvard NDAB policies at the time it was received on March 3,2025 and was not rejected based on missing identify any "protected" status of discrimination.

240.On Friday, March 14,2025, Plaintiff informed the MMSCI program leadership including Associate Professor McCausland and Dr. Martina McGrath and Deans Johanna Gutlerner and Rosalind Segal that Doctor Lisa Bebell failed to respond to Plaintiff's request to meet and or facilitate (required) the repetition of previously completed "CI706: MMSCI Mentored Research" course first milestone research topics presentation by Plaintiff and that Plaintiff had deemed infeasible to continue conducting research on which necessitated a research mentoring team facilitation for the representation of the "CI706: MMSCI Mentored Research" course first milestone research topics ,Plaintiff stated that the Plaintiff was unable to proceed with and or

116

submit, a repetition of the "CI706: MMSCI Mentored Research" course first milestone research topics presentation thesis report under the circumstances of non-responsiveness from Doctor Lisa Bebell required to facilitate the repetition of the "CI706: MMSCI Mentored Research" course first milestone research topics presentation that Plaintiff had deemed infeasible to continue conducting research on. Notably, Doctor Lisa Bebell had cancelled scheduled (until December,2025) mentorship research meetings with the Plaintiff on March 10,2025.

241.On March,17 2025, fourteen (14) days after Plaintiff had filed a formal complaint of discrimination and bullying with Harvard OCC on March 3,2025, and explicitly identified Associate Professor Finnian McCausland and Doctor Martina McGrath and Deans Johanna Gutlerner and Rosalind Segal and Professor Ajay Singh as respondents in the Plaintiff's formal complaint of discrimination and bullying with Harvard OCC. Dean Gutlerner issued the Plaintiff a letter of "notice of requirement to withdraw" from the HMS MMSCI program "effective immediately" and cited *"you have failed to adhere to the updated remediation plan and further stated that "Notably, you did not have the required meeting by March 14, 2025"*, as their reason for "requirement to withdraw" of the Plaintiff from the MMSCI program and further detailed an improperly issued "failing grade" in "CI706: MMSCI Mentored Research" course to the Plaintiff by the Defendants despite prior completion of the "CI706: MMSCI Mentored Research" course first milestone research topics presentation on December 19,2024 and its report's submission on January 6,2025 that Plaintiff had deemed infeasible to continue conducting research on and non-established formal MMSCI program syllabus academic conditions not imposed and on and or improperly issued "failing grade" in "CI706: MMSCI Mentored Research" course not issued to on similarly situated students in the HMS MMSCI academic program ,2024 to 2026 cohort known to Plaintiff who first met with their research mentors at the same time as the Plaintiff or even later, in October or November 2024, including one White student in the MMSCI program who first met with their "CI706: MMSCI Mentored Research" course research mentor in November 2024 and presented their initial "CI706: MMSCI Mentored Research" course research topic milestone approximately one week later, also in November 2024 ,one Brown student in the MMSCI program who did not present their initial first milestone research topics originally due in Fall (November) 2024 until Spring 2025, as a condition for receiving course credit in "CI706: MMSCI Mentored Research" course.

117

242. After Plaintiff filed a formal complaint of discrimination and bullying with Harvard OCC on March 3,2025, and named HMS MMSCI faculty including Associate Professor McCausland and Doctor Martina McGrath and Deans Johanna Gutlerner and Rosalind Segal and Professor Ajay Singh. Defendants continued imposed and or continued enforcing non-established formal MMSCI program syllabus conditions including "March 14,2025" meeting and or deadline and or "additional statistical research work", "interim thesis meeting" under the threat of "failure" in "CI706: MMSCI Mentored Research" course and "withdrawal" from the MMSCI program and improperly awarded failing grade in "CI706: MMSCI Mentored Research" course to the Plaintiff despite completion of "CI706: MMSCI Mentored Research" course first milestone research topics by the Plaintiff and or directly caused by the Defendants' actions against the Plaintiff that appear discriminatory and retaliatory do not support the established grading criteria in the "CI706: MMSCI Mentored Research" course and or MMSCI program raising questions on the legitimacy of the "failing grade" in "CI706: MMSCI Mentored Research" course that Defendants improperly issued to the Plaintiff.

243. Additionally, Plaintiff had deemed the previously completed first milestone research topics infeasible, coupled with the fact that the Plaintiff lacked required research mentor to repeat presenting the completed first milestone research topics, absent of any formal HMS MMSCI program "March 14,2025 deadline" and or "additional statistical research work" and "interim thesis meeting" and non-established formal MMSCI program conditions not imposed by Defendants on similarly situated students in the HMS MMSCI academic program ,2024 to 2026 cohort known to Plaintiff who first met with their research mentors at the same time as the Plaintiff or even later, in October or November 2024, including one White student in the MMSCI program who first met with their "CI706: MMSCI Mentored Research" course research mentor in November 2024 and presented their initial "CI706: MMSCI Mentored Research" course research topic milestone approximately one week later, also in November 2024 ,one Brown student in the MMSCI program who did not present their initial first milestone research topics originally due in Fall (November) 2024 until Spring 2025 as a condition for receiving course credit in "CI706: MMSCI Mentored Research" course but upon information and belief Defendants awarded credit but not a failing grade in "CI706: MMSCI Mentored Research" course to these similarly situated students in the HMS MMSIC program.

118

244. The HMS Master's Student's Handbook policy provides that an incomplete (INC) grade is to be resolved within six (6) months. Under the written grading policies, an incomplete (INC) grade could be issued where coursework remained unfinished, and a failing grade would only be issued if the incomplete was not resolved within the stated policy period of six (6) months. However, Plaintiff completed the "CI706: MMSCI Mentored Research" course required by the MMSCI program syllabus, yet Defendants withheld earned credit in "CI706: MMSCI Mentored Research" course and instead issued Plaintiff an incomplete (INC) grade in "CI706: MMSCI Mentored Research" course based upon selectively imposed additional conditions "additional statistical research work", "interim thesis meeting" by "March 14, 2025" as a condition to receive credit in "CI706: MMSCI Mentored Research" course ,despite the fact these selectively imposed non-established formal HMS MMSCI program syllabus conditions were not contained in the formal MMSCI program syllabus, not required to receive credit in "CI706: MMSCI Mentored Research" course and or the first milestone research topics to receive credit in "CI706: MMSCI Mentored Research" course. Defendants departed from established MMMSCI and or HMS Masters Student's Handbook program policies, selectively enforced non-syllabus requirements against plaintiff, and improperly subsequently converted the previously issued incomplete (INC) grade in "CI706: MMSCI Mentored Research" course to the Plaintiff into a failing grade in "CI706: MMSCI Mentored Research" substantially in approximately seventy-two days (72) on on or about March 17,2025 (Exhibit 56),following completion and or submission of the first milestone research topics by the Plaintiff on January 6,2025(Exhibit 57), improperly and earlier than the stated HMS Masters Student's Handbook program policy period of six (6) months without citing or relying upon any written policy on the issuance of a failing grade in "CI706: MMSCI Mentored Research" course and or "requirement to withdraw" of the Plaintiff from the HMS MMSCI program contained in the HMS Masters Student's Handbook .

245. Defendants'stated reason for the improperly issued failing grade "CI706: MMSCI Mentored Research" to the Plaintiff and wrongful "requirement to withdraw" of the Plaintiff from the MMSCI program was *"you have failed to adhere to the updated remediation plan and further stated that "Notably, you did not have the required meeting by March 14, 2025"*,contradicts the fact that, there was not any established formal MMSCI program deadline on "March 14,2025" and or remediation for the Plaintiff to take in in "CI706: MMSCI Mentored Research" course and or any other course at that point in time (Spring 2025).

119

246.Defendants failed to provide any written and or established formal MMMSCI and or HMS Masters Student's Handbook policy as the basis for the improperly issued "failing grade" in "CI706: MMSCI Mentored Research" course to the Plaintiff and wrongful "requirement to withdraw" of the Plaintiff from the HMS MMSCI program demonstrating retaliatory motive and constructive set up for failure in "CI706: MMSCI Mentored Research" course and "requirement to withdraw" of the Plaintiff from the MMSCI program by Defendants.

247.Defendants also failed to provide any MMMSCI and or HMS Masters Student's Handbook program policies providing that failure by a research mentor to facilitate a research mentorship meeting for MMSCI students by a selectively imposed by a non-established formal MMSCI syllabus conditions and or "March 14,2025 deadline", exclusively against Plaintiff by Defendants constituted grounds for a "failing grade" in "CI706: MMSCI Mentored Research" course and "requirement to withdraw" of an MMSCI student and or the Plaintiff from the MMSCI program "effectively immediately".

248.Defendants likewise failed to provide any established MMMSCI and or HMS Masters Student's Handbook provision authorizing imposition of non-established formal MMSCI syllabus academic conditions exclusively imposed on one MMSCI student who identified Defendants in a formal complaint of discrimination and bullying triggering formal investigation, issuance of MMSCI students a failing grade in "CI706: MMSCI Mentored Research" course and or "requirement to withdraw" from the MMSCI program "effectively immediately" under non-established formal MMSCI syllabus academic conditions exclusively imposed against plaintiff but not on similarly situated students in the HMS MMSCI academic program ,2024 to 2026 cohort known to Plaintiff who first met with their research mentors at the same time as the Plaintiff or even later, in October or November 2024, including one White student in the MMSCI program who first met with their "CI706: MMSCI Mentored Research" course research mentor in November 2024 and presented their initial "CI706: MMSCI Mentored Research" course research topic milestone approximately one week later, also in November 2024 ,one Brown student in the MMSCI program who did not present their initial first milestone research topics originally due in Fall (November) 2024 until Spring 2025 as a condition for receiving course

120

credit in "CI706: MMSCI Mentored Research" course . The formal MMSCI program syllabus contained no requirement that plaintiff secure a research mentorship presentation meeting by "March 14, 2025", and no established  policy stated that inability of MMSCI students to obtain research mentor participation and or facilitation constituted grounds for immediate issuance of a "failing grade" in "CI706: MMSCI Mentored Research" course and "requirement to withdraw" of a MMSCI from the MMSCI program "effectively immediately".

249.Defendants also failed to provide any written MMMSCI and or HMS Masters Student's Handbook policies provision authorizing Defendants' selective imposition of non-established formal MMSCI syllabus conditions exclusively against Plaintiff  while upon information and belief Defendants awarded the Plaintiff credit but not a failing grade in "CI706: MMSCI Mentored Research" course to similarly situated students in the HMS MMSCI academic program ,2024 to 2026 cohort who first met with their research mentors at the same time as the Plaintiff or even later, in October or November 2024, including one White student in the MMSCI program who first met with their "CI706: MMSCI Mentored Research" course research mentor in November 2024 and presented their initial "CI706: MMSCI Mentored Research" course research topic milestone approximately one week later, also in November 2024 ,one Brown student in the MMSCI program who did not present their initial first milestone research topics originally due in Fall (November) 2024 until Spring 2025, and all MMSCI students who received the required statistical feedback from their research biostatisticians, as a condition for receiving course credit in "CI706: MMSCI Mentored Research" course and Defendants did not subject these similarly situated students in the MMSIC program were not subjected to equivalent "March 14,2025" meeting and or deadline and or "additional statistical research work", "interim thesis meeting" ,accelerated grading penalties and or threats of failure in "CI706: MMSCI Mentored Research" course.

250.The 2024 to 2025, HMS Masters Student's Handbook Section 2.09 and under Section 5 of Requirement to Withdraw, provides that students are automatically withdrawn only if students fail to attend classes or work on a mentored research/capstone project for a period of ten (10) business days without approval.

121

251. No established formal MMSCI policy or HMS Master's Student's Handbook notes that failure by an MMSCI student to obtain a research mentorship meeting and or presentation facilitation from a research mentor which is out of an MMSCI student's and or Plaintiff's control was grounds for failure in "CI706: MMSCI Mentored Research" course and or "requirement to withdraw" of the MMSCI student and or Plaintiff from the MMSCI program. Plaintiff lacked unilateral control over research mentor (Doctor Lisa Bebell's) provision of mentorship participation and or facilitation of a research mentorship meeting and or presentation facilitation to the Plaintiff.

252. Plaintiff repeatedly attempted and or was compelled to comply with Defendant's selectively imposed non-established formal HMS MMSCI program syllabus and or HMS Masters Student's Handbook conditions; including, Plaintiff sought HMS MMSCI program leadership's(Associate Professor McCausland and Doctor McGrath and or Deans' (Deans Segal and Gutlerner)assistance; contacted alternative potential research mentors, and attempting to arrange a meeting with a research mentor Doctor Lisa Bebell who had cancelled scheduled research meetings with the Plaintiff on March 10,2025 and refused to supervise feasible research topics aligned with Plaintiff's academic research interest consistent with the formal MMSCI program and or HMS Masters Student's Handbook Policy requiring MMSCI student to conduct research on feasible research topics and who(Doctor Bebell) was nonresponsive to Plaintiff's communication to facilitate a selectively imposed research meeting representation. Despite having actual knowledge on these circumstances, Defendants denied Plaintiff meaningful academic assistance with mentorship, and continuously selectively enforced non-established formal MMSCI syllabus conditions on the Plaintiff including "March 14,2025" meeting and or deadline and or "additional statistical research work", "interim thesis meeting, accelerated grading penalties contrary to established incomplete (INC) grade policy, and ultimately wrongfully "required" Plaintiff to "withdraw" based on conditions outside Plaintiff's control while the Defendants did not impose and or enforce these non-established formal MMSCI syllabus conditions on similarly situated students in the HMS MMSCI academic program ,2024 to 2026 cohort known to Plaintiff who first met with their research mentors at the same time as the Plaintiff or even later, in October or November 2024, including one White student in the MMSCI program who first met with their "CI706: MMSCI Mentored Research" course research

or even later, in October or November 2024, including one White student in the MMSCI program who first met with their "CI706: MMSCI Mentored Research" course research mentor in November 2024 and presented their initial "CI706: MMSCI Mentored Research" course research topic milestone approximately one week later, also in November 2024 ,one Brown student in the MMSCI program who did not present their initial first milestone research topics originally due in Fall (November) 2024 until Spring 2025, and all MMSCI students who received the required statistical feedback from their research biostatisticians, as a condition for receiving course credit in "CI706: MMSCI Mentored Research" course and Defendants did not subject these similarly situated students in the MMSIC program were not subjected to equivalent "March 14,2025" meeting and or deadline and or "additional statistical research work", "interim thesis meeting" ,accelerated grading penalties and or threats of failure in "CI706: MMSCI Mentored Research" course.

250.The 2024 to 2025, HMS Masters Student's Handbook Section 2.09 and under Section 5 of Requirement to Withdraw, provides that students are automatically withdrawn only if students fail to attend classes or work on a mentored research/capstone project for a period of ten (10) business days without approval.

251.No established formal MMSCI policy or HMS Master's Student's Handbook notes that failure by an MMSCI student to obtain a research mentorship meeting and or presentation facilitation from a research mentor which is out of an MMSCI student's and or Plaintiff's control was grounds for failure in "CI706: MMSCI Mentored Research" course and or "requirement to withdraw" of the MMSCI student and or Plaintiff from the MMSCI program. Plaintiff lacked unilateral control over research mentor (Doctor Lisa Bebell's) provision of mentorship participation and or facilitation of a research mentorship meeting and or presentation facilitation to the Plaintiff.

252.Plaintiff repeatedly attempted and or was compelled to comply with Defendant's selectively imposed non-established formal HMS MMSCI program syllabus and or HMS Masters Student's Handbook conditions; including, Plaintiff sought HMS MMSCI program leadership's(Associate Professor McCausland and Doctor McGrath  and or Deans' (Deans Segal and

123

that discriminatory disparate treatment can adversely affect a student's academic performance. Under the Harvard NDAB's policy, discriminatory disparate treatment includes singling out an individual for less favorable treatment because of a protected characteristic, particularly where such treatment unreasonably interferes with the student's ability to participate in or benefit from academic programs. The Discriminatory harassment based on an individual or group's protected status policy specifically identifies, as examples of prohibited conduct, imposing more severe discipline, assigning a negative grade or academic assessment, and suspending or expelling a student based on a protected characteristic. Here, the Defendants' actions fall squarely within these prohibitions. Plaintiff was singled out by Defendants' for unequal treatment, including the denial of remediation examination in "CI700: Ethics and the IRB" course to the Plaintiff while Defendants granted course remediation examinations to similarly situated HMS MMSCI 2024 to 2026 cohort students including one Brown student and two White students in the MMSCI 2024 to 2026 cohort who also failed the "CI701: Clinical Data Science; Design and Analytics I" course in summer 2024 course were provided remediation examination in course "CI701: Clinical Data Science; Design and Analytics I" course on October 8,2024 including the Plaintiff and therefore maintained "Good Academic Standing", while one Brown student, the Plaintiff (Black) , another Brown student from a different place of origin and two White students all of whom were in the MMSCI 2024 to 2026 and also failed CI708A Clinical Data Analytics 11 course in Fall 2024,were granted remediation examination in CI708A Clinical Data Analytics 11" course on January 14,2025.

255. Defendants also improperly placed the Plaintiff on "Academic Probation Status", partly for asking a question on eligibility criteria of course remediation examination to Dean Johanna Gutlerner and DoctorAjay Singh("Dr.Singh") .Warning for and or referral of the Plaintiff to the APRB for withdrawal from the HMS MMSCI program for contacting Provost Glover for guidance. These are legitimate academic questions and or requests for academic support and or protected activities by the Plaintiff not tied to any prohibited HMS MMSCI and or Harvard University policy warranting any warnings of withdrawal of MMSCI students from the HMS MMSCI program and or any referral to the APRB for withdrawal from the HMS MMSCI program, and denial to the Plaintiff of educational right to afforded to all HMS MMSCI students to appeal an 'Academic Probation Status" sanction and or record as provided in the Master's

124

Student's Handbook" policy, denial of meaningful educational opportunity to the Plaintiff including with conducting research on feasible research topics and issuing the Plaintiff an incomplete (INC) and or a failing grade in "CI706: MMSCI Mentored Research" course credit despite completion of the first milestone research topics per the HMS MMSCI program syllabus and ultimately using this assigned "CI706: MMSCI Mentored Research" course failing grade to wrongfully "withdraw" and or justify the Plaintiff's "requirement to withdraw" from the HMMS MMSCI program and withdrew the Plaintiff from the HMMS MMSCI program.

Defendants denied the Plaintiff credit in "CI706: MMSCI Mentored Research" course, assignment of an improper "incomplete(INC) grade" in "CI706: MMSCI Mentored Research" course and later an improperly issued "failing grade" in "CI706: MMSCI Mentored Research" course by Defendants, and ultimate wrongful "requirement to withdraw" of the Plaintiff from the HMS MMSCI program, the directive by Doctor McGrath to the Plaintiff to defer current (Fall 2024) semester ,required "CI706: MMSCI Mentored Research" course research first milestone research topics per the formal HMS MMSCI program to a future semester(Spring 2025) semester, semester in which the "CI706: MMSCI Mentored Research" course research milestone research topics was not offered, denial of required MMSCI program leadership including Doctor McGrath while she and Associate Professor McCausland  (who otherwise co-chair of the MMSCI student's research), topics research poster review by Doctor McGrath while she (Doctor McGrath) and Associate Professor McCausland reviewed research posters of all MMSCI program 2024 to 2026 cohort students on research day .Additionally, the selectively imposed non- established formal HMS MMSCI program syllabus conditions on the Plaintiff including "additional statistical research work" and "interim thesis meeting" "March 14,2025" These actions unreasonably interfered with and ultimately prevented the plaintiff's ability to participate in and benefit from the Harvard University's HMS MMSCI academic program from Spring 2025 and the 2025 to 2026 academic year while similarly situated students in the HMS MMSCI academic program ,2024 to 2026 cohort who first met with their research mentors at the same time as the Plaintiff or even later, in October or November 2024, including one White student in the MMSCI program who first met with their "CI706: MMSCI Mentored Research" course research mentor in November 2024 and presented their initial "CI706: MMSCI Mentored Research" course research topic milestone approximately one week later, also in November 2024 ,one Brown student in the MMSCI program who did not present their initial first milestone

125

research topics originally due in Fall (November) 2024 until Spring 2025 as a condition for receiving course credit in "CI706: MMSCI Mentored Research" course but upon information and belief Defendants awarded credit but not a failing grade in "CI706: MMSCI Mentored Research" course to these similarly situated students in the MMSIC program. Defendants prevented the plaintiff from continuing in the courses "CI700: Ethics and the IRB" and "CI700: Ethics and the IRB" course in summer 2025 by wrongfully 'requiring" the Plaintiff to "withdraw" from the HMS MMSCI program. The November 4,2024 APRB "Academic Probation Status" letter sent to the Plaintiff by Dean Gutlerner stated that any failure in subsequent course by the Plaintiff would result in "withdrawal" from the MMSCI program however, an improperly issued failure in "CI706: MMSCI Mentored Research" course to the Plaintiff despite completion of "CI706: MMSCI Mentored Research" course first milestone research topics by the Plaintiff and or directly caused by the Defendants' discriminatory and retaliatory actions against the Plaintiff cannot constitute a legitimate academic failure.

256. Notably, Defendants had previously placed the Plaintiff had on "Academic Probation Status", with one of its conditions which stated that any future course failure would result in withdrawal of the Plaintiff from the MMSCI program. Defendants' actions demonstrate a deliberate effort to improperly award such failing grade in in "CI706: MMSCI Mentored Research" course to the Plaintiff to wrongfully withdraw Plaintiff from the MMSCI program. Reflecting that Defendants' actions cannot reasonably be characterized as legitimate academic evaluation but rather reflect arbitrary and discriminatory enforcement of academic standards absent HMS MMSCI Master's Student's Handbook policy demonstrating that Defendants' adverse academic actions against Plaintiff retaliatory and inconsistent with their own HMS MMSCI Master's Student's Handbook policy.

257.On March 18, 2025,one day after Defendants' improperly issued the Plaintiff a "failing grade" in "CI706: MMSCI Mentored Research" course despite completion of the "CI706: MMSCI Mentored Research" course  first milestone research topics and after Plaintiff had been wrongfully "required to withdraw" from the HMS MMSCI program by Defendants, Doctor Bebell, the research mentor who supervised the Plaintiff's first milestone research topics sent a separate communication to Plaintiff and stated that *"I know the March 14th deadline has passed" and further noted that and " I'm thinking about you"* . Acknowledging that the

selectively imposed non-established HMS MMSCI program syllabus "March 14,2025 deadline" had already passed yet Doctor Bebell still failed to respond to the Plaintiff's earlier communication to her (Doctor Bebell) on March 12,2025, requesting to meet and facilitate the repetition of the previously completed first milestone research topics by the selectively imposed non HMS MMSCI program syllabus "March 14,2025 deadline" deadline under threat of failure in "CI706: MMSCI Mentored Research" course and withdrawal from the HMS MMSCI program of the Plaintiff by Defendants.

258.On March 18,2025, Plaintiff met with Doctor Siedner, one day after Plaintiff had been wrongfully "required to withdraw" from the MMSCI program. During this meeting with Doctor Siedner, Plaintiff explained the circumstances of the wrongful "required to withdraw" of Plaintiff from the MMSCI program, including concerns about a selectively enforced, non-established formal MMSCI syllabus "March 14,2025 deadline" and an improperly issued "failing grade" in "MMSCI Mentored Research CI706" course despite completion of the "CI706: MMSCI Mentored Research" course by Plaintiff per MMSCI program syllabus by Plaintiff. Doctor Siedner also requested additional details regarding the events leading up to the non-syllabus "March 14,2025 deadline" and the "required to withdraw" from the MMSCI program, which the plaintiff provided to Doctor Siedner who further asked the Plaintiff how he could assist the Plaintiff and additionally stated that he Doctor Siedner) would reach out to the MMSCI Program Co-Director, Associate Professor Finnian McCausland to discuss the issue of Plaintiff's wrongful "requirement to withdraw" from the MMSCI program.

259.On March 18,2025, Doctor Siedner informed the plaintiff that he (Doctor Siedner) had reached out to *"a couple of folks"* and noted that *"It sounds like there may be an opportunity to appeal the decision"* of the "required to withdraw" from the MMSCI program. Although Plaintiff was not helped as Plaintiff's first appeal of the "requirement to withdraw" was shortly thereafter (March 25,2025) denied by APRB co-chairs Associate Professor Finnian McCausland and Doctor McGrath and Deans Rosalind Segal and Johanna Gutlerner who were respondents in Plaintiff's formal complaint of discrimination and bullying that Plaintiff filed with Harvard University on March 3,2025.

127

**Conflict of Interest Arising from Respondents' Participation in Wrongful "Requirement to Withdraw" and Appeal Denial of Plaintiff by Defendants and Failure of Harvard to Conduct Independent Investigation on Plaintiff's Formal Complaint of Discrimination and Bullying With Harvard University Office for Community Conduct.**

260. A significant structural conflict of interest tainted the events leading up to improperly issued failing grade in in the "CI706: MMSCI Mentored Research" course first milestone research topics to Plaintiff and also Plaintiff's wrongful "requirement to withdraw" from the MMSCI program by Defendants; Deans Gutlerner and Segal and Associate Professor McCausland Doctor McGrath, all of whom Plaintiff's had identified in Plaintiff's academic concerns ,informal and formal complaints of discrimination and bullying on February 28,2025 and March 3,2025 respectively and all of whom simultaneously served as co-chairs and or voting members of the APRB that imposed the sanctions against the Plaintiff ,voted to withdraw the Plaintiff from the HMS MMSCI program and denied Plaintiff's appeal for reconsideration of the "requirement to withdraw" from the HMS MMSCI program.

261. After Plaintiff submitted an informal complaint of discrimination and bullying on February 28,2025 and formal complaint of discrimination and bullying on March 3,2025 to Harvard University, Plaintiff sought redress about these complaints filed with Harvard from multiple Harvard University offices, including the HMS Associate Deans Rosalind Segal and Johanna Gutlerner, Office of the Dean of Harvard Medical School, Harvard Offices of the President and Provost, the HMS Title IX Office, Harvard NDAB's Office, and Harvard Office of General Counsel. Plaintiff made reports of discrimination and bullying within the MMSCI program throughout the period of the conduct by Defendants, before, during, and after the imposition of a non-established formal MMSCI program syllabus deadline that to the improperly issued "failing grade" in "CI706: MMSCI Mentored Research" course to Plaintiff by Defendants and Plaintiff's wrongful "requirement to withdraw" from the MMSCI ,as well as after the Plaintiff's wrongful requirement to withdraw" from the MMSCI program through the 2024 to 2025 academic year. Despite these attempts by Plaintiff seeking redress from Harvard University officials regarding Plaintiff's formal complaint of discrimination and bullying with Harvard, relying on Harvard University's NDAB, Harvard Office of General Counsel(OGC) and or related Harvard University's institutional stated commitment to supporting all members of the Harvard university

128

community, including faculty ,students and staff members at Harvard University, none of the Harvard University offices and or staff and faculty that Plaintiff contacted and sought support and or redress from regarding facing ongoing discriminatory and retaliatory conduct within the MMSCI program that impacted and or were impacting Plaintiff's academic performance and progress within the MMSCI program, meaningfully responded to and or supported the Plaintiff regarding the Plaintiff's academic concerns, complaints of discrimination and bullying with Harvard and or requests for their urgent support and redress regarding the Plaintiff's academic concerns .Neither did these Harvard University officials and or staff noted herein that Plaintiff contacted and sought redress from regarding ongoing discriminatory and retaliatory conduct against the Plaintiff within the HMS MMSCI academic program take any meaningful and or effective action to investigate, intervene, or prevent the ongoing discriminatory and retaliatory actions that the Plaintiff faced and or was facing in the MMSCI academic program.

262. Plaintiff made multiple communications to the Harvard University officials described above clearly evidence how HMS MMSCI faculty and or administrators within the MMSCI academic program engaged in and or were engaging in discriminatory and retaliatory conduct that adversely caused Plaintiff significant emotional and mental distress and affected and or were affecting the Plaintiff's academic progress and performance within the HMS MMSCI academic program. The Harvard Medical School and Harvard University had actual notice of the discriminatory and retaliatory conduct of the HMS MMSCI faculty and ample opportunity to respond to the Plaintiff's reports and complaints of discrimination and bullying within the HMS MMSCI academic program and yet Harvard Medical School and or Harvard University failed to take reasonable corrective measures regarding the discriminatory and retaliatory conduct of the Defendants against the Plaintiff within the HMS MMSCI academic program.

263. Upon information and belief, the HMS MMSCI faculty, Dean Gutlerner who sent the Plaintiff the notice of "requirement to withdraw" from the MMSCI program "effective immediately" who among others that the Plaintiff had identified in the Plaintiff's complaints of discrimination and bullying with Harvard University on March 3,2025, appeared to receive and or received guidance or support from the Harvard Office of General Counsel specifically, Attorney Heather Quay, while Plaintiff did not receive any assistance or protection from the Harvard Office of General Counsel

129

at all, as a student of the HMS and therefore a member of Harvard University community at all relevant times upon the Plaintiff's request for support from some of the Harvard University officials including the Harvard Office of General Counsel in some of those communications to Harvard University officials regarding Plaintiff facing discriminatory and retaliatory conduct of the HMS MMSCI program faculty. The documented pattern of repeated concerns and complaints of discrimination and bullying communicated and or filed by the Plaintiff at Harvard described in this complaint, the Harvard University's officials awareness of ongoing harm against Plaintiff within the HMS MMSCI academic program, and Harvard's deliberate failure to take any timely and or effective action to stop or prevent the conduct of Harvard Medical School MMSCI faculty suggests disparity and selective application of the Harvard's own statement on protection of all community members including faculty, students and staff at Harvard University and raises questions on fairness ,neutrality of protection of all members of Harvard University community against discriminatory and retaliatory treatment within Harvard University.

263.On March 24, 2025, the potential research mentor Doctor Robbins, Gregory L ("Dr. Gregory"), followed up with Plaintiff regarding potential mentorship opportunity, however, by that time (on March 24, 2025), the Defendants had improperly issued Plaintiff a "failing grade" "CI706: MMSCI Mentored Research" course and wrongful "requirement to withdraw" of Plaintiff from the HMS MMSCI program .Plaintiff informed Doctor Robbins that Plaintiff was pursuing an appeal of the wrongful "requirement to withdraw" of the Plaintiff from the HMS MMSCI program and further noted that Plaintiff would get back to Doctor Gregory, as soon as possible, however, all the Plaintiff's appeals within the Harvard Medical School were later denied by the APRB and SCRR and the Harvard Medical School's Dean, (Dean Daley) denied Plaintiff's request to meet with him.

264.On March 24,2025,Plaintiff requested reconsideration for the "requirement to withdraw" from the MMSCI program from the same APRB co-chaired by HMS MMSCI faculty members including Deans Segal and Gutlerner and HMS MMSCI program leadership who also served as APRB voting members Associate Professor McCausland and Doctor McGrath, who were identified by the Plaintiff in the Plaintiff's academic concerns and informal and formal discrimination and bullying complaints with Harvard and thereafter who imposed selective non-

established formal HMS MMSCI program syllabus "March 14 2025 deadline" under the threat of failure and withdrawal from the HMS MMSCI program and subsequently improperly issued the Plaintiff a "failing grade" "CI706: MMSCI Mentored Research" course and wrongfully "required the Plaintiff to withdraw" from the MMSCI program.

265. The APRB meeting on March 24,2025, co-chaired by Deans Rosalind Segal and Johanna Gutlerner afforded the Plaintiff only ten (10) minutes to present Plaintiff's case as communicated by Dean Gutlerner. This limited opportunity ten (10) minutes) with the APRB was provided to the Plaintiff only after the Plaintiff had pointed out to Dean Gutlerner that, she (Dean Gutlerner) had never offered any opportunity to the Plaintiff to meet or discuss the Plaintiff's academic concerns upon the Plaintiff's request to meet with Dean Gutlerner during the 2024 to 2025 academic year. Dean Gutlerner then terminated the Plaintiff's presentation to the APRB during this meeting and, stated that Plaintiff's allotted time of ten (10) minutes had expired.

266. On March 25,2025 , the same APRB co-chairs or voting members including Associate Professor McCausland and Doctor McGrath and Deans Rosalind Segal and Johanna Gutlerner who Plaintiff identified in Plaintiff's formal complaint of discrimination and bullying with Harvard, stated in their response to Plaintiff's request for reconsideration for "requirement to withdraw" from the HMS MMSCI program its parts stated that *"you received a letter from the APRB outlining the reasoning behind its vote to require you to withdraw from the.. program "for repeated course failures and failure to adhere to the remediation plan outlined in the updated Academic Probation letter"* Defendant's stated reason for "requirement to withdraw" cited *"repeated course failures and failure to adhere to a remediation plan."* .However, Plaintiff neither failed any courses  in the MMSCI program in the Fall 2024 and Spring 2025 semester nor had repeated legitimate course "failures.". Rather the improperly issued "failing grade" in "CI706: MMSCI Mentored Research" course to Plaintiff by Defendants demonstrate a discriminatory and retaliatory motive and or pattern by Defendants identified in Plaintiff's academic concerns within the MMSCI academic program and or informal and formal complaints of discrimination and bullying with Harvard on February 28,2025 and March 3,2025,respectively, importantly no established HMS Master's Student's Handbook states that a discriminatory and retaliatory issued "failing grade" in"CI706: MMSCI Mentored Research"

131

course to the Professor McCausland and Doctor McGrath and Deans Rosalind Segal and Johanna Gutlerner Plaintiff is grounds for withdrawal of an MMSCI student and or the Plaintiff. Additionally, Defendants denied the Plaintiff course remediation examination, contradicting the HMS Master's Student's Handbook, Section 2.03 (Grading and Examinations), which provides that "students who fail a required course are required to take a re-examination and/or do remedial work as approved by the course director.". This policy evidence that taking course remediation examination and or retaking a course by MMSCI students is not discretionary but obligatory, but Defendants denied the Plaintiff these rights established in the HMS Master's Student's Handbook. Notably, Defendants subjected Plaintiff to escalating discriminatory and retaliatory conduct and hostile academic environment that caused Plaintiff significant emotional and mental distress and materially affected Plaintiff's ability to concentrate in the ongoing course in "CI701: Clinical Data Science; Design and Analytics I" course in summer and Fall 2024 semesters, reflecting deviation from and or discriminatory application of established HMS Master's Student's Handbook Policy by Defendants.

267. Defendants also stated in the February 27,2025 letter that , *"After thoroughly reviewing your academic progress to date and your request to reconsider its decision", the APRB determined that you had not demonstrated either that: (1) a procedural error occurred that may change the outcome of the decision; or that (2) you had substantive and relevant new information that was not available at the time of the original decision and that may change the outcome of the decision".*

268. Furthermore, the Defendants' statement that *"you had not demonstrated either that: (1) a procedural error occurred that may change the outcome of the decision; or that (2) you had substantive and relevant new information that was not available at the time of the original decision and that may change the outcome of the decision"* , is directly contradicted by the record, which demonstrates deviation from the established HMS MMSCI and HM Master's Student's Handbook Policy and syllabus, selective enforcement of non-established formal HMS MMSCI program syllabus conditions as "requirements", denial of equal remediation examination, lack of academic support, retaliatory and discriminatory academic sanctions including "monitored academic status and "academic probation" status and biased decision-

132

making. Dean Gutlerner and the APRB also cited that *"after thoroughly reviewing your academic progress to date"* as another reason for the APRB denial of the reconsideration for Plaintiffs appeal of "requirement to withdraw" from the MMSCI program yet provided no specific details to support this statement. Additionally, with the Spring 2025 semester courses, and assignments being ongoing at all relevant times, the Spring 2025 final exams were not yet due and or had not yet been taken by any student in the MMSCI program, and Plaintiff's partial grades for the Spring 2025 semester in the MMSCI program exceeded the MMSCI program's 80% threshold. In fact, Plaintiff had successfully completed all required coursework, was up to date with the current Spring 2025 semester, and had no outstanding coursework for the Fall term 2024 and or Spring 2025 semesters. Defendants' adverse actions against Plaintiff excluded Plaintiff from completing the "CI701: Clinical Data Science; Design and Analytics I" in summer 2024 and "CI701: Clinical Data Science; Design and Analytics I" in summer 2025 because of the wrongful "requirement to withdraw" of the Plaintiff from the MMSCI program by Defendants.

269.Under the formal HMS and MMSCI program syllabus and or HMS Master's Student's Handbook Policy, no final grade for the Spring 2025 semester determination could have been made at the time (March 14, 2025 ), the last day of pre-Spring 2025 semester break and the last week the Plaintiff attended class in the MMSCI program before the Plaintiff was issued a failing grade in "CI706: MMSCI Mentored Research" course  and wrongfully "required to withdraw" from the HMS MMSCI program by the APRB  on Monday ,March 17,2025, rendering the APRB's reliance on incomplete Spring 2025 semester academic data as a reason for the APRB denial of the Plaintiffs appeal for reconsideration for 'requirement to withdraw" from the MMSCI program unjustified per the HMS Master's Student's Handbook and or MMSCI policies. The Defendants' stated justifications for the Plaintiff's "requirement to withdraw" from the HMS MMSCI program and the denial of the Plaintiff's reconsideration for "requirement to withdraw" from the HMS MMSCI program were inconsistent and shifting. Initially, the APRB cited the improperly issued and purported "failing grade" in the "CI706: MMSCI Mentored Research" course by Defendants despite completion of all "CI706: MMSCI Mentored Research" required work under the MMSCI program syllabus by the Plaintiff , but later relied on purported *"after thoroughly reviewing your academic progress to date"* for a Spring s2025 semester that

was ongoing, with final Spring 2025 grades not yet determined and the Plaintiff's partial Spring 2025 grades exceeding program's 80% assignment grades threshold.

268. The participation of the HMS MMSCI faculty members including Associate Professor McCausland and Doctor McGrath and Deans Gutlerner and Segal who were directly involved in imposition of the underlying adverse academic "sanctions" in abdicating Plaintiff's academic status within the HMS MMSCI program and their information and "referral" of the Plaintiff to the APRB a committee co-chaired by the same MMSCI program Deans including Deans Gutlerner and Segal and with MMSCI program leadership including Associate Professor McCausland, Doctor McGrath who also served as voting participants in the decision-making process concerning the Plaintiff's academics and or academic status reflects the basis of retaliatory and discriminatory academic determinations affecting the Plaintiff's academic status and the improperly issued a "failing grade" in "CI706: MMSCI Mentored Research" course by Defendants and wrongful "requirement to withdraw" of the Plaintiff from the HMS MMSCI program by the APRB members including Associate Professor McCausland, Doctor McGrath and Deans Gutlerner and Segal, demonstrating that the academic information and or adverse academic determinations regarding Plaintiff's academics and or academic status originated from and or were determined by the HMS MMSCI program leadership including Associate Professor McCausland, Doctor McGrath and Deans Gutlerner and Segal.

269. Additionally, HMS MMSCI program leadership including Associate Professor McCausland, Doctor McGrath and Deans Gutlerner and Segal have administrative responsibility regarding HMS MMSCI students and or coursework and research mentorship in the MMSCI program and are all voting members in the APRB within the HMS MMSCI program and Harvard Medical School. Records in this complaint show all meetings and communications concerning the Plaintiff's academic status and the non-established formal MMSIC program syllabus and or retaliatory and discriminatory academic "sanctions" were conducted by MMSCI program directors including Associate Professor McCausland and Doctor McGrath and Deans Gutlerner and Segal, the same Harvard faculty identified in the Plaintiff's academic concerns and or informal and formal complaints of discrimination and bullying with Harvard NDAB on February 28,2025 and March 3,2025 respectively.

134

270.The HMS Master's Student's Handbook under Section 4.05 ,General Principles for Consideration of Student Performance and Conduct, provides that "at the appellate level, a student may object for good cause, such as evidence of conflict of interest or bias, to the service of any member of a reviewing body" and that "the Chair of the APRB or the SCRR may, if warranted, remove and replace a member of a reviewing body." The HMS Master's Student's Handbook further requires that its procedures "be implemented with fairness, objectivity, and thoroughness." Permitting individuals who were the subjects of the Plaintiff's complaints of discrimination and bullying to adjudicate the Plaintiff's academic standing and or fate directly violates these principles and constitutes a procedural error under the Handbook's own appellate framework (Section 3.04), thus HMS MMSCI program leaders and or deans recognize the impact of such conflicts of interest and yet proceeded and voted as respondents in Plaintiff's formal complaint of discrimination and bullying with Harvard to for the wrongful "requirement to withdraw" of the Plaintiff from the HMS MMSCI program.

271.Following Plaintiff's wrongful "requirement to withdraw" from the HMS MMSCI program and the denial of the Plaintiff's first appeal for reconsideration for the "requirement to withdraw" from the MMSCI program by the APRB, a board membership co-chaired by Deans Gutlerner and Segal, pending Plaintiff's second appeal for reconsideration of the "requirement to withdraw" from the MMSCI program to the Standing Committee on Rights and Responsibilities (SCRR) for reconsideration for the wrongful "requirement to withdraw" of the Plaintiff from the MMSCI program and with the Plaintiff, already facing a wrongful "requirement to withdraw" from the MMSCI program and exclusion from participating in in educational activities in the MMSCI program with an ongoing Spring 2025 semester with an exam for the in "CI704 Scientific Communication 1" course taught by Doctor McGrath, scheduled to begin the following week at that time, post Spring break 2025, Plaintiff reached out to and or and sought support from other Harvard University faculty, affiliates and or Deans including and the HMS Dean, George Q.Daley regarding the improperly issued "failing grade" in "CI706: MMSCI Mentored Research" and the wrongful "requirement to withdraw" of the Plaintiff from the MMSCI program by Defendants.

272. On March 25,2025,the co-chair of the APRB and Associate Dean for Graduate Education, Dean Gutlerner ,a respondent in the Plaintiff's formal complaint of discrimination and bullying

135

with Harvard and who also issued to the Plaintiff the letter of "requirement to withdraw" from the MMSCI academic program stated to the coordinator for the HMS Standing Committee on Rights and Responsibilities ("SCRR"), Ms. Leri Godin in excerption that ", *I don't want*" the Plaintiff, and mentioned that, *"to have ID access to any of our buildings"*, Dean Gutlerner , also stated that," *I don't see any reason why we can't do that"* ,and further noted that, " *I even think the 10 days was generous and not obligated by our handbook"* ,and she (Dean Gutlerner,), continued and noted that *"Frankly, I also would like to cut off"* ,Plaintiff's, " *HMS email access at this point as well"* and then stated to Ms.Godin that *"so I wonder if we could send"*, Plaintiff, *"an updated letter saying that"*, Plaintiff's, " *access is being cut off immediately?."(Exhibit 129).*

273.On March 25,2025 ,pending Plaintiff's second appeal to the Standing Committee on Rights and Responsibilities (SCRR) Appellate Committee, coordinator, Ms.Godin who also served as the HMS Director of Integrity ,in response to Dean Gutlerner in excerption stated ,*"I defer fully to you and to Heather on this, but I wonder if it would be prudent to give"*, Plaintiff ,further stated that , *"a warning that"* , Plaintiff's, *"Harvard email will be terminated before the deadline provided in the March 25th letter?."*

274.These statements by Ms.Godin and Dean Gutlerner evidence the escalating discriminatory and retaliatory pattern Defendants subjected Plaintiff to within the MMSCI program for Plaintiff's exercising rights and or protecting activity  seeking faculty support regarding retaliatory adverse actions taken against Plaintiff within the MMSCI program by Defendants and further demonstrates an inference of retaliatory motive of the HMS faculty and staff against Plaintiff and the non-HMS Master's Student's Handbook Policy based academic sanctions imposed against Plaintiff by Defendants especially the fact that Plaintiff lacked meaningful academic support within the HMS MMSCI program.

275.Additionally ,the APRB Co-Chair, Dean Gutlerner's statement to Ms.Godin, who(Ms.Godin) did not serve as an HMS MMSCI program faculty and or APRB member rather, the coordinator for the HMS SCRR, mentioning to take adverse actions against the Plaintiff for seeking Harvard faculty support for discriminatory and retaliatory adverse actions  including (improperly issued "failing grade" in "CI706: MMSCI Mentored Research" course and wrongful

136

"Requirement to Withdraw" of the Plaintiff from the MMSCI) by the same APRB co-chaired by Deans Johana Gutlerner and Rosalind Segal and Associate Professor Finnnian McCausland and Doctor Martina McGrath evidence a pattern of discriminatory and retaliatory actions against the Plaintiff by Defendants and the non-established HMS Master's Student's Handbook Policy based escalating academic sanctions that Defendants imposed on the Plaintiff within the MMSCI academic program and also contradicts the Harvard University CNSDR policy against *power-based retaliation.*

276.Further ,the statement by Dean Gutlerner that they were *"not obligated by the handbook"* is contradicted by the HMS Master's Student's Handbook that the Defendants' (Deans Gutlerner and Segal and Associate Professor McCausland and Doctor McGrath) while they themselves enforce but failed to adhere to it (HMS Master's Student's Handbook) regarding Plaintiff's academic status within the HMS MMSCI program while they again, themselves (Deans Gutlerner and Segal and Associate Professor McCausland and Doctor McGrath) actively took discriminatory and retaliatory adverse academic actions including "denial of remediation and "Monitored Academic Status" , "Academic Probation Status", "Denial of Reconsideration for "Academic Probation Status", and or "Updated Academic Probation Status" ,"failing grade in "CI706: MMSCI Mentored Research" course, "Unprofessional Conduct", "Referral to and or meeting by APRB for consideration of withdrawal of Plaintiff from the MMSCI program" and the improperly issued "failing grade in "CI706: MMSCI Mentored Research" course and wrongful "Requirement to Withdraw" of the Plaintiff from the MMSCI against the Plaintiff within the MMSCI program.

277. Dean Gutlerner and Ms. Godin were aware (through Plaintiff's reply on the communication between Dean Gutlerner and Ms.Leri described above), that Plaintiff had access to this communication between Dean Gutlerner and Ms.Leri Godin described above, they(Dean Gutlerner and Ms.Leri) did not proceed to "terminate" Plaintiff's Harvard email before their set ten (10) day period until April 3,2025 as soon as Ms.Godin sent Plaintiff the SCCR's decision denying Plaintiff's reconsideration for "requirement to withdraw" of Plaintiff from the MMSCI program on April 3,2025. Notably, Dean Gutlerner previously imposed and or referred Plaintiff to the APRB for consideration of additional disciplinary measures against the Plaintiff including

137

"unprofessional conduct" and "Academic Probation Status" for asking Dean Gutlerner and Professor Singh, a question about eligibility criteria for course remediation examination within the MMSCI program and "withdrawal" from the MMSCI in November 2024 for contacting Provost Glover for guidance and that were not grounded in established HMS Master's Student's Handbook Policy. Plaintiff specifically identified among other MMSCI program Dean including Dean Gutlerner in the Plaintiff's formal complaint of discrimination and retaliation with Harvard OCC. These actions by Harvard Medical School employees described herein demonstrate a pattern of targeted and escalating retaliatory conduct aimed at isolating and penalizing Plaintiff for raising academic concerns and seeking support from Harvard institutional channels and or faculty regarding an ongoing discriminatory and retaliatory treatment and or adverse academic actions that Defendants subjected Plaintiff to within the HMS MMSCI program. The adverse academic actions against Plaintiff by Defendants appear predetermined raising questions on impartiality of the escalating adverse academic decisions taken against the Plaintiff by Defendants absent the established HMS Master's Student's Handbook Policy and or deviation from it (HMS Master's Student's Handbook Policy).

278. Furthermore, Plaintiff was not "required to withdraw" from the HMS MMSCI program. The communication between Dean Johanna Gutlerner and Ms. Leri Godin described above reflects a clear conflict of interest and bad faith motive by these Harvard employees, described above, Ms. Godin's reply  as the coordinator to the Standing Committee on Rights and Responsibilities (SCRR) Appellate Committee and Director for Professional Integrity at the Harvard Medical School, to the Harvard Medical School Senior Associate Dean Gutlerner and or the Co-Chair of the APRB and a respondent in Plaintiff's formal complaint of discrimination and bullying with Harvard OCC, at a time when the Plaintiff's appeal to the APRB co-chaired by Dean Gutlerner had been denied and that with the SCRR, an appellate committee for which Ms. Godin is a coordinator, was still pending which was also later denied by SCRR, raising questions on the impartiality and fairness of the APRB's and SCRR's decisions of denial of Plaintiff's appeals for reconsideration for the wrongful "requirement to withdraw" from the MMSCI program as required in the appeals process per the HMS Master's Student's Handbook.

138

279.On March 25, 2025, Plaintiff submitted a second appeal of reconsideration for "requirement to withdraw" from the MMSCI program to the Harvard Medical School's Standing Committee on Rights and Responsibilities (SCRR) Appellate Committee.

280.On March 27,2025, pending the Plaintiff's second appeal for reconsideration of the reconsideration of "requirement to withdraw" of Plaintiff from the HMS MMSCI program with the SCRR, Plaintiff requested a meeting with the HMS Dean, Dean George Q. Daley who according to the HMS Master's Student's Handbook section 3.04 Appellate Review of a Request to Withdraw, holds overall authority over academic matters at the HMS to discuss the improperly issued "failing grade in "CI706: MMSCI Mentored Research" course to Plaintiff and the wrongful "requirement to withdraw" from the HMS MMSCI program by Defendants.

281.On March 29,2025, in response to Plaintiff's communication requesting an opportunity to meet with him (Dean Daley).However, Dean, Dean George Q. Daley denied Plaintiff's request to meet with him and mentioned to Plaintiff that he(Dean, Dean George Q. Daley) *"concurred"* (Exhibit 128) with the HMS MMSCI program leadership including Associate Professor Finnian McCausland and Doctor Martina McGrath and Deans Rosalind Segal and Johanna Gutlerner who improperly issued the Plaintiff a failing grade "CI706: MMSCI Mentored Research" course and the wrongful "requirement to withdraw" of Plaintiff from the HMS MMSCI program without Dean, Dean George Q. Daley hearing any single word from Plaintiff about the improperly issued the Plaintiff a "failing grade" "CI706: MMSCI Mentored Research" course and wrongful "requirement to withdraw" of Plaintiff from the HMS MMSCI program by Defendants named in Plaintiff's formal complaint of discrimination and bullying with Harvard OCC.

282.On April 3,2025, the HMS Standing on Rights and Responsibilities (SCRR) Appellate Committee Coordinator, Ms.Leri Godin, notified Plaintiff of the Co-chair of the SCRR  and the Dean for Faculty Affairs, Dean Kristin Bittinger's decision of the Plaintiff's second appeal of reconsideration for "requirement to withdraw" from the MMSCI program to the SCRR which denied Plaintiff's appeal on the stated grounds that Plaintiff had *not demonstrated either: (1) that a procedural error occurred which may have changed the outcome of the decision; or (2) that*

139

*there existed substantive and relevant new information, unavailable at the time of the original decision, that may have altered the outcome* and further stated *that . "At this juncture and in light of this determination, you have exhausted the appeals available to you"* .However, this statement by the HMS Dean of Faculty, Dean ristin Bittinger reflects non factually unsupported conclusion, as the record in this complaint reflects both significant procedural irregularities by the APRB and or the SCCR and the presence of relevant information that no such selectively applied "March 14,2025 deadline" and or "additional statistical work" and or "interim meeting" existed in the HMS MMSCI program and or was required at the first milestone stage to receive a credit in "CI706: MMSCI Mentored Research " was not considered by and or over looked by the SCCR.

283.Additionally, before Plaintiff could pursue a formal appeal with the HMS Dean, Dean Daley, the SCCR co-chair Dean ristin Bittinger's conclusion that "At this juncture and in light of this determination, you have exhausted the appeals available to you" ,contradicts the HMS Masters Handbook section 3.04 Appellate Review of a Request to Withdraw which explicitly provides that a *"student required to withdraw from the HMS may request review of the decision of the chair of the SCRR or the Appeals panel by the Dean of the Faculty of Medicine. The Dean of the Faculty of Medicine must receive any such request for review within five business days of the date of the decision of the Chair of the SCRR or the Appeals Panel"*. Defendant, Harvard Medical School through its employee, the SCCR Co-Chair, Dean ristin Bittinger, denied the Plaintiff the Plaintiff's established procedural rights in the HMS Master's Student's Handbook, section 3.04, and prevented the Plaintiff from exercising that right to appeal decisions of such adverse academic actions against the Plaintiff. Plaintiff was harmed because they lost a meaningful opportunity to formally challenge the decision by the APRB and SCCR to the Dean of Harvard Medical School, Dean Daley. Based on Dean for Faculty ristin Bittinger's ,representation, Plaintiff did not pursue an appeal with the Harvard Medical School's Dean Daley.

284. Important to note is that on February 4,2025, Plaintiff reached out to the SCCR and appealed the reconsideration for "Academic Probation Status" imposed by Dean Johanna Gutlerner. The same day on February 4,2025, the SCCR Co-Chair, Dean Bittinger in response to

140

Plaintiff stated that, she (Dean Bittinger) she had been informed that Plaintiff was not "withdrawn" from the MMSCI program at that time ,although she did not name the informant and further noted that Plaintiff should not include them (SCCR) in Plaintiff's communication to Harvard internal channels for reconsideration for "Academic Probation Status" by Deans Gutlerner and Segal and MMSCI program leadership Associate Professor McCausland and Doctor McGrath .These circumstances taken together amplified the coercive impact of the non-established formal HMS MMSCI program syllabus conditions on the Plaintiff by Defendants that carried disproportionate consequences on the Plaintiff.

285.The HSM Masters Student's Handbook Section.3.03; states that students may be referred to the APRB by the Office for Graduate Education or by program directors and or in consultation with program directors triggering review at a APRB meeting and limits the APRB to four voting members including co-chairs and program directors. In this case, the same APRB Co-Chairs including Deans Rosalind Segal and Johanna Gutlerner and MMSCI program Co-Director including Associate Professor McCausland and Doctor McGrath who referred the plaintiff to the APRB that they themselves govern and yet, they are these same MMSCI program leadership and Deans who also served as APRB adjudicators , each holding significant influence over the Plaintiff's academic status and or standing within the MMSCI program while also being the subjects of Plaintiff's prior informal and formal complaints of discrimination and bullying and or academic concerns that the Plaintiff raised with Harvard administrative authorizes that impacted and or were impacting the Plaintiff's academic progress and performance in the MMSIC program . and or voted to place the Plaintiff on "Monitored Academic Status" and "Academic Probation", denial of the Plaintiff's appeal for reconsideration of the "Academic Probation", "requirement to withdraw", denial of Plaintiff's appeal for reconsideration of the "requirement to withdraw" from the MMSCI program by Defendants.

286.The Defendants' overlapping roles as referral sources to the APRB, adjudicators, and implicated parties in Plaintiff's formal and informal complaints of discrimination and bullying with Harvard OCC raises serious concerns about conflict of interest and bias and support that the fairness, impartiality of the academic status and or decision-making process against the Plaintiff's by Deans Rosalind Segal and Johanna Gutlerner and Associate Professor Finnian

141

McCausland and Doctor Martina McGrath were compromised which reflects significant procedural and substantive deficiencies within the MMSCI program leadership that raises questions about the legitimacy of the academic disciplinary actions among others improperly issued "failing grade" in "CI706: MMSCI Mentored Research" course to the Plaintiff and wrongful "requirement to withdraw" of the Plaintiff from the MMSCI program taken against the plaintiff by Deans Rosalind Segal and Johanna Gutlerner and Associate Professor Finnian McCausland and Doctor Martina McGrath.

287.The pattern of discrimination and retaliation against the Plaintiff by the Defendants shows that initial threats of withdrawal of the Plaintiff from the MMSCI program for raising legitimate academic concerns with Harvard University faculty and or higher authority, unresolved at the MMSCI program level recurred from summer 2024 semester until the Plaintiff was wrongfully issued a failing grade in "CI706: MMSCI Mentored Research" course and wrongfully "required to withdraw" from the MMSCI program by Defendants. This supports an inference of retaliatory and discriminatory conduct in response to the Plaintiff exercising their protected right to seek academic support and raise discriminatory and retaliatory academic concerns that caused the Plaintiff mental distress and affecting their academic performance and progress in the MMSCI program.

288.On April 3,2025. The Title IX Officer,Mr. Mark Addison sent Plaintiff the "outcome" of the Plaintiff formal complaint of discrimination and bullying filed with Harvard on March 3,2025 and noted that Harvard OCC found "no evidence of discrimination" in the Plaintiff's formal complaint of discrimination and bullying with Harvard OCC. Despite Harvard NDAB maintaining formal policies prohibiting discrimination and bullying, Defendants failed to meaningfully apply those policies in practice and Plaintiff was not interviewed by any independent investigator as required by Harvard NDAB policy. Plaintiff expressly raised academic concerns of bullying and discriminatory treatment and imminent risk of academic harm among others threats by the Defendants to issue Plaintiff a "failing grade in "CI706: MMSCI Mentored Research" course and "withdrawal of the Plaintiff from the MMSCI program" and sought urgent help from the Harvard OCC office. Moreover, Defendants issued its finding of "no evidence of discrimination" only after the Defendants had already improperly issued the Plaintiff a "failing grade" in "CI706: MMSCI Mentored Research" course and wrongfully "required" Plai

142

ntiff " to withdraw" of Plaintiff from the MMSCI program. This failure of the Harvard OCC to investigate the Plaintiff's formal complaint of discrimination and bullying with Harvard is particularly significant given the temporal sequence of events, in which Plaintiff's wrongful "requirement to withdraw" from the MMSCI program by Defendants preceded the issuance of the Harvard OCC "finding" of "no evidence of discrimination", raising a reasonable inference that the Harvard OCC "finding" of "no evidence of discrimination" was not intended to influence, or meaningfully consider, Plaintiff's formal complaint of discrimination and or academic status. The deliberate failure of conducting any investigation by the Harvard OCC, absence of timely intervention, and post- wrongful "requirement to withdraw" of Plaintiff from the MMSCI program "dismissal" of the Plaintiff's formal complaint of discrimination and bullying with Harvard OCC demonstrate a deficient and procedurally improper response by Harvard OCC. These facts directly contradict the Harvard OCC NDAB policy promising *"Available Support and Remedies"*, further provides that *"All members of the University community may seek supportive measures should they experience, or witness conduct prohibited under this Policy"*. However, the Plaintiffs' formal complaint of discrimination and bullying was not investigated by Harvard OCC neither did the Harvard OCC office offer Plaintiff any meaningful support regarding Plaintiff's complaint of discrimination and bullying with Harvard OCC. The failure of Harvard OCC in addressing Plaintiff's complaint of discrimination and bullying with Harvard OCC, supports a strong inference of retaliation and discrimination that raises questions on legitimacy of the Harvard NDAB statement in relevant parts *"Available Support"* and *"All members of the University community may seek supportive measures should they experience, or witness conduct prohibited under this Policy"*.

289. Defendants' shifting rationale, procedural irregularities, disparate treatment, and denial of meaningful academic support to Plaintiff demonstrate among others, the selectively applied non MMSCI program syllabus "March 14,2025, deadline" and the improperly issued "failing grade" in "MMSCI Mentored Research CI706" to Plaintiff and the wrongful "requirement to withdraw" of the Plaintiff from the MMSCI program by Deans Rosalind Segal and Johanna Gutlerner and Associate Professor Finnian McCausland and Doctor Martina McGrath demonstrates a pretextual and discriminatory and retaliatory motive of Defendants, absent any legitimate established HMS Master's Student's Handbook Policies.

143

**Harvard Medical School's Inaction and Internal Failure in Resolution of the Plaintiff's Wrongful "Requirement to Withdraw" from the MMSCI Program by Defendants and or Respondents Named in Plaintiff's Formal Complaint of Discrimination and Bullying with Harvard.**

290. Following Plaintiff's wrongful "Requirement to Withdraw" from the MMSCI program by the Defendants and after multiple unsuccessful attempts by Plaintiff to resolve the wrongful "Requirement to Withdraw" through internal university channels the Plaintiff suffered irreparable harm, including exclusion from educational opportunities during the ongoing Spring 2025 semester, the remainder of the 2024–2025 academic year, including Summer 2025, and continuing into the 2025–2026 academic year and MMSCI program 2024 to 2026 cohort graduation scheduled less than two weeks from the date of filing this complaint in, May 2026. After these efforts failed, the Plaintiff sought additional support exercising rights protected under the United States federal law, including Title IX (20 U.S.C. § 1681) and Title VI of the Civil Rights Act of 1964, (42 U.S.C. § 2000d) which prohibit discrimination in federally funded educational institutions, as well as protections against retaliation for reporting such conduct by communicating with various Harvard University offices, including the Harvard Medical School and or Harvard University administrators and faculty, Harvard Offices of the Provost and President for reconsideration of the discriminatory and retaliatory actions of the Defendants including among others the wrongfully issued failing grade in "MMSCI Mentored Research CI706" and the wrongful "Requirement to Withdraw" of Plaintiff from the MMSCI program by Defendants which failed to provide the Plaintiff with any meaningful academic support or redress concerning the improperly issued the Plaintiff a " failing grade" in "CI706:MMSCI Mentored Research" course and the wrongful "Requirement to Withdraw" of the Plaintiff from the MMSCI program.

291.Following multiple unsuccessful attempts to have the Harvard Medical School and or Harvard University reconsider the Defendants' discriminatory and retaliatory actions through internal Harvard channels, and in light of the Harvard Medical School's continued failure to provide relief to the Plaintiff while the Plaintiff suffered and continues to suffer emotional, educational and professional harm, including exclusion from educational opportunities during the Spring 2025 semester, the remainder of the 2024–2025 academic year, including Summer

144

2025, and continuing into the 2025 to 2026 academic year and imminent risk of missing graduation in May 2026 with the Plaintiff's original MMSCI program 2024 to 2026 cohort.

292. Plaintiff subsequently sought support again, from Harvard Medical School and Harvard University, its affiliates, and external organizations, exercising rights protected under federal law, including Title VI and Title IX (20 U.S.C. § 1681) and Title VI of the Civil Rights Act of 1964, (42 U.S.C. § 2000d) which prohibits discrimination in federally funded educational institutions, as well as protections of students against retaliation for reporting such conduct. Plaintiff sought reconsideration of the improperly issued "failing grade" in "CI706: MMSCI Mentored Research" course and the wrongful "requirement to withdraw" of the Plaintiff from the HMS MMSCI program by Deans Rosalind Segal and Johanna Gutlerner and Associate Professor Finnian McCausland and Doctor Martina McGrath.

293. Harvard's refusal to provide meaningful remedies to the Plaintiff regarding the Plaintiff's wrongful "requirement to withdraw" from the MMSCI program and the improperly issued " failing grade" in "CI706:MMSCI Mentored Research" course by Defendants forced Plaintiff to further exercising rights protected under federal law, including Title VI of the Civil Rights Act of 1964, which prohibit discrimination in federally funded educational institutions by seeking external help from organizations and , as well as protections against retaliation for reporting such conduct to address ongoing discrimination and retaliation by Defendants within the MMSCI program. These communications reflected the Plaintiff's ongoing efforts to obtain assistance on factual accounts of events that the Plaintiff experienced and or was experiencing within the HMS MMSCI program that culminated into the Defendants' improperly issuing the Plaintiff a "failing grade" in "CI706: MMSCI Mentored Research" course and wrongful "required to withdraw" of the Plaintiff from the HMS MMSCI program for the purpose of obtaining support and resolution regarding ongoing educational and professional harm that the Plaintiff has continued to face and or is facing after repeated denials of academic support for Plaintiff discriminatory and retaliatory actions by Defendants against the Plaintiff within HMS MMSCI program.

294.Despite these efforts by Plaintiff seeking redress from Harvard University, Harvard Medical School and or Harvard University regarding the wrongful "required to withdraw" of the Plaintiff from the HMS MMSCI program, Harvard Medical School and or Harvard University failed to

145

provide any meaningful academic support or redress regarding the improperly issued "failing grade" in "CI706: MMSCI Mentored Research" course to the Plaintiff and wrongful "requirement to withdraw" of the Plaintiff from the HMS MMSCI program by Defendants. Although some two Harvard University staff members acknowledged the Plaintiff's experience within the HMS MMSCI program that Plaintiff shared, Plaintiff received no substantive redress from these Harvard individuals described herein.

295. Between the two Harvard University staff members who responded to Plaintiff's communications, include the SCCR coordinator, Ms. Leri Godin who improperly issued the Plaintiff a "cease-and-desist" email prohibiting Plaintiff from contacting any Harvard University community member while simultaneously directing the Plaintiff to file a complaint of discrimination through Harvard University's internal process with the Harvard Office for Community Support, Non-Discrimination, Rights and Responsibilities (CSNDR) which ultimately denied jurisdiction, thereby creating a contradictory and obstructive condition that effectively impeded the Plaintiff's ability to pursue the very complaint of discrimination Harvard University.

296. Another Harvard Faculty member from a different Harvard school, Harvard T.Chan School of Public Health, other than Harvard Medical School advised during a zoom call with the Plaintiff in 2025 that, if he (Professor David Williams) had been directly affiliated with the Harvard Medical School, he would have contacted the Harvard Medical School Dean, Dean Daley and or provided a letter supporting the Plaintiff's reinstatement into the MMSCI program.

297. Similarly, an external organization acknowledged receipt of Plaintiff's communications seeking their support and that of other organizations regarding the Plaintiff's wrongful "requirement to withdraw" of the Plaintiff from the MMSCI program and expressed that they would not be able to investigate Plaintiff's formal complaint of discrimination and bullying because the events leading up to the Plaintiff's wrongful "requirement to withdraw" from the MMSCI program did not happen at their university and school and or program.

298.These responses and assessment with how Harvard University staff members and external parties assessed the Plaintiff's outreach and request for redress and support regarding the wrongfully issued "failing grade" in "CI706: MMSCI Mentored Research" course to Plaintiff and or "requirement to withdraw" of the Plaintiff from the HMS MMSCI program ,demonstrates that the Plaintiff's self-advocacy in response to the Defendants' discriminatory and retaliatory and or adverse actions against the Plaintiff within the MMSCI program, and the resulting wrongfully issued "failing grade" in "CI706: MMSCI Mentored Research" course and "requirement to withdraw" of the Plaintiff from the HMS MMSCI program by the Defendants ,which caused and continues to cause the Plaintiff irreparable emotional, educational and professional harm including but not limited to exclusion from educational activities, loss of educational opportunities, loss of educational funding tied to enrollment in the HMS MMSCI program and damage to academic and professional prospects, career advancement, and reputation, as a result of the improperly issued "failing grade" in "CI706: MMSCI Mentored Research" course and the discriminatory and retaliatory characterization of "repeated failures", as well as the "failure to adhere to remediation plans" by Defendants. Such conduct by Defendants is unlawful under Federal law, Title VI of the Civil Rights Act of 1964, (42 U.S.C. § 2000d), which prohibits discrimination based on race, color, or national origin in federally funded programs in education programs receiving federal financial assistance including Harvard Medical School and or Harvard University.

299.Harvard University's continued failure to reconsider Defendants' discriminatory and retaliatory actions against the Plaintiff within the MMSCI program through Harvard's established internal channels, as a direct result, Plaintiff has suffered and continues to suffer irreparable educational, emotional and professional harm including exclusion from educational opportunities during the Spring 2024 semester, the remainder of the 2024 to 2026 academic year (including Summer 2024), and continuing into the 2024 to 2026 academic year in the MMSCI program. Plaintiff subsequently sought additional support, exercising rights, protected under federal law Title VI of Civil Rights Act of 1964, (42 U.S.C. § 2000d) and Title VI and Title IX (20 U.S.C. § 1681) which prohibit discrimination and retaliation in federally funded educational institutions. Plaintiff subsequently sought additional support, exercising rights protected under federal law Title VI of the Civil Rights Act of 1964, (42 U.S.C. § 2000d) and Title VI and Title IX (20 U.S.C. § 1681) which prohibit discrimination and retaliation in federally funded

147

educational institutions through communicating with various Harvard University offices and external organizations to seek redress for the ongoing emotional, educational and professional harm.

**Retaliatory Issuance of a "Failing Grade" in "CI706: MMSCI Mentored Research" course and or "Requirement to Withdraw" of Plaintiff from the MMSCI Program by Defendants Fourteen (14) Days After Plaintiff Filed a Formal Complaint of Discrimination and Bullying Filed with Harvard OCC.**

300. After Plaintiff's multiple attempts in reporting discriminatory and retaliatory conduct that Plaintiff faced and or was facing within the HMS MMSCI program in the 2024 to 2025 academic year and or after Plaintiff filed an informal complaint of discrimination and bullying with Harvard OCC on February 28,2025 and shortly after, filed a formal complaint of discrimination and bullying with Harvard OCC on March 3,2025, Defendant constructively set up Plaintiff on a path towards retaliatory motivated failure in "CI706: MMSCI Mentored Research" course and or wrongful "withdrawal" of Plaintiff from the MMSCI program and improperly issued Plaintiff a "failing grade' in "CI706: MMSCI Mentored Research" course, absent any legitimate HMS Master's Student's Handbook policy permitting MMSCI program leadership Associate Professor Finnian McCausland and Doctor Martina McGrath and Deans Rosalind Segal and Johanna Gutlerner to improperly issue a student a "failing grade" in "CI706: MMSCI Mentored Research" course.

Defendants' statement that "repeated failures and "failure" to attend a non-established HMS MMSCI program "March 14,2025 deadline" as their reason for the wrongfully issued "failing grade" in "CI706: MMSCI Mentored Research" course and or "requirement to withdraw" of Plaintiff from the HMS MMSCI program is materially pretextual, reflects a pattern of discriminatory and retaliatory motive by Defendants and is not supported by any factual academic results of Plaintiff in Spring 2025 (March 17,2025) and or the HMS Masters Student's Handbook policy warranting "requirement to withdraw" of Plaintiff from the HMS MMSCI program at that point in time in Spring 2025 (March 17,2025), as Plaintiff did not fail any courses in Fall 2024 after Plaintiff passed the remediation examination in "CI708A Clinical Data Analytics 11" course on January 14,2025 that was also taken by four other HMS MMSCI students including, one Brown student, Plaintiff (Black student), another Brown student from a

148

different place origin, and two White students, all of whom were in the MMSCI 2024 to 2026 and failed "CI708A Clinical Data Analytics 11" course in Fall 2024.Notably by March 17,2025(first day of week for of Spring 2025 break), the Spring 2025 semester was still ongoing with MMSCI courses still being taken by MMSCI students and MMSCI students 2024 to 2026 cohort had not yet taken the Spring 2025 examinations per the established MMSCI program syllabus. Plaintiff last attended MMSCI class in the week of Friday, March 14,2025. Therefore, no Spring 2025 MMSCI course results could be determined at that time on March 17,2025, a semester (Spring 2025) in which Defendants' subjected Plaintiff to a more escalating hostile academic environment, retaliatory pressure and discriminatory and retaliatory treatment within the HMS MMSCI program including amount others Dean Segal, Dean of HMS Graduate Education and co-chair of the APRB told Plaintiff multiple times on the same day, during a zoom meeting that Dean Segal suggested and scheduled with Plaintiff on February 10,2025, to "*leave*" the MMSCI academic program and in direct response to Plaintiff after Plaintiff requested to conduct research on feasible research projects per the HMS Masters Student's Handbook policy under section 2.14. Credit for Mentored Research, provides that all mentors may ensure an appropriate environment for research based on the individual students' needs and objectives, the student's research may be conducted in collaboration with faculty from other entities either within or outside the HMS faculty mentor shall be fully responsible for the students' progress and for evaluation during the conduct of the research, this discriminatory and retaliatory treatment of Plaintiff by the Defendants caused Plaintiff mental and emotional distress and impeded the Plaintiff's ability to concentrate in the ongoing Spring 2025 courses or assignments and research course ("CI706: MMSCI Mentored Research" course) which impacted Plaintiff's academic progress, evidencing the impact of retaliatory and discriminatory actions of the Defendants against Plaintiff within the HMS MMSCI program. Defendants subsequently wrongfully issued Plaintiff a "failing grade" in "CI706: MMSCI Mentored Research" course and or "requirement to withdraw" of Plaintiff from the MMSCI program on March 17,2025, fourteen (14) days after Plaintiff identified MMSCI program leadership including Associate Professor Finnian McCausland and Doctor Martina McGrath and Deans Rosalind Segal and Johanna Gutlerner in Plaintiff's formal complaint of discrimination and bullying with Harvard OCC.

149

301. Defendants deviated from the established HMS MMSCI Master's Student's Handbook policy and failed to state any HMS MMSCI Master's Student's Handbook policy based specific policy permitting HM MMSCI program leadership including Associate Professor Finnian McCausland and Doctor Martina McGrath and Deans Rosalind Segal and Johanna Gutlerner to issue an HMS MMSCI student, the Plaintiff in this case ,a "failing grade" in "CI706: MMSCI Mentored Research" course and or wrongful "requirement to withdraw" of Plaintiff from the MMSCI program because of refusal of a previous research mentor(Doctor Bebell) to provide mentorship to an MMSCI student (Plaintiff) on feasible research topics and or failure of an MMSCI student's (Plaintiff) previous research mentor (Doctor Lisa Bebell) to respond to Plaintiff's request to Doctor Bebell to facilitate a research meeting for selectively non-established formal HMS MMSCI program conditions including "March 14,2025" meeting and or deadline and or "additional statistical research work", "interim thesis meeting" for previously completed research topics including that Plaintiff had deemed infeasible to continue conducting research on and or warranting Defendants' improperly issued "failure grade" in "CI706: MMSCI Mentored Research" course and "requirement to withdraw" of Plaintiff from the HMS MMSCI program for it in Spring 2025,March 17,2025,fourteen(14) days after Plaintiff identified MMSCI program leadership Associate Professor Finnian McCausland and Doctor Martina McGrath and Deans Rosalind Segal and Johanna Gutlerner in Plaintiff's formal complaint of discrimination and bullying with Harvard OCC, evidencing that Defendants deviated from the HMS Master's Student's Handbook Policy on the established requirement to withdraw and or automatically withdrawal of an HMS MMSCI student,the Plaintiff, at all relevant times.

302.The reasons given by Defendants ,stating that *"After thoroughly reviewing your academic progress to date and your request to reconsider its decision", the APRB determined that you had not demonstrated either that: (1) a procedural error occurred that may change the outcome of the decision; or that (2) you had substantive and relevant new information that was not available at the time of the original decision and that may change the outcome of the decision", as wells as the SCCR's , statement* that Plaintiff had *"not demonstrated either: (1) that a procedural error occurred which may have changed the outcome of the decision; or (2) that there existed substantive and relevant new information, unavailable at the time of the original decision, that may have altered the outcome* and further stated *that . "At this juncture and in light of this*

*determination, you have exhausted the appeals available to you"* for denying Plaintiff's appeal and or request for reconsideration for the wrongful "requirement to withdraw" of Plaintiff from the MMSCI program to the APRB and SSCR as described herein, as well as Dean Daley's notice to the Plaintiff that he *"concurred"* with the adverse actions described in this complaint taken by Deans Rosalind Segal and Johanna Gutlerner and Associate Professor Finnian McCausland and Doctor Martina McGrath against Plaintiff without ever hearing from the Plaintiff about it( wrongful "requirement to withdraw" of Plaintiff from the MMSCI program) as described in this complaint, deviated from Defendants' stated original reason ("repeated failures" and "failure to attend the "March 14,2025 deadline") of the wrongful "requirement to withdraw" of the Plaintiff from the HMS MMSCI program by the Defendants.

303.Important to note at this point is that Plaintiff's academic performance especially in "CI700: Ethics and the IRB" course and "CI701: Clinical Data Science; Design and Analytics I" in summer 2024 and "CI708A Clinical Data Analytics 11" in Fall 2024,(which Plaintiff ultimately passed its remediation examination) were directly adversely impacted by Defendants' , absent any legitimate HMS Masters Student's Handbook policy, including unequal denial of remediation opportunity in in "CI700: Ethics and the IRB" course, selective imposition of non-established formal HMS MMSCI syllabus additional academic conditions, and retaliatory conduct of Defendants including, "Monitored Academic Status" and "Academic Probation Status" and "March 14,2025 deadline", denial of the HMS Master's Handbook policy 3.07.Procedures for Consideration of Academic Performance based right to appeal "Academic Probation Status" to the Plaintiff, denial of HMS MMSCI faculty review of the Plaintiff's research poster and alternate research mentor and or equal opportunity conducting research on feasible research projects, denial of Plaintiffs' request for reconsideration of 'Academic Probation Status" ,referral of the Plaintiff to the APRB for contacting Provost Glover for guidance.

304.The HMS Master's Student's Handbook, under section 2.03 Grading and Examinations, point 9, provides that "a student has one opportunity to remediate an unsatisfactory or failing grade by repetition of a course (also noted in the February 27,2025 letter the Defendants sent the Plaintiff denying the Plaintiff's reconsideration for "Academic Probation Status"). However, Defendants' escalating discriminatory and retaliatory actions against the Plaintiff and or the

wrongful "requirement to "withdraw" of the Plaintiff from the HMS MMSCI program denied the Plaintiff this established right to retake the MMSCI "CI700: Ethics and the IRB" and "CI701: Clinical Data Science; Design and Analytics I" in Summer 2025,demonstrating a pattern of discriminatory and retaliatory treatment that the Defendants subjected to within the HMS MMSCI program.

305.The November 4,2024 APRB "Academic Probation Status" letter, sent to the Plaintiff by the Defendants stated that "failure" in any subsequent MMSCI course would result in withdrawal from the MMSCI program. Plaintiff passed the remediation examination in that was granted to all five MMSCI students including one Brown Student, the Plaintiff (Black student), another Brown student from a different place of origin and two White Students) who had failed the "CI708A Clinical Data Analytics 11" course on January 14,2025. Notably, Plaintiff's grade in "CI708A Clinical Data Analytics 11" course was impacted because of the mental distress that the Plaintiff faced directly resulted from Defendants' discriminatory and retaliatory conduct against Plaintiff  as a result of Dean Gutlerner initially threatened Plaintiff with withdrawal notice from the MMSCI program in November and referred Plaintiff to APRB on November 20,2024 to the November 25,2024 APRB meeting for consideration of withdrawal of Plaintiff from the MMSCI program for contacting Provost Glover for guidance despite no established HMS MMSCI and or HMS Master's Student's Handbook policy prohibiting a Harvard student from contacting Provost Glover  or warranting referral of a student to APRB and or for APRB's consideration of withdrawal from an academic program(MMSCI) for it. This discriminatory and retaliatory treatment of Plaintiff by the Defendants caused Plaintiff mental and emotional distress and impeded the Plaintiff's ability to prepare for the "CI708A Clinical Data Analytics 11" course examination in Fall 2024 at a first attempt, Plaintiff ultimately passed the "CI708A Clinical Data Analytics 11" course remediation on January 14,2025,that was also taken by the all four other similarly situated MMSCI students including one Brown Student, the Plaintiff (Black student), another Brown student from a different place of origin and two White Students) who had failed the "CI708A Clinical Data Analytics 11" course in Fall 2024 ),evidencing the impact of retaliatory and discriminatory actions of the Defendants against Plaintiff within the HMS MMSCI program. A passing grade in a MMSCI course remediation examination per the HMS Master's Student's policy is a satisfactory grade but not a failing grade, therefore Plaintiff never

failed an MMSCI course in Fall 2024 and Spring 2025 after passing the "CI708A Clinical Data Analytics 11" course remediation on January 14,2025 and having a satisfactory grade in it ("CI708A Clinical Data Analytics 11" course).

305.The HMS Master's Student's Handbook, Section 2.03 Grading and Examinations and under point 9, further provides that if a student fails to attend satisfactory or better grade upon repetition of the course, then the final grade will be unsatisfactory, and the student will be referred to the program director for consideration of the student's status in the master's program. However, an improperly issued "failing grade" in "CI706: MMSCI Mentored Research" course to the Plaintiff by the Defendants despite Plaintiff completing their research work and or one that was not a "remediation failure" and or "failure after retaking" the "CI706: MMSCI Mentored Research" course  and importantly and importantly an improperly issued "failing grade" in "CI706: MMSCI Mentored Research" course  to the Plaintiff by the Defendants reflects Defendants' deliberate discriminatory and retaliatory actions against Plaintiff and cannot constitute a legitimate "academic failure" in "CI706: MMSCI Mentored Research" course without any HMS Master's Student's Handbook policy supporting such discriminatory and retaliatory and adverse actions against the Plaintiff by the Defendants demonstrating selective deviation from established HMS Master's Student's Handbook policy to Plaintiff by Deans Rosalind Segal and Johanna Gutlerner and Associate Professor Finnian McCausland and Doctor Martina McGrath, all of whom are APRB voting members and not awarded to similarly situated MMSCI students including one Brown student in the MMSCI program who did not present their initial first milestone research topics originally due in Fall (November) 2024 until Spring 2025 as a condition to receive course credit in "CI706: MMSCI Mentored Research" course but upon information and belief, Defendants awarded credit in in "CI706: MMSCI Mentored Research" course but not a failing grade in "CI706: MMSCI Mentored Research" course to these similarly situated students in the MMSIC program described herein. Notably, Defendants had never issued any other HM MMSCI 2024 to 2026 cohort student a failing grade in "CI706: MMSCI Mentored Research" course and or in such manner except only to the Plaintiff despite prior completion of the "CI706: MMSCI Mentored Research" course by the Plaintiff under the mentorship of research mentor, Doctor Lisa Bebell at all relevant times in effect.

153

306.The HMS Masters Student's Handbook policy under section 2.03 Grading and Examinations General Principles, point 4, on incomplete (INC) grade provides that incomplete (INC) grade signifies the failure to complete course requirements because of personal illness or similar compelling serious reasons and incomplete (INC) grades must be resolved within six (6) months (Exhibit 146). However, Plaintiff completed the "CI706:MMSCI Mentored Research" course presentation on December 19,2024 and submitted its report on January 6,2025 but Defendants improperly denied the Plaintiff a credit (grade) in "CI706: MMSCI Mentored Research" course despite completion of it ("CI706: MMSCI Mentored Research" course) by Plaintiff and instead improperly issued Plaintiff an incomplete (INC) grade in "CI706:MMSCI Mentored Research" course and subsequently improperly converted this improperly issued (INC) grade improperly that the Defendants wrongfully awarded to Plaintiff in "CI706:MMSCI Mentored Research" course to a failing grade within approximately seventy two (72) days despite Plaintiff's prior completion of the required"CI706:MMSCI Mentored Research" course first milestone research topics presentation on December 19,2024 and submission of the "CI706:MMSCI Mentored Research" course first milestone research topics on January 6,2025, per the formal HMS MMSCI program syllabus, evidencing Defendants deviating from established HMS MMSCI policy and or HMS Master's Student's Handbook. Defendants did not subject similarly situated students situated in the HMS MMSCI academic program ,2024 to 2026 cohort who first met with their research mentors at the same time as the Plaintiff or even later, in October or November 2024, including one White student in the MMSCI program who first met with their "CI706: MMSCI Mentored Research" course research mentor in November 2024 and presented their initial "CI706: MMSCI Mentored Research" course research topic milestone approximately one week later, also in November 2024 ,one Brown student in the MMSCI program who did not present their initial first milestone research topics originally due in Fall (November) 2024 until Spring 2025, and all MMSCI students who received the required statistical feedback from their research biostatisticians, as a condition for receiving course credit in "CI706: MMSCI Mentored Research" course but upon information and belief the Defendants awarded credit but not a failing grade in "CI706: MMSCI Mentored Research" course to these similarly situated students in the MMSIC program.

307. The HMS MMSCI program and or HMS Masters Student's Handbook policy states that students should conduct research on feasible research topics, contradicting the HMS Master's Student's Handbook policy under section 2.14. Credit for Mentored Research, provides that all mentors may ensure an appropriate environment for research based on the individual students' needs and objectives, the student's research may be conducted in collaboration with faculty from other entities either within or outside the HMS faculty mentor shall be fully responsible for the students' progress and for evaluation during the conduct of the research. Meanwhile on March 3,2025, Doctor Lisa Bebell ,Plaintiff's previous research mentor reached out to Plaintiff and mentioned to only facilitate a research meeting for the prior research topics that the Plaintiff had completed to present on December 19,2024 and that Plaintiff had identified as infeasible to continue conducting research on and she still (Doctor Bebell) did not accept to provide mentorship to the Plaintiff with feasible research topics as earlier requested with Doctor Lisa Bebell and the MMSCI program leadership including Deans Rosalind Segal and Johanna Gutlerner and Associate Professor Finnian McCausland and Doctor Martina McGrath, by Plaintiff.

308. The MMSCI program leadership Associate Professor Finnian McCausland and Doctor Martina McGrath and Deans Rosalind Segal and Johanna Gutlerner were aware that Plaintiff requested with Doctor Lisa Bebell and MMSCI program leadership Associate Professor Finnian McCausland and Doctor Martina McGrath and Deans Rosalind Segal and Johanna Gutlerner the standard and established educational opportunity granted to the MMSCI 2024 to 2026 students to conduct research on feasible research projects. Plaintiff also noted to the MMSCI program leadership and deans name herein that Doctor Lisa Bebell refused to mentor Plaintiff on feasible research topics but they(MMSCI program leadership and Deans) still did not provide any meaningful support to Plaintiff about it, instead MMSCI program leadership including Associate Professor Finnian McCausland and Doctor Martina McGrath and Deans Rosalind Segal and Johanna Gutlerner continued to enforce the selectively imposed non-established formal MMSCI program syllabus deadline of "March 14,2025" and "additional statistical research work" and "interim thesis meeting" under the threat of failure in "CI706: MMSCI Mentored Research" course and withdrawal from the HMS MMSCI program reflecting premeditated failure in "CI706: MMSCI Mentored Research" course and withdrawal of Plaintiff from the

155

HMS MMSCI program by MMSCI program leadership Associate Professor Finnian McCausland and Doctor Martina McGrath and Deans Rosalind Segal and Johanna Gutlerner.

309. The 2024 to 2025, HMS Masters Student's Handbook Section 3.03 and Section 5,provides that withdrawal of a student from the HMS and or HMS MMSCI program is appropriate only 'when attempts at academic remediation have been unsuccessful and the HMS Masters Student's Handbook Section 2.09 provides that Requirement to Withdraw, provides that students are automatically withdrawn only if students fail to attend classes or work on a mentored research/capstone project for a period of ten (10) business days without approval. Plaintiff had already completed all required "CI706: MMSCI Mentored Research" course in accordance with the HMS MMSCI program syllabus, including presenting the "CI706: MMSCI Mentored Research" course first research milestone on December 19, 2024,with submission of the "CI706: MMSCI Mentored Research" course thesis report on January 6, 2024. Additionally, the selectively imposed "March 14,2025 deadline",  "additional statistical research work" and "interim thesis meeting" ,were not contained in the established formal HMS MMSCI program syllabus that governs all MMSCI students and or not imposed on similarly situated students in the HMS MMSCI academic program ,2024 to 2026 cohort who first met with their research mentors at the same time as the Plaintiff or even later, in October or November 2024, including one White student in the MMSCI program who first met with their "CI706: MMSCI Mentored Research" course research mentor in November 2024 and presented their initial "CI706: MMSCI Mentored Research" course research topic milestone approximately one week later, also in November 2024 ,one Brown student in the MMSCI program who did not present their initial first milestone research topics originally due in Fall (November) 2024 until Spring 2025 as a condition for receiving course credit in "CI706: MMSCI Mentored Research" course but upon information and belief Defendants awarded credit but not a "failing grade" in "CI706: MMSCI Mentored Research" course to these similarly situated students in the MMSIC program by the Defendants demonstrates the discriminatory and retaliatory pattern of the Defendants' and the escalating retaliatory actions that the Defendants subjected the Plaintiff to within the HMS MMSCI program.

310. As a direct result of the wrongfully  issued "failing grade" in "CI706: MMSCI Mentored Research" course and or "requirement to withdraw" of the Plaintiff from the HMS MMSCI

156

program by Defendants, Plaintiff has suffered and will continue to suffer irreparable harm because of the Defendants' actions of excluding the Plaintiff from the HMS MMSCI program directly resulted into Plaintiff not being unable to attend ongoing MMSCI classes and or academic activities, complete academic requirements, or participate in HMS MMSCI program and or school activities.

311. Plaintiff is at risk of not participating in graduation and related convocation activities which is scheduled in less than two weeks from the date of filing of this complaint ,in May 2026 is imminent, unless relief is granted immediately by this court, and Plaintiff is at immediate risk of being denied by the Defendants the ability to graduate with Plaintiff's original HMS MMSCI program class of 2024 to 2026 and participate in the graduation and or diploma ceremony scheduled less than two weeks in May 2026. By Plaintiff missing to graduate with their HMS MMSCI program class of 2024 to 2026 and participate in the graduation and or diploma ceremony and constitutes irreparable harm, as it represents a unique and time-sensitive milestone that cannot be recreated or adequately compensated by monetary damages. Plaintiff respectfully moves this Court for a Temporary Restraining Order pursuant to Mass. R. Civ. P. 65 and because Fed. R. Civ. P. 65(b) because subsection (b) governs TROs without notice. (See Common Standard from Packaging Industries Group, Inc. v. Cheney).

312. Plaintiff has also lost educational funding and financial assistance as a direct consequence of the wrongfully issued "failing grade" in "CI706: MMSCI Mentored Research" course and or "requirement to withdraw" of the Plaintiff from the HMS MMSCI program by the Defendants, including funding conditioned on enrollment and anticipated graduation in the HMS MMSCI program. Plaintiff has experienced and continues to experience significant emotional distress, including anxiety, stress, and humiliation associated with being removed from the HMS MMSCI program and separated from peers at the HMS, particularly in the period leading up to graduation in May 2026 by the Defendants. Additionally, the wrongfully issued "failing grade" in "CI706: MMSCI Mentored Research" course and or "requirement to withdraw" of the Plaintiff from the HMS MMSCI program by the Defendants has resulted and or will result in lasting academic and reputational consequences, including loss and or disruption of Plaintiff's educational progress and potential impact on Plaintiff's future educational and career opportunities.

157

313.Defendants were aware and or should have been aware that the MMSCI courses were or and are ongoing and that MMSCI program 2024 to 2026 cohort graduation was and or is imminent in May 2026.Defendants were also aware and or should have also been aware that they(Defendants) selectively excluded Plaintiff from equal educational opportunities within the MMSCI program through Defendants' discriminatory and retaliatory adverse action of wrongfully issued "failing grade" in "CI706: MMSCI Mentored Research" course and or "requirement to withdraw" of Plaintiff from the HMS MMSCI program.

314.Despite the Plaintiff's repeated good-faith attempts to resolve the wrongfully issued "failing grade" in "CI706: MMSCI Mentored Research" course "requirement to withdraw" from the MMSCI program informally, including multiple outreach to Harvard University officials for redress regarding the wrongfully issued "failing grade" in "CI706: MMSCI Mentored Research" course "requirement to withdraw" from the MMSCI program filing of a complaint with the Harvard Office for Community Support, Non-Discrimination, Rights and Responsibilities (CSNDR), on October 22,2025 at the directive of Defendant, Harvard Medical School's employee ,Ms.Keri Godin and a demand letter of settlement correspondence with Harvard University through a counsel, Defendants declined to engage in a meaningful resolution and or pursue settlement or corrective action. Under these circumstances, Plaintiff respectfully requests that the Defendants' retaliatory adverse actions against Plaintiff including among others the wrongfully issued "failing grade" in "CI706: MMSCI Mentored Research" course "requirement to withdraw", should not to prevent the Plaintiff's reinstatement into the MMSCI program and timely ability to graduate scheduled with Plaintiff's original HMS MMSCI program 2024 to 2026 cohort in less than two weeks from the date of filing of this complaint, in May 2026 by the Defendants.

158

## F. LEGAL CLAIMS FOR FACTUAL ALLEGATIONS

### Count 1. Race Discrimination,

### A.Race Discrimination, Violation of Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d)

315.Plaintiff repeats and realleges by reference all preceding paragraphs here in 1-314

At all relevant times there was in effect a United States of America federal statute, the Civil Rights Act of 1964, (42 U.S.C. § 2000d). Plaintiff, Jane Doe is a Black student and claims race discrimination under Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d) which prohibits discrimination by race by any program or activity receiving federal financial assistance which is clearly and explicitly stated in in pertinent part that the Harvard University's CSNDR's official policies against discrimination, bullying and retaliation and the HMS Master's Student's Handbook section 3.01. responsibility of teachers provides in relevant part: that; teachers should treat learners fairly, respectfully and without bias related to their race.

Harvard Medical School and or Harvard University is a recipient of substantial federal funding. Defendants were aware, or should have been aware, of Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d) and that it is illegal to treat the Plaintiff differently and wrongfully issue them a "failing grade" in "CI706: MMSCI Mentored Research " course and or "require to withdraw" from their HMS MMSCI academic program because of the Plaintiff's race, and/or opposition of discriminatory activity within the HMS MMSCI academic program.

316. Defendants subjected ,Plaintiff ,a Black student to discriminatory disparate treatment including: denial of a remediation examination in "CI700:Ethics and the IRB" course in summer 2024 which directly resulting into an academic consequence of the Plaintiff being placed on "Monitored Academic Status" per the HMS Master's Student's Handbook section 2 of "Monitored Academic Status" ("MAS"), contradicting the HMS Master's Student's Handbook, Section 2.03 (Grading and Examinations), provides that "students who fail a required course are required to take a re-examination and/or do remedial work as approved by the course director.". This policy evidence that taking course remediation examination and or retaking a course by MMSCI students

is not discretionary but obligatory. Defendants denied Plaintiff these rights established in the HMS Master's Student's Handbook while similarly situated HMS MMSCI 2024 to 2026 cohort students including one Brown student and two White students in the MMSCI 2024 to 2026 cohort who also failed the "CI701: Clinical Data Science; Design and Analytics I" course in summer 2024 course were provided remediation examination in course "CI701: Clinical Data Science; Design and Analytics I" course on October 8,2024 , including the Plaintiff(only when other MMSCI students also failed a course but not when Plaintiff was the only student who required a course remediation examination in "CI700:Ethics and the IRB" course) by the Defendants and therefore maintained "Good Academic Standing", while one Brown student, the Plaintiff (Black) , another Brown student from a different place of origin and two White students all of whom were in the MMSCI 2024 to 2026 and also failed CI708A Clinical Data Analytics 11 course in Fall 2024,were granted remediation examination in CI708A Clinical Data Analytics 11" course on January 14,2025 by the Defendants including unexplained change in the Plaintiff's "CI700: Ethics and the IRB" course, "consent assignment" grade without transparency, denial of the HMS MMSCI program leadership review for the Plaintiff's research poster and upon the Plaintiff's inquiry, Doctor Martina McGrath stating wanting an "independent reviewer" for the Plaintiff's research poster while Doctor Martina McGrath and Associate Professor Finnian McCausland reviewed research posters of all students in the HMS MMSCI program on MMSCI program research day on February 4,2025,therefore supports evidence of discriminatory treatment of Plaintiff by the Defendants based on Plaintiff's race.

317.At all relevant times, the MMSCI program 2024 to 2026 consisted of approximately twenty (20) students and three of whom were Black students, including Plaintiff, who was wrongfully "required to withdraw" from the MMSCI program by the Defendants. Unlike Plaintiff the two remaining Black HMS MMSCI program 2024 to 2026 students were from the same place of origin, indicated by them (the two remaining Black students) during MMSCI program 2024 to 2026 cohort class students' introductions in summer 2024 semester. The rest of the HMS MMSCI program 2024 to 2026 cohort students were either Brown or White. As known to Plaintiff, the two remaining Black HMS MMSCI program 2024 to 2026 students did not require and or request course remediation examination in course in "CI700: Ethics and the IRB" course, with the HMS MMSCI program leadership including Doctor Martina McGrath and Associate

160

Professor Finnian McCausland and Deans Rosalind Segal and Johanna Gutlerner in "CI700: Ethics and the IRB" course tutor, Doctor Susan Kornetsky.

318. Defendants' systematic escalation of academic sanctions including "Academic Probation Status" and referral of the Plaintiff to the APRB for withdrawal from the HMS MMSCI program for contacting Harvard Provost Robin Glover for guidance; selectively imposed non-established formal HMS MMSCI program syllabus conditions as a "condition" for Plaintiff to receive credit in "CI706: MMSCI Mentored Research" course absent formal HMS MMSCI and or Harvard Medical School Master's Student's Handbook including an "interim thesis meeting" to repeat presentation of the same first milestone research topics in "CI706: MMSCI Mentored Research" course that the Plaintiff had completed per the formal MMSCI program syllabus and later "additional statistical research work" for the "CI706: MMSCI Mentored Research" course ,first milestone research topics that was not required at that stage of the first milestone research topics otherwise designated for the second research milestone study protocol and was not due until May 2,2025 and or "March 14,2025" "deadline" under the threat of failure in "CI706: MMSCI Mentored Research" course which was never contained in the established MMSCI program syllabus that governs all students in the MMSCI program. While the Defendants did not impose the same non-HMS MMSCI program syllabus conditions including "interim meeting" and or "additional statistical research work" and or "March 14,2025 deadline" under the threat of failure in "CI706: MMSCI Mentored Research" course and withdrawal from the HMS MMSCI on similarly situated students in the HMS MMSCI academic program ,2024 to 2026 cohort known to Plaintiff who first met with their research mentors at the same time as the Plaintiff or even later, in October or November 2024, including one White student in the MMSCI program who first met with their "CI706: MMSCI Mentored Research" course research mentor in November 2024 and presented their initial "CI706: MMSCI Mentored Research" course research topic milestone approximately one week later, also in November 2024 ,one Brown student in the MMSCI program who did not present their initial first milestone research topics originally due in Fall (November) 2024 until Spring 2025, as a condition for receiving course credit in "CI706: MMSCI Mentored Research" course. No other HMS MMSCI students were subjected to non-established formal HMS MMSCI syllabus conditions and or deadline described herein under the threat of failure in "CI706: MMSCI Mentored Research" course and or issued a

161

failing grade in "CI706: MMSCI Mentored Research" course based upon mentor non-responsiveness. Defendants selectively imposed burdensome and non-established HMS MMSCI program syllabus conditions on the Plaintiff alone following plaintiff's protected activities of academic concerns raised with Harvard University staff from Summer 2024 and or through the 2024 to 2025 academic year, informal and formal complaints of discrimination and bullying filed with Harvard OCC on February 28,2025 and March 3,2025, respectively demonstrating discriminatory treatment of the Plaintiff based on Plaintiff's race.

319. Defendants questioned the originality of Plaintiff's research "CI706: MMSCI Mentored Research" course first milestone research topics in a manner not directed at other HMS MMSCI 2024 to 2026 cohort students and denied the Plaintiff credit in "CI706: MMSCI Mentored Research" despite completion of the required "CI706: MMSCI Mentored Research" course first milestone research topics course work reflecting discriminatory treatment of Plaintiff by Defendants motivated by Plaintiff's race.

320. Defendants improperly issued the Plaintiff a "failing grade" in course "CI706: MMSCI Mentored Research" despite completion of the required "CI706: MMSCI Mentored Research" course first milestone topics by Plaintiff and a wrongful letter of "requirement to withdraw" of Plaintiff from the HMS MMSCI program absent any HMS Master's Student's Handbook policy while similarly situated student including one Brown student in the MMSCI program who did not present their initial first milestone research topics originally due in Fall (November) 2024 until Spring 2025, as a condition for receiving course credit in "CI706: MMSCI Mentored Research" course. No other HMS MMSCI students were subjected to non-established formal HMS MMSCI syllabus conditions and or deadline described herein under the threat of failure in "CI706: MMSCI Mentored Research" course and or issued a failing grade in "CI706: MMSCI Mentored Research" course based upon mentor non-responsiveness which supports discriminatory treatment against Plaintiff based on Plaintiff's race by the Defendants.

321. Defendants refused Plaintiff to change a research mentor and or prior research topics to feasible research topics according to the Plaintiff's research interest and as provided in the HMS MSMCI program syllabus, notwithstanding that no HMS Master's Handbook policy mandates

HMS MMSCI students to conduct research on specific research topics or under the mentorship of a particular research mentor. While Defendants allowed a Brown MMSCI student who changed a research mentor and the fact that all HMS MMSCI program 2024 to 2026 cohort to conduct research according to their own research interest without any restrictions and or penalty imposed on this student by Defendants as they did on Plaintiff, which supports discriminatory action by Defendants against the Plaintiff based on Plaintiff's race.

322. On March 12,2025, Plaintiff contact Plaintiff's previous research mentor, Doctor Lisa Bebell for her availability to facilitate repetition of non-established HMS MMSCI syllabus "interim thesis meeting" and "additional statistical research work" within a non-established HMS MMSCI March 14,2025 syllabus deadline. Plaintiff included the Defendants in Plaintiff's communications with Doctor Lisa Bebell thereby providing the Defendants with actual knowledge of the Plaintiff's ongoing efforts to secure an alternative research mentor  which was necessary after the Doctor Bebell refused to supervise research topics aligned with the plaintiff's preferred area of study as the Plaintiff's primary area of interest but offered Plaintiff no support yet continued to selectively enforce non-established formal HMS MMSCI program syllabus deadline on Plaintiff and under the threat of failure in "CI706: MMSCI Mentored Research" course and withdrawal from the HMS MMSCI program. Plaintiff also informed the Defendants of Doctor Bebell's lack of responsiveness to facilitate repetition of non-HMS MMSCI syllabus "interim meeting" and "additional statistical research work" within the non-established formal HMS MMSCI "March 14,2025 deadline", which suggests discriminatory treatment of Plaintiff by the Defendants based on Plaintiff's race.

323. Plaintiff sought assistance from Defendants with identifying another research mentor, however, Defendants did not respond to Plaintiff's requests for support regarding finding a research mentor given that the research topics previously pursued by Plaintiff were not feasible as Doctor Lisa Bebell had also changed the sample size of the research data in February 2025 after completion of first milestone research topics thesis report on January 6,2025 by Plaintiff which would have impacted the power and objectives of the research study. When Doctor Lisa Bebell did not respond to the Plaintiff's communication to facilitate the selectively applied non-established formal HMS MMSCI program syllabus "additional statistical work"," interim meeting" and "March 14,2025 deadline" not contained in the established HMS MMSCI program

163

syllabus. Defendants improperly issued the Plaintiff a "failing grade" in "CI706: MMSCI Mentored Research" course, and wrongful "requirement to withdraw" of Plaintiff from the program while the Defendants did not impose these non-established formal HMS MMSCI program syllabus conditions on similarly situated students in the HMS MMSCI academic program ,2024 to 2026 cohort known to the Plaintiff who first met with their research mentors at the same time as the Plaintiff or even later, in October or November 2024, including one White student in the MMSCI program who first met with their "CI706: MMSCI Mentored Research" course research mentor in November 2024 and presented their initial "CI706: MMSCI Mentored Research" course research topic milestone approximately one week later, also in November 2024 ,one Brown student in the MMSCI program who did not present their initial first milestone research topics originally due in Fall (November) 2024 until Spring 2025, as a condition for receiving course credit in "CI706: MMSCI Mentored Research" course Upon information and belief, no these similarly situated students and or any other MMSCI program 2024 to 2026 student was ever issued a failing grade in "CI706: MMSCI Mentored Research" course for non-responsiveness of a mentor to facilitate a "CI706: MMSCI Mentored Research" course research meeting which reflects discriminatory treatment by Defendants. Plaintiff was treated differently by Defendants motivated by Plaintiff's race and denied and or deprived the Plaintiff the same HMS Master's Student's Handbook and Harvard University policy based educational opportunities and or accommodations offered to similarly situated Brown and White HMS MMSCI students which demonstrates intentional and pretextual actions of the Defendants for racial discriminatory motives against the Plaintiff by the Defendants.

324.Harvard Medical School and or Harvard University has actual knowledge of the discriminatory treatment and or enforcement of wrongful "requirement to withdraw" of Plaintiff from the HSM MMSCI program by Defendants including Doctor Martina McGrath and Associate Professor Finnian McCausland and Deans Rosalind Segal and Johanna Gutlerner, that is severe, persistent and pervasive and there is no adequate or speedy remedy at law to prevent Harvard Medical School MMSCI program leadership including Doctor Martina McGrath and Associate Professor Finnian McCausland and Deans Rosalind Segal and Johanna Gutlerner and or Harvard University from continuing to discriminate and retaliate against the Plaintiff based on the

Plaintiff's race and the Plaintiff will otherwise continue to suffer irreparable harm if this court does not offer any remedy at law to Plaintiff.

325. As a direct result of the wrongfully issued "failing grade" in "CI706: MMSCI Mentored Research" course and or "requirement to withdraw" of the Plaintiff from the HMS MMSCI program by the Defendants, Plaintiff has suffered and will continue to suffer irreparable harm because of the Defendants' actions, including excluding Plaintiff from the HMS MMSCI program directly resulted into Plaintiff not being unable to attend ongoing MMSCI classes and or academic activities, complete academic requirements, or participate in HMS MMSCI program and or school activities with graduation imminent end of May 2026.

326.Plaintiff has also lost educational funding and financial assistance as a direct consequence of the wrongfully issued "failing grade" in "CI706: MMSCI Mentored Research" course and or "requirement to withdraw" of the Plaintiff from the HMS MMSCI program by Defendants, including funding conditioned on enrollment and anticipated graduation in the HMS MMSCI program. Plaintiff has experienced and continues to experience significant emotional distress, including anxiety, stress, and humiliation associated with being removed from the HMS MMSCI program and separated from peers at the HMS, particularly in the period leading up to graduation in May 2026 by the Defendants. Additionally, the wrongfully issued "failing grade" in "CI706: MMSCI Mentored Research" course and or "requirement to withdraw" of the Plaintiff from the HMS MMSCI program by the Defendants has resulted and or will result in lasting academic and reputational harm and consequences, including disruption of educational progress and potential impact on future educational and career opportunities.

327.Plaintiff is at risk of not participating in graduation and related convocation activities which is scheduled in less than two weeks from the date of filing of this complaint ,in May 2026 is imminent, unless relief is granted immediately by this court, and Plaintiff is at immediate risk of being denied by the Defendants the ability to graduate with Plaintiff's original HMS MMSCI program class of 2024 to 2026 and participate in the graduation and or diploma ceremony scheduled less than two weeks in May 2026. By Plaintiff missing to graduate with their HMS MMSCI program class of 2024 to 2026 and participate in the graduation and or diploma ceremony

and constitutes irreparable harm, as it represents a unique and time-sensitive milestone that cannot be recreated or adequately compensated by monetary damages.

328. Defendants' conduct described in the forementioned sentences herein and/or in this complaint, were willful, improper, intentional and pretextual for racial discriminatory and retaliatory motives against Plaintiff, a Black student compared to similarly situated Brown and White students within the HMS MMSCI program described herein, in violation of Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d).

329. Plaintiff is entitled to appropriate injunctive relief under Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d).

**Count II. Retaliation**

**B. Retaliation, Violation of Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d) and Title IX (20 U.S.C. § 1681)**

330. Plaintiff repeats and realleges by reference all preceding paragraphs here in 1-329.
Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d)  and Title IX (20 U.S.C. § 1681) prohibit recipients of the United States federal aid from discrimination ,in relevant part based on race in educational programs receiving federal funding and, intimidating, threatening, coercing, or retaliating against any person because they made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing; or opposed an unlawful educational practice or policy by any program or activity receiving federal financial assistance. The Plaintiff further asserts that the Defendants failed to comply with its own policies and procedures as set forth in the Harvard Medical School's Master's Handbook ("Handbook") and the Harvard University's Non-Discrimination, Anti-Bullying Policy ("NDAB") Policy.

331. Harvard Medical School and or Harvard University is a recipient of substantial federal funding from the United States Government. The Defendants named here in the complaint were aware, or should have been aware, of Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d & Title IX 20 U.S.C. § 1681) which is clearly set forth in the Harvard University's

166

CSNDR's official policies against discrimination, bullying and retaliation excerpted that it is not only unlawful to treat the Plaintiff differently within the HMS MMSCI program but to wrongfully "require" Plaintiff to "withdraw" from the HMS MMSCI academic program because of Plaintiff's race but it is also unlawful to retaliate against Plaintiff by wrongfully issuing the Plaintiff a "failing grade" in "CI706: MMSCI Mentored Research " course for reporting and or opposing such an unlawful educational practice and or discriminatory and retaliatory treatment within the HMS MMSCI program and or Harvard University by Associate Professor Finnian McCausland and Martina McGrath and Deans Johanna Gutlerner and Rosalind Segal named in Plaintiff's formal complaint of discrimination and retaliation with Harvard OCC. See *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167 (2005) (retaliation against a student for reporting Title IX violations is prohibited).

332. At all relevant times herein, Plaintiff, Jane Doe was a student of HMS MMSCI program 2024 to 2026 cohort, covered by and within the meaning of Title VI of the Civil Rights Act of 1964, 42 U. S. C. §2000e and Title IX (20 U.S.C. § 1681).

333. Plaintiff engaged in protected activity on multiple occasions within the HMS MMSCI program and or Harvard University and opposed the unlawful educational practice and racially discriminatory and retaliatory conduct from the Defendants verbally and in writing including ,Plaintiff sought redress for Plaintiff's academic concerns through Harvard Medical School and or Harvard University channels; Plaintiff contacted the Harvard Ombuds staff including Lisa Neal and Melisa Brodrick; Plaintiff reached out to Harvard's Provost Robin Glover for guidance; Plaintiff filed an informal discrimination and bullying complaint with Harvard OCC on February 28, 2025; and Plaintiff filed a formal discrimination and bullying complaint with Harvard OCC on March 3, 2025. Each instance of protected activity was met with escalating retaliatory and adverse action from Associate Professor Finnian McCausland and Martina McGrath and Deans Johanna Gutlerner and Rosalind Segal named in Plaintiff's formal complaint of discrimination and retaliation with Harvard OCC against the Plaintiff within the HMS MMSC program.

334. The Defendants' retaliatory conduct against the Plaintiff in response to Plaintiffs' protected activities of opposing the unlawful educational practice and racially discriminatory and retaliatory

167

conduct from named in Plaintiff's formal complaint of discrimination and retaliation with Harvard OCC but is not limited to the following unlawful educational practice disparate and or discriminatorily and retaliatory pretextual actions including.

335. After Plaintiff raised academic concerns about the Plaintiff's "CI700: Ethics and the IRB" course "consent assignment" and requested for remediation examination in "CI700: Ethics and the IRB" course in summer 2024 semester through Fall 2024 semester, the Plaintiff was denied a course quiz remediation examination in "CI700: Ethics and the IRB" course and was placed on "Monitored Academic Status" on September 9, 2024 ,by Defendants while similarly situated non-black HMS MMSCI students who failed courses including "CI701: Clinical Data Science; Design and Analytics I" in summer 2024 and "CI708A Clinical Data Analytics 11" in Fall 2024 were provided course "CI701: Clinical Data Science; Design and Analytics I" on October 8,2024 and "CI708A Clinical Data Analytics 11" on January 14,2025 and therefore maintained "Good Academic Standing.", reflecting retaliatory conduct by Defendants against Plaintiff for protected activity and inquiry of reporting Defendants' discriminatory and retaliatory conduct against Plaintiff within the HMS MMSCI program.

336. After the Plaintiff questioned Dean Johanna Gutlerner and Professor Ajay Singh, about eligibility criteria for course remediation examination, Plaintiff was referred to the APRB meeting on October 28 ,2024 by Dean Gutlerner and charged with "unprofessional conduct" and placed on "Academic Probation Status" November 4, 2024, partly for that (questioning eligibility criteria for course remediation examination with Dean Johanna Gutlerner and Professor Ajay Singh),absent any HMS Master's Student's Handbook or Harvard University policy prohibiting a Harvard student asking a question on eligibility criteria or warranting referral to APRB and or academic sanction of "Academic Probation Status" for it, which supports retaliatory conduct by the Defendants against Plaintiff for opposing Defendants' discriminatory and retaliatory conduct against Plaintiff within the HMS MMSCI program.

337. After Plaintiff reported on multiple occasions discriminatory and bullying concerns that Plaintiff was facing and or faced within the HMS MMSCI program and that were impacting and or impacted the Plaintiff's academic progress and performance within the HMS MMSCI program

to Harvard University officials among others Harvard University Provost for students affairs, Robin Glover in Fall(September) 2024 and seeking redress for it because Plaintiff lacked meaning academic support within the HMS MMSCI program, Plaintiff was warned by Dean Johanna Gutlerner and offered continued enrollment in the HMS MMSCI on the condition that Plaintiff refrain from contact any other faculty and or staff regarding academic concerns that Plaintiff encountered within the HMS MMSCI program and lacked meaningful support for them within the HMS MMSIC program, absent of the established HMS Master's Student's Handbook and or Harvard University policy prohibiting Harvard students from contacting Harvard faculty and or staff regarding academic concerns that a student may face. Additionally, Plaintiff was subjected to escalating discriminatory and retaliatory treatment and obstructed from participation in equal and standard educational opportunities per the formal HMS MMSCI program syllabus and was directed by HMS MMSCI program leadership, Doctor Martina McGrath to defer conducting a current (Fall 2025 semester) required "CI706:MMSCI Mentored Research" course first milestone research topics to a future Spring 2025 semester ,a semester(Spring 2025) in which the "CI706: MMSCI Mentored Research" course was not offered and not directed at any other student in HMS MMSCI program 2024 to 2026 cohort by Defendants, demonstrating retaliatory conduct by Defendants against Plaintiff for protected activity and opposing Defendant's discriminatory actions against Plaintiff within the MMSIC program of opposing Defendants' discriminatory and retaliatory conduct against Plaintiff within the HMS MMSCI program.

338.After Plaintiff reached out to Harvard University's Provost Robin Glover, for guidance on November 20,2024, Plaintiff was placed on "notice of violation of APRB academic probation rules" of a November 4,2025 letter "Academic Probation Status" letter to the Plaintiff by Dean Gutlerner in relevant part stated that Plaintiff's continued enrollment in the HMS MMSCI based on a condition that Plaintiff "refrain from contacting Harvard faculty and or staff" regarding academic concerns that were impacting and or impacted the Plaintiff's academic progress and performance in the HMS MMSCI program while Plaintiff lacked support within the HMS MMSCI program. Dean Gutlerner, further referred the Plaintiff to the APRB meeting held on November 25,2024 for consideration of the Plaintiff's withdrawal from the HMS MMSCI program for contacting Provost Robin Glover for guidance, absent any HMS Master's Student's Handbook or Harvard University policy prohibiting a Harvard student asking a question on eligibility criteria or

169

warranting referral to APRB and or academic sanction of "Academic Probation Status" for it, reflecting retaliatory conduct by the Defendants against Plaintiff for protected activity and inquiry of opposing Defendants' discriminatory and retaliatory conduct against the Plaintiff within the HMS MMSCI program.

339.After Plaintiff contacted and or met with the HMS Title IX Resource Coordinator, Mr.Jose Martinez in Fall 2024(November 20,21 and 2024) and expressed academic concerns including discriminatory and retaliatory treatment that Plaintiff faced and or was facing within the Plaintiff's HMS MMSCI academic program at Harvard that impacted and or were impacting the Plaintiffs academic progress and performance in the HMS MMSCI program and sought redress for it ,the Plaintiff was denied review of their research poster by HMS MMSCI program leadership, Professor Martina McGrath on HMS MMSCI research day on February 4,2025 while the HMS MMSCI program leadership reviewed research posters of all of the other students in the HMS MMSCI 2024 to 2026 cohort on research day February 4,2025. Defendant, Associate Professor, Finnian McCausland, questioned the originality of Plaintiff's research "CI706: MMSCI Mentored Research" course first milestone research topics thesis report in a manner specifically questioned Plaintiff if the "CI706: MMSCI Mentored Research " course first milestone research topics thesis report that Plaintiff submitted via the Canvas application for students' learning, and asked if the Plaintiff "CI706: MMSCI Mentored Research " course, thesis research report that the Plaintiff submitted on January 6,2025 was the Plaintiff's original research work or if Plaintiff asked the Plaintiff's research mentor (Doctor Lisa Bebell's) work and submitted it as Plaintiff's own "CI706: MMSCI Mentored Research " course first milestone, an accusation of academic dishonesty not directed at any other student in the HMS MMSCI academic program 2024 to 2026 cohort by Associate Professor, Finnian McCausland. Defendants also denied the Plaintiff credit in "CI706: MMSCI Mentored Research" despite completion of the required first milestone research topics course work by the Plaintiff demonstrating retaliatory conduct by the Defendants against Plaintiff for Plaintiff's protected activity of opposing Defendants' discriminatory and retaliatory conduct against the Plaintiff within the MMCI program.

340. Additionally, Defendants denied the Plaintiff credit in "CI706: MMSCI Mentored Research" course and instead awarded the Plaintiff an incomplete grade in "CI706: MMSCI

170

Mentored Research" course despite completion of "CI706: MMSCI Mentored Research" course on December 19,2024, with the thesis report submitted on January 6,2025 by Plaintiff. Defendants also selectively imposed or enforced on the Plaintiff non-established formal HMS MMSCI syllabus "interim thesis meeting" and "additional statistical work" not required at that stage and or to receive credit in "CI706: MMSCI Mentored Research " course first milestone research topics on the Plaintiff as a "condition" to receive credit in "CI706: MMSCI Mentored Research " course and or deadline of March 14,2024 ,under the threat of "failure" in "CI706: MMSCI Mentored Research " course and withdrawal from the HMS MMSCI program while forcing the Plaintiff to repeat previously completed identical research work with a mentor, Doctor Lisa Bebell who refused to support new and feasible research topics absent of such conditions in the formal HMS MMSCI program syllabus which supports retaliatory conduct by Defendants against the Plaintiff within the HMS MMSCI program.

341.After Plaintiff initially contacted and or met with the HMS Title IX officer Mr. Mark Addison on or about February 12 ,19 and 27, 2025 then on March 7 and 13,2025 and reported unequal treatment and or bullying that the Plaintiff faced and or was facing within the HMS MMSCI academic program and that was impacting the Plaintiff's academic performance and progress and therefore sought redress for it and or guidance with filing a complaint with the Harvard OCC  office about it from Mr.Mark Addison. Plaintiff subsequently filed an informal complaint of discrimination, bullying and retaliation with Harvard on February 28,2025 ,Defendants selectively imposed and or continued to selectively enforce on the Plaintiff non-established HMS MMSCI syllabus conditions including  "interim thesis meeting" and "additional statistical work" not required at that stage of the "CI706: MMSCI Mentored Research " course first milestone research topics and  or deadline of March 14,2024 ,under the threat of failure in "CI706: MMSCI Mentored Research " course selectively on the Plaintiff as a "condition to receive credit in "CI706: MMSCI Mentored Research " course"  and under the threat of failure in "CI706: MMSCI Mentored Research " course"  and withdrawal from the HMS MMSCI program while forcing the Plaintiff to repeat previously completed identical research work with a mentor, Doctor Lisa Bebell who refused to support new and feasible research topics, absent such non-established HMS MMSCI syllabus conditions in the formal HMS MMSCI program syllabus and not applied to any other similarly situated HMS MMSCI

171

2024 to 2026 cohort students governed by the same HMS MMSCI syllabus as the Plaintiff and who received the required statistical feedback from their biostatisticians and or similarly situated students in the HMS MMSCI academic program ,2024 to 2026 cohort who first met with their research mentors at the same time as the Plaintiff or even later, in October or November 2024, including one White student in the MMSCI program who first met with their "CI706: MMSCI Mentored Research" course research mentor in November 2024 and presented their initial "CI706: MMSCI Mentored Research" course research topic milestone approximately one week later, also in November 2024 ,one Brown student in the MMSCI program who did not present their initial first milestone research topics originally due in Fall (November) 2024 until Spring 2025, and all MMSCI students who received the required statistical feedback from their research biostatisticians, as a condition for receiving course credit in "CI706: MMSCI Mentored Research" course but upon information and belief Defendants awarded credit but not a failing grade in "CI706: MMSCI Mentored Research" course to these similarly situated students in the MMSIC program, demonstrating discriminatory and retaliatory conduct against Plaintiff by the Defendants.

342. After Plaintiff filed a formal complaint of discrimination and bullying with Harvard on March 3, 2025, On March 4, 2025, Dean Segal mentioned to Plaintiff that the Plaintiff had until March 14, 2025, to present an interim thesis meeting on the original topics previously completed on December 19,2024 and "additional statistical work" not required at that stage of the "CI706: MMSCI Mentored Research" course first milestone research topics or Plaintiff would be automatically withdrawn. Dean Segal further stated that *"meetings . . . will not change the requirements, or the timetable."* ,contradicting and or deviation by Defendants' from the established formal HMS MMSCI and "CI706: MMSCI Mentored Research" course syllabus, absent any "March 14, 2025, deadline" and "interim thesis meeting" in the HMS MMSCI program syllabus and no "additional statistical work" required at that stage of the "CI706: MMSCI Mentored Research " course first milestone research topics but designated for the second milestone research protocol, and to the Plaintiff's knowledge, no other similarly situated students in the HMS MMSCI academic program ,2024 to 2026 cohort who first met with their research mentors at the same time as the Plaintiff or even later, in October or November 2024, including one White student in the MMSCI program who first met with their "CI706: MMSCI

172

Mentored Research" course research mentor in November 2024 and presented their initial "CI706: MMSCI Mentored Research" course research topic milestone approximately one week later, also in November 2024 ,one Brown student in the MMSCI program who did not present their initial first milestone research topics originally due in Fall (November) 2024 until Spring 2025, and all MMSCI students who received the required statistical feedback from their research biostatisticians, as a "condition for receiving course credit" in "CI706: MMSCI Mentored Research" course but, upon information and belief Defendants awarded credit but not a failing grade in "CI706: MMSCI Mentored Research" course to these similarly situated students in the MMSIC program but were not subjected to the same non HMS MMSCI syllabus conditions of March 14, 2025, deadline and or " interim thesis meeting" and "additional statistical work" under the threat of failure in "CI706: MMSCI Mentored Research " course as a condition to receive credit in "CI706: MMSCI Mentored Research " course by the Defendants, a strong inference to retaliatory pressure and premeditated "failure in "CI706: MMSCI Mentored Research" course of and or "requirement to withdraw" of Plaintiff the HMS MMSCI program by the Defendants.

343.Between February and March 2025, Plaintiff repeatedly attempted to obtain guidance, including seeking an alternate research mentor and requesting assistance from HMS MMSCI program leadership including Associate Professor Finnian McCausland and Martina McGrath and Deans Johanna Gutlerner and Rosalind Segal, with a different research mentor  and conducting research on feasible research topics ,the HMS MMSCI program leadership including Associate Professor Finnian McCausland and Martina McGrath and Deans Johanna Gutlerner and Rosalind Segal, provided no response and or meaningful academic support to Plaintiff regarding Plaintiff's request with them for academic support with finding an alternate research mentor and conducting research on feasible research topics thus supports intentional retaliatory  motive of the Defendants against Plaintiff within the HMS MMSCI program.

344.On March 10,2025,Plaintiff subsequently sought additional requests for support from Harvard University Provost Robin Glover and Harvard Medical School Dean's Office, Harvard Medical School Faculty Title IX Officer ,Ms.Leri Godin and the Harvard University Working Group on academic freedom regarding ongoing discriminatory treatment and selective imposition of these non HMS MMSCI program syllabus described above on the Plaintiff which materially caused the

173

Plaintiff emotional distress and impacted the Plaintiff's academic progress and performance in the HMS MMSCI program demonstrating escalating discriminatory and retaliatory treatment Defendants subjected Plaintiff to within the HMS MMSCI program. Notably, Dean Gutlerner had previously(November 20,2024) referred Plaintiff to the APRB(that Dean Johanna Gutlerner co-chairs with Dean Rosalind Segal) on November 25,2024 for consideration for withdrawal from the MMSCI program for contacting Harvard Provost Robin Glover, despite no Harvard Medical School and or Harvard University established policy prohibiting Harvard students from contacting Harvard faculty or Provost Glover for guidance and warranting referral to the APRB and or consideration by the APRB for withdrawal of such student from a Harvard academic program, an inference to retaliatory motives of Defendants for the wrongfully issued "failing grad" in "CI706: MMSCI Mentored Research " course to Plaintiff and or "requirement to withdraw" of Plaintiff from the MMSCI program by Defendants.

345. Between February 7,2025 and March 14,2025,Plaintiff raised academic concerns with Defendants including Associate Professor Finnian McCausland and Martina McGrath and Deans Johanna Gutlerner and Rosalind Segal regarding the "CI706: MMSCI Mentored Research " course research topics that the Plaintiff previously presented and noted to the Defendants that that these research topics were infeasible for the Plaintiff to continue conducting research on and the Plaintiff expressed interest to pursue research on alternate and or different and feasible research topics consistent with HMS MMSCI program requirements for HMS MMSCI students to pursue research on feasible research topics or secure a different research mentor particularly given that Plaintiff's research mentor, Doctor Lisa Bebell had refused to provide Plaintiff with research mentorship in "CI706: MMSCI Mentored Research " course research mentorship on feasible research topics but Defendants including Associate Professor Finnian McCausland and Martina McGrath and Deans Johanna Gutlerner and Rosalind Segal refused Plaintiff this educational right provided in the "CI706: MMSCI Mentored Research " course thesis guide to all MMSCI students to pursue research on feasible research topics or to change research mentors who had refused to provide mentorship to the Plaintiff on alternate and feasible research topics of Plaintiff's interest and at the Plaintiff's request despite the absence of any HMS MMSCI program requirement for MMSCI students to work with a specific research mentor or on specific research topics while similarly

situated HMS MMSCI program 2024 to 2026 cohort students were allowed to pursue research on feasible research topics of their own research interest ,an inference to discriminatory and retaliatory treatment of Plaintiff within the HMS MMSCI program by the Defendants.

346.Between January and February 2025, the HMS MMSCI program co-director, Doctor Martina McGrath sent out email communications to other HMS MMSCI 2024 to 2026 cohort students in clinical trial track which Plaintiff was also enrolled in to, discuss the HMS MMSCI program tracks (Clinical Trail and Translational Trial Track) but Doctor Martina McGrath excluded Plaintiff who was part of the (Clinical Trial Track) from that communication and or meeting.

347.On March 12,2025, after multiple efforts by Plaintiff to secure a different research mentor proved impossible(Exhibit 130) and with no support from the HMS MMSCI program leadership and Deans despite request for support by Plaintiff from Defendants, and two days before the selectively imposed non-established formal HMS MMSCI program syllabus "March 14,2025 deadline" by the Defendants ,Plaintiff was compelled to contact Plaintiff's previous research mentor ,Doctor Lisa Bebell who had cancelled scheduled research meetings with Plaintiff and inquired about Doctor Bebell's availability in providing required mentor facilitation in repeating the previously completed "CI706: MMSCI Mentored Research " course first milestone research topics that the Plaintiff had identified as infeasible by the selectively imposed non-established HMS MMSCI "March 14,2025,deadline".

348.Plaintiff copied the HMS MMSCI program leadership including Associate Professor Finnian McCausland and Doctor Martina McGrath and Deans Johanna Gutlerner and Rosalind Segal in the Plaintiff's communication to Doctor Lisa Bebell by selectively imposed non-established formal HMS MMSCI, syllabus "March 14,2025 deadline" after multiple efforts by Plaintiff to secure a different research mentor proved impossible (Exhibit 131). Neither Doctor Bebell nor HMS MMSCI program leadership including Associate Professor Finnian McCausland and Martina McGrath and Deans Johanna Gutlerner and Rosalind Segal never responded to the Plaintiff's communication requesting Doctor Lisa Bebell's availability to facilitate repetition of the previously completed first milestone research topics in "CI706: MMSCI Mentored

Research" course resesrch topics that Plaintiff had previously completed and deemed infeasible to continue conducting research on.

349.On March 14,2025,Plaintiff informed MMSCI program leadership including Associate Professor McCausland and Doctor Martina McGrath and or Deans Johanna Gutlerner and Rosalind Segal that Doctor Lisa Bebell failed to respond to Plaintiff's request to meet and or facilitate the repetition of previously completed "CI706: MMSCI Mentored Research " course first milestone research topics presentation that the Plaintiff had deemed infeasible to continue conducting research on, as repeating the completed initial thesis research topics necessitated research mentor facilitation for presentation. Plaintiff further stated to the MMSCI program leadership and deans that Plaintiff was unable to proceed with and or submit, a repetition of the "CI706: MMSCI Mentored Research" course first milestone research topics report that the Plaintiff had completed to present on December 19 and submitted its report on January 6,2026 and or identified as infeasible under the threat of failure in "CI706: MMSCI Mentored Research" course and withdrawal of Plaintiff from the HMS MMSCI program by the selectively imposed non-established formal HMS MMSCI, syllabus "March 14,2025, deadline", enforced by Defendants under the threat of failure in "CI706: MMSCI Mentored Research " course and wrongful "requirement to withdraw" of Plaintiff from the HMS MMSCI program, under circumstances of non-responsiveness from Doctor Lisa Bebell. Defendants including Associate Professor Finnian McCausland and Martina McGrath and Deans Johanna Gutlerner and Rosalind Segal did not respond or provide any meaningful academic support to the Plaintiff reflecting retaliatory motive and premediated adverse actions including wrongfully issued failing grade in and or "requirement to withdraw" of Plaintiff from the HMS MMSCI program by Defendants.

350.On March,17 2025, fourteen (14) days, after Plaintiff had filed a formal complaint of discrimination and bullying with Harvard OCC on March 3,2025, and explicitly identified Associate Professor Finnian McCausland and Doctor Martina McGrath and Deans Johanna Gutlerner and Rosalind Segal, Associate Professor Finnian McCausland and Doctor Martina McGrath and Deans Johanna Gutlerner and Rosalind Segal and Professor Ajay Singh(the founding HMS faculty of the HMS MMSCI program), Defendants and or the APRB members issued Plaintiff a "failing grade" in "CI706: MMSCI Mentored Research" course without any legitimate

reason and or HMS MMSCI policy based justification for deliberately issuing the Plaintiff a "failing grade' in "CI706: MMSCI Mentored Research" course. Dean Johanna Gutlerner noted in her letter of "notice of requirement to withdraw effective immediately", to the Plaintiff in pertinent part that *"you have failed to adhere to the updated remediation plan and further stated that "Notably, you did not have the required meeting by March 14, 2025"*, as the reason for "requirement to withdraw" of Plaintiff from the HMS MMSCI program. Despite the fact that there was not any *"required meeting by March 14, 2025",* contained in the established HMS MMSCI program syllabus and that the non-established formal HMS MMSCI "March 14, 2025 deadline" was selectively imposed by the Defendants on the Plaintiff and to repeat the "CI706: MMSCI Mentored Research" course  initial first milestone research topics presentation that the Plaintiff had already completed to present on December 19,2024 with the completed thesis research report submitted on January 6,2025 and research topics that Plaintiff had deemed infeasible to proceed conducting research on and of which the MMSCI program leadership and or Deans were aware of. Meanwhile Defendants did not impose such adverse academic action on similarly situated students in the HMS MMSCI academic program ,2024 to 2026 cohort who first met their research mentors at the same time as Plaintiff or even later, in October or November 2024, including one White student in the MMSCI program who first met with their "CI706: MMSCI Mentored Research" course research mentor in November 2024 and presented their initial "CI706: MMSCI Mentored Research" course research topic milestone in approximately one week later, also in November 2024 ,one Brown student in the MMSCI program who did not present their initial first milestone research topics originally due in Fall (November) 2024 until Spring 2025, and all MMSCI students who received the required statistical feedback from their research biostatisticians, as a condition for receiving course credit in "CI706: MMSCI Mentored Research" course but upon information and belief, Defendants awarded credit but not an incomplete(INC) and or a failing grade in "CI706: MMSCI Mentored Research" course to these similarly situated students in the MMSIC program. Notably Defendants had never issued any other HM MMSCI student a "failing grade" in "CI706: MMSCI Mentored Research" course as a condition to receive credit in "CI706: MMSCI Mentored Research" course reflecting the retaliatory adverse academic actions imposed on Plaintiff by the Defendants within the HMS MMSCI program.

177

351.On March 18, 2025, one day after Defendants had wrongfully issued Plaintiff a "failing grade" in "CI706: MMSCI Mentored Research" course, despite completion of the "CI706: MMSCI Mentored Research" course first milestone research topics by Plaintiff. Defendants used this wrongfully issued "failing grade" in "CI706: MMSCI Mentored Research" course that they themselves wrongly issued to Plaintiff as their "reason" to wrongfully "withdraw" Plaintiff from the HMS MMSCI program by the same Defendants who selectively imposed the non-established formal HMS MMSCI "March 14, 2025 deadline" on Plaintiff. Doctor, Bebell, the research mentor who had supervised the Plaintiff's first milestone research topics sent a separate communication to the Plaintiff noting that *"I know the March 14th deadline has passed"*, and further noted that *"I'm thinking about you"* . Acknowledging that the selectively imposed non-established formal HMS MMSCI program syllabus "March 14,2025 deadline" had already passed yet Doctor Lisa Bebell still failed to respond to Plaintiff's earlier communication to her (Doctor Lisa Bebell) on March 12,2025, requesting to provide required research mentor facilitation of the previously completed first milestone "CI706: MMSCI Mentored Research" course first milestone research topics by the non-established formal HMS MMSCI program , "March 14,2025 deadline" that was solely based on selectively applied non-syllabus conditions and that was solely imposed on the Plaintiff under threat of failure in "CI706: MMSCI Mentored Research" course and "withdrawal" from the HMS MMSCI program.

352.The close temporal proximity fourteen (14) days between the Plaintiff's formal complaint of discrimination and bullying filed by Plaintiff with Harvard on March 3,2025, and in which the Plaintiff identified HMS MMSCI program leaders including Associate Professor Finnian McCausland and Doctor McGrath and Deans Rosalind Segal and Johanna Gutlerner and Professor Ajay Singh and communication in which Plaintiff copied among others the HMS Title IX officers including Mr. Jose Martinez, Mr. Mr.Mark Addison and MsL_eri Godin, and the adverse academic actions taken against Plaintiff by Defendants including the selectively imposed non-established formal HMS MMSCI program syllabus "additional statistical research work" and "interim meeting" and "March 14,2025 deadline" under the threat of failure in "CI706: MMSCI Mentored Research" course only on the Plaintiff but not imposed on similarly situated students in the HMS MMSCI academic program ,2024 to 2026 cohort including students who first met with their research mentors at the same time as the Plaintiff or even later, in October or November 2024, one

178

White student in the MMSCI program who first met with their "CI706: MMSCI Mentored Research" course research mentor in November 2024 and presented their initial "CI706: MMSCI Mentored Research" course research topic milestone approximately one week later, also in November 2024 ,one Brown student in the MMSCI program who did not present their initial first milestone research topics originally due in Fall (November) 2024 until Spring 2025, and all MMSCI students who received the required statistical feedback from their research biostatisticians, as a condition for receiving course credit in "CI706: MMSCI Mentored Research" course. Upon information and belief Defendants awarded credit in in "CI706: MMSCI Mentored Research" course but not a failing grade in "CI706: MMSCI Mentored Research" course to these similarly situated students in the MMSIC program.

353. Additionally, the close temporal proximity, approximately thirty three(33) days (February 12,19 and 27 ,2025) after Plaintiff had initially contacted and or and met with the HMS Title IX officer, Mr.Mark Addison and expressed academic concerns and ongoing discriminatory and retaliatory treatment the Plaintiff was facing within the HMS MMSCI program and named the HMS MMSCI program leaders including Associate Professor Finnian McCausland and Doctor McGrath and Deans Rosalind Segal and Johanna Gutlerner and Professor Ajay Singh and Plaintiff subsequently an informal complaint of discrimination and bullying with Harvard OCC on February 28,2025. Plaintiff further sought guidance regarding the filing of a discrimination complaint and related adverse academic actions imposed on Plaintiff by Defendants, during which the HMS Title IX officer, Mr. Mark, stated that he would inform the persons named in the Plaintiff's complaint of discrimination and bullying including the HMS MSSCI program leadership including Associate Professor Finnian McCausland and Doctor McGrath and Deans Rosalind Segal and Johanna Gutlerner and Professor Ajay Singh, but indicated that any meeting between the Plaintiff and the named respondents in Plaintiff's complaint of discrimination and bullying would be at the discretion of the respondents(Associate Professor Finnian McCausland and Doctor McGrath and Deans Rosalind Segal and Johanna Gutlerner and Professor Ajay Singh) ,but no such meeting occurred and the adverse actions including selectively imposed non-established formal HMS MMSCI program syllabus "additional statistical research work" and "interim meeting" and "March 14,2025 deadline" on Plaintiff by Defendants under the threat of failure in course "CI706: MMSCI Mentored Research" course and not applied to similarly situated students in the HMS

179

MMSCI academic program ,2024 to 2026 cohort who first met with their research mentors at the same time as the Plaintiff or even later, in October or November 2024, including one White student in the MMSCI program who first met with their "CI706: MMSCI Mentored Research" course research mentor in November 2024 and presented their initial "CI706: MMSCI Mentored Research" course research topic milestone approximately one week later, also in November 2024 ,one Brown student in the MMSCI program who did not present their initial first milestone research topics originally due in Fall (November) 2024 until Spring 2025, and all MMSCI students who received the required statistical feedback from their research biostatisticians, as a condition for receiving course credit in "CI706: MMSCI Mentored Research" course but upon information and belief the Defendants awarded credit but not a failing grade in "CI706: MMSCI Mentored Research" course to these similarly situated students in the MMSIC program.

354.Harvard Medical School and or Harvard University had and or has actual knowledge of academic concerns that Plaintiff raised with Harvard Medical School and or Harvard University from Summer 2024 through Spring 2025 academic year and the informal and formal complaints of discrimination and bullying filed by the Plaintiff with Harvard University on February 28,2025 and March 5,2025,respectively, all of these concerns and or complaints in which Plaintiff identified Associate Professor Finnian McCausland and Doctor McGrath and Deans Rosalind Segal and Johanna Gutlerner and Professor Ajay Singh),Defendants name herein wrongfully issued Plaintiff a failing grade in "CI706: MMSCI Mentored Research" course and or "requirement to withdraw" from the HMS MMSCI program. Defendants have and continue to deliberately discriminate and retaliate against Plaintiff and or enforce wrongful issued "failing grade" in "CI706: MMSCI Mentored Research" course and or withdrawal of the Plaintiff from the HMS MMSCI program that is severe, persistent and pervasive and there is no adequate or speedy remedy at law to prevent Harvard Medical School and or Harvard University from continuing to discriminate against the Plaintiff on the basis of the Plaintiff's race and retaliation against the Plaintiff for opposing the Defendants' discriminatory and retaliatory treatment and or adverse actions against the Plaintiff, Plaintiff will otherwise continue to suffer, in violation of Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d).

355. Following the wrongful "requirement to withdraw" of the Plaintiff from the HMS MMSCI program on March 17,2025 by Defendants and after Plaintiff exhausting all internal remedies with Harvard Medical School and or Harvard University from March 17,2025 until March 10,2026, which were ineffective and futile and in light of the failure of Harvard Medical School and or Harvard University to address the adverse academic actions including the improperly issued "failing grade" in "CI706: MMSCI Mentored Research" course to the Plaintiff and the wrongful "requirement to withdraw" of Plaintiff by the Defendants including Associate Professor Finnian McCausland and Doctor McGrath and Deans Rosalind Segal and Johanna Gutlerner, Plaintiff sought support  and redress from Harvard University officials and faculty and or Harvard University board members and also from external organizations and or persons with contacting Harvard University administration and or Harvard University's President Alan Garber, on Plaintiff's behalf for a redress and or reconsideration of the improperly issued "failing grade" in "CI706: MMSCI Mentored Research" course and the wrongful withdrawal of Plaintiff from the HMS MMSCI program which was not in accordance with applicable school HMS MMSCI and or HMS Master's Student's Handbook policies as Defendants cited the improperly issued "failing grade" in "CI706: MMSCI Mentored Research" course they themselves issued as a basis for their wrongfully issued "requirement to withdraw" of Plaintiff from the HMS MMSCI program "effective immediately".

356.Ms.Leri Godin issued Plaintiff a "cease-and-desist" email on October 8,2025 and directed Plaintiff to not contact any Harvard University community member regarding the adverse action of the wrongful "requirement to withdraw" of Plaintiff from the HMS MMSCI program, taken against the Plaintiff by Associate Professor Finnian McCausland and Doctor McGrath and Deans Rosalind Segal and Johanna Gutlerner. Ms. Godin further noted that Plaintiff should "only" contact the Harvard CSNDR, and that Plaintiff may file a complaint with the Harvard Office for Community Support, Non-Discrimination, Rights and Responsibilities (CSNDR)and that if not the Plaintiff would be referred to institutional authorities including the Harvard University Police Department (HUPD).

357.Following Ms.Leri Godin's improperly issued "cease and desist" email to the Plaintiff on October 8,2025, Plaintiff filed a formal complaint of discrimination with the Harvard Office for

181

Community Support, Non-Discrimination, Rights and Responsibilities (CSNDR) on October 22,2025, and copied Ms.Leri Godin on the correspondence to the Harvard CSNDR but the Harvard CSNDR declined jurisdiction in relevant part stating *"As the below concerns are beyond the scope of CSNDR."* (Exhibit 131). Although, Ms.Leri Godin who directed Plaintiff to file the complaint of discrimination with Harvard CSNDR office was aware that the Harvard CSNDR office declined jurisdiction ,Ms.Leri Godin provided no further guidance or support afterward to the Plaintiff.

358. On November 12,2024, Plaintiff initially requested Plaintiff's academic documents from the Harvard CSNDR, but Plaintiff did not receive a response from the Harvard CSNDR about it. Plaintiff followed up with Harvard CSNDR two days later and subsequently contacted Harvard Medical School's Dean George Q. Daley ,directly the following day and also included among others , Dean Rosalind Segal, the HMS Registrar, Isabel Teraso and or HMS Registrar's Office, HMS Title IX officer Ms.Leri Godin ,Office of the Dean of Harvard Medical School and the Harvard office of the Provosts, HMS MMSCI program leadership including Associate Professor Finnian Mc Causland and Doctor Martina McGrath and the HMS MMSCI program administrator, Ms. Molly Gallagher in this communication requesting for Plaintiff's academic documents in the HMS.

359. After the HMS Title IX Officer, Ms.Leri Godin's "cease and desist" email communication to Plaintiff to only contact a specific office,the Harvard CSNDR office and not any other Harvard University community member and or personnel, Plaintiff did not make any further contact with Harvard institutional offices and or persons, neither did Plaintiff seek additional redress through Harvard channels. The only communication Plaintiff made to Harvard Medical School and or Harvard University following Ms.Leri Godin's improperly issued "cease and desist" email, happened when Plaintiff contacted the Harvard CSNDR Office and requested the Plaintiff's academic documents in the HMS MMSCI program and stated an urgent need for these academic documents, academic documents to which the Plaintiff is entitled under FERPA 1974 law, and of which the Harvard Medical School and or Harvard University, as a recipient of United States of America federal aid under the FERPA 1974 law, is obligated to provide to the Plaintiff.

360. Nonetheless Harvard referred Plaintiff to the Harvard University Police Department (HUPD) whose Police Officer,Mr. Ryan Carvalho, yet again improperly issued the Plaintiff a second "cea

182

se and desist letter" and cited that any attempt by Plaintiff to contact any Harvard University offi cial would result in a "felony charge" with "stalking" and or a "fine of $ 1,000". The Harvard Un iversity Police Department (HUPD) Officer, Mr. Ryan Carvalho further informed the Plain to "c ease" from initiating communication with any Harvard University and or Harvard Medical Schoo l official and instead "respond only" to outreach that might be initiated by Harvard University off icials. Although Harvard Medical School and Harvard University and or Harvard University Poli ce Department (HUPD) Officer, Mr. Ryan Carvalho did not identify the individual or any factual basis for which Plaintiff was directed to the Harvard University Police Department (HUPD) Offi cer, Mr. Ryan Carvalho(although such referral to the HUPD was mentioned to Plaintiff in Meri Godin's "cease and desist communication to Plaintiff on October 8,2024) following Plaintiff's request for Plaintiff's academic documents in the HMS MMSCI program, an inference to a patter n of Defendants' retaliatory effort to deter the exercise of protected rights. As a direct result of D efendants' foregoing actions, Plaintiff suffered further emotional distress and harm, as well to the educational and professional harm resulted from Defendants' discriminatory and retaliatory actio ns among others wrongful "requirement to withdraw" of Plaintiff against Plaintiff within the M MSCI program, demonstrating the escalating pattern of retaliatory conduct of the Defendants.

361.Defendants failed to comply with its institutional obligations as a recipient of the United States federal funds to address the Plaintiff's discrimination and bullying complaints, as well as the adverse and retaliatory academic actions Defendants took against Plaintiff, including the improperly issued "failing grade" in "CI706: MMSCI Mentored Research" course and the wrongful "requirement to withdraw" of Plaintiff from the HMS MMSCI program by Defendants' employees and the resulting ongoing educational, professional, and mental distress. Instead, Defendants characterized Plaintiff's communications seeking redress and subsequent external support as "unprofessional", "defamatory", "erratic" and "harassing". However, Plaintiff's communications consisted of a good-faith effort to oppose unlawful discriminatory and retaliatory conduct by the Defendants named in this complaint and it also described the Plaintiff's factual experiences of discriminatory and retaliatory treatment that Associate Professor Finnian McCausland and Doctor McGrath and Deans Rosalind Segal and Johanna Gutlerner subjected and or had subjected Plaintiff to within the HMS MMSCI program leading up to the Plaintiff's wrongful "requirement to withdraw" from the HMS MMSCI program, and to seek external redress

183

after all internal Harvard Medical School and or Harvard University avenues proved futile. Such communication does not constitute unlawful conduct by the Plaintiff but rather evidences the discriminatory and retaliatory conduct of Defendants against Plaintiff within the HMS MMSCI program and beyond, as well as the severity of the educational and professional and or emotional harm suffered by the Plaintiff stemming from the adverse academic actions of the Defendants' employees described in this complaint against the Plaintiff and within the HMS MMSCI program, reflecting Defendants' consistent failure to comply with its Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d) and Title IX (20 U.S.C. § 1681) and or Harvard CSDR obligations and established HMS Master's Student's Handbook and or HMS MMSCI program policies obligations and to uphold its duties of accountability and responsibility governed by these policies as a recipient of the United States federal aid which evidence systematic retaliatory conduct of the Defendants against Plaintiff.

362. Plaintiff's requests for academic clarification and inquiries with the Associate Professor Finnian McCausland and Doctor McGrath and Deans Rosalind Segal and Johanna Gutlerner regarding the inconsistent application and or deviation from the established HMS Masters Handbook and or HMS MMSCI policies that govern all HMS MMSCI students, arose in response to Defendants' retaliatory and discriminatory conduct against Plaintiff that caused Plaintiff significant mental distress and adversely impacted Plaintiff's academic performance and progress within the HMS MMSCI program. Such protected activity does not constitute "unprofessional conduct" or "argumentative behavior", as mentioned by the Defendants. Rather, such communications by Plaintiff are a legitimate and appropriate effort to seek clarity about deviation from unfair and inconsistent and or of established institutional policies by Defendants and to substantiate the severity of the educational, professional and emotional harm suffered by the Plaintiff resulting from the adverse academic actions of Defendants against the Plaintiff within the HMS MMSCI program as described in this complaint. The foregoing reflects the Defendants' failure to comply with its own HMS Master's Student's Handbook and or HMS MMSCI program policies and obligations demonstrating retaliatory conduct of Defendants against Plaintiff for exercising Plaintiff's protected rights of reporting and opposing and or seeking redress for Defendants retaliatory conduct against Plaintiff within and or related to the MMSCI program.

363. Defendants maintain institutional data-retention policies governing the preservation of student records, institutional communications with Harvard employees, and related materials and communications regarding students' academics. Nevertheless, in correspondence to Plaintiff's counsel, on March 10,2025, Defendants appear to frame the Defendants' own independent obligations to maintain and preserve institutional data within its custody and control as though preservation of Defendants own data and relevant evidence depended on Plaintiff despite the institutional data-retention policies governing the preservation of student records, communications, and related Harvard communications and or data materials. Such characterization by Defendants described herein appears to be an attempt to avoid accountability for Defendants discriminatory and retaliatory conduct and adverse actions taken against Plaintiff within the HMS MMSCI program by Associate Professor Finnian McCausland and Doctor McGrath and Deans Rosalind Segal and Johanna Gutlerner. Accordingly, all communications between the Plaintiff and Defendants employees, faculty, administrators, and MMSCI program personnel are and or were maintained through Defendants institutional systems and therefore should have and or are retained pursuant to Defendants applicable data-retention and record-preservation policies.

364. The consistent pattern of escalation of retaliatory academic and or related actions by Defendants following each instance of protected activity described in this complaint by the Plaintiff further strengthens an inference to retaliation and discrimination against Plaintiff by Defendants within the HMS MMSCI program in violation of Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d) and Title VI and Title IX (20 U.S.C. § 1681) by Defendants.

365. Defendants retaliated against Plaintiffs for the Plaintiff's active and expressed opposition, verbally and in writing to Defendants' unlawful discriminatory and retaliatory educational practices by Defendants as described in this complaint.

366. Defendants conduct as set forth above were willful, intentional, and or made in disregard of Plaintiffs' protected rights.

367.Defendants conduct as set forth above in this complaint is so harmful it would dissuade a reasonable student from engaging in protected activities. Harvard Medical School and Harvard University has knowledge of, and has been and continues to be deliberately indifferent to exclude Plaintiff from equal educational opportunities within the HMS MMSCI program that is severe, persistent and pervasive, there is no adequate or speedy remedy at law to prevent Harvard Medical School and or Associate Professor Finnian McCausland and Doctor McGrath and Deans Rosalind Segal and Johanna Gutlerner from continuing to discriminate and retaliate against the Plaintiff on the basis of race in violation of Title VI; and with MMSCI 2024 to 2026 graduation in just less than two weeks, in May 2026, the harm Plaintiff will otherwise continue to suffer is irreparable.

368.As a direct result of the wrongfully issued "failing grade" in "CI706: MMSCI Mentored Research" course and or "requirement to withdraw" of the Plaintiff from the HMS MMSCI program by the Defendants, Plaintiff has suffered and will continue to suffer irreparable harm because of the Defendants' actions, including excluding Plaintiff from the HMS MMSCI program directly resulted into Plaintiff not being unable to attend ongoing MMSCI classes and or academic activities, complete academic requirements, or participate in HMS MMSCI program and or school activities.

369.Plaintiff has also lost educational funding and financial assistance as a direct consequence of the wrongfully issued "failing grade" in "CI706: MMSCI Mentored Research" course and or "requirement to withdraw" of the Plaintiff from the HMS MMSCI program by the Defendants, including funding conditioned on enrollment and anticipated graduation in the HMS MMSCI program. Plaintiff has experienced and continues to experience daily significant emotional distress, including anxiety, insomnia, stress, and humiliation associated with being removed from the HMS MMSCI program and separated from peers at the HMS, particularly in the period leading up to graduation in May 2026 by Defendants. Additionally, the wrongfully issued "failing grade" in "CI706: MMSCI Mentored Research" course to Plaintiff and or "requirement to withdraw" of the Plaintiff from the HMS MMSCI program by Defendants has resulted and or will result in lasting academic and reputational consequences, including disruption of educational progress and potential impact on future educational and career opportunities.

186

370. Plaintiff is at risk of not participating in graduation and related convocation activities which is scheduled in less than two weeks from the date of filing of this complaint ,in May 2026 is imminent, unless relief is granted immediately by this court, and Plaintiff is at immediate risk of being denied by Defendants the ability to graduate with Plaintiff's original HMS MMSCI program class of 2024 to 2026 and participate in the graduation and or diploma ceremony scheduled less than two weeks in May 2026. By Plaintiff missing to graduate with their HMS MMSCI program class of 2024 to 2026 and participate in the graduation and or diploma ceremony and constitutes irreparable harm, as it represents a unique and time-sensitive milestone that cannot be recreated or adequately compensated by monetary damages.

371. Defendants conduct as described above constitutes a willful violation of Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d) and Title IX (20 U.S.C. § 1681).

372. As a result of Harvard Medical School and HMS MMSCI program's leadership and or deans violations of Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d) and Title IX (20 U.S.C. § 1681) and the polices set forth in the Harvard's Own Non-Discrimination and Anti-Bullying (NDAB) Policy and Harvard Medical School's 2024 to 2025 Master's Student's Handbook, Plaintiff has been damaged and continue to sustain substantial damages, in amounts to be determined at trial. Additionally, Plaintiff seeks pre-judgement damages for emotional distress ,reputational and educational harm, loss of educational funding and academic opportunities and emotional suffering and distress caused by Defendants' discriminatory and retaliatory academic and disciplinary actions including the wrongfully issued "failing grade" in "CI706: MMSCI Mentored Research" course to Plaintiff and or "requirement to withdraw" of Plaintiff from the HMS MMSCI program against Plaintiff by Defendants.

373. Importantly, Plaintiff requests that this Court grants an emergency and or immediate temporary restraining order on ex parte basis and preliminary and permanent injunctive relief because immediate and irreparable harm of loss of graduation with the Plaintiff's original MMSCI program cohort 2024 to 2026 scheduled for end of May 2026 and loss of professional opportunities could occur will occur before the Defendants can be heard. Specifically, Plaintiff faces imminent

loss of participation in graduation and related academic rights within approximately two weeks end of May 2025.

**Count III. Violation of Harvard's Own Non-Discrimination and Anti-Bullying (NDAB) Policy.**

**C. Violation of Harvard's Own Non-Discrimination and Anti-Bullying (NDAB) Policy.**

374. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein 1-373

375. Harvard University's, Non-Discrimination and Anti-Bullying (NDAB) Policy prohibits retaliation, discriminatory harassment and discriminatory disparate treatment, including "singling out or targeting an individual for less favorable treatment" and "imposing more severe discipline" based on protected status. Harvard University OCC's and or CSNDR's refusal to investigate Plaintiff's formal complaint of discrimination and bullying under its own Harvard University's own NDAB policies and procedures including neutral fact-finding and proper investigation has caused and continues to cause Plaintiff emotional distress, educational and professional harm that is irreparable. When Plaintiff sought meaningful clarification and academic support from Defendants, they (Defendants) responded with disciplinary escalation and actions against Plaintiff than meaningful academic assistance, constituting retaliatory conduct by Defendants against Plaintiff. The conduct described in this complaint, presents a unique non-HMS MMSCI syllabus and or HMS Master's Handbook policy-based procedures imposed only on Plaintiff by Defendants which created a hostile and unfair academic environment to Plaintiff and deprived Plaintiff of the benefits guaranteed under the Harvard University's NDAB policies. The Harvard University's and or Harvard OCC's failure to investigate Plaintiff's formal complaint of discrimination and bullying with Harvard OCC through independent personnel, as required under Harvard University's own NDAB policies ,contradicts the Harvard NDAB's Anti-Bullying Policy, I. Statement of Principles that provides that Harvard University strongly encourages anyone who has been bullied, or anyone who observes such behavior, to make a report through the channels outlined in the Policy. *"The*

*University will respond promptly to reports of bullying and will take appropriate action to prevent and respond to behavior that violates the Policy"*,

376. On March 13, 2025, the HMS Title IX Officer, Mr. Mark Addison, explicitly stated to the Plaintiff that *"We are also able to consider this current submission as your formal complaint and proceed to conduct the review initial" Under the Non-Discrimination and Anti-Bullying Policies"*, detailing that Plaintiff's submission could be treated as a formal complaint and that an initial review. The Title IX Officer further indicated that, *"absent revision or objection, the institution would proceed with the initial review based on the existing complaint. Stating that "I will proceed to consult with the Office for Community Conduct to begin the initial review no later than Monday, March 17 if (a) we do not receive an updated document as the formal complaint for consideration under the policies" (b) we receive a confirmation from you by March 17 to proceed with the initial review based on your current document.* This statement by Mr. Addison, demonstrates that Plaintiff's formal complaint of discrimination and bullying was deemed sufficient to trigger formal review procedures under the Harvard NDAB policies at the time it was received on March 3, 2025 and was not rejected based on missing identify any "protected" status of discrimination. Therefore, this constitutes a violation of Harvard's own NDAB policy that prohibits discrimination, antibullying and retaliation at Harvard University.

377. Harvard Medical School and or Harvard University breached its own contract of Harvard University's antidiscrimination, disparate treatment and antibullying and antiretaliation policy, in violation of the Harvard University's Non-Discrimination, Anti-Bullying Policy ("NDAB") Policy (Exhibit 69) and the broader Title IX of Civil Rights of 1964(42 U.S.C. § 2000d), (Exhibit 69), as a recipient of federal aid. As a result of Harvard OCC and or CSNDR's breaches, Plaintiff has been damaged and continue to sustain substantial damages, in amounts to be determined at trial.

**Count IV. Violation of Massachusetts Anti-Discrimination Law (M.G.L. c. 151C, § 2(d)**

**D. Violation of Massachusetts Anti-Discrimination Law (M.G.L. c. 151C, § 2(d)**

378. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein 1-377

189

379.Massachusetts General Laws Chapter 151C prohibits discrimination in educational institutions based on race. The discriminatory and retaliatory conduct described by Defendants herein violates Massachusetts law against Discrimination. As a result of Harvard's breaches, the Plaintiff has been damaged and continue to sustain substantial emotional, educational and professional damages, in amounts to be determined at trial.

**Count V. Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing.**

**L. Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing.**

380.Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein 1-377

381.At all relevant times, Defendants policies, procedures, and academic guidelines constituted a contract with Plaintiff.

382.The 2024 to 2025 HMS Master's Student's Handbook and or the HMS MMSCI program syllabus, and the Harvard University's Non-Discrimination, Anti-Bullying Policy ("NDAB") Policy, constitute an implied contract with enrolled Harvard students, the Plaintiff in this case. (See Mangla v. Brown Univ., 135 F.3d 80, 83 (1st Cir. 1998), (university handbooks and policies create enforceable contractual obligations). The Harvard Medical School Student's Handbook and or HMS MMSCI program leadership and  deans and Harvard University's Non-Discrimination, Anti-Bullying Policy ("NDAB") ,breached these contractual obligations by, among other things: denying Plaintiff a remediation examination in "CI700: Ethics and the IRB" course in contravention of Section 2.03 of the Handbook, which mandates that students who fail to pass a required course examination "are required to take a re-examination and/or do remedial work" and HMS Masters Handbook under section 2.03 Grading and Examinations, under point 9, provides that "a student has only one opportunity to remediate an unsatisfactory or failing grade by repetition of a course(Exhibit 74). Defendants denied Plaintiff this right to take remediation examination in "CI700: Ethics and the IRB" course the right to retake courses "CI701: Clinical Data Science; Design and Analytics I" and "CI700: Ethics and the IRB" course

190

in summer 2025 and breached the HMS Masters Handbook under section 2.03 Grading and Examinations, point 9.

383. Harvard OCC's failure to investigate Plaintiff's formal complaint of discrimination and bullying filed by Plaintiff with Harvard University and Harvard or OCC and CSNDR through independent personnel as required by Harvard's own NDAB Policy; permitting respondents including Associate Professor Finnian McCausland and Doctor Martina McGrath and Deans Johanna Gutlerner and Rosalind Segal, named in the Plaintiff's formal complaint of discrimination and bullying with Harvard University OCC to enforce the adverse academic actions among others wrongfully issued "failing grade' in "CI706: MMSCI Mentored Research" course and or "requirement to withdraw" of the Plaintiff from the MMSCI program by Defendants, in breach of Harvard NDAB's policy on antidiscrimination, bullying and retaliation(Exhibit 75) against a member of Harvard University community within the Harvard University community by Defendants.

384. Permitting the same APRB voting members and co-chairs including Deans Johanna Gutlerner and Rosalind Segal and voting members including Associate Professor Finnian McCausland and Doctor Martina McGrath who voted to place the Plaintiff on "Monitored Academic Status" "Academic Probation Status" and also sanctioned the Plaintiff for "unprofessional conduct" following Plaintiff's question on an academic inquiry on eligibility criteria in course remediation examination with Dean Gutlerner and Professor Singh. The same individuals (Associate Professor Finnian McCausland and Doctor Martina McGrath) who improperly issued a "failing grade" in "CI706: MMSCI Mentored Research" course to the Plaintiff and who later used this same improperly issued "failing grade" in "CI706: MMSCI Mentored Research" course as a "pretext justification" of "requirement to withdraw" of Plaintiff from the HMS MMSCI program, absent any established Harvard Medical School's Student's Handbook and or HMS MMSCI program syllabus, in breach the HMS Master's Student's Handbook, section 2.03 Grading and Examinations of General Principles under Grade change and appeals which states that students' disagreement with grades, evaluations or reports of academic performance should be raised with the course director who may consult with the course director to discuss the appropriateness of the grade or evaluation, program directors and Deans of

191

Graduate education(Exhibit 77) and, Harvard University's statement on Harvard University wide statement on academic freedom and inquiry by members of Harvard University community as stated in the Harvard NDAB policies.

385.The same APRB co-chairs and or voting members including Deans Johanna Gutlerner and Rosalind Segal and voting members including Associate Professor Finnian McCausland and Doctor Martina McGrath denied Plaintiff's appeal for reconsideration of the "Academic Probation Status" appeal to the APRB on February 27,2025. The same APRB also denied Plaintiff's first Appeal to the APRB for reconsideration of the wrongful "requirement to withdraw" of Plaintiff from the HMS MMSCI program on March 25,2025,in violation of Defendants' HMS Master's Student's Handbook's conflict-of-interest and fairness requirements (Section 4.05) and the HMS Master's Student's Handbook's section 3.07,Procedures for Consideration of Academic Probation(Exhibit 78), which permits HMS MMSCI students to appeal "Academic Probation Status" within the MMSCI program ,in breach of the HMS Master's Student's Handbook's conflict-of-interest and fairness requirements HMS Master's Student's Handbook's, Section 4.05 on conflict-of-interest and fairness requirements by Defendants.

386.On February 6,2025, the Harvard Medical School, Dean for Graduate Education and who also served as the APRB Co-Chair, Dean Rosalind Segal denied the Plaintiff the right to appeal the "Academic Probation Status" as provided in the HMS Master's Handbook's, under section 3.07 under procedures for consideration of academic performance reconsideration of academic probation (AP),which provides that a student who is placed on academic probation may be given an opportunity to request the APRB's reconsideration of an Academic Probation sanction in consultation with program directors and section 3. of the HMS Master's Handbook's notes that academic probation (AP) status is noted permanently on a students' academic record at the HMS (Exhibit 79)and Dean Rosalind Segal further stated that she (Dean Rosalind Segal) would not remove f the academic probation from the plaintiff's academic record at the HMS and that the plaintiff could not appeal the "Academic Probation Status" decision by the APRB, in breach of contract of the HMS Master's Handbook's, under section 3.07 under procedures for consideration of academic performance Reconsideration of "Academic Probation Status"(Exhibit

80),in breach of the HMS Master's Handbook's, under section 3.07 under procedures for consideration of academic performance reconsideration of academic probation (AP),and section 3. of the HMS Master's Handbook's notes that academic probation (AP) status is noted permanently on a students' academic record at the HMS and section 3.07 under procedures for consideration of academic performance Reconsideration of "Academic Probation Status.

385.HMS Master's Student's Handbook Policy ,under section 3.04 Appellate Review of a Request to Withdraw, provides that a student may request review of the decision of the SCRR or the appeals panel by the Dean of the Faculty of Medicine(Exhibit 80), On April 3,2025, before the Plaintiff could formerly appeal the SCRRs' decision of denial of reconsideration of the wrongful "requirement to withdraw" of Plaintiff by Dean Bittinger ,Defendants deprived Plaintiff of this right as Dean Christine Bittinger noted to Plaintiff in her response denying the Plaintiff's reconsideration of the wrongful "requirement to withdraw" from the HMS MMSCI program that the Plaintiff had "*exhausted*" appeals available to the Plaintiff(Exhibit 126), in breach of the HMS Masters Handbook under section 3.04 Appellate Review of a Request to Withdraw(Exhibit 81).

386.On March 3,2025,the research mentor, Doctor Lisa Bebell reached out to the Plaintiff and mentioned to facilitate only a research meeting presentation for the prior research topics that Plaintiff had identified as infeasible and she(Doctor Bebell) still did not accept to provide mentorship to the Plaintiff with feasible research topics as requested with Doctor Lisa Bebell and the MMSCI program leadership by Plaintiff and as required in the HMS MMSCI program policies that, students conduct research on feasible research topics. The MMSCI program and or Deans were aware that Doctor Lisa Bebell refused to mentor Plaintiff on feasible research topics as requested by Plaintiff per the HMS MMSCI Master's Students Handbook policy on mentored research, section 2.14. Credit for Mentored Research which provides that all mentors may ensure an appropriate environment for research based on the individual students' needs and objectives, the student's research may be conducted in collaboration with faculty from other entities either within or outside Harvard but they (MMSCI program leadership and Deans) still did not provide any further support to Plaintiff about it but continued to enforce the selectively imposed non-established MMSCI program syllabus "March 14,2025 deadline" and or academic conditions

193

including "interim meeting" "additional statistical work" not required and or to receive credit in "CI706: MMSCI Mentored Research " course at the first milestone stage of research topics and enforced by Defendants under the threat of "failure" in "CI706: MMSCI Mentored Research" course and "withdrawal" of Plaintiff from the HMS MMSCI program, in breach of the Harvard Medical School's Master's Student's Handbook, section 2.14. Credit for Mentored Research which provides that all mentors may ensure an appropriate environment for research based on the individual students' needs and objectives, the student's research may be conducted in collaboration with faculty from other entities either within or outside Harvard and further provides that the Harvard Medical School faculty mentor shall be fully responsible for the students' progress and for evaluation during the conduct of the research(Exhibit 80), accordingly Plaintiff conducted research under the primary guidance of Plaintiff's research mentor, Doctor Lisa Bebell who possessed the relevant subject-matter expertise, supervised and evaluated the plaintiff's "CI706: MMSCI Mentored Research" course first milestone research topics and did not identify or communicate any deficiencies requiring revision at that stage of the "CI706: MMSCI Mentored Research" course first milestone research topics. While the required statistical research work feedback from all MMSCI student's mentors were required to be addressed as part of the "CI706: MMSCI Mentored Research" course second milestone research protocol but not at the first milestone research topics. Notably all MMSCI program 2024 to 2026 cohort students received required statistical research work feedback to be addressed as part of the "CI706: MMSCI Mentored Research" course second milestone but Associate Professor Finnian McCausland and Doctor Martina McGrath and Deans Rosalind Segal and Johanna Gutlerner did not impose such non-established formal HMS MMSCI program conditions on similarly situated students in the HMS MMSCI program. Defendants obstructed Plaintiff's academic progress in the HMS MMSCI program. This is particularly evident given that similarly situated students in the HMS MMSCI program both those students who completed the first milestone research topics in October 2024 and or November 2024 and MMSCI students who had not yet presented their initial "CI706: MMSCI Mentored Research" course first milestone research topics, originally due in Fall 2024 but extended it into Spring (March) 2025,and all MMSCI program 2024 to 2026 cohort students received required statistical research work feedback to be addressed as part of the "CI706: MMSCI Mentored Research" course second milestone were not subjected to such non-established formal HMS MMSCI program conditions on similarly situated students in the HMS MMSCI program.

194

387. On February 10,2025, approximately just over one month before the wrongful "requirement to withdraw" of the Plaintiff from the HMS MMSCI program and or the issuance of a "failing grade" in "CI706: MMSCI Mentored Research " course to Plaintiff by Defendants ,the Harvard Medical School Dean for Graduate Education who also served as the APRB Co-Chair Dean Rosalind Segal told Plaintiff to *"leave"* the HMS MMSCI academic program after Plaintiff expressed interest to conduct research on feasible research topics in accordance with the HMS MMSCI "CI706: MMSCI Mentored Research" course syllabus in accordance with the HMS Master's Student's Handbook that requires HMS MMSCI students to conduct research on feasible research topics. This statement made multiple times by Dean Segal to Plaintiff created a hostile and discouraging academic environment to the Plaintiff from participating in the HMS MMSCI and also caused the Plaintiff significant mental distress program that interfered with the Plaintiff's academic progress in the HMS MMSCI program but Defendants did not enforce such non-established MMSCI program conditions on similarly situated students in the HMS MMSCI academic program ,2024 to 2026 cohort known to Plaintiff who first met with their research mentors at the same time as the Plaintiff or even later, in October or November 2024, including one White student in the MMSCI program who first met with their "CI706: MMSCI Mentored Research" course research mentor in November 2024 and presented their initial "CI706: MMSCI Mentored Research" course research topic milestone approximately one week later, also in November 2024 ,one Brown student in the MMSCI program who did not present their initial first milestone research topics originally due in Fall (November) 2024 until Spring 2025, as a condition for receiving course credit in "CI706: MMSCI Mentored Research" course, contradicting the HMS Master's Student's Handbook under section 3.01 Responsibility of teachers which provides that the teacher-learner relationship confers rights and responsibilities of behaving in a way that creates a culture of mutual respect, minimizes the likelihood of student mistreatment and optimizes the educational experiences and that teachers should treat learners fairly, respectfully, and without bias related to their age, race, gender, sexual orientation, disability, religion or national origin(Exhibit 84) and the Harvard NDAB policy on anti-discriminatory disparate treatment of Plaintiff based on Plaintiff's race, in breach of the HMS

195

Master's Student's Handbook under section 3.01 Responsibility of teachers and under Responsibility of teachers which notes that the teacher-learner relationship confers rights and responsibilities of behaving in a way that creates a culture of mutual respect, minimizes the likelihood of student mistreatment and optimizes the educational experiences and that teachers should treat learners fairly, respectfully, and without bias related to their age, race, gender, sexual orientation, disability, religion or national origin and the Harvard NDAB policy on anti-discriminatory disparate treatment of the Plaintiff based on race and the Harvard University Nondiscrimination and Antibullying policy on discriminatory disparate treatment because of the Plaintiff's race in breach of Harvard NDAB policy on anti-discriminatory disparate treatment of Plaintiff based on Plaintiff's race.

388. In November 2024, Doctor McGrath who served as the HMS MMSCI program director and APRB voting member selectively directed Plaintiff to wait see Plaintiff's Fall 2024 results first, then conduct required "CI706: MMSCI Mentored Research" course first milestone research due in Fall 2024 semester in a future Spring 2025 (Exhibit 87),a semester(Spring 2025) in which the "CI706: MMSCI Mentored Research" course first milestone research was not offered ,without imposing similar conditions on any other similarly situated students in the HMS MMSCI program, 2024 to 2026 cohort .Notably, the Fall 2024 MMSIC program examinations had not yet been taken by any MMSCI program students at that time(November 2024),per established MMSCI program syllabus. This evidence departure from the standard and established HMS MMSCI program syllabus that governs all students in the HMS MMSCI program, in breach of the HMS MMSCI and or HMS Master's Student's Handbook policies that governs all students in the HMS MMSCI program (Exhibit 88).

389. In November 2024, during a meeting scheduled by Associate Professor Finnian McCausland and Doctor McGrath about research mentorship with Doctor Amir Mohareb, Plaintiff informed Doctor McGrath that Plaintiff wished to seek a new research mentor because the previous potential research mentor, Doctor Amir Mohareb, did not have the necessary data set to support the research project and or topics required to conduct research and that the Plaintiff did not hear from this potential research mentor, Doctor  Mohareb. Plaintiff also noted that other students in the HMS MMSCI program 2024 to 2026 cohort were able to use data provided by their respective research

196

mentors, in response to Plaintiff ,Doctor McGrath who served as the HMS MMSCI program director and APRB voting member stated to Plaintiff that even if Plaintiff independently secured a new potential and or research mentor, the HMS MMSCI program directors(Associate Professor Finnian McCausland and Doctor McGrath) would ultimately decide whether they would award Plaintiff course credit in "CI706: MMSCI Mentored Research" course, contradicting and or in breach of the HMS MMSCI program's and or HMS Master's Student's Handbook policy under section 2.14. Credit for Mentored Research provides that all mentors may ensure an appropriate environment for research based on the individual students' needs and objectives, the student's research may be conducted in collaboration with faculty from other entities either within or outside the HMS faculty mentor shall be fully responsible for the students' progress and for evaluation during the conduct of the research (Exhibit 82).

400.Additionally, between January and March 17,2025 , the same APRB Co-Chairs including Deans Johanna Gutlerner and Rosalind Segal and voting members including Associate Professor Finnian McCausland and Doctor Martina McGrath  refused to allow Plaintiff to switch a research mentor and or change prior research topics to feasible research topics according to Plaintiff's research interests and as required in the HMS MSMCI program 2024 to 2026 cohort syllabus of all students in the HMS MSMCI program while a Brown  student in the HMS MSMCI program 2024 to 2026 cohort switched research mentors without penalty from the same MMSCI program leadership and or deans. Additionally, all students in the HMS MMSCI program 2024 to 2026 cohort were permitted to conduct research according to their own research interest by Defendants ,in breach of the HMS Master's Student's Handbook under section 3.01 Responsibility of teachers and learners under Responsibility of teachers noting that the teacher-learner relationship confers rights and responsibilities of behaving in a way that creates a culture of mutual respect, minimizes the likelihood of student mistreatment and optimizes the educational experiences and that teachers should treat learners fairly, respectfully, and without bias related to their age, race, gender, sexual orientation, disability, religion or national origin and the Harvard NDAB policy on anti-discriminatory disparate treatment of the Plaintiff and the Harvard University Nondiscrimination and Antibullying policy on discriminatory disparate treatment because of the Plaintiff's race (Exhibit 84).

197

**Associate Professor Finnian McCausland, Questioned the Originality of Plaintiff's First Milestone Thesis Research Work Without Evidence.**

401. On January 8,2025, Associate Professor Finnian McCausland who served as the HMS MMSCI program director and APRB voting member questioned the originality of Plaintiff's research "CI706: MMSCI Mentored Research" course first milestone research topics thesis report which was supervised by Doctors Lisa Bebell and Michael Monuteax and that the Plaintiff submitted on January 6,2025 was Plaintiff's own research or if Plaintiff obtained it from Plaintiff's research mentor, Doctor Lisa Bebell (Exhibit 90) in a conduct not directed at other HMS MMSCI 2024 to 2026 cohort students, in breach of the HMS Master's Student's Handbook under section 3.01 Responsibility of teachers and learners under Responsibility of teachers noting that the teacher-learner relationship confers rights and responsibilities of behaving in a way that creates a culture of mutual respect, minimizes the likelihood of student mistreatment and optimizes the educational experiences and that teachers should treat learners fairly, respectfully, and without bias related to their age, race, gender, sexual orientation, disability, religion or national origin and the Harvard NDAB policy on anti-discriminatory disparate treatment of the Plaintiff and the Harvard University Nondiscrimination and Antibullying policy on discriminatory disparate treatment because of the Plaintiff's race (Exhibit 84).

402. On January 29,2025 Doctor McGrath who served as the HMS MMSCI Program Co-Director and APRB voting member directed Plaintiff to repeat presentation of the same "CI706: MMSCI Mentored Research" course first milestone research topics that the Plaintiff had completed presenting to the Plaintiff's research mentors, Doctors Lisa Bebell and Michael Monuteax on December 19,2024,with its thesis report submitted by Plaintiff on January 6,2025 per the formal HMS MMSCI program and or "CI706: MMSCI Mentored Research" course syllabus, according to Doctor McGrath, at an "interim thesis meeting" ,in order to "receive credit" in "CI706: MMSCI Mentored Research " course despite an "interim thesis meeting" not being a requirement in the HMS MMSCI program and or course syllabus to receive credit in CI706: MMSCI Mentored Research " course and not imposed by Doctor McGrath on similarly situated students in the HMS MMSCI academic program ,2024 to 2026 cohort who first met with their research mentors at the same time as the Plaintiff or even later, in October or November 2024, including one White student in the MMSCI program who first met with their "CI706: MMSCI Mentored Research" course

198

research mentor in November 2024 and presented their initial "CI706: MMSCI Mentored Research" course research topic milestone approximately one week later, also in November 2024 ,one Brown student in the MMSCI program who did not present their initial first milestone research topics originally due in Fall (November) 2024 until Spring 2025, and all MMSCI students who received the required statistical feedback from their research biostatisticians, as a condition for receiving course credit in "CI706: MMSCI Mentored Research" course but upon information and belief Defendants awarded credit but not a failing grade in "CI706: MMSCI Mentored Research" course to these similarly situated students in the MMSIC program, in breach of the HMS MMSCI program's policy under section 2.14. Credit for Mentored Research provides that all mentors may ensure an appropriate environment for research based on the individual students' needs and objectives, the student's research may be conducted in collaboration with faculty from other entities either within or outside the HMS faculty mentor shall be fully responsible for the students' progress and for evaluation during the conduct of the research (Exhibit 91) and the HMS Master's Student's Handbook under section 3.01 Responsibility of teachers and learners under Responsibility of teachers noting that the teacher-learner relationship confers rights and responsibilities of behaving in a way that creates a culture of mutual respect, minimizes the likelihood of student mistreatment and optimizes the educational experiences and that teachers should treat learners fairly, respectfully, and without bias related to their age, race, gender, sexual orientation, disability, religion or national origin(Exhibit 84).

403.The HMS Master's Student's Handbook section 2.03 under 4. Grading and Examinations policy provides that incomplete (INC) grades signifies the failure to complete course requirements because of personal illness or similar compelling serious reasons and grades are to be resolved within six (6) months (Exhibit 92). However, Plaintiff completed the "CI706:MMSCI Mentored Research" course presentation on December 19,2024 and submitted its thesis report on January 6,2025 but Defendants denied Plaintiff credit (grade) in "CI706:MMSCI Mentored Research" course despite completion of the "CI706:MMSCI Mentored Research" course first milestone research topics and wrongfully awarded Plaintiff a "failing grade" grade in "CI706:MMSCI Mentored Research" course within approximately seventy two (72) days after submission of the first milestone research topics on January 6,2025 that Plaintiff's for Plaintiff's previously completed first milestone research topics presentation on

199

December 19,2024, per the formal HMS MMSCI program syllabus thereby deviating from established HMS MMSCI program policy and or the HMS Master's Student's Handbook section 2.03 under 4. Grading and Examinations policy provides that incomplete (INC) grades are to be resolved within six (6) months (Exhibit 92), while upon information and belief, Defendants awarded passing credit but not a "failing grade" in "CI706: MMSCI Mentored Research" course to these similarly situated students in the MMSIC program described in this complaint. Defendants breached the HMS Master's Student's Handbook section 2.03 under 4. Grading and Examinations policy provides that incomplete (INC) grades are to be resolved within six (6) months.

404.Notably, Associate Professor Finnian McCausland and Doctor Martina McGrath and Deans Rosalind Segal and Johanna Gutlerner were not Plaintiff's "CI706: MMSCI Mentored Research" course research mentors (Exhibit 93). Rather, Associate Professor Finnian McCausland and Doctor Martina McGrath served as CI706: MMSCI Mentored Research" course research mentors to another student in the 2024 to 2025 HMS MMSCI program,2024 to 2026 cohort whose(the HMS MMSCI student mentee of Professor Finnian McCausland and Doctor Martina McGrath) research area of interest aligned with that of Associate Professor Finnian McCausland and Doctor Martina McGrath consistent with the established HMS MMSCI program guideline and the HMS Master's Student's Handbook that requires HMS MMSCI students to conduct research on feasible research projects of their own area of interest of research. Defendants breached the HMS Master's Student's Handbook policy under section 2.14. Credit for Mentored Research provides that all mentors may ensure an appropriate environment for research based on the individual students' needs and objectives, the student's research may be conducted in collaboration with faculty from other entities either within or outside the HMS faculty mentor shall be fully responsible for the students' progress and for evaluation during the conduct of the research.

405.HMS Master's Student's Handbook, section 3.08 Procedures for Consideration of Unprofessional Conduct provides that when information suggesting the possibility that a student has engaged in inappropriate or unprofessional conduct is brought to the attention of the Dean of Graduate Education, the Associate Dean for Graduate Education, the program director, the

Academic Progress Review Board (APRB) for the master's programs .It further states that the APRB may appoint one or more independent fact finders. The fact finder will interview the student and undertake whatever action is required to elucidate the relevant facts. At the conclusion of the inquiry, the fact finder will prepare a written report describing the inquiry process and the findings of the fact (Exhibit 94). Plaintiff engaged in academic inquiry regarding eligibility criteria for a course remediation examination with HMS MMSCI program leadership, Professor Ajay Singh and Associate Dean of Graduate Education, Professor Johanna Gutlerner and importantly the exercise of academic freedom and or protected right opposing escalating discriminatory and retaliatory conduct of Defendants that directly impacted and or was impacting the Plaintiff's academic progress and performance in the HMS MMSCI and or HMS Master's Student's Handbook policy does to constitute "unprofessional conduct" under any HMS Master's  Student's Handbook and or MMSCI program policies. Moreover, Harvard's Provost for Student's Affairs, Provost Robin Glover did not note that the Plaintiff's act of seeking guidance from her (Provost Glover) was an "unprofessional conduct" rather, Harvard Provost Robin Glover provided guidance to the Plaintiff. Notably, no allegation of unprofessional conduct based on any established HMS MMSCI policy was ever made against the Plaintiff within the HMS MMSCI program. Furthermore, Plaintiff was never informed of any factual HMS MMSCI and or HMS Master's Student's Handbook policy-based, allegation, violation and or investigation or of any alleged "unprofessional conduct". Despite this, Defendants proceeded and placed Plaintiff on "Academic Probation Status", partly of for Plaintiff asking Dean Gutlerner and Professor Singh about eligibility criteria in course remediation examination which Dean Gutlerner ,cited as "unprofessional conduct"(Exhibit 95), absent any HM MMSCI Master's Student's Handbook policy mentioning that Plaintiff's question to Professor Ajay Singh and Associate Dean Johanna Gutlerner regarding eligibility criteria for a course remediation examination as "unprofessional conduct".Nevertheless,  Dean Gutlerner referred Plaintiff to the APRB meeting on November 25,2024 for consideration of withdrawal of Plaintiff from the HMS MMSCI program in November 2024, just one week to start of Fall 2024 examinations  of Plaintiff from the HMS MMSCI program. The November 25,2024, APRB referral for consideration of withdrawal of Plaintiff from the HMS MMSCI program in November 2024, was the initial attempt by Dean Gutlerner and the APRB that she(Dean Gutlerner) and Dean Segal Co-Chair first attempted to wrongfully withdraw Plaintiff from the HMS MMSIC program.

201

Defendants took adverse academic actions against Plaintiff among others including, Defendants wrongfully awarded Plaintiff a "failing grade" in "CI706: MMSCI Mentored Research " course and or "required" Plaintiff to "Withdraw" from the HMS MMSCI program without adhering to the procedural requirements set forth in the governing HMS Master's Handbook policies, thereby, Defendants breached the contractual obligations embodied in the 2024 to 2025 HMS Masters Handbook, section 3.08 Procedures for Consideration of Unprofessional Conduct provides that when information providing that the possibility that a student has engaged in inappropriate or unprofessional conduct is brought to the attention of the Dean of Graduate. Education, the Associate Dean for Graduate Education, the program director, the Academic Progress Review Board (APRB) for the master's programs and that the APRB may appoint one or more independent fact finders. The fact finder will interview the student and undertake whatever action is required to elucidate the relevant facts. At the conclusion of the inquiry, the fact finder will prepare a written report describing the inquiry process and the findings of the fact and the Harvard NDAB policy on anti-discriminatory disparate treatment, antibullying and anti-retaliation of Plaintiff within the HMS MMSCI program because of Plaintiff's race.

406.The MMSCI program leadership and APRB voting members including Associate Professor Finnian McCausland and Doctor Martina McGrath selectively denied of HMS MMSCI program leadership review of the Plaintiff's research poster on February 4,2025 as Doctor Martina McGrath skipped the Plaintiff's research poster while she (Doctor Martina McGrath) and Associate Professor Finnian McCausland reviewed the research posters of all of Plaintiff's colleagues.

407.On February 5,2025, during a meeting (Exhibit 142) with McGrath and Associate Professor Finnian McCausland, the HMS MMSCI program administrator, Molly and, Doctor Bebell about Plaintiff's research projects that Plaintiff had deemed infeasible to continue conducting research on. Plaintiff asked Doctor Martina McGrath and Associate Professor Finnian McCausland about the denial of HMS MMSCI program leadership review of solely the Plaintiff's research poster by Doctor Martina McGrath, Doctor Martina McGrath mentioned they the HMS MMSCI program's (Associate Professor Finnian McCausland and Doctor Martina McGrath) wanted an "independent reviewer" for the Plaintiff's research poster, in breach of the HMS Master's

Student's Handbook under section 3.01 Responsibility of teachers and learners under Responsibility of teachers noting that the teacher-learner relationship confers rights and responsibilities of behaving in a way that creates a culture of mutual respect, minimizes the likelihood of student mistreatment and optimizes the educational experiences and that teachers should treat learners fairly, respectfully, and without bias related to their age, race, gender, sexual orientation, disability, religion or national origin(Exhibit 84).

408. Between February to March 17, 2025, Plaintiff informed  the same APRB Co-Chairs including Deans Johanna Gutlerner and Rosalind Segal and voting members including Associate Professor Finnian McCausland and Doctor Martina McGrath that Doctor Lisa Bebell declined to provide mentorship to the Plaintiff on feasible research topics as requested with Doctor Lisa Bebell and Deans Johanna Gutlerner and Rosalind Segal and Associate Professor Finnian McCausland and Doctor Martina McGrath by Plaintiff, per the HMS MMSCI policies requiring HMS MMSCI students to select a research mentor and pursue research on feasible research topics and of their own interest but MMSCI program leadership offered the Plaintiff no support with finding another research mentor.

409. Defendants wrongfully issued Plaintiff a failing grade in "CI706: MMSCI Mentored Research" course and or "Requirement to Withdraw" from the MMSCI program without reference to any factually established HMS MMSCI program policy and or HMS Masters Handbook Section 3.03 provides that withdrawal from the HMS MMSCI program is appropriate only 'when attempts at academic remediation have been unsuccessful (Exhibit 97). Rather the Plaintiff completed all required "CI706: MMSCI Mentored Research" course in accordance with the HMS MMSCI program syllabus, including presenting the first research milestone on December 19, 2024, and submitting the corresponding report on January 6, 2025, and deemed the first research milestone topics as infeasible to continue researching on. Defendants breached the HMS Masters Handbook Section 3.03 provides that withdrawal from the HMS MMSCI program is appropriate only 'when attempts at academic remediation have been unsuccessful.

410.Between February to March 17, 2025, Plaintiff informed Defendants of the Plaintiff's independent efforts to secure an alternate research mentor and or to provide research mentorship

203

410.Between February to March 17, 2025, Plaintiff informed Defendants of the Plaintiff's independent efforts to secure an alternate research mentor and or to provide research mentorship on feasible research topics by the selectively imposed non-HMS MMSCI "March 14, 2025, deadline". In the same time period between February to March 17, 2025,Defendants denied Plaintiff routine educational opportunity to conduct research on feasible research topics, and to provide support with finding an alternate research mentor upon the Plaintiff's request for one given from Defendants ,given that Doctor Lisa Bebell refused mentorship on feasible research topics as requested by the Plaintiff per the HMS MMSCI policies requiring HMS MMSCI students to choose a research mentor and pursue research on feasible research topics and of their own interest.

411.On March 12, 2025, after independent efforts by Plaintiff to secure a research mentor was unsuccessful by March 12,2024(two days before the selectively imposed non-HMS MMSCI "March 14, 2025 deadline"), Plaintiff was compelled to communicate to Doctor Lisa Bebell who had cancelled scheduled research meetings on March 10,2025 and refused to provide Plaintiff with mentorship on feasible research projects. Plaintiff requested Doctor Lisa Bebell's availability to facilitate the repetition of the "CI706: MMSCI Mentored Research" course first milestone research topics that Plaintiff had already completed to present on December 19,2024 and had deemed infeasible to continue conducting research on by the selectively imposed and enforced "March 14,2025 deadline" not contained in the formal MMSCI program syllabus. Notably, the same conditions including "interim meeting" ,additional statistical research work" and "March 14, 2025 deadline", were not imposed on similarly situated students in the HMS MMSCI academic program ,2024 to 2026 cohort who, first met with their research mentors at the same time as the Plaintiff or even later, in October or November 2024, including one White student in the MMSCI program who first met with their "CI706: MMSCI Mentored Research" course research mentor in November 2024 and presented their initial "CI706: MMSCI Mentored Research" course research topic milestone approximately one week later, also in November 2024 ,one Brown student in the MMSCI program who did not present their initial first milestone research topics originally due in Fall (November) 2024 until Spring 2025, and all MMSCI students who received the required statistical feedback from their research biostatisticians, as a condition for receiving course credit in "CI706: MMSCI Mentored Research" course but upon

204

at any point to the Plaintiff to meet non-HMS MMSCI syllabus conditions by Defendants. Doctor Bebell did not respond to Plaintiff's communication to her (Doctor Bebell).

412. On March 14, 2025, Plaintiff further informed Deans Johanna Gutlerner and Rosalind Segal and Associate Professor Finnian McCausland and Doctor Martina McGrath who had selectively imposed these non HMS MMSCI syllabus conditions on Plaintiff that Doctor Lisa Bebell did not respond to the Plaintiff's communication to facilitate the selectively imposed non HMS MMSCI syllabus conditions to repeat the "CI706: MMSCI Mentored Research" course first milestone research topics that the Plaintiff had previously completed on December 19,2024 and had deemed infeasible to continue conducting research on by the selectively imposed and enforced "March 14,2025 deadline", yet the APRB cochairs including Deans Johanna Gutlerner and Rosalind Segal and voting members including Associate Professor Finnian McCausland and Doctor Martina McGrath ignored Plaintiff's communications and provided no guidance or flexibility to meet the selectively imposed and enforced "March 14,2025 deadline", that Defendants granted to similarly situated students in the HMS MMSCI academic program ,2024 to 2026 cohort who first met with their research mentors at the same time as the Plaintiff or even later, in October or November 2024, including one White student in the MMSCI program who first met with their "CI706: MMSCI Mentored Research" course research mentor in November 2024 and presented their initial "CI706: MMSCI Mentored Research" course research topic milestone approximately one week later, also in November 2024 ,one Brown student in the MMSCI program who did not present their initial first milestone research topics originally due in Fall (November) 2024 until Spring 2025, and all MMSCI students who received the required statistical feedback from their research biostatisticians, as a condition for receiving course credit in "CI706: MMSCI Mentored Research" course but upon information and belief, Defendants awarded credit but not a failing grade in "CI706: MMSCI Mentored Research" course to these similarly situated students in the MMSIC program provided at any point to the Plaintiff to meet non-HMS MMSCI syllabus conditions by the Defendants. In breach of the Harvard NDAB's policy on antidiscrimination, bullying and retaliation and the HMS Master's Student's Handbook ,under section 3.01 Responsibility of teachers and learners under Responsibility of teachers noting that the teacher-learner relationship confers rights and responsibilities of behaving in a way that creates a culture of mutual respect, minimizes the likelihood of student

teachers noting that the teacher-learner relationship confers rights and responsibilities of behaving in a way that creates a culture of mutual respect, minimizes the likelihood of student mistreatment and optimizes the educational experiences and that teachers should treat learners fairly, respectfully, and without bias related to their age, race, gender, sexual orientation, disability, religion or national origin (Exhibit 84).

413. The HMS Master's Student's Handbook under Section 5 of Requirement to Withdraw, provides that students are automatically withdrawn only if students fail to attend classes or work on a mentored research/capstone project for a period of ten (10) business days without approval (Exhibit 100). Defendants denied Plaintiff routine educational opportunity to conduct research on feasible research topics, and or provide support with finding an alternate research mentor upon the Plaintiff's request for one, the fact that Doctor Lisa Bebell refused to mentor Plaintiff on feasible research topics. Defendants did not provide any established and factual HMS MMSCI policy based academic sanctions and requirement to withdraw proceedings in their reason for their selective and constructive non-HMS MMSCI syllabus 'March 14,2025 deadline" set up for failure in "CI706: MMSCI Mentored Research" course of the Plaintiff and the improperly issued "failing grade" in "CI706: MMSCI Mentored Research" course" and wrongful "requirement to withdraw" of Plaintiff from the HMS MMSCI program. Defendants also limited Plaintiff to ten (10) minutes to present the Plaintiff's case during the APRB meeting for reconsideration of the wrongfully issued "failing grade" in "CI706: MMSCI Mentored Research" course" and the wrongful "requirement to withdraw" of Plaintiff from the HMS Master's program. Notably, Defendants selectively set conditions for Plaintiff's continued enrollment for ("March 14, 2025 deadline") not set forth in the HMS MMSCI formal program syllabus or "CI706: MMSCI Mentored Research" course and or that were functionally impossible to meet given that the "March 14,2025 deadline" ,selectively imposed on the Plaintiff was arbitrary and not contained in the established formal "CI706: MMSCI Mentored Research" course" or HMS MMSCI program syllabus. Defendants had full knowledge that the HMS MMSCI program and or "CI706: MMSCI Mentored Research" course did not mandate MMSCI students to work on specific research topics and or with a specific research mentor, Doctor Lisa Bebell and or conduct research on specific research topics but Defendants did not impose such formal syllabus conditions on similarly situated MMSCI students in the MMSCI academic. Defendants selectively and improperly designed a plan for wrongful and retaliatory

206

antidiscrimination, bullying and retaliation and the HMS Master's Student's Handbook ,under section 3.01 Responsibility of teachers and learners under Responsibility of teachers noting that the teacher-learner relationship confers rights and responsibilities of behaving in a way that creates a culture of mutual respect, minimizes the likelihood of student mistreatment and optimizes the educational experiences and that teachers should treat learners fairly, respectfully, and without bias related to their age, race, gender, sexual orientation, disability, religion or national origin by Defendants (Exhibit 84).

414.The HMS Master's Student's Handbook Policy on "Academic Probation Status" does not provide that MMSCI students should be improperly placed on "Academic Probation Status" and given a condition that failure in one course and or communication with Harvard University institutional support about academic concerns impacting Plaintiff's academic progress and performance constitutes any violation, warrants withdrawal of a student from a Harvard academic program and or would lead to "automatic withdrawal" of a student from the HMS MMSCI academic program, neither does the HMS Master's Student's Handbook Policy on "requirement to withdraw" note that HMS MMSCI students should be selectively subjected to non-established formal HMS MMSCI program syllabus "conditions and deadline" under the threat of "failure" in a course and or "CI706: MMSCI Mentored Research" course and "withdrawal" from the HMS MMSC program. Defendants breached the HMS Master's Student's Handbook Policy on "Academic Probation Status" and the Harvard NDAB antidiscrimination and bullying policy.

415.Additionally, the HMS Master's Student's Handbook Policies on "requirement to withdraw" does not provide that MMSCI students should be "required to withdraw' for a research mentor's refusal to provide research mentorship to an HMS student and or on feasible research topics and or non-responsiveness of a research mentor to facilitate a research meeting. Importantly, the HMS Master's Student's Handbook and or MMSCI program policy on mentored research does not provide and or require that HMS MMSCI students are required to work with a specific research mentor and or research topics. Defendants

416.On or about March 17,2025, Defendants improperly issued Plaintiff a 'failing grade' in "CI706: MMSCI Mentored Research" course and wrongfully "required" Plaintiff to "withdraw" from the HMS MMSCI program "effective immediately on March 17,2025". No other HMS MMSCI 2024 to 2026 cohort student was ever issued a failing grade in "CI706: MMSCI Mentored Research" course by the Defendants due to a research mentor's lack of responsiveness to meet to facilitate a research mentorship meeting in "CI706: MMSCI Mentored Research" course and the Defendants did not impose such non-established formal HMS MMSCI program syllabus conditions including "interim meeting" ,"additional statistical work" and "March 14,2025 deadline under the threat of failure in "CI706: MMSCI Mentored Research" course and withdrawal from the MMSCI program " on similarly situated students in the HMS MMSCI academic program ,2024 to 2026 cohort who first met with their research mentors at the same time as the Plaintiff or even later, in October or November 2024, including one White student in the MMSCI program who first met with their "CI706: MMSCI Mentored Research" course research mentor in November 2024 and presented their initial "CI706: MMSCI Mentored Research" course research topic milestone approximately one week later, also in November 2024 ,one Brown student in the MMSCI program who did not present their initial first milestone research topics originally due in Fall (November) 2024 until Spring 2025, and all MMSCI students who received the required statistical feedback from their research biostatisticians, as a condition for receiving course credit in "CI706: MMSCI Mentored Research" course but upon information and belief Defendants awarded credit but not a failing grade in "CI706: MMSCI Mentored Research" course to these similarly situated students in the MMSIC program.

417.Defendants including Deans Johanna Gutlerner and Rosalind Segal and the MMSCI program leadership and Associate Professor Finnian McCausland and Doctor Martina McGrath selectively imposed unique academic conditions not contained in the formal HMS MMSCI program syllabus and or HMS Master's Student's Handbook on the Plaintiff but Defendants did not imposed the same academic conditions not contained in the formal HMS MMSCI program syllabus and or HMS Master's Student's Handbook on similarly situated students as described in this complaint. Defendants breached the established HMS MMSCI program syllabus and polices and or HMS Master's Student's Handbook policies that govern all enrolled HMS MMSCI students including the Plaintiff and therefore must and must have been consistently applied to all

208

students including the Plaintiff and therefore must and must have been consistently applied to all HMS MMSCI students including the Plaintiff and yet the Defendants and or the HMS MMSCI program leadership and deans actively and intentionally engaged in this pattern of severe and/ or pervasive discrimination and the Harvard Medical School Master's Student's Handbook section 3.01, Responsibility of teachers to minimize the likelihood of student mistreatment and optimize the educational experiences and further notes a responsibility of teachers to treat learners fairly, respectfully, and without bias related to their age, race, gender, sexual orientation, disability, religion or national origin. As a result of breaches of Harvard Medical School's MMSCI program leadership and deans including Associate Professor Finnian McCausland and Doctor Martina McGrath and Deans Johanna Gutlerner and Rosalind Segal, Plaintiff has suffered, and continues to suffer, and will continue to be injured because of the discriminatory and retaliatory conduct of Defendants.

418. The HMS Master's Student's Handbook Policy does not mention that HMS MMSCI faculty and or HMS MMSCI faculty named in a formal complaint of discrimination and bullying with Harvard should improperly issue the complainant student Plaintiff a "failing grade" in "CI706: MMSCI Mentored Research" course an MMSCI course and or because a research mentor refused to provide mentorship to Plaintiff on feasible research projects of Plaintiff's interest as requested by Plaintiff with Defendants.

419. Defendants selectively deviated from the HMS Master's Student's Handbook and or Harvard University policies and therefore breached the contractual obligations embodied in the HMS Masters Handbook Section 3.03 provides that "requirement to withdraw" from an academic program and or HMS MMSCI academic program is appropriate only 'when attempts at academic remediation has been unsuccessful and the Handbook, Section 5 of the Requirement to Withdraw provides that students are automatically withdrawn only if students fail to attend classes or work on a mentored research/capstone project for a period of ten (10) business days without approval as well as the Harvard Medical School Handbook, section 2.14. Credit for Mentored Research which provides that all mentors may ensure an appropriate environment for research based on the individual students' needs and objectives, the student's research may be conducted in collaboration with faculty from other entities either within or outside Harvard. The

209

for evaluation during the conduct of the research and the Harvard Medical School and or Harvard University's policies that prohibit discriminatory disparate treatment, bullying, abuse of authority, retaliation and the HMS Master's Student's Handbook under section 3.01 Responsibility of teachers and learners under Responsibility of teachers noting that the teacher-learner relationship confers rights and responsibilities of behaving in a way that creates a culture of mutual respect, minimizes the likelihood of student mistreatment and optimizes the educational experiences and that teachers should treat learners fairly, respectfully, and without bias related to their age, race, gender, sexual orientation, disability, religion or national origin.

420. The HMS Master's Student's Handbook under section 3.01 Responsibility of teachers ,under Responsibility of teachers noting that the teacher-learner relationship confers rights and responsibilities of behaving in a way that creates a culture of mutual respect, minimizes the likelihood of student mistreatment and optimizes the educational experiences and that teachers should treat learners fairly, respectfully, and without bias related to their age, race, gender, sexual orientation, disability, religion or national origin(Exhibit 84) but the HMS MMSCI program by Associate Professor Finnian McCausland and Doctor Martina McGrath and Deans Johanna Gutlerner and Rosalind Segal did not impose such non-established formal HMS MMSCI program syllabus conditions including "interim meeting" , "additional statistical work" and "March 14,2025 deadline" on similarly situated students in the HMS MMSCI academic program ,2024 to 2026 cohort known to Plaintiff who first met with their research mentors at the same time as the Plaintiff or even later, in October or November 2024, including one White student in the MMSCI program who first met with their "CI706: MMSCI Mentored Research" course research mentor in November 2024 and presented their initial "CI706: MMSCI Mentored Research" course research topic milestone approximately one week later, also in November 2024 ,one Brown student in the MMSCI program who did not present their initial first milestone research topics originally due in Fall (November) 2024 until Spring 2025, as a condition for receiving course credit in "CI706: MMSCI Mentored Research" course but upon information and belief Defendants awarded credit but not a failing grade in "CI706: MMSCI Mentored Research" course to these similarly situated students in the MMSIC program by Defendants demonstrates the escalating discriminatory and retaliatory pattern that Defendants

subjected the Plaintiff to within the HMS MMSCI program, in breach of the HMS Master's Student's Handbook under section 3.01 Responsibility of teachers.

421.Defendants have and will continue to deny Plaintiff equal access to the educational opportunities and benefits provided to similarly situated students in the HMS MMSCI program and has and will continue to intentionally discriminate against the Plaintiff on based on race with substantial damages, in amounts to be determined at trial.

Defendants breached the implied covenant of good faith and fair dealing implied in its contracts with the Plaintiff. Among other things, the HMS MMSCI program leadership and deans including Associate Professor Finnian McCausland and Doctor Martina McGrath and Deans Johanna Gutlerner and Rosalind Segal selectively applied or enforce the HMS Master's Student's Handbook, guidelines, policies, procedures, course syllabus and regulations in bad faith and in a discriminatory and retaliatory manner improperly motivated by Plaintiff's race, refusal to investigate or dismiss informal and formal complaints of discrimination and bullying, harassment, intimidation and or discrimination and retaliation of Plaintiff with Harvard OCC, ignoring incidents of power based retaliation against the Plaintiff within the HMS MMSCI program by Associate Professor Finnian McCausland and Doctor Martina McGrath and Deans Johanna Gutlerner and Rosalind Segal than they treated similarly situated Brown and White students in the HMS MMSCI program.

422.The HMS MMSCI program leadership and or Deans including Associate Professor Finnian McCausland and Doctor Martina McGrath and Deans Johanna Gutlerner and Rosalind Segal were aware that Plaintiff requested with Doctor Lisa Bebell ,MMSCI program leadership and Deans for the established right per the HMS Master's Student's Handbook Policies to conduct research on feasible research projects and also that Doctor Lisa Bebell refused to mentor Plaintiff on feasible research topics but they(MMSCI program leadership and Deans) still did not provide any further support to Plaintiff about and continued to enforce the selectively imposed non-MMSCI program syllabus deadline of "March 14,2025" under the threat of failure in "CI706: MMSCI Mentored Research" course and withdrawal from the HMS MMSCI program.

211

423. The timing, fourteen(14) days, after Plaintiff filed a formal complaint of discrimination and bullying with Harvard OCC on March 3,2025 which required formal investigation under Harvard's NDAB Policy in which Plaintiff identified HMS MMSCI program leadership including Associate Professor Finnian McCausland and Doctor Martina McGrath and Deans Johanna Gutlerner and Rosalind Segal evidence severe retaliatory and discriminatory actions of against Plaintiff within the HMS MMSCI program and undermine any claim that improperly issued "failing grade" in "CI706: MMSCI Mentored Research" course to Plaintiff by Associate Professor Finnian McCausland and Doctor Martina McGrath and Deans Johanna Gutlerner and Rosalind Segal on or about March 17,2025 cannot reasonably be considered a legitimate grade of Plaintiff in "CI706: MMSCI Mentored Research" course and or the HMS MMSCI program, absent of any HMS MMSCI and or HMS Master's Student's Handbook Policy authorizing retaliatory award of a failing credit(grade) in "CI706: MMSCI Mentored Research" course to an MMSCI student and or Plaintiff by Associate Professor Finnian McCausland and Doctor Martina McGrath and Deans Johanna Gutlerner and Rosalind.Defendants breached the HMS Master's Student's Handbook under section 3.01 Responsibility of teachers ,under Responsibility of teachers noting that the teacher-learner relationship confers rights and responsibilities of behaving in a way that creates a culture of mutual respect, minimizes the likelihood of student mistreatment and optimizes the educational experiences and that teachers should treat learners fairly, respectfully, and without bias related to their age, race, gender, sexual orientation, disability, religion or national origin(Exhibit 84).

424. As a direct result of the wrongfully issued grade in "CI706: MMSCI Mentored Research" course to Plaintiff and or "requirement to withdraw" of Plaintiff from the HMS MMSCI program by Defendants, Plaintiff has suffered and will continue to suffer irreparable harm because of the Defendants' adverse and retaliatory actions, including been excluded from the HMS MMSCI program and Plaintiff is unable to attend ongoing classes and or academic activities, complete academic requirements or participate in school activities. Graduation is imminent, scheduled for end of May 2026, less than two weeks from the date of filing of this complaint. As a result of HMS MMSCI program leadership including Associate Professor Finnian McCausland and Doctor Martina McGrath and Deans Johanna Gutlerner and Rosalind Segal and Harvard Medical School's breaches, Plaintiff has been damaged and has endured and

212

continues to endure daily significant emotional distress, loss of educational funding, reputational and professional and educational harm and will continue to sustain substantial damages, in amounts to be determined at trial.

425. Plaintiff requests that this Court grants an emergency and or immediate temporary restraining order on ex parte basis and preliminary and permanent injunctive relief because immediate and irreparable harm of loss of graduation with the Plaintiff's original MMSCI program cohort 2024 to 2026 scheduled for end of May 2026 and loss of professional opportunities could occur will occur before Defendants can be heard. Specifically, Plaintiff faces imminent loss of participation in graduation and related academic rights within approximately two weeks end of May 2025. Additionally, providing notice to Defendants could allow Defendants to escalate or complete the alleged harmful actions, and retaliation could occur before the Court is able to act.

426.Because the HMS MMSCI program 2024 to 2026 cohort graduation is scheduled in approximately less than two weeks in end of May 2026,an emergency and or immediate temporary relief preliminary and permanent injunctive relief is necessary to maintain the Plaintiff's reinstatement into the HMS MMSCI program to preserve the Plaintiff's ability to participate in graduation in graduation ceremony with the Plaintiff's original MMSCI program cohort 2024 to 2026 during the pendency of further court proceedings.

427.Plaintiff further requests that all compliance communications regarding the temporary restraining order by Defendants be directed in writing due to prior restrictions by Defendants on Plaintiff's communication with Defendants. At minimum Plaintiff asks this court to grant an emergency and or immediate hearing before immediate and irreparable harm of loss of graduation with the Plaintiff's original MMSCI program cohort 2024 to 2026 scheduled for end of May 2026 could occur.

428.Plaintiff is entitled to appropriate injunctive relief under Title VI (42 U.S.C. § 2000d) and Title IX (20 U.S.C. § 1681) ,because Defendants have knowledge of the wrongfully issued failing grade in "CI706: MMSCI Mentored Research" course  to Plaintiff and or "requirement to withdraw" of Plaintiff from the HMS MMSCI program by Defendants and with the MMSCI

213

program 2024 and 2026 cohort graduation is imminent in end of May 2026. Additionally, Defendants are and or were also aware that their discriminatory and retaliatory conduct against Plaintiff excluded Plaintiff from the MMSCI academic program and directly resulted into Plaintiff missing equal educational opportunities within the HMS MMSCI program and has been and continues to be deliberately exclude Plaintiff from equal educational opportunities within the HMS MMSCI program that is severe, persistent and pervasive, there is no adequate or speedy remedy at law to prevent Harvard Medical School and Associate Professor Finnian McCausland and Doctor Martina McGrath and Deans Johanna Gutlerner and Rosalind Segal from continuing to discriminate against Plaintiff on the basis of race ,in violation of Title VI(42 U.S.C. § 2000d), and Title IX (20 U.S.C. § 1681) and the Harvard's Own Non-Discrimination and Anti-Bullying (NDAB) Policy and the 2024 to 2026 HMS Master's Student's Handbook Policies. With MMSCI 2024 to 2026 graduation scheduled in just less than two weeks in end of May 2026, the educational, professional and emotional harm Plaintiff will otherwise continue to suffer is irreparable.

429.Plaintiff is entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988.

## Count VI. Harvard Medical School's Failure to Uphold the FERPA 1974 Law

Harvard Medical School's Failure to Uphold the FERPA 1974 Law and Obstruction of the Plaintiff's FERPA Act of 1974, Right for Request and or Review of Academic Documents and HMS Master's Student's Handbook section Policy section 2.16. Student's Right to Access and Review Educational Records, FERPA,1974, law and Unwarranted Institutional Escalation to Harvard University Police Department (HUPD).

430.Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein 1-429

431.On November 12,2024, Plaintiff requested their (Plaintiff's) HMS MMSCI academic documents to which Plaintiff was and or is entitled to under FERPA,1974,law and the HMS Master's Student's Handbook from the Harvard CSNDR, following Ms. Keri Godin's, "cease and desist" message to the Plaintiff on October 8,2024, directing the Plaintiff that the Plaintiff

214

may file a discrimination complaint with Harvard and that the Plaintiff only contacts one office and only (Harvard CSNDR), which is not designated for the provision of academic documents at the HMS but rather for investigation of non-discrimination, antibullying and antiretaliation or related matters at Harvard University even though the Harvard CSNDR office declined to investigate the Plaintiff's formal complaint of discrimination stating that the formal complaint of discrimination filed that the Plaintiff in November 2025 was "beyond its scope," despite being the designated Harvard office responsible for receiving and facilitating the investigation of such complaints and the formerly Harvard OCC, now renamed Harvard CSNDR, enforce the same NDAB policies had previously received the Plaintiff's informal and formal complaints of discrimination and bullying with Harvard and issued findings of the Plaintiff's formal complaint without conducting required investigation of formal complaint under the Harvard NDAB policies, and only after the Plaintiff had already been withdrawn from the HMS MMSCI program by Defendants. Plaintiff contacted the Harvard CSNDR office and requested their academic documentation in the HMS MMSCI program from the HMS. However, the Harvard CSNDR did not respond to Plaintiff's request to provide Plaintiff's academic documents at the HMS.

432.In accordance with FERPA Act of 1974("FERPA", law which provides that students have the right to review and inspect educational records, request corrections in schools that receive federal aid which Harvard substantially receives and the HMS Masters school, section 2.16. Access to educational records ,FERPA 1974 law, which provides that students and former students may inspect and review certain of their education records that are maintained by Harvard, the Plaintiff subsequently made a request for the Plaintiff's academic documents to the designated Harvard office and additional Harvard officials responsible for maintaining and providing and or guiding such academic records including the HMS Registrar's office and Office of the Dean of HMS and the Dean of HMS (Dean George Q.Daley) himself. Instead of Harvard Medical School and or Harvard University officials complying with their FERPA 1974, obligation as recipients of the United States Government federal aid and their own HMS Master's Student's Handbook Policy under section 2.16. Access to educational records. Family educational Rights and Privacy FERPA 1974,which provides that Harvard Medical School routinely keeps records of its students that describe and document their work and progress and

215

program 2024 and 2026 cohort graduation is imminent in end of May 2026. Additionally, Defendants are and or were also aware that their discriminatory and retaliatory conduct against Plaintiff excluded Plaintiff from the MMSCI academic program and directly resulted into Plaintiff missing equal educational opportunities within the HMS MMSCI program and has been and continues to be deliberately exclude Plaintiff from equal educational opportunities within the HMS MMSCI program that is severe, persistent and pervasive, there is no adequate or speedy remedy at law to prevent Harvard Medical School and Associate Professor Finnian McCausland and Doctor Martina McGrath and Deans Johanna Gutlerner and Rosalind Segal from continuing to discriminate against Plaintiff on the basis of race or national origin, in violation of Title VI(42 U.S.C. § 2000d), and Title IX (20 U.S.C. § 1681) and the Harvard's Own Non-Discrimination and Anti-Bullying (NDAB) Policy and the 2024 to 2026 HMS Master's Student's Handbook Policies. With MMSCI 2024 to 2026 graduation scheduled in just less than two weeks in end of May 2026, the educational, professional and emotional harm Plaintiff will otherwise continue to suffer is irreparable.

429. Plaintiff is entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988.

## Count VI. Harvard Medical School's Failure to Uphold the FERPA 1974 Law

**Harvard Medical School's Failure to Uphold the FERPA 1974 Law and Obstruction of the Plaintiff's FERPA Act of 1974, Right for Request and or Review of Academic Documents and HMS Master's Student's Handbook section Policy section 2.16. Student's Right to Access and Review Educational Records, FERPA,1974, law and Unwarranted Institutional Escalation to Harvard University Police Department (HUPD).**

430. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein 1-429

431. On November 12,2024, Plaintiff requested their (Plaintiff's) HMS MMSCI academic documents to which Plaintiff was and or is entitled to under FERPA,1974,law and the HMS Master's Student's Handbook from the Harvard CSNDR, following Ms Leri Godin's, "cease and desist" message to the Plaintiff on October 8,2024, directing the Plaintiff that the Plaintiff

education records including records such as admissions records, enrollment status, course grades, records of disciplinary records and other correspondence with or concerning the student to furnish such academic documentation to the Plaintiff upon the Plaintiff's request for one, Defendants improperly referred Plaintiff to the Harvard University Police Department Officer, Mr. Ryan Cavhalo, for contacting Harvard Medical School to provide their academic documents in the HMS MMSCI program. Defendants only released Plaintiff's academic documents after they had referred Plaintiff to the Harvard University Police and or issued a "cease and desist" communication to Plaintiff and only after Plaintiff had requested with the Harvard University Police Department Officer, Mr. Ryan Cavhalo, for their academic documents.

433. Defendants obstructed the Plaintiff's established right to request and review academic documentation set forth under, Family educational Rights and Privacy above FERPA 1974, Act of 1974 and the HMS Master's Student's Handbook Policy, section 2.16. Access to educational records FERPA Act of 1974, Law and the Plaintiff suffered emotional distress, including anxiety, frustration, and significant stress related to denial of access to required academic information and documentation under Family educational Rights and Privacy FERPA coupled with Defendants' inconsistent and obstructive responses. Harvard breached the established FERPA Act of 1974 policy and the procedures governing access to academic information and the HMS Masters school, section 2.16. Access to educational records FERPA policy under both the Harvard policy and FERPA Act of 1974, students and former students may inspect and review certain of their education records that are maintained by Harvard. As a result of Harvard Medical School's breaches, Plaintiff has been damaged and will continue to sustain substantial educational and professional damages, unless this Court grants an appropriate relief to Plaintiff including an emergency and or immediate ex parte temporary restraining order, temporary preliminary and permanent injunctive relief and an emergency court hearing is necessary to maintain the Plaintiff's reinstatement into the HMS MMSCI program to preserve the Plaintiff's ability to participate in graduation in graduation ceremony scheduled for end of May 2026 with the Plaintiff's original MMSCI program cohort 2024 to 2026 scheduled for end of May 2026 during the pendency of further court proceedings, is necessary to maintain the Plaintiff's reinstatement into the HMS MMSCI program to preserve the Plaintiff's ability to participate in

216

graduation in graduation ceremony with the Plaintiff's original MMSCI program cohort 2024 to 2026 during the pendency of further court proceedings, amounts to be determined at trial.

## F  PRAYER FOR RELIEF

## DECLARATORY RELIEF

Wherefore, Plaintiff respectfully requests that this Court grant the following relief:

1.Plaintiff seeks an emergency and immediate ex parte temporary restraining order and emergency court hearing and temporary preliminary and permanent injunctive relief which is necessary to maintain the Plaintiff's reinstatement into the HMS MMSCI program to preserve the Plaintiff's ability to participate in graduation in graduation ceremony with the Plaintiff's original MMSCI program cohort 2024 to 2026 scheduled within less than a week from now for end of May 2026 during the pendency of further court proceedings prohibiting  Defendants from continuing to exclude Plaintiff from the HMS MMSCI program because immediate and irreparable harm will occur before Defendants can be heard. Specifically, Plaintiff faces imminent loss of participation in graduation and related academic rights within approximately two weeks, and providing notice would risk rendering the requested relief moot. Additionally, providing notice could allow the Defendants to escalate or complete the alleged harmful actions, and retaliation could occur before the Court is able to act.

2.Additionally, Plaintiff requests this court to grant to file ex as Plaintiff has faced escalating retaliation from Defendants for reporting and opposing and or seeking redress from external sources for redress and or support regarding Defendants adverse actions and discriminatory and retaliatory conduct against Plaintiff including referral of Plaintiff to Harvard University Police Department for asking Plaintiff's academic documents which is a right under FERPA 1974,law and with Plaintiff facing ongoing harm, Plaintiff continues to suffer ongoing emotional distress and educational and professional harm.

3.Plaintiff requests that this Court grant s an emergency and or immediate ex parte temporary restraining order, preliminary and permanent injunctive relief and emergency court hearing because, immediate and irreparable harm of loss of graduation with the Plaintiff's original

MMSCI program cohort 2024 to 2026 scheduled for end of May 2026 and loss of professional opportunities could occur will occur before Defendants can be heard. Specifically, Plaintiff faces imminent loss of participation in graduation and related academic rights within approximately two weeks end of May 2025, as providing prior notice to Defendants would potentially risk rendering the requested relief moot. Additionally, providing prior notice to the Defendants could allow the Defendants to escalate or complete the harmful actions, and or retaliation could occur before the Court is able to act. Plaintiff further requests that all compliance communications regarding the temporary restraining order by Defendants be directed in writing due to prior restrictions by Defendants on Plaintiff's communication with Defendants. At minimum Plaintiff asks this court to grant an emergency and or immediate court hearing before immediate and irreparable harm of loss of graduation with the Plaintiff's original MMSCI program cohort 2024 to 2026 scheduled for end of May 2026 could occur. Plaintiff respectfully moves this Court for a Temporary Restraining Order pursuant to Mass. R. Civ. P. 65 and because Fed. R. Civ. P. 65(b) because subsection (b) governs TROs without notice. (See Common Standard from Packaging Industries Group, Inc. v. Cheney).

4.Graduation is scheduled in approximately less than two weeks an emergency and or immediate temporary restraining orders and preliminary and permanent injunctive relief and emergency court hearing is necessary to maintain the Plaintiff's reinstatement into the HMS MMSCI program to preserve the Plaintiff's ability to participate in graduation in graduation ceremony with the Plaintiff's original MMSCI program cohort 2024 to 2026 during the pendency of further court proceedings.

5.A declaration of an emergency and or immediate temporary restraining order and preliminary and permanent injunctive relief and emergency court hearing is necessary to maintain the Plaintiff's reinstatement into the HMS MMSCI program to preserve the Plaintiff's ability to participate in graduation in graduation ceremony scheduled for end of May 2026 with the Plaintiff's original MMSCI program cohort 2024 to 2026 scheduled for end of May 2026 during the pendency of further court proceedings.

6.A declaration of make up for semesters Spring 2025, Summer 2025 and Fall 2025 and enrollment into the current Spring 2026 semester and participate in graduation ceremony with

the Plaintiff's original MMSCI program cohort 2024 to 2026 scheduled for end of May 2026 during the pendency of further court proceedings.

7.Plaintiff further requests that all compliance communications regarding the temporary restraining order and preliminary and permanent injunctive order be directed in writing by Defendants to the Plaintiff and this Court due to prior restrictions on Plaintiff's communication with Defendants.

8.A preliminary and permanent injunctive relief requiring Defendants to comply with all obligations under the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g, and to refrain from any conduct that interferes with the Plaintiff's rights to access, review, and control educational records and to permit the Plaintiff to communicate with the school as necessary to request, access, and review educational records.

9.An order directing Defendants to file a certification of compliance with the Court or otherwise report compliance with any temporary or injunctive relief granted to the Plaintiff, considering prior restrictions imposed on the Plaintiff's communications with Defendants.

10.A declaration of immediate full-time, in-person reinstatement of the Plaintiff into the HMS MMSCI program with full and in-person participation in all academic activities and restoring full access to all academic and program-related activities in good standing, with the Plaintiffs academic record corrected to remove all academic sanctions directly resulting from Defendants' retaliatory and discriminatory conduct against the Plaintiff, including "Monitored Academic Status", "Academic Probation Status", and the wrongful "requirement to withdraw " from the MMSCI program.  Reinstatement of Plaintiff to include, at minimum to include immediate enrollment in the Spring 2026 semester; a reasonable plan to make up coursework and academic milestones missed during the Spring, Summer, and Fall 2025 and ongoing Spring 2026 semesters from which Plaintiff was excluded; an accelerated academic path to graduation in May 2026, developed in consultation with Plaintiff and impartial faculty not named in this complaint; and provision incomplete(INC) grades for missed course work and research to be completed by the Plaintiff post HMS MMSCI 2024 to 2026 cohort in May 2026 graduation.

219

11.HMS MMSCI degree conferral and or participation in the HMS MMSCI program graduation and convocation ceremonies with Plaintiff's original HMS MMSCI 2024 to 2026 cohort in May 2026, which is the graduating class with whom the Plaintiff would have completed the HMS MMSCI program but for the HMS MMSCI program leadership and Harvard Medical School's discriminatory and retaliatory conduct.

12.A declaration that Plaintiff to be allowed to continue the HMS MMSCI program studies without retaliatory interference from any of the HMS MMSCI program leadership and or individuals named in this complaint.

13.A declaration of permanent recusal of conflicted HMS MMMSCI Program Directors and or Deans and or related Harvard Medical School faculty and or employees including Deans Johanna Gutlerner and Rosalind Segal and Associate Professor Finnian McCausland and Doctor Martina McGrath and Professor Ajay Singh from any future academic or administrative decisions concerning the Plaintiff.

14. A declaration of Plaintiff's grade correction and academic review in "CI700: Ethics and the IRB" course assignment grade to be restored to its original score of 18/18 or in the alternative, a transparent and impartial review of the grade change to be conducted with Plaintiff's full participation and access to all relevant IT records. The Plaintiff's grade in "CI700: Ethics and the IRB" course and "CI706: MMSCI Mentored Research" course and or all other academic assessments of the Plaintiff affected by the discriminatory and retaliatory conduct of Defendants to be reviewed by impartial Harvard Medical School faculty.

15.A declaration that Defendants grants Plaintiff a remediation examinations in "CI700:Ethics and the IRB" course and "CI701: Clinical Data Science; Design and Analytics I" (which resulted from consequential failure caused by Defendants' discriminatory and adverse actions against the Plaintiff that impacted Plaintiff's mental health and impeded the Plaintiff's ability to study and prepare in their academics especially in "CI701: Clinical Data Science; Design and Analytics I" course which was ongoing at the time and "CI708A Clinical Data Analytics 11" course while similarly situated Brown and two White MMSCI students who failed "CI701: Clinical Data Science; Design and Analytics I" and Brown student, another Brown student from a different place

220

of origin and two White students all of whom MMSCI 2024 to 2026 cohort students who failed "CI708A Clinical Data Analytics 11"were later granted remediation in "CI701: Clinical Data Science; Design and Analytics I" on October 8,2024 and "CI708A Clinical Data Analytics 11" on January 14,2025.

16.A Declaration of monetary damages. Plaintiff has been damaged because of Defendants' discriminatory and retaliatory treatment and adverse actions against the Plaintiff within the HMS MMSCI program including among other things lost educational funds tuition and fees, and related educational expenses incurred resulting from and or during the period of discriminatory and retaliatory treatment and adverse actions against the Plaintiff within the HMS MMSCI program, lost wages, resulting from Defendants' improper adverse actions of wrongful "requirement to withdraw" and or related discriminatory and retaliatory actions against the Plaintiff, lost educational and career advancement opportunities, costs related to enrollment into other curriculum courses and professional development, career advancement opportunities, and professional development, emotional distress, mental anguish, ,reputational damage and humiliation and reputational harm sustained as a result of the Harvard Medical School's employees conduct and attorneys' fees and costs ,all of these resulting from Defendants' discriminatory and retaliatory treatment and adverse actions against the Plaintiff in the HMS MMSCI program.

A declaration for policy reforms at Harvard Medical School and MMSCI program and or Harvard University to implement structural reforms to ensure that: individuals (Harvard community members) named in discrimination and bullying and or related complaints by students and or Harvard community members ,with Harvard University are automatically recused from adjudicating academic sanctions or appeals involving the complainant; formal discrimination complaints are investigated by genuinely independent personnel in accordance with the Harvard University's published NDAB policies; and students who file discrimination complaints are protected from retaliatory academic action during the pendency of the investigation and at all times.

17.A declaration of expungement of discriminatory and retaliatory academic sanctions imposed on the Plaintiff, including academic probation and any monitored academic status and

withdrawal status from the HMS MMSCI program and correction of transcripts to reflect non-academic sanction status.

18. A declaration that Defendants vacate any improperly imposed failing grade in "CI706: MMSCI Mentored Research" course on Plaintiff.

19. A declaration to grant an emergency and immediate court hearing on Plaintiff's request for immediate temporary restraining order and or emergency and permanent injunctive relief.

20. Grant Plaintiff's motion to file electronically, virtual participation in court proceedings and seal court filings and records to protect Plaintiff from further harm and or related harm, retaliation, and undue disclosure of sensitive information of the Plaintiff and other MMSCI students in this complaint.

21. A declaration to grant Plaintiff's motion to proceed under a pseudonym due to a reasonable further retaliation, harm, and reputational injury arising from the events described herein Enjoin Defendants from denying Plaintiff enrollment in Spring 2026 semester courses and participation in HMS MMSCI program graduation ceremony with the Plaintiff's original MMSCI program cohort 2024 to 2026 scheduled for end of May 2026 during the pendency of further court proceedings.

22. A declaration that Defendants' adverse retaliatory academic action of "requirement to withdraw" against the Plaintiff constituted unlawful race discrimination and retaliation in violation of Title VI of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 et seq and a breach of Defendants' contractual obligations as set forth in its published academic and anti-discrimination and retaliation policies.

22. A declaration that Harvard Medical School violated the Massachusetts State Law M.G.L. c. 151C

23. A declaration that Harvard Medical School and MMSCI program and Harvard University breached its contractual obligations with the Plaintiff set forth in the Harvard University's NDBAB policies and Harvard Medical School Master's Student's Handbook

24.A declaration that Harvard University's NDBAB policies and Harvard Medical School's Master's Student's Handbook to be adhered to and be uniformly applied to all students and or MMSCI students.

25.A declaration that the improperly issued "failing grade" in "CI706: MMSCI Mentored Research" course and the wrongful "requirement to withdraw" of Plaintiff from the HMS MMSCI academic program at Harvard Medical School and related academic actions by the Defendants were unlawful.

25.A declaration of Harvard Medical School Mandatory policy compliance with Title VI & 42 U.S.C. § 2000d et seq and Title IX (20 U.S.C. § 1681).

26.A declaration of compensation of lost educational funding tied to education at Harvard Medical School, non-discrimination and retaliation assurances written policy.

27.A declaration of preventing Harvard Medical School specific and relevant faculty and employees/administrators including Deans Johanna Gutlerner and Rosalind Segal and Associate Professor Finnian McCausland and Doctor Martina McGrath other Harvard staff directly responsible for the discriminatory and retaliatory actions against Plaintiff within the HMS MMSCI academic program at Harvard Medical School from taking any further discriminatory and retaliatory actions against the Plaintiff.

28.A declaration of establishing, implementing, instituting, maintaining, or executing policies

29.A declaration ordering Harvard Medical School/Harvard University to implement policies, practices, procedures, or protocols that penalize or discriminate against Plaintiff including in any way, and ordering Harvard Medical School/Harvard University to take all necessary, adequate, and appropriate remedial, corrective, and preventative measures including allowing Plaintiff to complete coursework interrupted and free of further retaliatory and discriminatory actions by Defendants.

30.A declaration that Plaintiff, who enrolled in the HMS MMSCI program student at the Harvard Medical School and or Harvard, a recipient of the United States federal aid and therefore obliged

by the FERPA 1974, Law, the Plaintiff is entitled under applicable federal and state law, including the Family Educational Rights and Privacy Act (FERPA),1 and governing Harvard Medical School Master's Student's Handbook, section 2.16. Access to educational records, FERPA 1974, Law to request, review, and inspect relevant academic and institutional records; and an order to enjoin Defendants from obstructing or interfering with the Plaintiff's access to such documents and requiring compliance with all applicable procedures governing disclosure and review.

31.A declaration of compensatory, consequential, emotional and mental distress damage from academic/educational and reputational harm within the academic/ professional community and punitive damages in amounts to be determined at trial.

31.Enjoin the Defendants from taking any action that would interfere with or prevent the Court from granting the relief sought herein; and

A declaration of reasonable attorneys' fees, expert fees, and costs pursuant to 42 U.S.C. § 1988 and other applicable costs of suit, and expenses with taking other alternate courses

32.A declaration of pre-judgement damages pre-judgement damages for emotional distress ,reputational and educational harm, loss of educational funding and academic opportunities and emotional suffering and distress caused by Defendants' discriminatory and retaliatory academic and disciplinary actions including the wrongfully issued "failing grade" in "CI706: MMSCI Mentored Research" course to Plaintiff and or "requirement to withdraw" of Plaintiff from the HMS MMSCI program against Plaintiff by Defendants at the rate as permitted by the law; and any other additional legal or equitable relief this Court deems just and proper.

Respectfully submitted,
Dated: May 13, 2026.
By Jane Doe, Plaintiff.
Pro se Plaintiff
Massachusetts.

224

225

Plaintiffs Identity and Contact Information Filed Under Seal.